No. 24-1187

———————————————

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————

MARTY HIERHOLZER; MJL ENTERPRISES, LLC,
a Virginia corporation,

Plaintiffs – Appellants,

v.

ISABEL GUZMAN, in her official capacity as
Administrator of the Small Business Administration;
SMALL BUSINESS ADMINISTRATION,

Defendants – Appellees.

———————————————

On Appeal from the United States District Court
for the Eastern District of Virginia, No. 2:23-cv-00024-RAJ-DEM
Honorable Raymond A. Jackson, District Judge

———————————————

**JOINT APPENDIX**

———————————————

Glenn E. Roper
Joshua P. Thompson
Pacific Legal Foundation
1745 Shea Center Drive, Suite 400
Highlands Ranch, Colorado 80129
Tel.: (916) 419-7111
GERoper@pacificlegal.org
JThompson@pacificlegal.org

*Counsel for Plaintiffs-Appellants*

Teresa Kwong
Bonnie I. Robin-Vergeer
U.S. Dep't of Justice
P.O. Box 14403
Washington, D.C. 20044
Tel.: (202) 353-2464
teresa.kwong@usdoj.gov
bonnie.robin-vergeer@usdoj.gov

*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

| Document | File Date | Docket | Page |
|---|---|---|---|
| Docket Report, Case No. 2:23-cv-00024 | | | JA001 |
| Complaint for Declaratory and Injunctive Relief | Jan. 18, 2023 | 1 | JA007 |
| Defendants' Motion to Dismiss | Mar. 20, 2023 | 19 | JA028 |
| Defendants' Brief in Support of Motion to Dismiss | Mar. 20, 2023 | 20 | JA030 |
| Declaration of Sam Le, with Exhibits | Mar. 20, 2023 | 20-2, 20-1 | JA058 |
| Plaintiffs' Opposition to Motion to Dismiss | April 7, 2023 | 26 | JA062 |
| Declaration of Marty Hierholzer in Support of Plaintiffs' Opposition to Motion to Dismiss | April 7, 2023 | 26-1 | JA094 |
| Defendants' Reply in Support of Motion to Dismiss | April 19, 2023 | 27 | JA096 |
| Defendants' Motion to Stay Proceedings | Jan. 25, 2024 | 36 | JA113 |
| Defendants' Brief in Support of Motion to Stay Proceedings | Jan. 25, 2024 | 37 | JA116 |
| Exhibit A in Support of Motion to Stay Proceedings (Defendants' Notice of Compliance, *Ultima Servs. Corp. v. USDA*) | Jan. 25, 2024 | 37-1 | JA123 |

| **Document** | **File Date** | **Docket** | **Page** |
|---|---|---|---|
| Exhibit B in Support of Motion to Stay Proceedings (Declaration of John W. Klein, *Ultima Servs. Corp. v. USDA*) | Jan. 25, 2024 | 37-2 | JA129 |
| Declaration of John W. Klein | Jan. 25, 2024 | 37-3 | JA134 |
| Transcript of Motion Hearing before the Honorable Raymond A. Jackson, United States District Judge | Jan. 31, 2024 | 46 | JA136 |
| Plaintiffs' Opposition to Defendants' Motion to Stay Proceedings | Feb. 7, 2024 | 48 | JA153 |
| Memorandum Opinion and Order | Feb. 15, 2024 | 49 | JA159 |
| Judgment | Feb. 15, 2024 | 50 | JA177 |
| Notice of Appeal | Feb. 26, 2024 | 51 | JA178 |

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

APPEAL,CLOSED

## U.S. District Court
## Eastern District of Virginia - (Norfolk)
## CIVIL DOCKET FOR CASE #: 2:23-cv-00024-RAJ-DEM

Hierholzer et al v. Guzman et al                          Date Filed: 01/18/2023
Assigned to: District Judge Raymond A. Jackson          Date Terminated: 02/15/2024
Referred to: Magistrate Judge Douglas E. Miller          Jury Demand: None
Case in other court: 4CCA Case Manager T. Barton, 24-01187   Nature of Suit: 440 Civil Rights: Other
Cause: 05:702 Administrative Procedure Act                Jurisdiction: U.S. Government Defendant

| Date Filed | # | Docket Text |
|---|---|---|
| 01/18/2023 | 1 | Complaint *for Declaratory and Injunctive Relief* ( Filing fee $ 402, receipt number AVAEDC-8758428.), filed by Marty Hierholzer, MJL Enterprises, LLC. (Attachments: # 1 Civil Cover Sheet)(Somin, Alison) (Entered: 01/18/2023) |
| 01/18/2023 | 2 | Proposed Summons re 1 Complaint *as to Isabel Guzman in her official capacity* by Marty Hierholzer, MJL Enterprises, LLC. (Somin, Alison) (Entered: 01/18/2023) |
| 01/18/2023 | 3 | Proposed Summons re 1 Complaint *as to Small Business Administration* by Marty Hierholzer, MJL Enterprises, LLC. (Somin, Alison) (Entered: 01/18/2023) |
| 01/18/2023 | 4 | Financial Interest Disclosure Statement (Local Rule 7.1) by Marty Hierholzer, MJL Enterprises, LLC. (Somin, Alison) (Entered: 01/18/2023) |
| 01/18/2023 | | Initial Case Assignment to District Judge Raymond A. Jackson and Magistrate Judge Douglas E. Miller. (epri, ) (Entered: 01/19/2023) |
| 01/19/2023 | 5 | Two (2) Summonses Issued as to Isabel Guzman, Small Business Administration, NOTICE TO ATTORNEY: Please remove the headers and print two duplexed copies of the electronically issued summons for each Defendant. Please serve one copy of the summons and a copy of the Complaint upon each Defendant. Please ensure that your process server returns the service copy (executed or unexecuted) to your attention and electronically file it using the filing events, Summons Returned Executed or Summons Returned Unexecuted. (Attachments: # 1 Civil Motions Procedures)(epri, ) (Entered: 01/19/2023) |
| 01/23/2023 | 6 | SUMMONS Returned Executed by Marty Hierholzer, MJL Enterprises, LLC. Isabel Guzman served on 1/19/2023, answer due 3/20/2023; Small Business Administration served on 1/19/2023, answer due 3/20/2023. (Attachments: # 1 Exhibit A - Certified Mail Receipts)(Somin, Alison) (Entered: 01/23/2023) |
| 01/23/2023 | 7 | Motion to appear Pro Hac Vice by Wencong Fa and Certification of Local Counsel Alison Somin Filing fee $ 75, receipt number AVAEDC-8765958. by Marty Hierholzer, MJL Enterprises, LLC. (Somin, Alison) (Entered: 01/23/2023) |

JA001

CM/ECF - vaed                                    https://ecf.vaed.uscourts.gov/cgi-bin/DktRpt.pl?200653880730071-L_1_0-1

| 01/23/2023 | 8 | Motion to appear Pro Hac Vice by Ethan W. Blevins and Certification of Local Counsel Alison Somin Filing fee $ 75, receipt number AVAEDC-8765999. by Marty Hierholzer, MJL Enterprises, LLC. (Somin, Alison) (Entered: 01/23/2023) |
|---|---|---|
| 01/25/2023 | 9 | ORDER granting 8 Motion for Pro hac vice for Ethan Winifred Blevins as to Marty Hierholzer and MJL Enterprises, LLC. Signed by District Judge Raymond A. Jackson on 01/25/23. (tlev, ) (Entered: 01/26/2023) |
| 01/25/2023 | 10 | ORDER granting 7 Motion for Pro hac vice for Wencong Fa as to Marty Hierholzer and MJL Enterprises, LLC. Signed by District Judge Raymond A. Jackson on 01/25/23. (tlev, ) (Entered: 01/26/2023) |
| 01/31/2023 | 11 | Certificate Reporting Service by Small Business Administration, Isabel Guzman. (Van Valkenburg, Virginia) (Entered: 01/31/2023) |
| 02/03/2023 | 12 | Motion to appear Pro Hac Vice by Joshua P. Thompson and Certification of Local Counsel Alison Somin Filing fee $ 75, receipt number AVAEDC-8786491. by Marty Hierholzer, MJL Enterprises, LLC. (Somin, Alison) (Entered: 02/03/2023) |
| 02/03/2023 | 13 | Notice of Substitution of Counsel of Joshua P. Thompson by Alison Elisabeth Somin on behalf of Marty Hierholzer, MJL Enterprises, LLC (Somin, Alison) (Entered: 02/03/2023) |
| 02/06/2023 | 14 | ORDER granting 12 Motion for Pro hac vice for Joshua P. Thompson as to Marty Hierholzer and MJL Enterprises, LLC. Signed by District Judge Raymond A. Jackson on 02/06/23. (tlev, ) (Entered: 02/06/2023) |
| 02/07/2023 | | Notice of Correction re 13 Notice of Substitution of Counsel - This document is insufficient and should not have been filed as a notice. Counsel needs to motion the court to withdraw. Please file a Motion to Withdraw as Counsel and attach a proposed Order. (dbra, ) (Entered: 02/07/2023) |
| 02/08/2023 | 15 | MOTION to Withdraw as Attorney *of Ethan W. Blevins* by Marty Hierholzer, MJL Enterprises, LLC. (Attachments: # 1 Proposed Order Granting Motion to Withdraw) (Somin, Alison) (Entered: 02/08/2023) |
| 02/09/2023 | 16 | NOTICE of Appearance by Virginia Lynn Van Valkenburg on behalf of Isabel Guzman, Small Business Administration (Van Valkenburg, Virginia) (Entered: 02/09/2023) |
| 02/09/2023 | 17 | NOTICE of Appearance by Allan Townsend on behalf of Isabel Guzman, Small Business Administration (Townsend, Allan) (Entered: 02/09/2023) |
| 02/09/2023 | 18 | ORDER granting 15 Motion to Withdraw as Attorney. Attorney Ethan Winifred Blevins terminated. Signed by District Judge Raymond A. Jackson on 2/9/2023. (dbra, ) (Entered: 02/09/2023) |
| 03/20/2023 | 19 | MOTION to Dismiss for Failure to State a Claim , MOTION to Dismiss for Lack of Jurisdiction by Isabel Guzman, Small Business Administration. (Townsend, Allan) (Entered: 03/20/2023) |
| 03/20/2023 | 20 | Brief in Support to 19 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by Isabel Guzman, Small Business Administration. (Attachments: # 1 Exhibit Exhibit 1 to Le Declaration, # 2 Affidavit Declaration of Sam Le)(Townsend, Allan) (Entered: 03/20/2023) |

CM/ECF - vaed                                    https://ecf.vaed.uscourts.gov/cgi-bin/DktRpt.pl?200653880730071-L_1_0-1

| 03/21/2023 | 21 | NOTICE of Appearance by Ejaz H Baluch, Jr on behalf of Isabel Guzman, Small Business Administration (Baluch, Ejaz) (Entered: 03/21/2023) |
| 03/31/2023 | 22 | MOTION for Extension of Time to File Response/Reply as to 19 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction by Marty Hierholzer, MJL Enterprises, LLC. (Attachments: # 1 Proposed Order Granting Motion to Extend time)(Somin, Alison) (Entered: 03/31/2023) |
| 04/03/2023 | | MOTIONS REFERRED to Magistrate Judge: 22 MOTION for Extension of Time to File Response/Reply as to 19 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction (epri, ) (Entered: 04/03/2023) |
| 04/03/2023 | 23 | ORDER granting 22 Motion for Extension of Time to File Response to 19 MOTION to Dismiss. The response is due by 4/7/2023. Signed by Magistrate Judge Douglas E. Miller on 4/3/2023. (afar) (Entered: 04/03/2023) |
| 04/05/2023 | 24 | Consent MOTION for Extension of Time to File Response/Reply as to 19 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction by Isabel Guzman, Small Business Administration. (Attachments: # 1 Proposed Order) (Townsend, Allan) (Entered: 04/05/2023) |
| 04/06/2023 | 25 | ORDER: Defendants' Unopposed Motion for an Extension of Time to File a Reply Brief in Support of Their Motion to Dismiss is hereby granted. Defendants shall file any reply brief in support of their motion (ECF No. 19) on or before April 19,2023. Copies sent on 4.6.23. Signed by Magistrate Judge Douglas E. Miller and filed on 4/6/23. (epri, ) (Entered: 04/06/2023) |
| 04/07/2023 | 26 | Memorandum in Opposition re 19 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by Marty Hierholzer, MJL Enterprises, LLC. (Attachments: # 1 Affidavit /Declaration of Marty Hierholzer) (Somin, Alison) (Entered: 04/07/2023) |
| 04/19/2023 | 27 | REPLY to Response to Motion re 19 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by Isabel Guzman, Small Business Administration. (Baluch, Ejaz) (Entered: 04/19/2023) |
| 04/24/2023 | 28 | Consent MOTION for Oral Argument on Motion to Dismiss re 19 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction by Marty Hierholzer, MJL Enterprises, LLC. (Attachments: # 1 Proposed Order Granting Motion for Oral Argument)(Somin, Alison) (Entered: 04/24/2023) |
| 05/16/2023 | 29 | ORDER deferring ruling on 28 Consent Motion for Oral Argument. The Court will contact counsel if it deems oral argument will aid the Court's adjudication of the case. Signed by District Judge Raymond A. Jackson on May 16, 2023. (Entered: 05/16/2023) |
| 05/17/2023 | 30 | Motion to appear Pro Hac Vice by Glenn E. Roper and Certification of Local Counsel Alison Somin Filing fee $ 75, receipt number AVAEDC-8940954. by Marty Hierholzer, MJL Enterprises, LLC. (Somin, Alison) (Entered: 05/17/2023) |
| 05/18/2023 | 31 | ORDER granting 30 Motion for Pro hac vice for Glenn Evans Roper as to Marty Hierholzer and MJL Enterprises, LLC. Signed by District Judge Raymond A. Jackson on 05/18/2023. (tlev, ) (Entered: 05/19/2023) |

| 05/22/2023 | 32 | MOTION to Withdraw as Attorney *Wencong Fa* by Marty Hierholzer, MJL Enterprises, LLC. (Attachments: # 1 Proposed Order Granting Motion to Withdraw)(Somin, Alison) (Entered: 05/22/2023) |
|---|---|---|
| 05/24/2023 | 33 | ORDER granting 32 Motion to Withdraw as Attorney. Attorney Wencong Fa terminated. Signed by District Judge Raymond A. Jackson on 5/24/2023. (dbra, ) (Entered: 05/24/2023) |
| 07/20/2023 | 34 | NOTICE by Marty Hierholzer, MJL Enterprises, LLC *of Supplemental Authority* (Attachments: # 1 Exhibit A - Ultima slip op.)(Somin, Alison) (Entered: 07/20/2023) |
| 01/09/2024 | 35 | ORDER granting 28 Plaintiff's Motion for Oral Argument. The Courtroom Deputy will contact counsel to schedule a hearing. Signed by District Judge Raymond A. Jackson on January 9, 2024. (Entered: 01/09/2024) |
| 01/10/2024 | | Set/Reset Hearings: Hearing re 19 Motion to Dismiss set for 1/31/2024 at 11:00 a.m. in Norfolk Courtroom 4 before District Judge Raymond A. Jackson. (bap, ) (Entered: 01/10/2024) |
| 01/25/2024 | 36 | MOTION to Stay by Isabel Guzman, Small Business Administration. (Townsend, Allan) (Entered: 01/25/2024) |
| 01/25/2024 | 37 | Brief in Support to 36 MOTION to Stay filed by Isabel Guzman, Small Business Administration. (Attachments: # 1 Exhibit A - Ultima Doc 88, # 2 Exhibit B - Ultima Doc 94-1, # 3 Exhibit C - Klein Declaration)(Townsend, Allan) (Entered: 01/25/2024) |
| 01/25/2024 | 38 | MOTION to Continue *Oral Argument on Motion to Dismiss* by Isabel Guzman, Small Business Administration. (Townsend, Allan) (Entered: 01/25/2024) |
| 01/25/2024 | 39 | Brief in Support to 38 MOTION to Continue *Oral Argument on Motion to Dismiss* filed by Isabel Guzman, Small Business Administration. (Townsend, Allan) (Entered: 01/25/2024) |
| 01/25/2024 | 40 | Opposition to 38 MOTION to Continue *Oral Argument on Motion to Dismiss* filed by Marty Hierholzer, MJL Enterprises, LLC. (Somin, Alison) (Entered: 01/25/2024) |
| 01/26/2024 | 41 | ORDER deferring ruling on 36 Motion to Stay. The Court will reconsider this motion after oral argument on the motion to dismiss. Signed by District Judge Raymond A. Jackson on January 26, 2024. (Entered: 01/26/2024) |
| 01/26/2024 | 42 | ORDER denying 38 Motion to Continue oral argument on motion to dismiss. The Court finds no meritorious reason to continue the oral argument. Signed by District Judge Raymond A. Jackson on January 26, 2024. ) (Entered: 01/26/2024) |
| 01/31/2024 | 44 | NOTICE of Appearance by Sosun Bae on behalf of Isabel Guzman, Small Business Administration (Bae, Sosun) (Entered: 01/31/2024) |
| 01/31/2024 | 45 | NOTICE by Isabel Guzman, Small Business Administration *of Appearance of Andrew Braniff* (Townsend, Allan) (Entered: 01/31/2024) |
| 01/31/2024 | 46 | Minute Entry: Motion Hearing held before District Judge Raymond A. Jackson re 19 MOTION to Dismiss for Failure to State a Claim & for Lack of Jurisdiction filed by Isabel Guzman, Small Business Administration. Attorneys Glenn Roper and Joshua Thompson appeared on behalf of the plaintiffs. Attorneys Andrew Braniff, Allan Townsend, David Fishman, Sosun Bae, Eric Benderson, and Virginia Van Valkenburg appeared on behalf of the defendants. Matter came on for hearing. Comments of the Court, arguments of counsel heard. The Court takes the matter under advisement. Court |

|  |  | adjourned. (Court Reporter Carol Naughton, OCR) (bap, ) (Entered: 01/31/2024) |
|---|---|---|
| 02/05/2024 |  | Notice of Correction re 45 Notice of Appearance of Counsel. The signature block on the document does not match the filing user's login. The Attorney whose signature block appears on the document must refile the document using their own login and create a party association. (dbra, ) (Entered: 02/05/2024) |
| 02/06/2024 | 47 | NOTICE of Appearance by Andrew Braniff on behalf of Isabel Guzman, Small Business Administration (Braniff, Andrew) (Entered: 02/06/2024) |
| 02/07/2024 | 48 | RESPONSE in Opposition re 36 MOTION to Stay filed by Marty Hierholzer, MJL Enterprises, LLC. (Somin, Alison) (Entered: 02/07/2024) |
| 02/15/2024 | 49 | MEMORANDUM OPINION AND ORDER re 19 Motion to Dismiss and 36 Motion to Stay. Defendants' Motion to Dismiss is GRANTED. Defendants' Motion to Stay is DENIED AS MOOT. Signed by District Judge Raymond A. Jackson on 2/15/2024. (dbra, ) (Entered: 02/15/2024) |
| 02/15/2024 | 50 | CLERK'S JUDGMENT. Signed by Clerk on 2/15/2024. (dbra, ) (Entered: 02/15/2024) |
| 02/26/2024 | 51 | NOTICE OF APPEAL as to 50 Clerk's Judgment, 49 Order on Motion to Stay, Order on Motion to Dismiss for Failure to State a Claim, Order on Motion to Dismiss/Lack of Jurisdiction by Marty Hierholzer, MJL Enterprises, LLC. Filing fee $ 605, receipt number AVAEDC-9382645. (Somin, Alison) (Entered: 02/26/2024) |
| 02/27/2024 | 52 | Transmission of Notice of Appeal to US Court of Appeals re 51 Notice of Appeal. (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (Attachments: # 1 Notice of Appeal)(dbra, ) (Entered: 02/27/2024) |
| 02/29/2024 | 53 | USCA Case Number 24-1187 4CCA Case Manager T. Barton for 51 Notice of Appeal, filed by Marty Hierholzer, MJL Enterprises, LLC. (dbra, ) (Entered: 03/07/2024) |
| 03/13/2024 | 55 | Transcript Order Acknowledgment from USCA re 51 Notice of Appeal: Court Reporter/Transcriber Carol Naughton. 1/31/24- hearing. Deadline 5/20/2024. [24-1187] (Vpea) (Entered: 03/18/2024) |
| 03/14/2024 | 54 | TRANSCRIPT of proceedings (Motion Hearing) for the date of 01-31-2024, before Judge Raymond A. Jackson, re 53 USCA Case Number, 51 Notice of Appeal, 52 Transmission of Notice of Appeal to 4CCA, Court Reporter/Transcriber Carol Naughton, Telephone number 757-222-7073. **NOTICE RE REDACTION OF TRANCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov.** *Does this satisfy all appellate orders for this reporter? y* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 4/15/2024. Redacted Transcript Deadline set for 5/14/2024. Release of Transcript Restriction set for 6/12/2024.(naughton, carol) (Entered: 03/14/2024)** |

### PACER Service Center

https://ecf.vaed.uscourts.gov/cgi-bin/DktRpt.pl?200653880730071-L_1_0-1

| Transaction Receipt | | | |
|---|---|---|---|
| 04/15/2024 14:56:31 | | | |
| PACER Login: | PLFLegalFoundation | Client Code: | 1-1626/bpb |
| Description: | Docket Report | Search Criteria: | 2:23-cv-00024-RAJ-DEM |
| Billable Pages: | 5 | Cost: | 0.50 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| Marty Hierholzer, an individual; MJL Enterprises, LLC, a Virginia corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Isabel Guzman, in her official capacity as Administrator of the Small Business Administration; Small Business Administration,<br><br>Defendants. | Civil Case No. 2:23-cv-00024 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      This case is about the right of small business owner and Navy veteran Marty Hierholzer to equal treatment under the law.

2.      Marty is a service-disabled veteran and owner of MJL Enterprises, LLC (MJL), which contracts with the government to provide various services and supplies. He served his country with distinction as a Navy deep sea diver. He has persevered through mental and physical injuries suffered in that work with dignity and a determination to become a successful government contractor supporting the military.

3.      As a service-disabled veteran, Marty faces well-documented disadvantages— social, emotional, and physical.

4.      The Small Business Administration (SBA) Business Development Program— commonly known as the "8(a) Program"—purports to help small business owners who have faced social disadvantage with a host of benefits, including the chance to compete for contracts set aside

for eligible contractors. Yet the SBA has denied Marty the opportunity to participate in the program in part based on his race.

5.      The racial preferences and classifications in the 8(a) Program and implementing regulations transgress the Constitution's "simple command that the Government must treat citizens as individuals, not as simply components of a racial, religious, sexual or national class." *Miller v. Johnson*, 515 U.S. 900, 911 (1995) (quotation omitted).

6.      The SBA, moreover, has arrogated to itself the power beyond its enabling legislation to craft its own system of racial preferences. Not only do the agency's race-based rules exceed statutory authority, they also make arbitrary and capricious distinctions among racial groups divorced from evidence and logic.

7.      To the extent Congress did in fact authorize the SBA to establish racial classifications and preferences, based not on findings of fact but unexamined policy judgments about race, Congress has abandoned its legislative prerogative, unconstitutionally delegating fundamental policy decisions and violating the Constitution's vesting legislative power exclusively in the legislative branch.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702.

9.      The Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

10.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District. Venue is also proper under 28 U.S.C. § 1391(e)(1)(B) because Defendants are officers, employees, and agencies of the

United States and a substantial part of the events or omissions giving rise to these claims occurred in this District. *See also* 5 U.S.C. § 703 (venue for actions under the Administrative Procedure Act are generally proper in "a court of competent jurisdiction").

## PARTIES

11.     MJL Enterprises is a limited liability company organized in the State of Virginia, owned and controlled by Marty Hierholzer. Its principal place of business is located in Virginia Beach, Virginia.

12.     Defendant SBA is a cabinet-level agency of the United States government.

13.     Defendant Isabel Guzman is the Administrator of the SBA. She is sued in her official capacity.

## GENERAL ALLEGATIONS

**Marty Hierholzer and MJL Enterprises**

14.     In 2006, Marty Hierholzer started his business, MJL Enterprises, LLC (MJL), providing government contracting services primarily to the United States military. MJL is legally recognized as a small business under the terms of the 8(a) Program. As its sole owner, Marty remains its president and chief executive officer today.

15.     After serving twenty-two years in the Navy, Marty returned to civilian life with permanent injuries sustained in the line of duty. He is proud of his service and determined not to be held back by the injuries that classify him as a service-disabled veteran.

16.     Marty served the Navy as a saturation diver, deploying to countless countries to perform highly specialized work at depths of a thousand feet or more below sea level. Deep diving is among the most hazardous jobs, where the intense pressure is equally physical and mental. Alone, the processes of pressurization and depressurization required to work at such depths put

debilitating strain on divers' bodies. This is all in addition to the extraordinary pressures and perils of war.

17.    For commercial divers alone, the occupational fatality rate is forty times the national average for other professions.

18.    It is no surprise then that in the line of duty Marty sustained physical injuries to his knees, lower back, and shoulders; he suffers from hearing loss and tinnitus, along with decreased mobility. The mental impact from stressful events, including combat, accidents, and losing friends, resulted in clinically recognized depression and anxiety disorders.

19.    These injuries and disorders are recognized and documented by Veterans Affairs (VA), rendering Marty a service-disabled veteran in the eyes of the United States government. He is rated as 60% disabled by the VA.

20.    Marty retired as a Master Diver in 2002, the highest warfare qualification obtainable by a member of the U.S. Naval diving community.

21.    Since his life's work was centered on military service, it was only natural for Marty to start a business whose motto and mission is "serving those who serve." Marty remembers that while he was in the military, government contracting businesses would contract to supply goods or services to the troops, then sometimes fail to deliver, leaving the soldiers high and dry. Marty was determined that MJL would deliver dependably where others fell short.

22.    MJL provides medical, maintenance, and repair equipment to military bases and VA hospitals. MJL also delivers office supplies to VA hospitals and offices and high-tech safety and security equipment to first responders. Additionally, MJL provides logistical labor and personnel services for VA hospitals.

23.     MJL qualifies as a small business concern owned and controlled by a service-disabled veteran under 15 U.S.C. § 632 and related federal regulations.

24.     Marty has sought to use government programs designed to help service-disabled veteran business owners succeed, including through the VA.

25.     Because of Marty's veteran status, MJL qualifies for and participates in the VA's service-disabled veteran small business contracting program.

**The SBA 8(a) Program**

26.     The SBA's 8(a) Program offers valuable opportunities for MJL and Marty as a service-disabled veteran. He has, therefore, invested time and money to apply for the program, but without success.

**I.      The statutory framework**

27.     The 8(a) Program provides a host of benefits to socially and economically disadvantaged businesses, including access to exclusive government contracts set aside by the SBA and agencies with which it has partnership agreements.

28.     Section 8(a) authorizes the SBA to enter into agreements for goods and services with other government departments and agencies, and to subcontract the performance of those agreements to "socially and economically disadvantaged small business concerns." 15 U.S.C. § 637(a)(1)(A), (B). These contracts can be "sole source" (reserved to one Section 8(a) firm) or competitive within the 8(a) Program, such that only firms qualified for the 8(a) Program can bid. 13 C.F.R. § 124.501(b). The SBA has full discretion to administer this program as it deems "necessary or appropriate."

29.     The SBA has granted some federal agencies the authority to contract directly with 8(a) firms.

30.    The 8(a) Program is administered by the SBA and other agencies of the federal government pursuant to Section 8(a) of the Small Business Act (15 U.S.C. § 637(a)).

31.    The stated purposes of the 8(a) Program include "promot[ing] the business development of small business concerns owned and controlled by socially and economically disadvantaged individuals" and "clarify[ing] and expand[ing] the program for the procurement by the United States of articles, supplies, services, materials, and construction work from small business concerns owned by socially and economically disadvantaged individuals." 15 U.S.C. § 631(f)(2) (2010).

**II.    The statute's racial preference**

32.    The statute defines socially disadvantaged individuals as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." *Id*. § 637(a)(5). Marty believed MJL would qualify for 8(a) participation because he has been subjected to "cultural bias" due to his status as a service-disabled veteran.

33.    "Economically disadvantaged individuals are those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities" and are thus a subset of the socially disadvantaged. *Id*. § 637(a)(6)(A). "Economically disadvantaged" is defined broadly enough that almost all small business concerns owned by a socially disadvantaged individual will be considered "economically disadvantaged."

34.    The statute also contains an additional racial classification in a presumption that all individuals who are members of certain racial groups are socially disadvantaged: "such groups

include, but are not limited to, Black Americans, Hispanic Americans, Native Americans . . . Asian Pacific Americans . . . and other minorities." *Id*. § 631(f).

### III.        The regulation's racial classifications

35.    In addition to the racial groups presumed socially disadvantaged under the statutory presumption, the SBA has designated by regulation that "Subcontinent Asian Americans" are presumptively disadvantaged. 13 C.F.R. § 124.103(b).

36.    The regulation also adds detail to the racial groups listed in the statute:

"Native Americans" are "Alaska Natives, Native Hawaiians, or enrolled members of a Federally or State recognized Indian Tribe."

"Asian Pacific Americans" are "persons with origins from Burma, Thailand, Malaysia, Indonesia, Singapore, Brunei, Japan, China (including Hong Kong), Taiwan, Laos, Cambodia (Kampuchea), Vietnam, Korea, The Philippines, U.S. Territory of the Pacific Islands (Republic of Palau), Republic of the Marshall Islands, Federated States of Micronesia, the Commonwealth of the Northern Mariana Islands, Guam, Samoa, Macao, Fiji, Tonga, Kiribati, Tuvalu, or Nauru."

37.    "Subcontinent Asian Americans," a group added exclusively by regulation, are "persons with origins from India, Pakistan, Bangladesh, Sri Lanka, Bhutan, the Maldives Islands or Nepal."

38.    The regulation does not specify what subgroups are included within "Black American" or "Hispanic American." However, the SBA relies on the definitions of "Hispanic," "Black," and "White" in the Office of Management and Budget's Directive No. 15, entitled "Race and Ethnic Standards for Federal Statistics and Administrative Reporting."

39.     Under Directive No. 15, "Hispanic" is someone "of Mexican, Puerto Rican, Cuban or South American or other Spanish culture or origin, regardless of race." The Directive does not define "culture or origin," although the SBA does consider individuals with family origins in Portugal or Spain to be Hispanic American.

40.     The Directive defines Black Americans as individuals with "origins in any of the black racial groups of Africa."

41.     SBA relies on Directive No. 15 despite the directive's exclusive purpose as a tool for record keeping, collection, and presentation of data on race and ethnicity. The directive states that its classifications "should not be interpreted as being scientific or anthropological in nature" and should not "be viewed as determinants of eligibility for participation in any Federal program."

42.     SBA can require at its discretion that anyone who claims to be a member of one of these groups enjoying presumptive disadvantage "demonstrate that he or she has held himself or herself out, and is currently identified by others, as a member of a designated group." 13 C.F.R. § 124.103.

**IV.     SBA's authority to make additional racial classifications**

43.     Under SBA regulation, the SBA may designate "from time to time" any other "identifiable group" as presumptively socially disadvantaged. 13 C.F.R. § 124.103(b)(1), (d).

44.     Groups may petition the SBA to be added by regulation as a presumptively socially disadvantaged group. Such groups must present "substantial evidence that members of the group have been subjected to racial or ethnic prejudice or cultural bias." 13 C.F.R. § 124.103(d)(1). The SBA must then determine whether the group has "suffered prejudice, bias, or discriminatory practices" that resulted in "economic deprivation," and the disadvantages faced by the group have "produced impediments in the business world." *Id*. § 124.103(d)(2).

45.     The SBA has received a variety of such petitions, most of which it has rejected. For instance, the SBA has rejected petitions from Hasidic Jews, women, and Iranians, while it has accepted petitions from Asian Indians (the highest income racial group in the United States) and Sri Lankans.

46.     In 1987, the SBA rejected a petition from service-disabled veterans to be considered presumptively disadvantaged.

**Marty's experience applying for the 8(a) Program**

47.     Marty is of German and Scottish descent and therefore is not a member of a group that enjoys a presumption of social disadvantage under the statute and regulations.

48.     Thus, Marty must prove social disadvantage to the agency by a preponderance of the evidence.

49.     Those like Marty who are not presumed disadvantaged by virtue of their race or ethnicity alone must put forward evidence of the following:

50.     At least one "objective distinguishing factor that has contributed to social disadvantage, such as race, ethnic origin, gender, physical handicap," and so on;

51.     The social disadvantage must be based on treatment in "American society;"

52.     The disadvantage must be "chronic and substantial;"

53.     The disadvantage must have "negatively impacted on his or her entry into or advancement in the business world," such as experiences with education, employment, and business history. *See* 13 C.F.R. § 124.103(c).

54.     Marty applied in 2009 and 2016 for 8(a) Program eligibility. He presented evidence regarding his disabilities and the resulting disadvantages that he has faced in his career and personal life.

55.     SBA denied both applications. Marty sought reconsideration of the 2016 denial. After reconsideration was denied, Marty appealed to the SBA's Office of Hearings and Appeals, which affirmed denial in 2017.

56.     Marty's applications included evidence of multiple incidents of social disadvantage experienced in his business life. For example, he presented evidence that MJL had lost a contract with the New Jersey Department of Transportation after learning of Marty's physical disabilities. Likewise, Marty submitted that he had lost a contract with the United States Air Force for work at Langley Air Force Base because the contract officer knew of Marty's post-war combat depression.

57.     Marty has invested substantial money, time, and effort filing multiple applications for MJL to join the 8(a) Program, each time working with 8(a) Program representatives to ensure he provided appropriate documentation supporting his eligibility, in vain. The SBA has told him repeatedly that he does not qualify, despite its recognition of his disabilities and veteran status.

58.     It is broadly accepted by the U.S. Government and the public that people with disabilities suffer social disadvantage daily.

59.     As a general matter, veterans face social isolation and separation from mainstream American society. Sixty-four percent of veterans who served in combat feel isolated from civilian life. Eighty-five percent of veterans returning from wartime service carry home the burden of post-traumatic stress disorder. This further widens the gulf between mainstream America and the veterans who return home to a world where they struggle to find belonging and meaning.

60.     Marty has experienced these struggles personally. Due to the physical disabilities acquired during his military career, Marty cannot lift more than 25 pounds. He cannot raise his arms above his shoulders. He cannot sit for more than 45 minutes at a time without experiencing

excruciating back pain. He faces serious hearing loss that cannot be fixed with current hearing aid technology, affecting interactions with coworkers, customers, family, and friends.

61.    Likewise, Marty's psychological disabilities have affected all aspects of his life. These disabilities include depression, anxiety, impaired concentration, indecisiveness, low self-esteem, stress disorder, fatigue, hypersomnia, insomnia, anhedonia, restlessness, and significant weight loss or weight gain. Through grit and determination, Marty has succeeded despite these limitations, but they have imposed serious handicaps.

62.    Marty was denied eligibility for the 8(a) Program after collecting substantial evidence of these facts and demonstrating that he suffered from the well-documented social disadvantages stemming from his service-disabled veteran status.

63.    During this period, Marty became aware that while he was denied eligibility for the 8(a) Program, others were eligible based on their race without having to prove specific social disadvantages.

64.    Marty would have been accepted into the 8(a) Program without having to prove his social disadvantage if he belonged to one of the favored races listed in 15 U.S.C. § 631(f)(1)(B), (C) and 13 C.F.R. § 124.103(b)(1).

65.    The statute enshrining this racial preference, in consort with the broad authority delegated therein to the SBA to add new favored races or groups and set aside contracts as it deems fit, deprived MJL from standing on equal footing for 8(a) Program eligibility and competing for exclusive 8(a) contracting opportunities.

66.    While unfair, SBA's denial of Marty's applications is unsurprising. Very few 8(a) Program participants have achieved eligibility through demonstrating disadvantage by a preponderance of the evidence. Most program participants are those businesses that qualify due to

the racial presumptions in the statute and regulation. In the absence of the racial preference, SBA would accept more program participants based on individualized evidence of disadvantage.

**Injury to MJL**

67.     The statute and regulations described above bar MJL from standing on equal footing for 8(a) program eligibility and then from competing for exclusive 8(a) contracting opportunities based on race.

68.     Congress's purported delegation of choosing favored races for preferential treatment to the SBA further prevented MJL from competing on an equal footing for 8(a) Program eligibility and 8(a) contracts.

69.     In the absence of the statutory and regulatory racial presumption, MJL would have been equally situated for 8(a) Program eligibility with other businesses regardless of race. The racial presumption makes it less likely that the SBA will grant 8(a) eligibility to MJL.

70.     Because Marty is not a member of a group favored as socially disadvantaged by the SBA, MJL is unable to compete for contracts under the 8(a) Program that it could successfully procure and perform if allowed to do so.

71.     MJL also cannot access other benefits provided to 8(a) Program companies. These benefits include access to business development assistance, free training opportunities through the SBA, and federal surplus property access.

72.     MJL competes with 8(a) Program firms for valuable federal contracts and for third-party suppliers and other services.

73.     Because of 8(a) Program benefits, MJL is at a competitive disadvantage when competing for government contracts and third-party contracts with suppliers and other businesses. MJL is also at a competitive disadvantage in accessing the 8(a) Program itself, as it does not enjoy

a presumption of disadvantage, while firms owned and controlled by members of minority groups selected by the SBA do enjoy such a presumption.

74.     MJL is harmed by the unconstitutional racial classification scheme of the 8(a) Program and will suffer additional irreparable harm if the scheme remains in effect.

75.     MJL has no adequate remedy at law.

**CLAIM FOR RELIEF I: The presumption that designated groups are socially disadvantaged denies MJL equal protection in violation of the Fifth Amendment.**

76.     By presuming that certain races are socially disadvantaged, the statute and regulations that comprise the 8(a) Program (15 U.S.C. §§ 631, 637, and 13 C.F.R. § 124.103) deny MJL equal treatment for 8(a) Program eligibility, and further deny MJL the ability to bid on SBA contracts as a member of the 8(a) Program. The 8(a) Program likewise places MJL at a competitive disadvantage in the marketplace vis-à-vis businesses participating in the 8(a) Program. Because the 8(a) Program grants special preferences to businesses based on the race of the business owner, it must satisfy strict scrutiny. It fails that exacting standard. *See* 15 U.S.C. § 637(a); 15 U.S.C. § 631(f); 13 C.F.R. § 124.103(b).

77.     The SBA does not have a compelling governmental interest that justifies section 8(a)'s racial classification or the accompanying classification in 13 C.F.R. § 124.103(b).

78.     Even if the SBA had a compelling interest, the statutory racial classification is not narrowly tailored to meet any such interest.

79.     Neither is the regulatory racial classification narrowly tailored to meet a compelling interest.

80.     The SBA cannot produce evidence that shows "the most exact connection between justification and classification" required by strict scrutiny. *Fullilove v. Klutznick*, 448 U.S. 448, 537 (1980) (Stevens, J., dissenting). Defendants cannot show a relevant causal relationship

between their alleged evidence and the racial classification of the 8(a) Program, whether in terms of a "compelling interest" to enact the racial classification or "narrow tailoring" of its scope. Moreover, there is no causal relationship between the racial classification and any remedy for alleged discrimination.

81.     There is no "strong basis in evidence" demonstrating that the racial classification of section 8(a) is supported by a compelling interest, i.e., that it is supported by probative evidence satisfying strict scrutiny.

82.     The effort to alleviate the unproven effects of societal discrimination is not a compelling interest for purposes of strict scrutiny analysis of an alleged equal protection violation.

83.     In determining whether a particular contract in an industry is appropriate for the 8(a) Program, the SBA does not examine whether a particular racial group is underrepresented in that industry.

84.     The SBA has no evidence of any particular racial or ethnic group being underrepresented in the industry and other areas in which MJL competes for contracts.

85.     Even assuming there was evidence of underrepresentation of particular racial groups here, Defendants have no evidence that such underrepresentation was a consequence of discrimination either by the federal government or in which the federal government was a participant, passive or otherwise.

86.     In amending Section 8(a) of the Small Business Act in 1978, Congress did not produce or rely on any evidence that an underrepresentation of particular racial groups in federal government contracting was a consequence of discrimination either by the federal government or in which the federal government was a participant, passive or otherwise.

87.    Participation goals set for the 8(a) Program are not related to any evidence of the present effects of past discrimination in any particular industry or in the federal government at large.

88.    The reservation of industry contracts has not been necessary to achieve any reasonable goals set by Defendants or Congress.

89.    Because of the racial presumption of social disadvantage, most 8(a) Program contractors are owned and controlled by members of the racial or ethnic groups given special advantage by that presumption.

90.    The SBA's reserving certain industry contracts for the 8(a) Program is racially motivated.

**CLAIM FOR RELIEF II: The racial classifications established by the 8(a) Program and implementing regulations violate the Fifth Amendment's equal protection guarantee.**

91.    The 8(a) Program establishes by statute that groups presumed to be socially disadvantaged "include, but are not limited to, Black Americans, Hispanic Americans, Native Americans, Indian tribes, Asian Pacific Americans, Native Hawaiian Organizations, and other minorities." 15 U.S.C. § 631(f)(1)(C).

92.    SBA has made racial classifications in addition to those established by Congress in the statute. *See* 13 C.F.R. § 124.103(b)(1).

93.    The statutory racial classifications, by including the catch-all "other minorities," are not narrowly tailored as required by the Fifth Amendment equal protection guarantee. Similarly, the SBA's regulatory decisions regarding which groups enjoy presumptively disadvantaged status and which do not are both under- and over-inclusive and thus are not narrowly tailored.

94.    The following is a non-exhaustive list of ways in which the SBA's racial classifications fail narrow tailoring:

95.    The list of countries of origin that qualify someone as an "Asian Pacific American" includes China but arbitrarily excludes Mongolia.

96.    The racial classification recognizes individuals from Pakistan as presumptively socially disadvantaged but arbitrarily excludes individuals from Afghanistan and other Middle Eastern and North African countries.

97.    The racial classification recognizes peoples from various Pacific Island nations such as Samoa and Fiji as presumptively disadvantaged but arbitrarily excludes aboriginal peoples from New Zealand and Papua New Guinea, such as the Maori, the indigenous Polynesian people of New Zealand.

98.    The racial classification recognizes peoples from Spain and Portugal (included within the meaning of "Hispanic") as presumptively disadvantaged but arbitrarily excludes all other European countries, including the poorest and most ethnically diverse countries in Europe.

**CLAIM FOR RELIEF III: The SBA's 8(a) Program rule claiming authority to decide which racial groups enjoy a presumption of social disadvantage (13 C.F.R. § 124.103(b)(1)) violates the Administrative Procedure Act (5 U.S.C. § 706(2)) because it exceeds statutory authority.**

99.    "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Thus, "an agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Publ. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). The Administrative Procedure Act (APA) directs a court to "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction [or] authority." 5 U.S.C. § 706(2)(C).

100.    The Small Business Act does not authorize the SBA to make racial classifications.

101.    The SBA nonetheless has made racial classifications in addition to those established by Congress in the statute. *See* 13 C.F.R. § 124.103(b)(1).

102.    The regulation makes a racial classification by determining which countries of origin qualify to make someone an "Asian Pacific American." Likewise, SBA regulation determines which aboriginal peoples are included as "Native Americans."

103.    The regulation also makes a racial classification by adding "Subcontinent Asian American" as a distinct race that enjoys the presumption of social disadvantage, with an accompanying description of which countries of origin qualify someone as a "Subcontinent Asian American."

104.    The regulation arrogates to the SBA the authority to designate "members of other groups from time to time" to be included in the list of presumptively disadvantaged minority groups.

105.    These racial classifications, as well as the power to create additional racial classifications as the agency sees fit, exceed statutory authority in violation of the Administrative Procedure Act.

106.    The agency also exceeds statutory authority by sub-delegating to other federal agencies the authority to choose at whim which, and how many, contracts will be fulfilled by 8(a) Program firms. The statute vests these administrative decisions exclusively in the hands of the SBA.

**CLAIM FOR RELIEF IV: The SBA's 8(a) Program Is an Unconstitutional Exercise of Legislative Power (Violation of the Nondelegation Doctrine, U.S. Const. art. I, § 1).**

107.    The APA directs courts to "hold unlawful and set aside" an agency's rule that is "contrary to constitutional right." 5 U.S.C. § 706(2)(B).

108.    Article I, § 1, of the Constitution says: "All legislative Powers herein granted shall be vested in a Congress of the United States." Congress may not "abdicate or [] transfer to others the essential legislative functions with which it is thus vested." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529 (1935).

109.    The racial classification of the 8(a) Program is a facially unconstitutional delegation of legislative power to the SBA to the extent it delegates the authority to make or enact racial classifications as the SBA deems "necessary or appropriate" for "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities" or "other minorities" and delegates the authority to decide how to determine whether someone belongs to a particular minority group.

110.    As operated by the SBA, the 8(a) Program has no criteria by which the SBA can determine that specific racial groups should no longer have members presumed to be socially disadvantaged.

111.    In fact, although racial and ethnic groups have been added to those given presumptive 8(a) Program access, no racial or ethnic group has ever been removed from that list on the ground that the group is no longer adversely affected by the present effects of past discrimination.

112.    The 8(a) Program grants the SBA sweeping authority to select which contracts to reserve for the 8(a) Program as the SBA deems "necessary or appropriate." This language does not provide an intelligible principle by which to guide agency discretion and thus violates the nondelegation doctrine.

**CLAIM FOR RELIEF V: The SBA 8(a) regulations are arbitrary and capricious in violation of 5 U.S.C. § 706(a).**

113.    The APA requires a reviewing court to hold unlawful and set aside agency action that is arbitrary and capricious.

114.    Agency action must have "a rational connection between the facts found and the choice made." *Department of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019) (quotation omitted). While courts cannot substitute their own judgment for that of the agency's policy choices, such choices must remain "within the bounds of reasoned decisionmaking." *Id*.

115.    The racial classifications made by SBA in 13 C.F.R. § 124.103(b)(1), which add and define terms such as "Subcontinent Asian American" in a manner that is both under- and over-inclusive, do not fall "within the bounds of reasoned decisionmaking" and therefore are arbitrary and capricious.

116.    The method by which the agency determines whether someone is or is not a member of a minority group is likewise arbitrary and capricious. At its discretion, the SBA may require an 8(a) Program applicant to "demonstrate that he or she has held himself or herself out, and is currently identified by others, as a member of a designated group" that is presumed to be socially disadvantaged. In determining someone's racial or ethnic background, the agency's reliance on the subjective views of the applicant and an undefined set of "others" rather than objective considerations—such as national origin, cultural and linguistic background, family history, and so on—is arbitrary and capricious.

117.    SBA's reliance on Directive No. 15, "Race and Ethnic Standards for Federal Statistics and Administrative Reporting," is likewise arbitrary and capricious. The directive expressly warns that its classifications are not "scientific or anthropological in nature" and directs

agencies not to use the classifications "as determinants of eligibility for participation in any Federal program." Yet the SBA has done just that.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for the following relief:

A.    Declare that Section 8(a)'s racial classifications found in 15 U.S.C. §§ 637(a)(5), (8), and 631(f)(1)(b) and 13 C.F.R. § 124.103(a), (b)(1) are facially unconstitutional;

B.    Permanently enjoin enforcement and administration of 15 U.S.C. §§ 631(f)(1)(B) and 637(a)(5), (8) to the extent that they employ a racial preference in presuming that race alone qualifies an individual as socially disadvantaged and thus eligible to receive the benefits of the 8(a) Program;

C.    Permanently enjoin enforcement and administration of 15 U.S.C. § 637(a)(1) to the extent that it delegates legislative authority exclusively reserved to Congress by empowering the SBA to determine which contracts are awarded exclusively to 8(a) Program participants as the SBA deems "necessary or appropriate;"

D.    Permanently enjoin and set aside 13 C.F.R. § 124.103(a), (b) to the extent that it makes racial classifications and employs a racial preference in presuming that race alone qualifies an individual as socially disadvantaged and thus eligible to receive the benefits of the 8(a) Program;

E.    Award Plaintiffs the costs of this action and attorneys' fees and expenses; and

F.    Grant such other relief as the Court deems just and proper.

DATED:  January 18, 2023.

Respectfully submitted,

PACIFIC LEGAL FOUNDATION

  s/ Alison Somin
Alison Somin                          Ethan W. Blevins*
Virginia Bar No. 79023                Utah Bar No. 16784
3100 Clarendon Blvd., Suite 1000      Wencong Fa*
Arlington, VA 22201                   Cal. Bar No. 301679
Telephone: (202) 888-6881             555 Capitol Mall, Suite 1290
ASomin@pacificlegal.org               Sacramento, CA 95814
                                      Telephone: (916) 419-7111
                                      EBlevins@pacificlegal.org
                                      WFa@pacificlegal.org

*Attorneys for Plaintiffs*
*Pro hac vice applications forthcoming

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| MARTY HIERHOLZER, an individual, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MJL ENTERPRISES, LLC, a Virginia corporation | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-24 |
| | ) | |
| SMALL BUSINESS ADMINISTRATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Isabel Guzman, Administrator of the Small Business Administration, and the Small Business Administration, through undersigned counsel, hereby respectfully move for dismissal of Plaintiffs' Complaint against both Defendants for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  The grounds for this motion are fully explained in the brief filed with this motion.

Date: March 20, 2023

Respectfully submitted,
KAREN D. WOODARD
Chief
Employment Litigation Section
Civil Rights Division
United States Department of Justice

ANDREW BRANIFF (IN Bar No. 23430-71)
Deputy Chief

JA028

By: /s/ Allan K. Townsend
Allan K. Townsend (ME Bar No. 9347)
Ejaz H. Baluch, Jr. (MD Bar No. 1612130032)*
Trial Attorneys
Employment Litigation Section
Civil Rights Division
United States Department of Justice
150 M Street, N.E.
Washington, D.C. 20002
(202) 353-5343
Allan.Townsend2@usdoj.gov
Ejaz.Baluch@usdoj.gov
* Notice of Appearance will be filed once Court
grants access to ECF system.

JESSICA D. ABER
UNITED STATES ATTORNEY

/s/ Virginia L. Van Valkenburg
Virginia L. Van Valkenburg
Assistant United States Attorney
Virginia State Bar No. 33258
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel: (757) 441-3217
Fax: (757) 441-6689
Virginia.VanValkenburg@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that I served the foregoing document on all counsel of record via the Court's electronic filing system on the date below.

Date: March 20, 2023          /s/ Allan K. Townsend

2

JA029

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| MARTY HIERHOLZER, an individual, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-24 |
| | ) | |
| SMALL BUSINESS ADMINISTRATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Plaintiffs MJL Enterprises, LLC, and Marty Hierholzer allege that Section 8(a) of the Small Business Act ("Act") and related regulations are unconstitutional, in violation of the Fifth Amendment and nondelegation doctrine, and also that the Defendants violated the Administrative Procedure Act ("APA") when they promulgated regulations pursuant to Section 8(a) of the Act. Plaintiffs' claims all fail, and the Court should dismiss their Complaint in its entirety, because Plaintiffs lack standing and, as such, this Court does not have subject matter jurisdiction. Plaintiffs' claims that the Act violates the Fifth Amendment and the nondelegation doctrine also fail to state a claim upon which relief can be granted. Plaintiffs' facial claim that the Small Business Administration's ("SBA") regulations violate the Fifth Amendment similarly fails to state a claim. Additionally, Plaintiffs' claim that the statute and regulations diminishes their eligibility for the Section 8(a) program is untimely and should be dismissed for that reason as well.

## BACKGROUND

**I.      Overview of the Section 8(a) Business Development Program**

Congress enacted the Small Business Act of 1953 ("the Act"), 15 U.S.C. § 631 *et seq.*, to "aid, counsel, assist and protect . . . the interests of small-business concerns in order to preserve

free competitive enterprise" and to ensure a "fair proportion" of government contracts go to small businesses. 15 U.S.C. § 631(a). The Act establishes several programs to aid small businesses, including requiring federal agencies to reserve certain contracts exclusively for small businesses. *Id.* § 644(j)(1). In addition to establishing contracting preferences and other programs for small businesses in general, the Act includes several programs that create contracting preferences for small businesses that satisfy certain criteria, including small businesses owned and controlled by women, *see id.* § 637(m); small businesses owned and controlled by service-disabled veterans, *id.* § 657f-1; and the program at issue here, which is for "socially and economically disadvantaged" small business concerns, *i.e.*, the Section 8(a) Business Development Program ("8(a) program"), *id.* § 637(a).

Through the 8(a) program, the SBA provides contract, financial, technical, and management assistance to promote the business development and competitive viability of eligible small businesses. *Id.* § 631(f)(2). Just as the Act authorizes the SBA to provide contracting assistance to small businesses in general, it also authorizes the SBA to enter into contracts with other federal agencies and to provide access to these contracts to 8(a) program participants. *See id.* at § 637(a)(1); 13 C.F.R. § 124.501(a). Contracts awarded through the 8(a) program may either be awarded competitively with other program participants or may be reserved for a particular firm (*i.e.*, sole source awards). 13 C.F.R. § 124.501(b). The Act does not include a quota, but instead creates the aspirational goal for the federal government to spend at least five percent of its contracting dollars with businesses owned by socially and economically disadvantaged individuals, with an overall goal of awarding at least 23 percent of the total value of all prime contracts in a fiscal year to small businesses in general. 15 U.S.C. § 644(g)(1)(A)(i), (iv). Socially

and economically disadvantaged businesses including those in the 8(a) program receive approximately 5-6% of the federal procurement budget every year. *See* Robert Jay Dilger and R. Corrine Blackford, Cong. Rsch. Serv., R44844, *SBA's "8(a) Program": Overview, History, and Current Issues* (2022) at pg. 35 Table 4 (https://sgp.fas.org/crs/misc/R44844.pdf) (visited Mar. 20, 2023).

Eligibility for the 8(a) program is limited to small businesses that are at least 51 percent unconditionally owned and controlled by one or more "socially and economically disadvantaged" individuals who are of good character and citizens of the United States, and which demonstrate a potential for success in competing in the private sector. *Id.* at § 637(a)(4)(A), (7)(A); 13 C.F.R. § 124.101. Socially disadvantaged individuals are defined as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities" and due to "circumstances beyond their control." 15 U.S.C. § 637(a)(5); 13 C.F.R. § 124.103(a). An SBA regulation provides that program applicants who are members of certain designated groups, including Black Americans, Hispanic Americans, Native Americans, Asian Pacific Americans, and Subcontinent Asian Americans, are entitled to a rebuttable presumption of social disadvantage. 13 C.F.R. § 124.103(b)(1). This presumption may be rebutted with "credible evidence to the contrary." *Id.* at § 124.103(b)(3). Individuals who are not members of one of these groups may demonstrate social disadvantage by submitting evidence that shows, by a preponderance of the evidence, that a distinguishing characteristic has contributed to substantial social disadvantage, which has limited their entry or advancement in the business world. *Id.* at § 124.103(c)(1)-(2).

3

Regardless of how social disadvantage is established, all applicants for the 8(a) program must meet the standard for economic disadvantage as well. An economically disadvantaged individual is one whose "ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged." 15 U.S.C. § 637(a)(6)(A). In evaluating economic disadvantage, the SBA considers the personal financial condition of the individual claiming disadvantaged status, including income for the prior three years, personal net worth, and the fair market value of all assets. 13 C.F.R. § 124.104(c).[1]

Participation in the 8(a) program is limited to a maximum of nine years, 13 C.F.R. § 124.2, but participants will graduate from the program earlier if they meet certain business achievements. 13 C.F.R. § 124.302(a)(1)-(2). For example, businesses will graduate from the 8(a) program if they exceed certain size standards that correspond to their primary North American Industry Classification System ("NAICS") code. 13 C.F.R. § 124.302(c). In addition, program participants must certify annually that they continue to meet program requirements and provide financial and other information to allow the SBA to verify the participant's continued eligibility. 15 U.S.C. § 637(a)(4)(C), (6)(B); 13 C.F.R. § 124.112.

---

[1] For initial eligibility for the 8(a) program, an individual's average adjusted gross income generally cannot exceed $400,000 over the three years preceding the submission of the 8(a) application. *Id.* § 124.104(c)(3). An individual's net worth must be less than $850,000 for initial 8(a) program eligibility. *Id.* § 124.104(c)(2). Finally, the fair market value of an individual's assets must not exceed $6.5 million for initial 8(a) program eligibility. *Id.* § 124.104(c)(4). Ownership in the 8(a) business and equity in the individual's primary personal residence are included for purposes of valuing assets, but not for calculating net worth. 15 U.S.C. § 637(a)(6)(E); 13 C.F.R. § 124.104(c)(2).

4

## II.    Summary of Plaintiffs' Allegations

According to Plaintiffs' Complaint, Marty Hierholzer is the owner of MJL Enterprises, LLC, which is a government contractor that started providing government contracting services in 2006. ECF No. 1 at ¶¶ 2 and 14. Hierholzer is not a member of a group that, under its regulations, the SBA presumes is socially disadvantaged. *Id.* at ¶ 47. He submitted applications to the SBA for entry into the 8(a) program in 2009 and 2016 and SBA denied both applications. *Id.* at ¶¶ 54-55. He appealed the denial of his 2016 application and the SBA's Office of Hearings and Appeals affirmed the denial in 2017. *Id.* at ¶ 55. Hierholzer learned during this time period that the SBA found other individuals to be socially disadvantaged based on their race. *Id.* at ¶ 63.[2]

Plaintiffs allege that the Act and the regulations that comprise the 8(a) program harm them in two primary ways. First, Plaintiffs allege that they are on unequal footing when they apply for participation in the 8(a) program because of the race-conscious presumption of social disadvantage in the SBA's regulations, specifically 13 C.F.R. § 124.103(b), (hereafter "application harm"). *Id.* at ¶¶ 67-68. Second, Plaintiffs allege that they have suffered harm because they cannot compete

---

[2]    According to Hierholzer, he participates in the federal government's service-disabled veteran owned small business ("SDVOSB") program (ECF No. 1 at ¶ 25) which, like the 8(a) program, provides contracting assistance to eligible government contractors. *See* 13 C.F.R. § 128.101. Contracts placed into the SDVOSB program are either "sole sourced" to individual SDVOSBs or restricted to competition amongst only SDVOSBs and are thus unavailable to be set-aside in the 8(a) program. *Id.* Unlike the 8(a) program, the SDVOSB program does not require participants to establish that they are economically disadvantaged. 13 C.F.R. § 128.200(b). There is no order of preference for contracting officials as to which SBA program federal government small business contracting officers must use when taking small business contracts outside of full and open contracting. 13 C.F.R. § 125.2(f)(2)(i). The Veterans Administration previously administered the SDVOSB program but now SBA administers it. *See* https://www.sba.gov/federal-contracting/contracting-assistance-programs/veteran-contracting-assistance-programs (visited Mar. 20, 2023). The federal government annually aims to award 3% of all federal contracting dollars to SDVOSB's. *Id.*

5

for government contracts on equal footing with contractors in the 8(a) program (hereafter "competition harm"). *Id.*

Plaintiffs' Complaint includes five Claims for Relief. Claims I and II allege that the SBA's regulations and the Act violate the Fifth Amendment's Equal Protection Clause. Claims III and V allege that the SBA violated the APA because the regulations setting forth the race-conscious presumption of social disadvantage exceed statutory authority and are arbitrary and capricious. Claim IV alleges that the Act violates the APA because it is an unconstitutional delegation of authority to the SBA.

All of these Claims for Relief fail because Plaintiffs lack standing. Claim for Relief IV also fails to state a claim upon which relief can be granted because the Act does not violate the nondelegation doctrine. Additionally, Claims for Relief I and II fail to state a claim upon which relief may be granted because the Act and regulations do not violate the Fifth Amendment's Equal Protection Clause and, in any event, these Claims are untimely.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs the arguments addressed in Section I of the Argument portion of this brief because Plaintiffs lack standing to bring their claims. Under Rule 12(b)(1), a defendant may challenge subject matter jurisdiction in two ways, each of which supports dismissal here. First, a defendant can show that a complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (cleaned up). This is a "facial challenge" to subject matter jurisdiction. *Id.* For such challenges, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration where the complaint's allegations "are taken as true" and

6

JA035

courts must grant the defendant's motion if there are insufficient allegations "to invoke subject matter jurisdiction." *Id.* (cleaned up).

Second, the defendant may contend that the "the jurisdictional allegations of the complaint [are] not true." *Id.* (cleaned up). This is a "factual" challenge to subject matter jurisdiction. *Id.* For factual challenges, courts may go beyond the complaint's allegations and consider evidence to assess "if there are facts to support the jurisdictional allegations without converting the motion to a motion for summary judgment." *Id.* (cleaned up). As discussed below, Plaintiffs lack standing on both facial and factual grounds.

Federal Rule of Civil Procedure 12(b)(6) governs the arguments addressed in Sections II to V of the Argument portion of this brief because Plaintiffs Claims for Relief I, II, and IV fail to state claims upon which relief may be granted. When ruling on a 12(b)(6) motion, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022) (cleaned up). To survive a motion to dismiss under Rule 12(b)(6), a "plaintiff must plausibly allege facts that, if proven, would be sufficient to establish each element of the claim." *Harvey*, 48 F.4th at 269. Mere "conclusory statements" will not suffice. *Id.* at 269 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

<div align="center">

**ARGUMENT**

</div>

**I.    This Court Lacks Subject Matter Jurisdiction Because Plaintiffs Lack Standing**

Federal courts are courts of "limited jurisdiction." *Just. 360 v. Stirling*, 42 F.4th 450, 458 (4th Cir. 2022) (cleaned up). "No matter how interesting or elegant a party's argument, the federal courts have no power to breathe life into disputes" that come to them without such jurisdiction. *Id.*

<div align="center">

7

</div>

(cleaned up). Among the "many jurisdictional questions" federal courts must consider, "standing is 'perhaps the most important.'" *Id.* (cleaned up). Article III standing is "part and parcel of the constitutional mandate" that the federal courts extend their power only to "cases and controversies." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020); *see also* U.S. Const. art. III, § 2. This constitutional mandate therefore requires parties "invoking a federal court's jurisdiction to demonstrate standing." *Id.*

Article III standing requirements ensure that plaintiffs have a "personal stake in the outcome of the controversy." *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (cleaned up). Strict enforcement of Article III standing is particularly important where, as here, a court is asked to rule on the constitutionality of action by the executive and legislative branches. *See Carpenter v. Barnhart*, 894 F.2d 401, 1990 WL 2314  (4th Cir. 1990) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)).

Article III standing has three elements: "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Buscemi*, 964 F.3d at 258 (cleaned up). Where, like here, a plaintiff seeks injunctive relief, the plaintiff satisfies the injury in fact element either by "demonstrating 'a sufficient imminent injury in fact' or by demonstrating 'an ongoing injury.'" *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) (cleaned up). At the pleading stage, it is the plaintiff who must "clearly . . . allege facts demonstrating" each element. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Here, Plaintiffs lack standing because, on the face of their Complaint, they have not plausibly alleged any of the three elements that are required to establish Article III standing. Any

8

injury Plaintiffs complain of cannot be traced to the challenged actions of any of the Defendants. Nor would a favorable decision by the Court redress the speculative, vague harms Plaintiffs raise. Finally, they fail to sufficiently allege an injury in fact. For these reasons, the Court lacks subject matter jurisdiction over their claims.

A. Plaintiffs Lack Standing Because They Have Not Plausibly Alleged Causation

To satisfy Article III's causation requirement for standing, a plaintiff must establish that there is "a causal connection between the injury and the [defendant's] conduct" at issue. *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022) (cleaned up). Plaintiffs "must be able to demonstrate that the alleged harm was caused by the defendant" rather than "the independent action of some third party not before the court." *Id.* (cleaned up); *see also Howard v. New Jersey Dept. of Service*, 667 F.2d 1099, 1101-02 (3d Cir. 1981) (holding no causation where female applicants for police officer were not hired because they failed the written exam and not the physical agility test they sought to invalidate).

Plaintiffs cannot plausibly trace their alleged injuries to the race-conscious presumption in SBA's regulations. They have not sufficiently pled that MJL can compete for the sought-after 8(a) program contracts in the first place even if the race-conscious presumption in the program were removed. Section 8(a) program participants must be economically as well as socially disadvantaged. The 8(a) program defines economically disadvantaged individuals as those with "diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged." 15 U.S.C. § 637(a)(6)(A); *see also* ECF No. 1 at ¶ 33. The SBA considers the individual's income for the prior three years, personal net worth, and the fair market value of all assets. 13 C.F.R. § 124.104(c). Likewise, initial eligibility for the 8(a) program includes

9

income and net worth restrictions, as well as restrictions on an individual's assets. *Id.*
§§ 124.104(c)(2)-(4).

For example, in *SRS Technologies, Inc. v. Department of Defense*, the United States Court
of Appeals for the Fourth Circuit considered a challenge, like here, to the race-conscious
presumption in the 8(a) program. 1997 WL 225979, at *1 (4th Cir. 1997). The court observed that
it was not plausible that SRS could participate in the 8(a) program because "its owner is a
multimillionaire whose net worth exceeded SBA's guidelines for economic disadvantage by
several orders of magnitude." *Id.* Because the economic disadvantage criteria were "race neutral,"
and the plaintiff failed to qualify based on this race neutral criteria, the court held that the plaintiff
lacked standing to challenge the race-conscious presumption in the 8(a) program. *Id.*

Here, Plaintiffs fail to allege that Hierholzer is economically disadvantaged—despite it
being a necessary criterion to participate in the 8(a) program. ECF No. 1 at ¶ 33; *see generally*
ECF No. 1. While Plaintiffs allege that MJL is "legally recognized as a small business under the
terms of the 8(a) Program," ECF No. 1 at ¶ 14, the requirements for qualifying as a small business
and qualifying as economically disadvantaged are very different. *Compare* 13 C.F.R. § 121.201
(setting small business size standards by industry based on number of employees or annual
receipts) *with* 15 U.S.C. § 637(a)(6)(A) (defining economic disadvantage as "socially
disadvantaged individuals whose ability to compete in the free enterprise system has been impaired
due to diminished capital and credit opportunities"). The Complaint says nothing about whether
Hierholzer currently suffers from diminished capital and credit opportunities.

Plaintiffs have thus failed to allege that MJL could qualify for the 8(a) program, even
without the race-conscious presumption that Plaintiffs are challenging. Similar to the business

owner in *SRS Technologies*, Plaintiffs here have not plausibly alleged that MJL could participate in the 8(a) program because of a race neutral reason: the economic disadvantage criteria. *SRS,* 1997 WL 225979, at *1. As in *SRS Technologies*, therefore, Plaintiffs here lack standing. Nor have Plaintiffs plausibly alleged that they are socially disadvantaged in the absence of the race-conscious presumption.

What is more, Plaintiffs have already attempted to prove social disadvantage twice, per the Complaint, and been denied entry to the Section 8(a) program each time. ECF No. 1 at ¶¶ 54-55. In 2017, the SBA's Office of Hearings and Appeals affirmed the SBA's finding that Hierholzer is not socially disadvantaged, and the Complaint does not include any allegations that would yield a different result now, even in the absence of the race-conscious objection. *In the Matter of: MJL Enterprises, LLC, Petitioner*, SBA No. BDPE-566, 2017 WL 8231365 (Dec. 18, 2017).

Plaintiffs attempt to stitch together a causal connection between the race-conscious presumption and their allegedly unequal footing when they apply for participation in the 8(a) program, i.e., the application harm described above. ECF No. 1 at ¶¶ 67-68. They theorize that the presumption "makes it less likely that the SBA will grant 8(a) eligibility to MJL." *Id.* at ¶ 69. This theoretical application harm is pure speculation. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). The race-conscious presumption does not make it any more or less likely that SBA would grant 8(a) eligibility to MJL because, as discussed above, Hierholzer cannot show that he is economically or socially disadvantaged.

Plaintiffs further contend that, because of the race-conscious presumption, MJL cannot compete for contracts under the 8(a) program that it "could successfully procure and perform"

otherwise, i.e., the competition harm described above, is similarly flawed. *Id.* ¶ 70. These are not

factual allegations entitled to the presumption of truth, but pure speculation. *See Twombly*, 550

U.S. at 555. In the absence of the race-conscious presumption, the 8(a) program would still exist.

Plaintiffs—who, as discussed above, have failed, for reasons independent of the presumption, to

plausibly allege eligibility to participate in the program—still, therefore, could not compete for

contracts in the 8(a) program. The only way that the race-conscious presumption could cause this

alleged competition harm, then, is if Plaintiffs could prove that fewer contractors would participate

in the 8(a) program in the absence of the presumption. Plaintiffs make no such allegations. Nor

could they, without speculating about what an alternative 8(a) program might look like without

the presumption.

As a sister district court in the Fourth Circuit has observed, "it would be pure speculation

for the Court to conclude that judicial removal of the presumption would diminish the number of

DBE program eligible participants." *Interstate Traffic Control v. Beverage*, 101 F. Supp. 2d 445,

453 (S.D. W.Va. 2000) (concluding that plaintiff "failed to show that the presumption of

disadvantage enjoyed by certain minorities under the DBE program is causally related to its alleged

injury-in-fact, the inability to compete on an equal footing for 100% of" contracts in the field).[3]

Here, too, Plaintiffs cannot establish causation because they fail to allege that MJL will compete

---

[3] In *Interstate Traffic Control*, the plaintiff business was challenging a federal contracting program
that included certain racial and gender preferences similar to those in the 8(a) program. *Id*. at 447.
Businesses that benefit from presumptions of disadvantage in that program, like those at issue in
the 8(a) program, must still certify their disadvantage and the owner's personal net worth. *Id*. at
453. The court reasoned that unless those businesses were "fraudulently certifying disadvantage
and fraudulently misrepresenting their net worth," it requires speculation to presume that the
number of businesses participating—and consequently, MJL's competition—would change if the
presumption of disadvantage is eliminated. *Id*.

12

against fewer companies qualifying for the Section 8(a) program if its presumption of disadvantage is eliminated.

To conclude, Plaintiffs cannot plausibly trace MJL's alleged injuries to the race-conscious presumption in the SBA regulation rather than MJL's own inability to meet the social and economic disadvantage criteria. *See Disability Rts. S.C.*, 24 F.4th at 901; *Harvey*, 48 F.4th at 268.

B.  Plaintiffs Lack Standing Because a Favorable Decision Would Not Redress Plaintiffs'
     Alleged Injuries

Under the redressability element of standing, a plaintiff must show that the court "has the power to grant the plaintiff's requested relief, and that such relief would redress the plaintiff's injury." *Buscemi*, 964 F.3d at 259. A "speculative" showing is insufficient. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). At the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Spokeo*, 136 S. Ct. at 1547.

Plaintiffs seek a declaratory judgment that the 8(a) program's race-conscious presumptions are unlawful and an injunction against Defendants prohibiting them from "employ[ing] a racial preference in presuming that race alone qualifies an individual as socially disadvantaged." ECF No. 1 at 12. But Plaintiffs fail to plausibly allege how this relief would redress their alleged injury for two reasons, which independently support dismissal. First, they fail to plausibly allege that MJL would be eligible for the 8(a) program if the Court eliminated the challenged race-conscious presumption. Second, Plaintiffs fail to plausibly allege that they would experience any beneficial change from the elimination of the presumption.

First, even if this Court invalidated the race-conscious presumption in the SBA regulation, the 8(a) program would remain operative without that presumption, and Plaintiffs would be in the exact place they are now. The rebuttable presumption is just one method for business owners to

13

qualify as socially disadvantaged. 13 C.F R.§ 124.103(c)(l). Thus, if the Court were to grant Plaintiffs' requested relief, MJL would *still* have to demonstrate that Hierholzer is socially and economically disadvantaged to get into the 8(a) program. As described above, because Plaintiffs have not pled facts sufficient to plausibly allege that, absent the race-conscious presumption, they would be deemed socially or economically disadvantaged, they cannot show that striking down the presumption "would redress [their] injury" and allow them into the program. *Buscemi*, 964 F.3d at 259.

Second, even if Hierholzer was determined to be socially and economically disadvantaged, a favorable outcome for Plaintiffs in this case would not benefit them in any way. To demonstrate redressability, Plaintiffs must plead facts showing it is "likely" their injuries will "be redressed by a favorable judicial decision." *Bell*, 964 F.3d at 258 (quoting *Spokeo*, 136 S. Ct. at 1547). As explained above, Plaintiffs' contentions that the presumption "makes it less likely that the SBA will grant 8(a) eligibility to MJL" (the application harm) and that MJL cannot compete for contracts under the 8(a) program that it could otherwise "successfully procure and perform" (the competition harm) are pure speculation. ECF No. 1 at ¶¶ 69, 70; *see Lujan*, 504 U.S. at 560-61.

With respect to the alleged application harm, if the Court eliminated the race-conscious presumption in SBA's regulations, Plaintiffs would face the same eligibility requirements they face today. To be eligible for the 8(a) program, they would still need to prove that they are socially and economically disadvantaged. Thus, the relief that Plaintiffs seek would not help them become participants in the 8(a) program.

Plaintiffs' claim that eliminating the race-conscious presumption would redress their alleged competition harm is also speculative. As *Interstate Traffic* explained for a similar program,

removing the presumption at issue "would not alter the number or identity of socially and economically disadvantaged individuals eligible to participate" in the 8(a) program. *Interstate Traffic*, 101 F. Supp. 2d at 453. Plaintiffs here have failed to assert that program participants are failing to "truthfully certify[] social and economic disadvantage" or that the program suffers from any kind of fraud. *Id.* Without such an allegation, the program's impact on MJL's business "would continue unaltered." *Id.*

Plaintiffs here are similarly situated to the plaintiff in *Cache Valley Electric Co. v. Utah Department of Transportation*, 149 F.3d 1119, 1123-24 (10th Cir. 1998). In *Cache Valley*, the Tenth Circuit dismissed a contractor's equal protection challenge to a federal contracting program[4] for businesses owned by socially and economically disadvantaged individuals, which included certain racial and gender preferences. Similar to the 8(a) program, the program at issue in *Cache Valley* included size requirements measured by average annual gross receipts, and the plaintiff's gross revenues exceeded the statutory limit to qualify as a "small" business. *Id.* at 1121. The plaintiff there made the same argument Plaintiffs make here: that elimination of the challenged racial and gender preferences would result in the plaintiff procuring and performing more contracts. *Id.* at 1123. The Tenth Circuit disagreed, finding "it would be pure speculation to conclude that invalidating the allegedly unconstitutional preferences would ameliorate plaintiff's ability to compete in any way." *Id.* This was because the challenged race-conscious presumption is "severable from the rest of the DBE program and thus the program would remain viable even absent those preferences." *Id.* at 1123. The same is true for Plaintiffs' claim here because the 8(a)

---

[4] Like in *Interstate Traffic*, the federal contracting program at issue in *Cache Valley* was the Department of Transportation's DBE program. *Id.* at 1120.

program would continue without the race-conscious presumption and there is no reason to believe that the elimination of the presumption would lead to any change to the number of participants in the 8(a) program.

In short, Plaintiffs lack standing because, for multiple independent reasons, they have failed to plausibly allege that the relief they seek "would redress [their alleged] injury." *Buscemi*, 964 F.3d at 259.

C.   Plaintiffs Lack Standing Because They Have Not Plausibly Alleged an Injury in Fact

To establish an injury in fact, a plaintiff must plead an injury that is "concrete and particularized" and "actual or imminent." *Id.* at 258-59 (quoting *Lujan*, 504 U.S. at 560). Injuries that are "conjectural or hypothetical" are insufficient. *Id.* at 259 (quoting *Lujan*, 504 U.S. at 560). "Threatened" injuries "must be certainly impending," while "'[a]llegations of possible future injury' are insufficient." *Id.* (cleaned up). Similarly, the Supreme Court has explained that "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending[.]" *Lujan*, 504 U.S. at, 564 n.2 (emphasis in original; cleaned up). Where, as here, a plaintiff challenges the constitutionality of a statute, the plaintiff must show that there is a "realistic danger" the plaintiff will suffer "a direct injury" because of "the terms of the statute." *Buscemi*, 964 F.3d at 259 (cleaned up). Furthermore, when a government contracting program that provides contracting preferences is at issue, courts look at whether the program prevents the plaintiff from competing "on equal footing in the bidding process" to evaluate injury in fact. *Interstate Traffic*, 101 F. Supp. 2d at 450 (*citing Ne. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)).

16

*Interstate Traffic*, in which the court found that the plaintiff sufficiently pled an injury in fact, is instructive for its marked distinctions to this case. In *Interstate Traffic*, the plaintiff business was deemed ineligible for the DBE program and alleged that the program caused the business harm. *Id.* at 449. There was no dispute that the plaintiff business did not qualify for the DBE program because it did not meet the business size eligibility requirement. *Id.* at 450. The court reasoned that therefore, the only way the business could show an injury-in-fact was to allege that it had lost out on certain contracts due to the DBE program. *Id.* The business alleged that it "submitted the low subcontractor bid for traffic control on five federally-assisted highway construction projects." *Id.* at 450. And yet it lost all of them to a contractor participating in the program. *Id.* The court concluded that the business sufficiently pled injury-in-fact based on the alleged "lost business," which the court described as "the failure to receive contracts on which it was the low bidder." *Id.*

Here, by contrast, Plaintiffs fail to point to any specific loss of business and, thus, fail to sufficiently allege an injury in fact. Plaintiffs do not allege that MJL ever competed with an 8(a) program participant for a contract. Plaintiffs make no allegations that they submitted bids on federal projects, that they were the lowest bidder on any such bids, or that they failed to receive any contracts on such bids. Nor did Plaintiffs allege that they lost bids to an 8(a) program participant or that they lost business in any other way. *See Interstate Traffic*, 101 F. Supp. 2d at 450. Plaintiffs' failure to plausibly allege that MJL ever lost a contract bid because of the 8(a) program requirements at issue compels a finding that Plaintiffs fail to allege a "concrete" or an "actual or imminent" injury because of their exclusion from the 8(a) program. *Curtis v. Propel Property Tax Funding, LLC*, 915 F.3d 234, 240 (4th Cir. 2019) (cleaned up).

17

Without any lost contract bids to point to, Plaintiffs' alleged application and competition harms amount to claims of potential injury that is, at best, "conjectural," "hypothetical," or "abstract"—and insufficient to allege an injury in fact as required for standing. *Id.* (cleaned up). And of course, the conclusory allegation that MJL is "harmed" is also insufficient. ECF No. 1 at ¶ 74; *see Iqbal*, 556 U.S. at 678 (holding that courts are not "bound to accept as true a legal conclusion couched as a factual allegation"(cleaned up)). Plaintiffs' failure to allege cognizable harms are particularly curious in light of public records available on the System for Award Management (SAM.gov) Data Bank, which demonstrate that since 2006 MJL has encountered notable success in the federal government's service-disabled veteran owned small business program and participated in thousands of contract actions with federal government agencies totaling close to $130 million dollars. *See* Attachment A, MJL SAM.gov Records Request, and Attachment B, Declaration of Sam Le.[5]

Plaintiffs fare no better under *City of Jacksonville*. There, the plaintiff, an association of general contractors, challenged a Jacksonville set-aside program. *City of Jacksonville*, 508 U.S. at 658. The program required 10 percent of the amount the city spent on contracts be set aside for "Minority Business Enterprises (MBE's)." *Id.* (cleaned up). The only way a business could become an MBE was if 51 percent of its ownership was minority, as defined by ordinance, or female. *Id.* Jacksonville later replaced the ordinance with one available only to female or Black-

---

[5] Defendants offer this Declaration in support of a factual challenge to subject matter jurisdiction. For factual challenges, the Court may go beyond the Complaint's allegations and consider evidence to assess if there are facts supporting Plaintiffs' jurisdictional allegations. *Beck*, 848 F.3d at 270 (cleaned up). Here, Defendants contend that Plaintiffs' conclusory allegation that MJL is "harmed," ECF No. 1 at ¶ 74, is not true. The Declaration demonstrates that Plaintiffs are, in fact, not economically disadvantaged.

owned businesses. *Id.* at 661. The Court held that the plaintiff association suffered an injury in

fact. *Id.* at 669. The Court repeatedly emphasized that the Jacksonville program was a "barrier"

that completely prevented the plaintiff association from participating in the program. *Id.* at 666

(describing Jacksonville as "erect[ing] a barrier" and "impos[ing]" a "barrier" that "prevents"

plaintiff from participating in the program). The complete bar on the plaintiff from bidding on

contracts set aside for participants in Jacksonville's program was the plaintiff's injury. *Id.* Here,

however, the race-conscious presumptions in the 8(a) program is no such barrier for this plaintiff.

While the Jacksonville program only permitted minority and female-owned businesses, *id.* at 658

(and later, Black and female-owned businesses, *id.* at 661) to participate, the 8(a) program is not

so narrow. As described above, the 8(a) program allows *anyone*, no matter their race or gender,

to demonstrate social advantage by submitting evidence that a distinguishing characteristic has

contributed to substantial social disadvantage, which has limited their entry or advancement in

the business world. 13 C.F.R. §124.103(c)(1)-(2). According to the Complaint, Plaintiffs

themselves took advantage of this opportunity twice—and failed both times. ECF No. 1 at ¶¶ 54-

55. The 8(a) program is not the barrier causing Plaintiffs' injury. The barrier is Plaintiffs' own

failure to demonstrate social disadvantage to the SBA.

     In sum, Plaintiffs have failed to show that their asserted abstract injuries are "concrete,"

"imminent," or "certainly impending," and therefore they have no injury in fact. *Buscemi*, 964

F.3d at 258-59. Because Plaintiffs lack standing, the Court should dismiss their Complaint in its

entirety.

19

**II.    Plaintiffs' Claim Under the Nondelegation Doctrine Lacks Merit**

Claim IV of the Complaint alleges that the race-conscious presumption violates the APA because Congress unconstitutionally delegated authority to SBA "to make or enact racial classifications" and to "determine whether someone belongs to a particular minority group." ECF No. 1 at ¶ 109. The D.C. Circuit rejected this same claim in *Rothe Dev., Inc. v. United States Dep't of Def.*, 836 F.3d 57, 74 (D.C. Cir. 2016), and this Court should do so as well.

The nondelegation doctrine prohibits the delegation of authority from one branch of government to another in a way "that frustrates the constitutional design." *Kerpen v. Metro. Washington Airports Auth.*, 907 F.3d 152, 160–61 (4th Cir. 2018) (affirming order that granted motion to dismiss; cleaned up). Under the nondelegation doctrine, when Congress directs an agency to exercise its discretion or judgment, Congress must "clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Mistretta v. United States,* 488 U.S. 361, 372-373 (1989). A statute that provides an "intelligible principle" to guide the agency's decisions does not violate the nondelegation doctrine; a violation is found only if the statute provides "literally no guidance." *Id.* at 372; *see also Whitman v. American Trucking Ass'ns,* 531 U.S. 457, 474 (2001) and *United States v. Moriello*, 980 F.3d 924, 932 (4th Cir. 2020). Thus, the "government does not bear an onerous burden in demonstrating the existence of an intelligible principle." *S. Carolina Med. Ass'n v. Thompson*, 327 F.3d 346, 350 (4th Cir. 2003). "Only the most extravagant delegations of authority, those providing no standards to constrain administrative discretion, have been condemned by the Supreme Court as unconstitutional." *Humphrey v. Baker,* 848 F.2d 211, 217 (D.C. Cir. 1988). Indeed, "[o]nly twice in this country's history (and that in a single year)" has the Supreme Court

"found a delegation excessive—in each case because 'Congress had failed to articulate *any* policy or standard' to confine discretion." *Gundy v. United States*, 139 S. Ct. 2116, 2129 (2019) (emphasis not added).

This case does not present one of those rare occurrences where Congress violated the nondelegation doctrine. Congress provided SBA with an intelligible principle for how it could determine which individuals qualify for the 8(a) program. Language in 15 U.S.C. § 637(a)(5) sets forth the definition of "socially disadvantaged individuals" to assist SBA in identifying appropriate program participants. *Rothe*, 836 F.3d at 454. Similarly, the language in 15 U.S.C. § 631(f)(1) states the findings made by Congress in enacting the 8(a) program and expresses the policy behind the program, both of which serve to guide SBA in its implementation of the 8(a) program. The SBA's authority to designate groups is further informed by the examples of such racial groups, 15 U.S.C. § 631(f)(1)(C), which Congress has found have suffered the effects of discriminatory practices or similar invidious circumstances over which they have no control, 15 U.S.C. § 631(f)(1)(B), and by the purpose of the Act to promote the business development of small businesses owned by socially and economically disadvantaged individuals, 15 U.S.C. § 631(f)(2)(A).

These provisions in the Act provide far more guidance to SBA than principles the Supreme Court has found adequate in statutes that merely authorize regulation in the "public interest," in a way that is "fair and equitable," in a manner "requisite to protect the public health," and when "necessary to avoid an imminent hazard to the public safety." *Rothe*, 836 F.3d at 74. The Act also provides far more guidance to SBA than another statute the Fourth Circuit recently upheld against a nondelegation challenge, which simply authorizes federal agencies to promulgate "regulations

necessary for the protection and administration of property owned or occupied by the Federal government and persons on the property." *Moriello*, 980 F.3d at 933. For these reasons, Plaintiffs' Claim IV should be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim upon which relief may be granted.

### III.    Plaintiffs' Facial Equal Protection Challenge to the Act Lacks Merit

Plaintiffs' claim that the Act violates the Fifth Amendment's Equal Protection Clause[6] on its face lacks merit because the Act only needs to satisfy rational basis review, and it easily does. Statutes that do not classify individuals based on race or other suspect categories only need to satisfy rational basis review, which requires courts to merely assess whether the statute has a "rational relation to some legitimate end." *Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007). By contrast, when a statute classifies individuals based on race, courts apply strict scrutiny to equal protection challenges and analyze whether the statute serves a compelling government purpose and is narrowly tailored to achieve that purpose. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

In *Rothe*, the D.C. Circuit held that Section 8(a) of the Act does not on its "face classify individuals by race" and instead it uses "facially race-neutral terms of eligibility to identify individual victims of discrimination, prejudice, or bias, without presuming that members of certain racial, ethnic, or cultural groups qualify as such." 836 F.3d at 62. The *Rothe* court held that because the Act focuses on benefiting individuals who have experienced discrimination, as opposed to benefiting all individuals of certain races, it does not have to satisfy strict scrutiny. *Id.* at 64. As

---

[6]  Plaintiffs' allegation that the Act violates the Fifth Amendment's Equal Protection Clause is found in paragraphs 76 and 93 of the Complaint.

such, the *Rothe* court applied rational basis review to assess the equal protection challenge to the Act. *Id.* at 72-73.[7]

The *Rothe* court held that the Act "plainly" satisfies rational basis review because it "bears a rational relation to some legitimate end." *Id.* at 73 (cleaned up). The Act "aims to remedy the effects of prejudice and bias that impede business formation and development and suppress fair competition for government contracts," which is clearly a legitimate end. *Id.* The Act is also rationally related to that end because it provides the benefits that "socially and economically disadvantaged individuals most need to participate on fair terms in the national economy." *Id.*[8] This Court should follow the sound reasoning of the *Rothe* court and dismiss Plaintiffs' claim that the Act violates the Fifth Amendment's Equal Protection Clause.[9]

**IV.    Plaintiffs' Facial Equal Protection Challenge to the Regulations Lacks Merit**

The Court should also dismiss Plaintiffs' claim that the race-conscious presumption in the SBA's regulations facially violates the Fifth Amendment's Equal Protection Clause. A facial constitutional challenge is "the most difficult challenge to mount successfully, since the challenger

---

[7] SBA's regulations, in contrast, do classify individuals based on race. 13 C.F.R. § 124.103(b)(1). This section of the United States' motion only relates to Plaintiffs' challenge to the Act. Plaintiffs' challenge to the regulations is discussed below. *See* Section IV *infra*.

[8] The *Rothe* court relied on legislative history to make its findings on the Act's aims and its relation to those aims. A court may consider such legislative history when ruling on a motion to dismiss under Rule 12(b)(6). *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 711 fn. 17 (D. Md. 2013) (legislative history was subject to judicial notice under Rule 12(b)(6)).

[9] The United States took the position in the briefing in *Rothe* that the Act was subject to strict scrutiny. The United States took this position against the backdrop of the D.C. Circuit's decision in *DynaLantic Corp. v. Department of Defense*, in which the court cast doubt on the United States' argument that the Act "is not itself race-conscious." 115 F.3d 1012, 1017 (D.C. Cir. 1997) (*DynaLantic I*). In light of the decision in *Rothe*, the United States' position in this litigation is the same as it was in connection with *DynaLantic I* – the Act itself does not classify based on race. Thus, the Act should be subject to only rational basis review.

must establish that no set of circumstances exists under which the [challenged government action] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Thus, a plaintiff that asserts a facial constitutional challenge "bears a heavy burden" and must show that the challenged law "cannot operate constitutionally under any circumstance." *H.B. Rowe Co. v. Tippett*, 615 F.3d 233, 243 (4th Cir. 2010) (applying *Salerno* test in equal protection case). When the government uses racial classifications in a statute or regulation in order to counteract race discrimination or its lingering effects – as the SBA did with the race-conscious presumption in 13 C.F.R. § 124.103 – the plaintiff must show that the government did not have a "strong basis in evidence" to find it "necessary or appropriate" to use the challenged racial classifications "under any circumstances." *DynaLantic Corp. v. U.S. Dep't of Def.*, 885 F. Supp. 2d 237, 271 and 274 (D.D.C. 2012) (*DynaLantic II*).

In *DynaLantic II*, the court examined the same facial challenge to the 8(a) program that the Plaintiffs have raised here – and the court rejected the challenge. 885 F. Supp. 2d at 279. The *DynaLantic II* court examined the "extensive statistical and anecdotal evidence" that Congress compiled and held that this evidence supported the government's claim that it had a "strong basis in evidence" to justify the use of race-conscious measures to further the compelling interest of "breaking down barriers to minority business development created by discrimination and its lingering effects." *Id.* at 270 and 273-74. The court correctly held that, to prevail, the plaintiff had to show that there was no strong basis in evidence to believe that race discrimination or its lingering effects existed in "any sector or industry in the economy." *Id.* at 271.

The Complaint in this case contains no allegations that would plausibly lead to a different result than the court reached in *DynaLantic II*. Plaintiffs have not pled sufficient facts to plausibly

allege that there are "no set of circumstances" that would justify the race-conscious presumption in the SBA's regulations. *Id.* at 271. Nor have they plausibly alleged that no sector or industry in the economy suffers from the problems of race discrimination or its lingering effects. They have, in fact, made no allegations about the economy as a whole apart from, perhaps, conclusory statements, which are insufficient to defeat a motion to dismiss. Thus, this Court should dismiss Plaintiffs' facial challenge to the SBA's regulations.

**V.     Plaintiffs' Claim for Relief based on its Eligibility for the 8(a) Program is Untimely**

The Court should dismiss Plaintiff's first claim for relief, *see* ECF No. 1 at ¶¶ 76-90, insofar as that claim is based on MJL's eligibility to participate in the 8(a) Program because Plaintiffs did not file this suit within the applicable statute of limitations. Because there is no statutory cause of action supporting Plaintiffs' claim, they must rely on a cause of action implied from the Constitution. *See e.g., Bell v. Hood*, 327 U.S. 678, 684 (1946) and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). Because the Constitution does not provide for a specific statute of limitations, courts look to state law for the statute of limitations of the most analogous state law claim and apply that limitation period. In Virginia, the statute of limitations for an implied Constitutional claim is two years. *Kirchhoff v. United States Gov't*, No. 7:18CV00489, 2019 WL 1930134, at *4 (W.D. Va. Apr. 30, 2019), *aff'd,* 788 F. App'x 193 (4th Cir. 2019) and *Bloch v. Exec. Off. of the President*, 164 F. Supp. 3d 841, 860 fn. 27 (E.D. Va. 2016).

Federal law dictates when the two-year statute of limitations begins to run, i.e., when a cause of action accrues. "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."

*Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995). For a cause of action to accrue, the plaintiff must know "that he has been hurt and who inflicted the injury." *Id.* This general rule applies to constitutional claims challenging the continued enforcement of a statute. *See Bird v. Dep't of Human Svcs.*, 935 F.3d 738, 744-46 (9th Cir. 2019) (discussing Fourth Circuit case law). For example, in *Johnson v. Jessup*, the plaintiffs filed an equal protection challenge to a state statute that required the revocation of individuals' drivers licenses if they did not pay certain fines. 381 F. Supp. 3d 619, 623 (M.D.N.C. 2019). The *Johnson* court dismissed some of the plaintiffs' claims as untimely because, even though they continued to suffer harm from the statute within the limitations period, the state revoked their licenses outside of the limitation period. *Id.* at 636.

When it is clear from the facts alleged in the complaint that a claim is time-barred, a court may dismiss it pursuant to Rule 12(b)(6). *Nasim*, 64 F.3d at 955. Plaintiffs' Complaint indicates that any claim for relief based on MJL's eligibility for the 8(a) program should have been filed by 2019. *See* ECF No. 1 at ¶ 76. Plaintiffs' alleged harms flow from SBA's denial of their applications to the 8(a) program because if the SBA had approved their applications, they would be "standing on equal footing" as all other 8(a) program participants. *Id.* at ¶ 67. According to Plaintiffs, Mr. Hierholzer applied for the 8(a) program in 2009 and 2016, and his 2016 application was ultimately denied in 2017, after he exhausted his appeals. *Id.* at ¶¶ 54-55. Because Plaintiffs knew that the Defendants had deemed them ineligible for the 8(a) program in 2017, Plaintiffs' challenges based on their ineligibility had to be filed by 2019, when the two-year statute of limitations expired. But Plaintiffs chose to sit on their rights after the denial of their application and, therefore, Claim I

based on Plaintiff's harm from its denial of eligibility for the 8(a) program should therefore be dismissed.

**Conclusion**

The Court should dismiss Plaintiffs' Complaint in its entirety because Plaintiffs lack standing or, in the alternative, it should dismiss Plaintiffs' Complaint in part for the other reasons discussed above.

Date: March 20, 2023                    Respectfully submitted,

                                        KAREN D. WOODARD
                                        Chief
                                        Employment Litigation Section
                                        Civil Rights Division
                                        United States Department of Justice

                                        ANDREW BRANIFF (IN Bar No. 23430-71)
                                        Deputy Chief


                                        By: /s/ Allan K. Townsend
                                        Allan K. Townsend (ME Bar No. 9347)
                                        Ejaz H. Baluch, Jr. (MD Bar No. 1612130032)*
                                        Trial Attorneys
                                        Employment Litigation Section
                                        Civil Rights Division
                                        United States Department of Justice
                                        150 M Street, N.E.
                                        Washington, D.C. 20002
                                        (202) 353-5343
                                        Allan.Townsend2@usdoj.gov
                                        Ejaz.Baluch@usdoj.gov
                                        * Notice of Appearance will be filed once Court
                                        grants access to ECF system.

                                        JESSICA D. ABER
                                        UNITED STATES ATTORNEY


                                        /s/ Virginia L. Van Valkenburg
                                        Virginia L. Van Valkenburg

27

Assistant United States Attorney
Virginia State Bar No. 33258
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel: (757) 441-3217
Fax: (757) 441-6689
Virginia.VanValkenburg@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that I served the foregoing document on all counsel of record via the Court's electronic filing system on the date below.

Date: March 20, 2023                    /s/ Allan K. Townsend

Legal Business Name: MJL Enterprises, LLC
Source: SAM.gov Data Bank

ATTACHMENT A

| Type of Set Aside | Dollars Obligated | Distinct PIID (Contracts) |
|---|---|---|
| SERVICE DISABLED VETERAN OWNED SMALL BUSINESS SET-ASIDE | $ 73,955,023.72 | 412 |
| SMALL BUSINESS SET ASIDE - TOTAL | $ 27,278,222.37 | 307 |
| NO SET ASIDE USED. | $ 21,173,355.00 | 2,670 |
| | $ 5,365,195.96 | 327 |
| SDVOSB SOLE SOURCE | $ 2,104,019.39 | 13 |
| HUBZONE SOLE SOURCE | $ 18,839.32 | 1 |
| VETERAN SET ASIDE | $ 4,272.01 | 1 |
| **Grand Total** | **$ 129,898,927.77** | **3,630** |

| Funding Department | Dollars Obligated | Distinct PIID (Contracts) |
|---|---|---|
| DEPT OF DEFENSE | $ 82,803,257.85 | 2,941 |
| VETERANS AFFAIRS, DEPARTMENT OF | $ 16,322,822.59 | 305 |
| STATE, DEPARTMENT OF | $ 13,240,709.24 | 82 |
| | $ 6,228,665.92 | 32 |
| HOMELAND SECURITY, DEPARTMENT OF | $ 4,818,694.77 | 50 |
| RAILROAD RETIREMENT BOARD | $ 1,739,391.28 | 71 |
| TREASURY, DEPARTMENT OF THE | $ 1,483,418.53 | 12 |
| HEALTH AND HUMAN SERVICES, DEPARTMENT OF | $ 1,193,440.03 | 43 |
| JUSTICE, DEPARTMENT OF | $ 875,064.62 | 42 |
| GENERAL SERVICES ADMINISTRATION | $ 610,879.40 | 42 |
| LABOR, DEPARTMENT OF | $ 203,007.60 | 4 |
| COMMERCE, DEPARTMENT OF | $ 102,161.89 | 5 |
| INTERIOR, DEPARTMENT OF THE | $ 99,348.56 | 5 |
| AGRICULTURE, DEPARTMENT OF | $ 50,810.93 | 4 |
| HOUSING AND URBAN DEVELOPMENT, DEPARTMENT OF | $ 32,989.00 | 1 |
| ENERGY, DEPARTMENT OF | $ 31,840.26 | 3 |
| OFFICE OF PERSONNEL MANAGEMENT | $ 21,406.25 | 1 |
| UNITED STATES AGENCY FOR GLOBAL MEDIA, BBG | $ 13,852.00 | 1 |
| ENVIRONMENTAL PROTECTION AGENCY | $ 13,200.00 | 1 |
| SOCIAL SECURITY ADMINISTRATION | $ 9,394.88 | 1 |
| NATIONAL SCIENCE FOUNDATION | $ 4,572.17 | 1 |
| **Grand Total** | **$ 129,898,927.77** | **3,630** |

Exhibit 1: Declaration of Sam Le

JA058

ATTACHMENT A

Legal Business Name: MJL Enterprises, LLC
Source: SAM.gov Data Bank

| Fiscal Year | Dollars Obligated | Distinct PIID (Contracts) |
|---|---|---|
| 2006 | $ 28,738.00 | 2 |
| 2007 | $ - | 1 |
| 2008 | $ 1,707,490.19 | 32 |
| 2009 | $ 8,590,567.42 | 69 |
| 2010 | $ 3,942,324.36 | 50 |
| 2011 | $ 6,071,762.54 | 62 |
| 2012 | $ 12,938,071.34 | 74 |
| 2013 | $ 8,895,652.27 | 65 |
| 2014 | $ 7,286,622.25 | 86 |
| 2015 | $ 6,324,424.63 | 344 |
| 2016 | $ 8,513,667.92 | 948 |
| 2017 | $ 6,806,591.15 | 508 |
| 2018 | $ 6,252,178.58 | 196 |
| 2019 | $ 7,564,619.15 | 212 |
| 2020 | $ 15,046,484.35 | 498 |
| 2021 | $ 17,609,802.06 | 659 |
| 2022 | $ 7,925,558.75 | 406 |
| 2023 | $ 4,394,372.81 | 94 |
| **Grand Total** | **$ 129,898,927.77** | **3,630** |

Exhibit 1: Declaration of Sam Le

ATTACHMENT B

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Norfolk Division

| | | |
|---|---|---|
| MARTY HIERHOLZER, an individual, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MJL ENTERPRISES, LLC, a Virginia corporation | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-24 |
| | ) | |
| SMALL BUSINESS ADMINISTRATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DECLARATION OF SAM LE

I, Sam Le, declare as follows under penalty of perjury:

1.      I am the Small Business Administration's (SBA) Director for Policy Planning and Liaison. This position requires me to be familiar with federal government small business contracting. Among other things, I work with federal agencies to increase their contract spending with small businesses, including businesses that participate in SBA's procurement programs.

2.      I searched the System for Award Management (SAM.gov) Data Bank on March 20, 2023, for all contract actions listed for MJL Enterprises, LLC.  The SAM.gov Data Bank is publicly available at the following website:  https://sam.gov/reports/awards/standard. The SAM.gov Data Bank allows users to run reports on Federal procurement data.

3.      I pulled all of the entries from the SAM Data Bank for the legal business name MJL Enterprises, LLC, from October 1, 1999 through present.

ATTACHMENT B

4.      Based on my search, the total number of contracts for MJL Enterprises, LLC, from Fiscal Year 2006 to present, was 3,630 with a total obligated dollar value of $129,898,927.77.

6.      Of those obligations, $73,955.023.72 were awarded through Service Disabled Veteran Owned Small Business (SDVOSB) set-asides and an additional $2,104,019.39 were awarded as SDVOSB sole source awards.

7.      Exhibit 1 are tables detailing the results of the search that I performed.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on March 20, 2023                        *Sam Q. Le*
                                                   Sam Le


2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| Marty Hierholzer, an individual; MJL Enterprises, LLC, a Virginia corporation, <br><br> Plaintiffs, <br><br> v. <br><br> Isabel Guzman, in her official capacity as Administrator of the Small Business Administration; Small Business Administration, <br><br> Defendants. | Civil Case No. 2:23-cv-00024-RAJ-DEM |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 2

STANDARD OF REVIEW .................................................................................. 8

ARGUMENT ...................................................................................................... 10

   I.    Plaintiffs Have Standing.......................................................................... 10

     A.   Plaintiffs plausibly allege an injury in fact ..................................... 10

     B.   Plaintiffs' injury is traceable to Defendants' enforcement of the
         8(a) program.................................................................................... 12

     C.   Plaintiffs' injury is redressable by a favorable decision from this Court ....... 13

   II.   Plaintiffs Plausibly Allege that the Race-Based Presumptions Violate the
      Fifth Amendment .................................................................................... 14

   III.  Plaintiffs Plausibly Allege that the Racial Classifications Violate the  Fifth
       Amendment............................................................................................ 17

   IV.  Plaintiffs Plausibly Alleges a Violation of the Nondelegation Doctrine ........... 19

   V.   Plaintiffs Plausibly Allege That the SBA's Implementation of the 8(a) Program
      Violates Other Separation-of-Powers Principles ............................................. 23

   VI.  The Statute of Limitations Does Not Bar Plaintiffs' Request for
       Prospective Relief ................................................................................... 25

CONCLUSION.................................................................................................... 29

CERTIFICATE OF SERVICE ........................................................................... 30

## INTRODUCTION

Plaintiff Marty Hierholzer is a small business owner that seeks the chance to compete for federal contracts without being discriminated against on the basis of race. But the Small Business Administration's Section 8(a) Business Development Program (the "8(a) program")—which ostensibly seeks to assist small businesses in procuring federal contracts—creates different rules for different business owners based on the business owner's race. That program, which provides a host of federal contracts set aside for program participants, is open only to entrepreneurs that the SBA considers "socially disadvantaged." Yet "social disadvantage" is a term bound with race: the 8(a) program *presumes* that some business owners are socially disadvantaged solely on account of their race or ethnicity. Business owners that do not belong to a favored racial group, however, must establish individual social disadvantage to the SBA's satisfaction—a demanding burden that many small business owners like Mr. Hierholzer are unable to surmount. As a result, Mr. Hierholzer and his business MJL Enterprises are frozen out of the 8(a) program and ineligible to receive federal contracts set aside for the program's participants.

The race-based measures of the 8(a) program violate the fundamental right of equality before the law embodied in the Due Process Clause of the Fifth Amendment to the United States Constitution. The Fifth Amendment requires the federal government to demonstrate that all racial classifications are narrowly tailored to further a compelling interest. But the government has provided no evidence of either narrow tailoring or a compelling interest in its motion—and such evidence would be improper at the pleadings stage. The SBA regulations in this case also run counter to important separation-of-powers

1

principles. There could hardly be a power that warrants more caution than the power to distribute benefits and burdens on the basis of race. Yet the SBA retains for itself the power to create favored racial groups at its whim—a power that Congress could not have granted the SBA without running afoul of the nondelegation doctrine. Defendants' Motion to Dismiss should be denied.

## STATEMENT OF FACTS

### *The 8(a) Program*

The 8(a) program seeks to "promote the business development" of small business owners who have suffered social and economic disadvantage. Compl. ECF No. 1 ¶ 4; 15 U.S.C. § 631(f)(2). In addition to providing technical, management, and other assistance to those who qualify, the 8(a) program both sets aside federal government contracts for which only participants in the program can compete and awards federal government contracts to program participants via sole-source awards, which are contracts awarded without any competition. Compl. ¶¶ 27–28; 15 U.S.C. §§ 631(f)(2), 637(a)(1)(A), (B); 13 C.F.R. § 124.501(b).

From fiscal years 2010–2021, the SBA awarded to program participants nearly 30 billion dollars per year in federal contracts. Congressional Research Service, *SBA's "8(a) Program": Overview, History, and Current Issues Congressional Research Service* 35 (updated Mar. 9, 2022).[1] Over 60 percent of these contracts were categorically unavailable to businesses that did not participate in the program either because the contracts were set

---

[1] Available at https://crsreports.congress.gov/product/pdf/R/R44844.

aside for bidding by only program participants or because they were awarded as sole source contracts to program participants without competitive bidding. *Id.*

Participation in the program is limited to business owners who are both socially and economically disadvantaged. First, the program considers business owners to be socially disadvantaged if they "have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities" and due to "circumstances beyond their control." 15 U.S.C. § 637(a)(5); 13 C.F.R. § 124.103(a). Second, among those socially disadvantaged individuals, program participation is limited to "[e]conomically disadvantaged individuals," which is defined by the Act as "those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities." 15 U.S.C. § 637(a)(6)(A).

*Social Disadvantage Requirements*

The 8(a) program presumes that many business owners are socially disadvantaged solely on account of their race or ethnicity. The Act concludes in its preamble that "socially disadvantaged" persons include persons who are "Black Americans, Hispanic Americans, Native Americans . . . Asian Pacific Americans . . . and other minorities." 15 U.S.C. § 631(f)(C). The Act's findings have been codified by regulation to create a rebuttable presumption of social disadvantage for members of officially "designated groups." 13 C.F.R. § 124.103(b)(1). Members of "designated groups" are presumed to be socially disadvantaged unless the SBA receives "credible evidence to the contrary." *Id.* § 124.103(b)(3).

The SBA has also designated racial and ethnic groups whose members are entitled to the presumption of social disadvantage. For example, the SBA defines "Asian Pacific American" as including a person from "China (including Hong Kong)" but not a person with origins in Mongolia. *Id.* While the former is presumed socially disadvantaged, the latter is not. Still other ethnicities are not defined at all. For example, the regulation does not specify what subgroups are included within "Black American" or "Hispanic American." However, the SBA relies on the definitions of "Hispanic," "Black," and "White" in the Office of Management and Budget's Directive No. 15, entitled "Race and Ethnic Standards for Federal Statistics and Administrative Reporting." Compl. ¶ 38.

Additionally, under SBA regulation, representatives[2] of identifiable groups may petition the SBA to designate their *group* as presumptively socially disadvantaged by public comment rule making. 13 C.F.R. § 124.103(b)(1), (d). Such groups must present "substantial evidence that members of the group have been subjected to racial or ethnic prejudice or cultural bias." 13 C.F.R. § 124.103(d)(1). The SBA must then determine whether the group has "suffered prejudice, bias, or discriminatory practices" that resulted in "economic deprivation," and that the disadvantages faced by the group have "produced impediments in the business world." *Id.* § 124.103(d)(2). However, the SBA has rejected most petitions that it has received, including petitions from Hasidic Jews, women, disabled veterans, and Iranians. *See* Compl. ¶ 45; Congressional Research Service, *supra*, at 6 n.34;

---

[2] The regulatory text does not provide a definition of "representative." *See* 13 C.F.R. § 124.3. But it does not appear that "representative" means anything other than the party who petitions for a group's inclusion in the list of groups designated by 13 C.F.R. § 124.103(b)(1) as presumptively socially disadvantaged.

George R. La Noue & John C. Sullivan, *Gross Presumptions: Determining Group Eligibility for Federal Procurement Preferences*, 41 Santa Clara L. Rev. 103, 127–29 (2000). Ironically, the SBA has accepted petitions from Asian Indians (the highest income racial group in the United States) and Sri Lankans. Compl. ¶ 45.

Although a presumption of social disadvantage may be rebutted with "credible evidence," in practice a presumption of social disadvantage is determinative of social disadvantage. Because no applicant who is presumptively socially disadvantaged voluntarily presents evidence denying their own social disadvantage, the SBA can only obtain credible evidence if presented to the SBA by outside parties. Further, SBA regulations explicitly prohibit any party from challenging the eligibility of an 8(a) participant as part of a bid or contract protest either to the SBA or any administrative forum. 13 C.F.R. § 124.517(a).

By contrast, applicants belonging to racial groups that are not presumed to be socially disadvantaged must demonstrate that they have been socially disadvantaged by a preponderance of the evidence. 13 C.F.R. § 124.103(c)(1). Applicants must show they have (1) an objective distinguishing feature that has contributed to their social disadvantage, which must be (2) based on their experience in American society, (3) chronic and substantial, and (4) must have negatively impacted their entry into or advancement in the business world. *Id.* § 124.103(c)(2).

Although proving social disadvantage by a preponderance of the evidence is, in theory, a means of gaining entry into the 8(a) program, in practice very few 8(a) program

participants have achieved eligibility through demonstrating their individual social disadvantage to the SBA's satisfaction. Compl. ¶ 66.[3]

*Economic Disadvantage Requirements*

"Economically disadvantaged" is defined broadly enough that almost all small business concerns owned by a socially disadvantaged individual will be considered "economically disadvantaged" so long as the small business concern satisfies the SBA's income, net worth, and asset restrictions. Compl. ¶ 33. Specifically, in considering whether an applicant has "diminished capital and credit opportunities," the SBA will "examine factors relating to the personal financial condition of any individual claiming disadvantaged status, including income for the past three years . . . , personal net worth, and the fair market value of all assets." 13 C.F.R. § 124.104(c). Generally, an individual must have (1) a net worth of less than $850,000 (*id.* § 124.104(c)(2)); (2) average adjusted gross income of less than $400,000 over the three years preceding the submission of the 8(a) application (*id.* § 124.104(c)(3)); and (3) assets whose fair market value does not exceed $6.5 million (*id.* § 124.104(c)(4)).[4] A business owner need not recount "diminished

---

[3] Of 7,669 small businesses that submitted online applications in FY 2020 to participate in the 8(a) program, SBA approved only 591 of them. SBA Office of the Inspector General, *SBA's Business Development Assistance to 8(a) Program Participants*, Report Number 22-08, February 14, 2022, p. 9, https://www.oversight.gov/sites/default/files/oig-reports/SBA/SBA-OIG-Report-22-08.pdf. The Inspector General report does not however specify how many of the applications were received from presumptively socially disadvantaged individuals. Nor does the report state the reason the applications were rejected.

[4] The value of the applicant's primary personal residence and business are not included for calculating net worth. 15 U.S.C. § 637(a)(6)(E); 13 C.F.R. § 124.104(c)(2). Should the applicant's income exceed $850,000, a presumption of lack of economic disadvantage may be rebutted "by a showing that this income level was unusual and not likely to occur in the

capital and credit opportunities" in particular instances to establish his economic disadvantage. Indeed, the SBA recently eliminated the requirement to submit a narrative statement in support of a claim of economic disadvantage and instead rested the determination of social disadvantage "solely on an analysis of objective financial data relating to the individual's net worth, income and total assets." Congressional Research Service, *supra*, at 24.

### *Marty Hierholzer and MJL Enterprises, LLC*

Mr. Hierholzer is a service-disabled veteran and owner of MJL Enterprises, LLC (MJL), which contracts with the government to provide various services and supplies. He served his country with distinction as a Navy deep sea diver, where he persevered through mental and physical injuries suffered in the line of duty. Compl. ¶ 2.

During his time in the Navy, Mr. Hierholzer recalls that military suppliers sometimes failed to provide adequate supplies. After retiring from the Navy, Mr. Hierholzer set out to fill the void and started his business, MJL Enterprises, LLC, to provide dependable supplies and services to the United States military. MJL is legally recognized as a small business under the terms of the 8(a) program. *Id.* ¶ 14. Today, the company provides a variety of goods and services—such as medical, maintenance, and repair equipment—to military bases and VA hospitals. *Id.* ¶ 22.

Mr. Hierholzer twice applied for MJL to be included in the 8(a) program. *Id.* ¶ 54. But he is of German and Scottish descent and is therefore not a member of a group that

---

future, that losses commensurate with and directly related to the earnings were suffered, or by evidence that the income is not indicative of lack of economic disadvantage." 13 C.F.R. § 124.104(c)(3)(i).

enjoys a presumption of social disadvantage under the 8(a) program. *Id.* ¶ 47. Mr. Hierholzer invested substantial money, time, and effort filing multiple applications for MJL to join the 8(a) program, each time working in vain with program representatives to ensure he provided appropriate documentation supporting his eligibility. *Id.* ¶ 57. The SBA denied both applications. *Id.* ¶ 55.

Moreover, Mr. Hierholzer meets all the requirements to be considered *economically* disadvantaged under the 8(a) program. He (1) has a net worth of less than $850,000; (2) has had an average adjusted gross income of less than $400,000 in each of the three prior years and in each of the three prior years preceding his application; and (3) holds assets whose fair market value does not exceed $6.5 million. *See* Hierholzer Decl. ¶¶ 4–6. Because Mr. Hierholzer meets the economic qualifications of the program, he would have been accepted into the 8(a) program without having to prove his social disadvantage if he belonged to one of the favored racial groups listed in 15 U.S.C. § 631(f)(1)(B), (C) and 13 C.F.R. § 124.103(b)(1). Compl. ¶ 64. But because he is not, he has been categorically excluded from the program—and the valuable opportunities that it provides for small business owners like him. Mr. Hierholzer brings this civil rights lawsuit to vindicate his constitutional rights and to compete on a race-neutral playing field.

## STANDARD OF REVIEW

On a Rule 12(b)(1) motion to dismiss for lack of standing, the Court may dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R. Co. v.*

*United States*, 945 F.2d 765, 768 (4th Cir. 1991)). The Court must assume the truth of Plaintiffs' factual allegations and draw any reasonable inferences in Plaintiffs' favor. *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013). Moreover, in determining whether the Court has jurisdiction, the Court may consider evidence outside of the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Kerns v. United States*, 585 F.3d 187, 190 (4th Cir. 2009) (noting the Court may hold an evidentiary hearing to determine challenged jurisdictional facts). However, the Court attaches "a presumption of truthfulness" to the plaintiff's allegations where "the jurisdictional facts are intertwined with the facts central to the merits of the dispute." *Kerns*, 585 F.3d at 193.

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual allegations, taken as true, 'to raise a right to relief above the speculative level' and 'nudge [the] claims across the line from conceivable to plausible.'" *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017) (quoting *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013)).

## ARGUMENT

### I.    Plaintiffs Have Standing

Article III standing requires (1) an "injury in fact" (2) that is "fairly traceable" to the defendant and (3) redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs have adequately pled all three elements of standing in this case.

### A.    Plaintiffs plausibly allege an injury in fact

Plaintiffs suffer an injury of a serious kind: the denial of equal treatment on the basis of race. The injury in fact in an equal protection case involving racial discrimination is not the ultimate denial of the benefit, but the erection of "a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993) (*City of Jacksonville*); *see also Grutter v. Bollinger*, 539 U.S. 306, 317 (2003) (noting that the plaintiff "clearly has standing" to bring a lawsuit challenging the use of race as one of many factors in admissions decisions).

The government's argument to the contrary is both legally and factually wrong. The government is wrong on the law with respect to its assertion that Plaintiffs must point to a lost bid as a result of the 8(a) program. *See* Mot. to Dismiss ECF No. 20 at 17. In *City of Jacksonville*, the Supreme Court plainly rejected that argument, explaining that the injury in fact in an equal protection case involving racial discrimination is "the inability to compete on an equal footing in the bidding process, not the loss of a contract." 508 U.S. at 666. The government is also wrong in contending that the *City of Jacksonville* standard

applies only where the government's racial classifications serve as a "complete bar" to a benefit. *See* Mot. to Dismiss at 19. The Supreme Court routinely applies that standard in cases involving racial classifications—even where such race is determinative on some occasions and "play[s] no role" in others. *Grutter*, 539 U.S. at 316.

The government is factually wrong in its assertion that the race-based presumption of social disadvantage was not a complete bar to contracts set aside for 8(a) businesses. Had Mr. Hierholzer been a member of a favored racial group, he would have enjoyed presumptive status as a disadvantaged business and would have been able to obtain contracts set aside for such businesses. Yet because the government does not classify Mr. Hierholzer as a member of a favored racial group, he must make additional showings of individualized social disadvantage to the SBA's satisfaction, which he attempted to do twice—to no avail.

The government's assertion that Mr. Hierholzer did not lose any contracts as a result of his inability to participate in the 8(a) program has no legal relevance. It also strains credulity. The government's own declarant attests that MJL has routinely performed on government contracts over the span of several years. *See* ECF No. 20-2, Declaration of Sam Le ¶ 4 (noting that MJL has performed on thousands of federal contracts since 2006). It stands to reason MJL would have performed on 8(a) program contracts as well. Yet the 8(a) program's race-based presumption of social disadvantage has frozen MJL out of contracts set aside pursuant to that program.

**B.    Plaintiffs' injury is traceable to Defendants' enforcement of the 8(a) program**

Plaintiffs' injury is traceable to Defendants' enforcement of the 8(a) program in multiple ways. The program's race-based presumptions impose hurdles for Mr. Hierholzer's participation in the 8(a) program because of his race. Nearly all program participants enter the program without having to demonstrate social disadvantage because the owner is presumptively disadvantaged on account of race. Yet because Mr. Hierholzer is a member of a disfavored racial group under the 8(a) program, he must make a showing of individual social disadvantage. Therefore, the government misses the point when it asserts that Plaintiffs' injury stems from the SBA's denial of their application to be considered socially disadvantaged. Plaintiffs should never have to make the showing in the first instance. The SBA would have never been in the position to consider an application from Mr. Hierholzer but for the 8(a) program's race-based presumptions.

The government further argues that Plaintiffs' injury is not traceable to the race-based presumptions challenged in this case because Plaintiffs could not meet the requirement for "economic disadvantage." But that is both inaccurate and irrelevant. It is inaccurate because Plaintiffs do in fact meet the regulatory requirements for economic disadvantage, which is determined by a business owner's personal net worth, adjusted gross income, and assets. *See* 13 C.F.R. § 124.104; *see* Hierholzer Decl. ¶¶ 4–6 (attesting that Hierholzer meets the financial requirements to be considered economically

12

disadvantaged).[5] It is irrelevant because the 8(a) program plainly sets aside a portion of contracts for disadvantaged businesses—and that set-aside is based on race. Therefore, any business—economically disadvantaged or not—would have standing to raise an equal protection challenge to racial set-asides. *See Dynalantic Corp. v. Department of Defense*, 115 F.3d 1012, 1016 (D.C. Cir. 1997) (*Dynalantic I*) (noting that the business's injury stems from the fact that "the *entire* 8(a) program—which injures it by foreclosing business opportunities—is infected by unconstitutional race consciousness").

### C.    Plaintiffs' injury is redressable by a favorable decision from this Court

The government's arguments on redressability simply repeat the mistake it makes in its other standing arguments. The government contends Plaintiffs have not plausibly alleged that MJL would be eligible for the 8(a) program if the race-based presumption were removed, and that Plaintiffs have not plausibly alleged that they would experience any beneficial change from the elimination from the presumption.

The government's analysis again reflects a fundamental misunderstanding of equal protection law. The race-based presumptions impose additional burdens on business owners who the government considers to be members of disfavored racial groups. Unlike business owners that the government considers presumptively disadvantaged on the basis of race, business owners like Mr. Hierholzer must make additional showings of individualized social disadvantage—which ultimately exclude MJL from participation in

---

[5] The government's argument puts the cart before the horse because an economically disadvantaged individual must first be deemed socially disadvantaged. *See* 15 U.S.C. § 637(a)(6)(A) (defining "economic disadvantaged individuals" as a subset of "socially disadvantaged individuals"); 13 C.F.R. § 124.104(a) (same).

the 8(a) program. Because the race-based presumptions "prevent[] [MJL] from" competing for government contracts "on an equal basis," it follows that "a judicial decree directing the city to discontinue its program would 'redress' the injury." *City of Jacksonville*, 508 U.S. at 666 & n.5; *see also Heckler v. Mathews*, 465 U.S. 728, 740 (1984) ("[W]hen the right invoked is that to equal treatment, the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class.") (internal quotation marks omitted).[6]

## II.    Plaintiffs Plausibly Allege that the Race-Based Presumptions Violate the Fifth Amendment

The Due Process Clause of the Fifth Amendment to the United States Constitution contains an equal protection component applicable to the federal government. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). "[A]ll racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

Both the statutes and the implementing regulations employ racial classifications. The government is therefore correct in readily conceding that the regulations are subject to strict scrutiny. *See* Mot. to Dismiss at 23 & n.7. The government is incorrect, however, to depart from the government's longstanding position and to suggest that the statutes

---

[6] In practice, MJL would likely benefit from either remedy that would cure Plaintiffs' equal protection violation. If the Court requires the government to extend the presumption, MJL would be presumptively eligible to participate in the 8(a) program. If the Court eliminates the presumption, there would be many fewer 8(a) participants—which reduces the possibility that any particular contract would be awarded under the 8(a) program. *Dynalantic I*, 115 F.3d 1012.

challenged in this case are only subject to rational basis review. *See id.* at 23 & n.9. To begin, the statutory framework belies the government's assertion that the statute benefits only "individuals who have experienced discrimination," *id.* at 22. On the contrary, the statute *presumes* that all members of preferred racial groups have suffered discrimination, and affords them a lighter burden to establish disadvantage under the 8(a) program.

The statutes authorizing the 8(a) program are subject to strict scrutiny because they distribute benefits and burdens on the basis of race. *Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007). Section 631, for instance, reflects Congress's determination that "many [ ] persons are socially disadvantaged because of their identification as members of certain groups that have suffered the effects of discriminatory practices" and that "such groups include, but are not limited to, Black Americans, Hispanic Americans, Native Americans, Indian tribes, Asian Pacific Americans, Native Hawaiian Organizations, and other minorities." 15 U.S.C. § 631(f)(1)(B)–(C).

This Court should decline the government's invitation to gloss over these express racial classifications. *See* Mot. to Dismiss at 22–23. The government relies on the D.C. Circuit's decision in *Rothe Development, Inc. v. U.S. Department of Defense*, in which a divided panel refused to apply strict scrutiny because the express classifications were "located in the findings section of the statute." 836 F.3d 57, 66 (D.C. Cir. 2016). But as Judge Henderson noted in dissent, a statutory preamble "may aid in achieving a 'general understanding' of the statute" and illuminate otherwise ambiguous statutory commands. *See id.* at 79–80 (Henderson, J., dissenting).

Because strict scrutiny places the burden squarely on the government to produce evidence that its racial classifications are narrowly tailored to achieving a compelling government interest, this Court should reject the government's efforts to dismiss the case at the pleadings stage. Plaintiffs have pled a plausible claim that the statutes and regulations challenged in this case cannot withstand strict scrutiny. The government offers no evidence in its motion to sustain its burden of proving that the classifications employed by the 8(a) program serve a compelling interest in remedying past discrimination. *See Parents Involved*, 551 U.S. at 720 (noting that the government defendants had failed to demonstrate a compelling interest in "remedying the effects of past intentional discrimination").[7]

The government fares even worse on narrow tailoring. Although narrow tailoring requires the government to show "the most exact connection between justification and classification," *Fullilove v. Klutznick*, 448 U.S. 448, 537 (1980) (Stevens, J., dissenting), the 8(a) program gives the SBA the authority to set aside contracts for "disadvantaged" businesses in an industry without any evidence that discrimination has ever existed in that industry or whether the individual bidding on the contract has ever been discriminated against. The implementing regulation similarly permits gratuitous benefits to individuals from Burma, Brunei, Macao, and anywhere else the SBA may wish to designate without

---

[7] The government's motion reflects significant confusion about the distinction between facial and as-applied challenges. Yet as the Fourth Circuit explained in its recent decision in *White Coat Waste Project v. Greater Richmond Transit Company*, 35 F.4th 179, 204–05 (4th Cir. 2022), where an as-applied challenge "depends on the identity or circumstances of the plaintiff," a facial challenge does not. The constitutionality of the statutes and regulations challenged in this case does not depend on Plaintiffs' identity but on the fact that the government has failed to justify a program that distributes benefits and burdens on the basis of race.

any evidence that a small business owner belonging to one of those groups had even competed for a contract in that industry. *See* 13 C.F.R. § 124.103(b), (d). That is the hallmark of an insufficiently tailored program. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 506 (1989) (faulting the City of Richmond for providing preferences for "Eskimo, or Aleut persons" even though "[i]t may well be that Richmond has never had an Aleut or Eskimo citizen").

Finally, the government asks this Court to dismiss the case based on the decision from an out-of-circuit district court in *DynaLantic Corp. v. U.S. Dep't of Def.*, 885 F. Supp. 2d 237 (D.D.C. 2012) (*DynaLantic II*). This Court is not bound by the analysis in *DynaLantic II*, which if anything, favors *denying* the government's motion in this case. The court in *DynaLantic II* reached its decision on cross-motions for summary judgment— only after the defendants had submitted evidence to meet their burden of establishing a compelling interest in remedying discrimination (which the government has not done here) and after the plaintiffs had a chance to present evidence to rebut the government's initial showing (which Plaintiffs here have not had the opportunity to do). Therefore, *DynaLantic II* underscores that Plaintiffs' claims must move past the pleadings stage.

## III.  Plaintiffs Plausibly Allege that the Racial Classifications Violate the Fifth Amendment

"It is a sordid business, this divvying us up by race." *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 511 (2006) (Roberts, C.J., concurring in part, concurring in the judgment in part, and dissenting in part). Yet the government fails to even respond to Plaintiffs' second claim that the racial classifications established by the 8(a) program

and implementing regulations violate the Fifth Amendment's equal protection guarantee. *See* Compl., Claim II.

The statutes create arbitrary racial classifications that say nothing about any business owner's individual characteristics. The statute presumes social disadvantage for "Hispanic Americans," which some scholars have described as "an artificial rubric for a set of diverse populations that resulted from the mixture of indigenous American peoples, African slaves, and Europeans." Jonathan Borak et al., *Who is Hispanic? Implications for Epidemiologic Research in the United States*, 15 Epidemiology 240, 241 (2004); *see also* Jack D. Forbes, *The Hispanic Spain: Party Politics and Governmental Manipulation of Ethnic Identity*, 19 Latin Am. Persp. 59, 67–68 (1992) (asserting that "the Hispanic concept is a Nixon-engineered political device"). The term "Asian Pacific American" is similarly broad and arbitrary. According to the SBA, that term includes people from Burma, Thailand, Malaysia, Indonesia, Singapore, Brunei, Japan, China (including Hong Kong), Taiwan, Laos, Cambodia, Vietnam, Korea, The Philippines, U.S. Trust Territory of the Pacific Islands, Republic of the Marshall Islands, Federated States of Micronesia, the Commonwealth of the Northern Mariana Islands, Guam, Samoa, Macao, Fiji, Tonga, Kiribati, Tuvalu, and Nauru. *See* 13 C.F.R. § 124.103(b)(1). As Justice Alito aptly noted, it "would be ludicrous to suggest that all of these [individuals] have similar backgrounds and similar . . . experiences to share." *Fisher v. Univ. of Texas*, 579 U.S. 365, 414 (2016) (Alito, J., dissenting). In all, the statutory classifications are too crude to meet the

constitutional demand for "the most exact connection between justification and classification." *Fullilove*, 448 U.S. at 537 (Stevens, J., dissenting). [8]

The regulations fare no better. They assert that a Chinese business owner, but not a Mongolian business owner, is an Asian Pacific American that is presumed socially disadvantaged. The SBA recognizes individuals from Pakistan as presumptively disadvantaged, but arbitrarily excludes individuals from Afghanistan. Without searching judicial inquiry, there is no way to determine whether these seemingly arbitrary distinctions are "in fact motivated by illegitimate notions of racial inferiority or simple racial politics." *Croson*, 488 U.S. at 493.

## IV.    Plaintiffs Plausibly Alleges a Violation of the Nondelegation Doctrine

Article I, § 1, of the Constitution states: "All legislative Powers herein granted shall be vested in a Congress of the United States." Under the nondelegation doctrine, Congress may not "abdicate or [] transfer to others the essential legislative functions with which it is thus vested." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529 (1935). When Congress confers decisionmaking authority upon agencies, Congress must "lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 472 (2001) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)).

---

[8] The statutes also permit race-based preferences for "other minorities" unenumerated in the statutory text. This preference suffers from a similar problem in that it provides gratuitous benefits to individuals that have nothing in common besides their membership in a crudely defined racial group.

Plaintiffs plausibly pled that SBA lacks an "intelligible principle" to select which contracts to reserve for the 8(a) program as the SBA deems "necessary or appropriate" under 15 U.S.C. § 637(a)(1)(B). The Supreme Court's decision in *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935), is illustrative. There, the Court held that a provision of the National Recovery Act was an unconstitutional delegation of legislative power because it gave unfettered discretion to the President to decide whether and under what conditions to prohibit the transport of hot oil. *Id.* at 430. Notwithstanding the general goal of improving American economic conditions, the Act was unconstitutional because Congress failed to make any policy decision governing this issue. *Id.* at 416–18. The President was simply free to weigh competing policy considerations as he deemed "fit." *Id.* at 415.

As in *Panama Refining*, the delegation of authority to the SBA to set aside certain federal contracts to the 8(a) program fails to provide an intelligible principle by which to guide agency discretion and thus violates the nondelegation doctrine. The government retorts that "the language in 15 U.S.C. § 631(f)(1) states the findings made by Congress in enacting the 8(a) program and expresses the policy behind the program, both of which serve to guide SBA in its implementation of the 8(a) program." Mot. to Dismiss at 21. But the findings in 15 U.S.C. § 631(f)(1), and particularly in 15 U.S.C. § 631(f)(1)(F)–(G), only state that procurement from socially and economically disadvantaged businesses can help ameliorate their condition and benefit the United States. These findings provide no guidance on how to allocate contracts. They do not, for example, provide any guidance on what kinds of contracts (e.g., I.T. service contracts or office supplies contracts) should be allocated for the 8(a) program to purportedly remedy discrimination in each particular

industry. In short, the SBA lacks any guidance on the "circumstances and conditions" by which contracts should be set aside for the 8(a) program. *Panama Ref. Co.*, 293 U.S. at 430. To the extent that *Whitman* requires there to be "literally no guidance" for a statute to violate the nondelegation doctrine, the 8(a) program's set-aside provisions are precisely the provisions *Whitman* had in mind. Mot. to Dismiss at 20; 531 U.S. at 474.

Moreover, even if the limitation of "necessary and appropriate" could be said to provide guidance, such a limitation is "no more precise a standard" than that provided by a limitation of "fair competition," which the Court in *Whitman* noted was insufficient to "confer[] authority to regulate the entire economy." 531 U.S at 474. Although the SBA does not regulate the entire economy, the value of all contracts awarded through the 8(a) set-aside program is significant—$8.7 billion in FY 2021. Congressional Research Service, *supra*, at Summary.

The cases the SBA cites as examples of permissible delegations of authority are distinguishable. For example, *Whitman* involved a nondelegation challenge to the Clean Air Act's delegation of authority to EPA to set national ambient air quality standards for ozone and particulate matter at a level "requisite to protect public health." The delegation involved was much narrower than the delegation at issue in § 637(a)(1)(B). 531 U.S. at 472. In *Whitman*, the EPA's discretion involved only setting a numerical level of allowed particulate matter. Although the EPA's decision to set the air pollution level was undoubtedly based on complex factors, the delegation itself to the EPA was narrow. By contrast, the delegation to the SBA to set aside contracts for the 8(a) program as "necessary and appropriate" involves far more discretion—the SBA has discretion to set aside

contracts from *any* industry and for *any* particular good or service. Plaintiffs have plausibly alleged a nondelegation claim.

Plaintiffs also plausibly pled that the 8(a) program is a facially unconstitutional delegation of legislative power to the SBA to the extent it delegates the authority to make or enact racial classifications as the SBA deems "necessary or appropriate" and delegates the authority to decide how to determine whether someone belongs to a particular minority group. Compl. ¶ 109.[9]

Here, significant aspects of the 8(a) program lack any principle whatsoever, let alone an intelligible principle. As operated by the SBA, the 8(a) program has no criteria by which the SBA can determine that specific racial groups should no longer have members presumed to be socially disadvantaged. Although Defendants point to Congress's findings, these findings, to the extent they form any principle, only inform which groups should be *included at the time* Congress created the program. Mot. to Dismiss at 21. Congressional findings provide no principle as to which groups should be *removed*. Indeed, although some racial and ethnic groups have been added to those presumptively considered socially disadvantaged, no racial or ethnic group has ever been removed from that list on the ground that the group is no longer adversely affected by the present effects of past discrimination. Yet without the ability to remove groups whose inclusion is no longer needed to serve a remedial interest, the 8(a) program cannot satisfy strict scrutiny under the Fifth

---

[9] Significantly, plaintiffs challenge both 15 U.S.C. § 631 *et seq. and* 13 C.F.R. § 124.1 *et seq.* Therefore, because the plaintiff in *Rothe Development* challenged the racial classification only in the statute and not in the regulation, *Rothe Development* is distinguishable and of limited relevance to this nondelegation challenge. 836 F.3d at 62.

Amendment. *Adarand Constructors*, 515 U.S. at 238 (strict scrutiny requires the Court to ask "whether the program was appropriately limited such that it 'will not last longer than the discriminatory effects it is designed to eliminate'") (quoting *Fullilove*, 448 U.S. at 513 (Powell, J., concurring)).

Additionally, the SBA lacks any principle, intelligible or not, for designating groups who are presumed to be socially disadvantaged.[10] The Administrator of the SBA is given authority to designate any group as socially disadvantaged as "necessary or appropriate." 15 U.S.C. § 637(a)(1). The Administrator has wide discretion to grant racial groups the presumption of social disadvantage—discretion that is either virtually unfettered (if this Court agrees with Plaintiffs that the statutory preamble in Section 631 is relevant in determining the bounds of the 8(a) program) or literally unfettered (if this Court takes the government's view that the Court should disregard the language in Section 631). As discussed in the following section, the discretion has led to arbitrary distinctions on which groups are entitled to the presumption of social disadvantage, and which groups are not.

**V.  Plaintiffs Plausibly Allege That the SBA's Implementation of the 8(a) Program Violates Other Separation-of-Powers Principles**

The government fails to even address Plaintiffs' other separation-of-powers claims. *See* Compl. Claims for Relief III & V. Plaintiffs plausibly allege that the SBA's designation of racial and ethnic groups granted the presumption of social disadvantage exceeds

---

[10] Even if the relevant statutes provided an intelligible principle, the power to make racial classifications squarely fall within the type of case in which "the significance of the delegated decision is simply too great for the decision to be called anything but legislative." *Whitman*, 531 U.S. at 487 (Thomas, J., concurring).

statutory authority in violation of the Administrative Procedure Act (APA). *See id.*, Claim for Relief III. As an agency, the SBA "has no power to act . . . unless and until Congress confers power upon it." *La. Publ. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Accordingly, the APA directs courts to set aside agency action that is "in excess of statutory jurisdiction [or] authority." 5 U.S.C. § 706(2)(C).

Here, Congress found that socially disadvantaged groups "include, but are not limited to, Black Americans, Hispanic Americans, Native Americans, Indian tribes, Asian Pacific Americans, Native Hawaiian Organizations, and other minorities." 15 U.S.C. § 631(f)(1)(C).[11] Yet SBA has designated numerous "socially disadvantaged" groups on grounds of race and ethnicity. For instance, although the statute affords racial preferences for Asian Pacific Americans, the SBA has expanded the same preferences to groups nowhere mentioned in the statute—such as subcontinent Asian Americans. *See* 13 C.F.R. § 124.103(b)(1). The SBA grants preferences in arbitrary ways. It recognizes a person from China, but not a person from Mongolia, as an Asian Pacific American. *See id.* Its regulations grant the presumption of social disadvantage to a business owner from Pakistan but not one from Afghanistan. *See id.*

The SBA's regulations also violate the APA because they are arbitrary and capricious. *See* Compl. Claim for Relief V. As the Supreme Court recently explained, courts must ensure that agencies "articulate[] 'a satisfactory explanation' for [their]

---

[11] As noted above, the government's position that the statute is race-neutral is wrong. But if the Court were to adopt the government's gloss on the statutory language, that would only exacerbate the SBA's problems under the Administrative Procedure Act because *none* of the racial or ethnic groups designated by the SBA to receive preferential treatment would have been granted such preferential treatment by statute.

decision[s]" and "remain[] within the bounds of reasoned decisionmaking." *Department of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019). The SBA flunks that standard in several respects. As noted above, the SBA draws unreasoned distinctions between business owners from China and business owners from Mongolia; entrepreneurs from Pakistan and entrepreneurs from Afghanistan. What's more, the SBA arbitrarily relies on Directive 15, "Race and Ethnic Standards for Federal Statistics and Administrative Reporting," which itself instructs that its classifications are not "scientific or anthropological in nature," and warns federal agencies against using them. The SBA has failed to provide a satisfactory explanation for its racial and ethnic classifications, and the government offers none in this case.

## VI.    The Statute of Limitations Does Not Bar Plaintiffs' Request for Prospective Relief

The statute of limitations does not bar Plaintiffs' request for injunctive and declaratory relief both because the relief they seek is prospective and the injury they have suffered is continuing. As long recognized by the Fourth Circuit, "[t]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations." *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989) (alteration in original; citation omitted). "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166–67 (4th Cir. 1991) (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)).

Thus, where a plaintiff challenges the constitutionality not of a particular state action that was completed in the past, but of a state law or policy that is currently and will continue to be enforced in the future, the continuing violation doctrine tolls the statute of

limitations. *National Association for Rational Sexual Offense Laws v. Stein*, No. 1:17CV53, 2019 WL 3429120, at *9 (M.D.N.C. July 30, 2019) ("[B]ecause Plaintiffs in this action are seeking prospective relief for the continued enforcement of allegedly unconstitutional amendments to the registry law, the statute of limitations does not bar Plaintiffs' claims."); *see also Williams v. Norfolk & W. Ry. Co.*, 530 F.2d 539, 542 (4th Cir. 1975) (holding in an employment discrimination case that plaintiffs "challenge this continuous discrimination rather than any single discriminatory act").

The government's claim that "[u]nder federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action," *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995), only applies when the plaintiff alleges a past and non-continuing injury. When a plaintiff challenges the constitutionality of a statute, "whose continued application works an ongoing constitutional violation," the ordinary accrual rule does not apply but rather the clock "starts to run anew, every day that the statute applies." *Stein*, 2019 WL 3429120, at *9 (quoting *Wallace v. New York*, 40 F. Supp. 3d 278, 302 (E.D.N.Y. 2014)); *see also DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) ("[W]hen a harm has occurred more than once in a continuing series of acts or omissions, a plaintiff . . . may allege a 'continuing violation' for which the statute of limitations runs anew with each violation.").

By contrast, in each case cited by the government, the plaintiffs' claims related to a "past and non-continuing injury." Mot. to Dismiss at 25–27. For example, in *Nasim v. Warden, Maryland House of Correction*, the plaintiff alleged that the defendants exposed

him to asbestos in his prison cell while he was incarcerated from April 1983 to November 1989, which exposure led to specific personal injuries such as lung disease and skin lesions. 64 F.3d at 952. Yet in *Nasim*, the asbestos was removed in 1989 and Nasim's action was not filed until 1992, "almost four years *after* the alleged asbestos removal." *Id.* at 953 (emphasis added). Likewise, *Johnson v. Jessup* is entirely distinguishable because the plaintiffs there challenged the constitutionality of a "single act," specifically the state's failure to provide notice prior to revoking their drivers' licenses. 381 F. Supp. 3d 619, 636 (M.D.N.C. 2019). As the court noted, the "continuing violation" exception to statutes of limitations "is occasioned by continual unlawful acts, not continual ill effects from an original violation," *Johnson*, 381 F. Supp. 3d at 636 n.19 (quoting *Raleigh*, 947 F.2d at 1166). Because the plaintiffs' claim was that "it is unconstitutional for the DMV to revoke their driver's licenses for failure to pay fines and costs without first affirmatively determining that they have the ability to pay," the plaintiffs' claims relate entirely to acts that occurred in the past—their licenses have already been revoked and, *ipso facto*, their same licenses cannot continue to be revoked by new acts. *Johnson*, 381 F. Supp. 3d at 623.

The fact that Mr. Hierholzer's applications were denied in 2009 and 2016 is irrelevant because, unlike the plaintiffs in *Johnson*, Mr. Hielholzer could apply again for acceptance into the 8(a) program should the racial presumption be struck down. Mr. Hierholzer does not challenge the ill effects of his denial from the 8(a) program, such as his lack of access to the program's many benefits. *See* Compl. ¶¶ 71–73. Nor does Mr. Hierholzer seek to retroactively force the SBA to accept his application, unlike the

plaintiffs in *Johnson* who sought a preliminary injunction "to bar the DMV from revoking licenses." *Johnson*, 381 F. Supp. 3d at 638; Compl. Prayer for Relief ¶¶ A–F.

Instead, Mr. Hierholzer challenges his lack of *opportunity* to compete on an equal footing for eligibility into the 8(a) program and contracts exclusively allocated to the program as applicants who are automatically presumed to be socially disadvantaged because of their race. *See* Compl. ¶¶ 67–68. This is precisely how the court in *Dynalantic I* described the petitioner's injury caused by the 8(a) program. *Dynalantic I*, 115 F.3d at 1016 ("Dynalantic's injury is its lack of opportunity to compete for Defense Department contracts reserved to 8(a) firms."); *see also City of Jacksonville*, 508 U.S. at 666 (contractor's injury in challenge to a minority set-aside program was "the inability to compete on an equal footing in the bidding process, not the loss of a contract"). As the Supreme Court explained in *Regents of University of California v. Bakke* when striking down the University of California's admissions program that set-aside seats for which only members of certain races were eligible: "[Applicants who are not the designated race] are never afforded the chance to compete with applicants from the preferred groups for the special admissions seats. At the same time, the preferred applicants have the opportunity to compete for every seat in the class." 438 U.S. 265, 319–20 (1978).

Like the contractors in *Dynalantic I* and *City of Jacksonville*, and like students in *Bakke* and *Grutter*, Mr. Hierholzer simply seeks to compete on equal footing as those 8(a) program participants who were presumed to be socially disadvantaged. Because Mr. Hierholzer challenges the continued implementation of the racial presumption, each

time the SBA employs its racial classifications constitutes a new act. Accordingly,

Mr. Hierholzer's claims are not barred by the statute of limitations.

## CONCLUSION

Defendants' Motion to Dismiss should be denied.

DATED:  April 7, 2023.

      Respectfully submitted,

| | |
|---|---|
| s/ Alison Somin | s/ Wencong Fa |
| Alison Somin | Wencong Fa* |
| Virginia Bar No. 79023 | Cal. Bar No. 301679 |
| PACIFIC LEGAL FOUNDATION | Joshua P. Thompson* |
| 3100 Clarendon Blvd., Suite 1000 | Cal. Bar No. 250955 |
| Arlington, VA 22201 | PACIFIC LEGAL FOUNDATION |
| Telephone: (202) 888-6881 | 555 Capitol Mall, Suite 1290 |
| Fax: (916) 419-7747 | Sacramento, CA 95814 |
| ASomin@pacificlegal.org | Telephone: (916) 419-7111 |
| | Fax: (916) 419-7747 |
| | WFa@pacificlegal.org |
| | JThompson@pacificlegal.org |

*Attorneys for Plaintiffs*
*Pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2023, I submitted the foregoing to the Clerk of the

Court via the District Court's CM/ECF system, which will provide notice of the submission

of this document to all counsel of record.

<div style="margin-left: 45%;">

s/ Alison Somin
Alison Somin
Virginia Bar No. 79023
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
ASomin@pacificlegal.org

*Attorney for Plaintiffs*

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| Marty Hierholzer, an individual; MJL Enterprises, LLC, a Virginia corporation, <br><br> Plaintiffs, <br><br> v. <br><br> Isabel Guzman, in her official capacity as Administrator of the Small Business Administration; Small Business Administration, <br><br> Defendants. | Civil Case No. 2:23-cv-00024-RAJ-DEM |

**Declaration of Marty Hierholzer in Support of
Plaintiffs' Opposition to Defendants' Motion to Dismiss**

I, Marty Hierholzer, declare under penalty of perjury that the following is true and correct to the best of my present knowledge, information and belief:

1.    I am a citizen of the United States, over 18 years of age, and a Plaintiff in this matter.

2.    I am the owner of Plaintiff MJL Enterprises, a limited liability company organized in the State of Virginia.

3.    I have reviewed 13 C.F.R. § 124.104 entitled "Who is economically disadvantaged?" I believe I am an "economically disadvantaged" individual as defined in that regulation.

4.    My net worth as calculated pursuant to 13 C.F.R. § 124.104(c)(2) is less than $850,000.

5.    My adjusted gross income averaged over the three preceding years does not exceed $400,000.

1

6.      The fair market value of all of my assets does not exceed $6.5 million.


Signed this _29TH_ day of March, 2023, at the City of Virginia Beach, State of Virginia.

Marty Hierholzer

2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| MARTY HIERHOLZER, an individual, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MJL ENTERPRISES, LLC, a Virginia corporation | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-24 |
| | ) | |
| SMALL BUSINESS ADMINISTRATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

The Small Business Act's Section 8(a) Business Development Program ("8(a) program"), challenged here, allows the government to prioritize the issuance of certain contracting opportunities to businesses owned by "socially and economically disadvantaged" individuals. The statute defines socially disadvantaged individuals as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." The Small Business Administration's ("SBA") regulation provides that applicants to the 8(a) program from certain designated racial or ethnic groups receive a rebuttable presumption of social disadvantage but also provides that any citizen of any race or ethnicity can obtain socially disadvantaged status. All of the courts that have reviewed this regulation on a facial challenge have found it to be constitutional.

While Plaintiffs are correct that the challenged regulations (but not the statute) are subject to strict scrutiny, that fact has no bearing on Plaintiffs' standing. And here, Plaintiffs have failed

1

to allege facts that would establish any of the elements of standing: injury in fact, causation, or redressability. Plaintiffs have failed to identify any contracts that they would be better able to compete for absent the presumptions in the 8(a) program. Plaintiffs have not established that Hierholzer can qualify as socially disadvantaged absent the presumptions or meets the race-neutral requirement of economic disadvantage and, as such, the race-conscious presumption has not caused Plaintiffs' alleged injuries. Furthermore, the relief Plaintiffs seek would not redress any of their alleged injuries because they would face the same barriers to entry into the 8(a) program that they do today and any competition they currently face from 8(a) program participants would not change. For these reasons, discussed in more detail below, Plaintiffs have failed to establish any of the three elements required for standing and their Complaint should be dismissed.

**I.    This Court Lacks Subject Matter Jurisdiction Because Plaintiffs Lack Standing.**

A.    <u>Plaintiffs Lack Standing Because They Have Not Plausibly Alleged an Injury in Fact.</u>

Plaintiffs allege that the presumptions in the 8(a) program create a "'barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group.'" ECF No. 26 at 12. Specifically, Plaintiffs allege that the race-conscious presumption puts them on unequal footing when applying for the 8(a) program (hereafter called "application harm") or, separately, when competing with 8(a) participants for contracts (hereafter called "competition harm"). Neither of these theories bears fruit. Plaintiffs fail to allege that they are able and ready to bid on any Section 8(a) program contracts. And the harms that Plaintiffs are purportedly suffering are too speculative to constitute an injury in fact.

1.    <u>Plaintiffs' reliance on *City of Jacksonville* is misplaced.</u>

Plaintiffs rely heavily on *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Florida*, 508 U.S. 656 (1993) (*City of Jacksonville*), to contend that they have plausibly alleged an injury in fact. In *City of Jacksonville*, an association alleged

that "its members regularly bid on construction contracts in Jacksonville, and that they would have bid on contracts set aside pursuant to the city's ordinance were they so able." *City of Jacksonville*, 508 U.S. at 658. The Court in *City of Jacksonville* held that to allege an injury in fact in a context like this one, a plaintiff must "demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *City of Jacksonville*, 508 U.S. at 666.[1]

First, Plaintiffs reliance on *City of Jacksonville* is misplaced because the "discriminatory policy" is not analogous. The presumptions in the Section 8(a) program function differently than the complete set-aside program for only minority contractors at issue in *City of Jacksonville*. The Section 8(a) program's presumptions do not operate as a complete bar to participation in the Section 8(a) program and to compete for contracts. As Plaintiffs point out, hundreds of current Section 8(a) participants did not qualify based on the race-conscious presumptions; they applied to SBA based on their personal narratives and were granted designation of "social disadvantage." ECF No. 26 at 6, n.3.

In addition, *City of Jacksonville* and its progeny do not control because Plaintiffs here have failed to allege that they are "ready and able" to bid on 8(a) contracts. In *City of Jacksonville*, the plaintiff alleged that "many of its members regularly bid on and perform construction work for the City of Jacksonville" and that they "would have bid" on contracts in the set aside program they challenged "were they so able." 508 U.S. at 668. Likewise, in *Cache Valley Electric Co. v. Utah Department of Transportation*, 149 F.3d 1119, 1123 (10th Cir. 1998), the plaintiff alleged "it will continue to apply" for electrical subcontracts in competition with participants of the challenged

---

[1] The discriminatory policy in question was an ordinance entitled "Minority Business Enterprise Participation," which required that 10% of the amount spent on city contracts be set aside each fiscal year for "Minority Business Enterprises" (MBE's). *Id.* at 658.

program. In another case Plaintiffs rely upon, *Adarand Constructors v. Pena*, the plaintiff demonstrated that it bids on "every guardrail project in Colorado," that the defendant was likely to award at least one such contract in Colorado, and that the plaintiff was "very likely to bid on each such contract." 515 U.S. 200, 212 (1995). Finally, Plaintiffs cite *Gratz v. Bollinger*, where the plaintiff alleged that he was ready to apply as a transfer student to one of the defendants, the University of Michigan, if it stopped using race in its admissions process. 539 U.S. 244, 262 (2003). In each of these cases, the plaintiffs alleged that they were "ready" to participate in the program they challenged.

In *DynaLantic Corp. v. United States Department of Defense*, the plaintiff identified a specific contract (a mobile flight simulator for the "Huey" helicopter) that was placed in the 8(a) program. 885 F. Supp. 2d 237, 246-48 (D.D.C. 2012). The plaintiff, which designed and manufactured flight simulators for the military, and had military contracts to do that exact work, claimed it would have competed for that procurement but could not apply because it was not a participant in the Section 8(a) program. *Id.* at 246. These are the type of allegations that a plaintiff must make to demonstrate standing.

Based on these precedents, Plaintiffs here should assert the following to successfully allege standing: (1) they bid on and perform under contracts of the kind that are open to 8(a) program participants, *City of Jacksonville*, 508 U.S. at 668; they would have bid on contracts in the 8(a) program if admitted into the program, *id.*; (2) they will apply in the future for contracts in competition with 8(a) program participants, *Cache Valley*, 149 F.3d at 1122; (3) information about the bids such as when or where such bids might take place, *Adarand*, 515 U.S. at 212; and (4) specific contracts that have been placed into the program that they would have performed, *Dynalantic*, 885 F. Supp. at 246.

A recent district court decision illustrates plaintiffs' burden in cases like this one.[2] In *Bruckner v. Biden*, the plaintiff challenged a federal contracting program that included certain racial and gender preferences similar to those in the 8(a) program. __ F. Supp. 3d __, 2023 WL 2744026, at *2 (M.D. Fla. Mar. 31, 2023). The plaintiffs only made "broad allegations" that they are "qualified, willing, and able" to be a contractor under the challenged program and "can fulfill transportation and infrastructure-related contracts." *Id.* at *4. The court concluded that the plaintiffs failed to sufficiently plead that they were able to bid on the relevant contracts under *City of Jacksonville*. *Id.* at *4-5. The court found that the complaint contained "no allegations regarding Bruckner's expertise, Bruckner's prior experience, PMC's practical capabilities as a company, or any detail regarding the kinds of contracts that the Plaintiffs would like to pursue" under the program at issue. *Id.* at *5. Similarly, the court pointed out that the plaintiffs had "not yet decided on what contracts they [would] bid" if they succeeded in their suit, nor did they "know where they will bid on contracts." *Id.* The court concluded that without such allegations, it was "implausible," under *City of Jacksonville*, that the plaintiffs were able to make bids as participants in the challenged program. *Id.* at *4-5.

Plaintiffs here rely on similarly broad, speculative allegations. Similar to the *Bruckner* plaintiffs' allegation that they were "qualified, willing, and able" to be a contractor under the challenged program, Plaintiffs here simply allege that they "could successfully procure and perform" contracts in the 8(a) program. *Id.* at *4; ECF No. 1 at ¶ 70. Plaintiffs also make no allegations about MJL's "practical capabilities as a company," "the kinds of contracts" Plaintiffs would pursue if admitted into the 8(a) program, on what contracts they would bid, or where they

---

[2] Like in *Interstate Traffic* and *Cache Valley*, the federal contracting program at issue in *Bruckner v. Biden* was the Department of Transportation's DBE program. *Bruckner*, 2023 WL 2744026, at *2.

will bid. *See Bruckner*, 2023 WL 2744026, at *5. Plaintiffs' military background and the general description of MJL's services shed no light on the company's ability to bid on 8(a) contracts open to 8(a) program participants. *See* ECF No. 1 at ¶¶ 14–16, 20–22. Plaintiffs have thus failed to satisfy the standard set forth in *City of Jacksonville*.

### 2.  Plaintiffs fail to plausibly plead application harm.

Plaintiffs also allege that they are injured by a "lack of *opportunity* to compete on an equal footing" for participation in the 8(a) program. ECF No. 1 ¶¶ 67-68. But 8(a) program applicants do not compete against one another like college applicants.[3] There is no cap on the number of 8(a) program participants, and every applicant who meets the eligibility requirements can enter the 8(a) program. If Hierholzer's applications demonstrated that he had been "subjected to racial or ethnic prejudice or cultural bias because of [his] identity as a member of a group without regard to [his] individual qualities," he would have been granted "socially disadvantaged" status by the SBA. 15 U.S.C. § 637(a)(5).

### 3.  Plaintiffs only plead the mere possibility of a competition harm.

Plaintiffs also fail to plausibly allege more than the mere possibility of their alleged competition harm. Plaintiffs fail to allege the denial of equal treatment here, *see City of Jacksonville*, 508 U.S. at 666, because they have not identified contracts in the 8(a) program that they could have performed that were awarded to 8(a) program participants who benefited from a race-conscious presumption. For example, in *Bruckner*, the plaintiffs challenged a program that encouraged contractors to consider race or gender when awarding the contract. *Bruckner*, 2023 WL 2744026, at *7. Other contractors, however, awarded contracts through race-neutral criteria. *Id.* The court reasoned, therefore, that the plaintiffs failed to allege that "they are ready and able

---

[3] It is for this reason that Plaintiffs reliance on *Grutter v. Bollinger*, 539 U.S. 306, 317 (2003) is misplaced as well.

6

to bid on an identified contract or set of contracts" that use race-conscious criteria. *Id.* The court thus concluded that the plaintiffs "only allege the possibility of future harm, not an actual or imminent one." *Id.* This was true even if it was "statistically more likely than not" that the plaintiffs were bidding on contracts that used the race-conscious criteria they were challenging. *Id.* As long as plaintiffs "refus[e] to identify which contracts" that use race-conscious criteria they are "ready and able to compete for," they "fail to allege facts demonstrating" the denial of equal treatment under *City of Jacksonville*. *Id.*

The instant case is similar because, as Plaintiffs concede, many firms participating in the 8(a) program did not benefit from the race-conscious presumption. ECF No. 26 at 6 n.3. Firms owned by white individuals can—and do—gain entry into the 8(a) program. *See* 13 C.F.R. § 124.103(c)(1)-(2). Plaintiffs do not allege that they are "ready and able to bid on an identified contract, or set of contracts" in competition with only participants in the 8(a) program who benefited from the race-conscious presumption. *Id.* Plaintiffs therefore only allege the possibility of future competition harm, "not an actual or imminent one." *Id.* Even if it was "statistically more likely than not" that Plaintiffs were competing with firms that benefited from the race-conscious presumption, that is insufficient to show that such competition is "imminent" or "certainly impending," which is what the Fourth Circuit requires for the injury in fact element. *Buscemi v. Bell*, 964 F.3d 252, 258-59 (4th Cir. 2020) (quoting *Lujan, v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) then *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990)).

The Complaint contains no allegations characterizing the contracts Plaintiffs lost, or how many contracts, or in what industries those contracts arose. ECF No. 26 at 11. Instead, Plaintiffs rely on a conclusory statement in their brief that MJL would have performed on 8(a) program contracts. *Id.* When courts assess factual challenges to standing, like Defendants' challenge here,

they apply the same standard that applies to summary judgment motions and, thus, conclusory statements are insufficient. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) and *Bandy v. City of Salem*, 59 F.4th 705, 709-10 (4th Cir. 2023). Therefore, Plaintiffs' conclusory claim in their brief does not satisfy their burden to establish an injury-in-fact.

     B.  <u>Plaintiffs Lack Standing Because They Have Not Plausibly Alleged Causation.</u>[4]

The instant Complaint fails to adequately plead causation. Plaintiffs' Response to the Motion to Dismiss and the Hierholzer Declaration cannot be used to cure that deficiency. Even if this Court were to consider those documents, they do not establish economic disadvantage.

     1.  <u>Plaintiffs' failure to plausibly allege economic disadvantaged status is dispositive for Defendants' facial challenge to standing.</u>

Plaintiffs' argument that the Complaint need not allege that Hierholzer is economically disadvantaged, *see* ECF No. 26 at 12, is irreconcilable with *SRS Technologies, Inc. v. Department of Defense*, 1997 WL 225979, at *1 (4th Cir. 1997). That case also involved a challenge to the race-conscious presumption in the 8(a) program. The Fourth Circuit found that SRS lacked standing because the company could not participate in the 8(a) program since its owner was not economically disadvantaged. *Id.* The court reasoned that the race neutral economic disadvantage requirement, not race, was dispositive for SRS's application. *Id.* Plaintiffs here similarly fail to allege economic disadvantage in the Complaint even though that requirement is foundational to participation in the 8(a) program. While *SRS Technologies* is not binding on this Court, the case holds substantial persuasive value due to the closely analogous factual and legal posture of the two cases. *See SRS Techs.*, 1997 WL 225979, at *1 ("SBA's requirement of economic disadvantage

---

[4] Throughout their memorandum of law, Plaintiffs refer to the causation element as traceability. Traceability is synonymous with causation. *See Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018).

for entry into the 8(a) Program is a race-neutral criterion. It was by virtue of this race-neutral criterion that plaintiff failed to qualify for a contract award, and its standing to challenge the race-conscious criteria is therefore lacking.").

    2.  <u>The Hierholzer Declaration fails to establish that Hierholzer is economically disadvantaged.</u>

Rather than amend their complaint, Plaintiffs offer a declaration wherein Hierholzer claims that he believes he is economically disadvantaged. *See* ECF 26-1. Even if the assertions in the declaration are accepted as accurate, the Hierholzer declaration does not sufficiently establish that Hierholzer is economically disadvantaged.

Hierholzer only offers conclusory statements that his net worth, adjusted gross income, and assets are lower than the benchmarks listed in 13 C.F.R. §§ 124.104(c)(2), (c)(3), and (c)(4). Such statements, without any supporting evidence, are insufficient to withstand an adequately supported factual challenge to standing. *See Brandy*, 59 F.4th at 710. Even assuming those conclusory statements are true, which Defendants do not concede, an individual may still fail to qualify as economically disadvantaged based on the program's additional requirements for economic disadvantaged status listed in 13 C.F.R. §§ 124.102(b) and 124.102(c)(1). Section 124.102(b) requires 8(a) program applicants to submit a narrative and "personal financial information." Section 124.102(c)(1) lists transfers to immediate family members within the previous two years as one factor that the Small Business Administration ("SBA") considers when evaluating economically disadvantaged status. The declaration does not reference § 124.102(b) or § 124.102(c)(1), though Hierholzer maintains that he "believe[s]" he is an "economically disadvantaged individual" under § 124.102 overall. ECF No. 26-1 at ¶ 3. A subjective conclusory belief about meeting the requirements overall is insufficient to establish economically

disadvantaged status under the 8(a) program's requirements. *See generally*, § 124.102. The declaration therefore fails to support any claim of economic disadvantage.

C. Plaintiffs Lack Standing Because a Favorable Decision Would Not Redress Plaintiffs' Alleged Injuries.

Plaintiffs' argument regarding redressability amounts to a conclusory assertion that if the presumption in the 8(a) program were removed, Mr. Hierholzer's injury would disappear.[5] The reality is that an injunction in this case could not cure Mr. Hierholzer's alleged injuries. Even if the Court eliminated the presumption, the 8(a) program would remain operative because the presumption is severable from the rest of the 8(a) program. *See Cache Valley*, 149 F.3d at 1123 (holding that the bulk of a contracting preference program would remain because the race-conscious presumption is severable from the rest of the program). Win or lose this case, Plaintiffs will be in the exact place they are now.[6] If an injunction is entered, both minority and non-minority applicants will apply for the 8(a) program without the presumption in place. But Plaintiffs have already done exactly that: they applied for socially disadvantaged status twice before and were denied. And the increased burden on minority applicants would have no bearing on any hypothetical 8(a) program application from Plaintiffs because different applicants do not complete against one another. In short, winning this case would do nothing to lead to a different result for Plaintiffs. *See* ECF No. 20 at 11.

_____

[5] Plaintiffs also for the first time suggest the Court could "extend the presumptions [so that] MJL would be presumptively eligible to participate in the 8(a) Program." ECF No. 26 at 14, n.6. This Court should disregard Plaintiffs' suggestion as irreconcilable with their request that the Court "[p]ermanently enjoin enforcement and administration of 15 U.S.C. §§ 631(f)(1)(B) and 637(a)(5)." ECF No. 1 at 20.

[6] Notably, injunctive relief may not be an available remedy in this case because of sovereign immunity. *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990) (relying on 15 U.S.C. § 634(b)(1) to support holding that "courts have no jurisdiction to award injunctive relief against the SBA"). Defendants reserve the right to make that argument if the Court does not dismiss Plaintiffs' Complaint.

Nor would eliminating the race-conscious presumption change the competition that Plaintiffs currently face for government contracts. Plaintiffs do not allege in their Complaint that eliminating the presumption would reduce the number of 8(a) participants.[7] Even if Plaintiffs had alleged that eliminating the race-conscious presumption would lead to fewer 8(a) participants, or if they amended their Complaint to do so, a sister district court in the Fourth Circuit has recognized that such an allegation alone "would be pure speculation." *Interstate Traffic Control v. Beverage*, 101 F. Supp. 2d 445, 453 (S.D. W.Va. 2000). If the Court eliminated the race-conscious presumption, it "would not alter the number or identity of socially and economically disadvantaged individuals eligible to participate" in the 8(a) program. *Id.* It would only alter the method of approval. Only if there are allegations that program participants are failing to "truthfully certify[] social and economic disadvantage" or that the program suffers from any kind of fraud would it be plausible that eliminating the presumption would redress Plaintiffs' injuries. *Id.* But Plaintiffs make no such allegations here, and thus, the program's impact on Plaintiffs "would continue unaltered" even if the Court eliminated the presumption. *Id.*; *see also Cache Valley*, 149 F.3d at 1123 ("[I]t would be pure speculation to conclude that invalidating the allegedly unconstitutional preferences would ameliorate plaintiff's ability to compete in any way."). If the Court eliminated the race-conscious presumption, Plaintiffs would still compete on the same footing with the same number of firms in the 8(a) program that they compete against today.

---

[7] Plaintiffs, for the first time in their opposition to the motion to dismiss, argue that eliminating the race-conscious presumption would reduce the number of 8(a) program participants. ECF No. 26 at 14 n.6. Indeed, Plaintiffs' appear to allege the precise *opposite* in their Complaint, stating that "[i]n the absence of the racial preference, SBA would accept *more* program participants based on individualized evidence of disadvantage." ECF No. 1 at ¶ 66 (emphasis added). Plaintiffs' new allegations regarding the number of 8(a) program participants should not be considered because Plaintiffs cannot amend their complaint through briefing. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011); *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

11

JA106

Finally, Plaintiffs rely on *City of Jacksonville* to assert the plausibility of their allegations related to redressability. ECF No. 26 at 14. But only injury in fact was at issue in *City of Jacksonville*, not redressability. *See* 508 U.S. at 666. Plaintiffs' attempt to collapse these two separate elements of standing defies Supreme Court precedent. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (defining the elements of standing as injury in fact, traceability, and redressability); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (same); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) (same); *Lujan*, 504 U.S. at 560-61 (same).

II.   **Plaintiffs' Claim Under the Nondelegation Doctrine Should be Dismissed Because the Act Provides an "Intelligible Principle" to Guide SBA.**

Like the court did in *Rothe Development, Inc. v. United States Department of Defense*, this Court should reject Plaintiffs' arguments in support of their nondelegation claim because Section 8(a) of the Small Business Act (the "Act") provides SBA with an "intelligible principle" on which to base its regulations. 836 F.3d 57, 74 (D.C. Cir. 2016).[8] Plaintiffs do not dispute that, to prevail on their nondelegation claim, they must show that the Act provides "literally no guidance" to SBA. ECF No. 26 at 21 (citing *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 474 (2001)). Plaintiffs' argument ignores the Act's definitions of socially and economically disadvantaged individuals (15 U.S.C. §§ 637(a)(5) and (6)) which, in conjunction with the Act's Declaration of Policy (15 U.S.C. § 631), provide more than enough guidance to surpass the bar required by the nondelegation doctrine. *S. Carolina Med. Ass'n v. Thompson*, 327 F.3d 346, 350 (4th Cir. 2003) (nondelegation doctrine does not impose an "onerous burden" on government).

---

[8] Plaintiffs argue that *Rothe* is distinguishable from this case because, unlike the plaintiff in *Rothe*, they have challenged both the SBA's regulations and the Act. ECF No. 26 at n.9. This distinction is immaterial to Plaintiffs' nondelegation claim. A nondelegation claim necessarily pertains to a statute, not a regulation, because a plaintiff asserting a nondelegation claim must show that Congress provided no guidance to the Executive *in the statute at issue in the case*. Thus, Plaintiffs' challenge to the regulations does not have any relevance to their nondelegation claim.

Section 8(a) program participants must be owned by individuals who are both socially and economically disadvantaged. 15 U.S.C. §§ 637(a)(5) & (6). Under the Act, a "socially disadvantaged" individual is defined as someone who has "been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." 15 U.S.C. § 637(a)(5). The Act defines an "economically disadvantaged" individual as someone "whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged" and it provides SBA with factors that the agency may consider when determining whether someone is economically disadvantaged. 15 U.S.C. § 637(a)(6)(A). This is far from the "unfettered discretion" afforded by the legislation at issue in *Panama Refining Co. v. Ryan*, 293 U.S. 388, 431 (1935). ECF No. 26 at 20. Contrary to Plaintiffs' claim, these definitions guide SBA's ongoing determinations on which economically disadvantaged individuals have and have not suffered the particular types of bias defined in the statute and whether certain groups of economically disadvantaged individuals should benefit from a presumption of social disadvantage.

Plaintiffs' argument that the Act "lacks any guidance" for which contracts SBA may set aside for the 8(a) program fares no better. ECF No. 26 at 20. The Act allows SBA to enter into contracts with federal agencies "to furnish articles, equipment, supplies, services, or materials to the Government or to perform construction work for the Government." 15 U.S.C. § 637(a)(1)(A). The Act then specifically permits SBA to subcontract with "socially and economically disadvantaged small business concerns" on contracts for "construction work, services, or the manufacture, supply, assembly of such articles, equipment, supplies, materials, or parts thereof, or servicing or processing in connection therewith, or such management services as may be necessary

to enable [SBA] to perform such contracts." 15 U.S.C. § 637(a)(1)(B). Thus, contrary to Plaintiffs'

argument, the Act does not simply give SBA discretion to award contracts as it deems "necessary

or appropriate." ECF No. 26 at 20. For these reasons, the Court should follow the reasoning from

*Rothe*, reject Plaintiffs' arguments in support of their nondelegation claim, and grant Defendants'

motion to dismiss that claim.[9]

### III.    The Court Should Adopt the Reasoning in *Rothe* and Reject Plaintiffs' Equal Protection Challenge to the Act.

The Court should also apply the logic of *Rothe* and hold that the Act itself does not trigger

strict scrutiny because it is race-neutral. 836 F.3d 57, 72-73 (D.C. Cir. 2016). Plaintiffs argue that

this Court should decline to follow *Rothe* because portions of the Congressional findings that

underlie the Act speak in race-conscious terms. ECF No. 26 at 15. But it is well settled that

Congressional findings, "like a preamble, may contribute to a general understanding of a statute,

but unlike the provisions that confer and define agency powers, they are not an operative part of

the statute." *Id.* at 66 (cleaned up); *see also Jurgensen v. Fairfax Cty.*, 745 F.2d 868, 885 (4th Cir.

1984) (holding that legislative preambles are "not an operative part of the statute" and do "not

enlarge or confer powers on administrative agencies or officers"). Thus, the *Rothe* court held that,

while Congress may have had many reasons to identify certain racial groups when it announced

the policy behind the 8(a) program, these Congressional findings do not transform the operative

portions of the Act into a statute that provides preferences to individuals based on their

membership in a racial or ethnic minority group. 836 F.3d at 66-67. Because the operative portions

---

[9] Plaintiffs assert in their brief that Defendants did not address Plaintiffs' other separation-of-powers claims. ECF No. 26 at 23. Defendants have argued that the Court should dismiss all of Plaintiffs' claims, including those separation-of-powers claims, because Plaintiffs lack standing. Defendants reserve the right to make other arguments in defense of Plaintiffs' separation-of-powers claims if the Court denies this motion to dismiss.

of the Act are "facially race-neutral," the Act need only satisfy rational basis review (*id.* at 62-64) and, as the *Rothe* court explained, the Act easily satisfies that standard (*id.* at 73).

## IV. Plaintiffs' Claim for Relief Based on Their Eligibility for the 8(a) Program is Untimely.

Plaintiffs' equal protection challenge to the race-conscious presumption (Claim for Relief I) is untimely. Plaintiffs argue that the statute of limitations does not bar their claim "because the relief they seek is prospective and the injury they have suffered is continuing." ECF No. 26 at 25. But these bare assertions do not end the timeliness inquiry. *See e.g., Johnson v. Jessup*, 381 F. Supp. 3d 619, 636 (M.D.N.C. 2019) (relying on *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991)) and *Bird v. Dep't of Human Svcs.*, 935 F.3d 738, 744-46 and n.4 (9th Cir. 2019).[10] Plaintiffs last applied directly to the SBA for participation in the Section 8(a) program without the benefit of the presumption in 2016, and its administrative appeal of the determination was denied in 2017. To the extent that Plaintiffs have been directly injured by that decision, that injury occurred five years ago.

Plaintiffs now seek to enjoin the presumption prospectively, contending that "Mr. Hierholzer could apply again for acceptance into the 8(a) program should the racial presumption be struck down." ECF 26 at 29. The Ninth Circuit declined a similar entreaty in *Bird*, reasoning that such a standard "would mean that a person who has been harmed by an allegedly unconstitutional statute can bring suit *at any time* so long as the statute remains in operation." *Bird*,

---

[10] Plaintiffs rely on *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653 (4th Cir. 1989) ("*VHA*"). ECF No. 26 at 25. The *Bird* court discussed *VHA* in depth and explained why it did not support the plaintiff's position in that case, which is the same position Plaintiffs have asserted here. *Bird*, 935 F.3d at 744-45. *VHA* merely stands for the proposition that the statute of limitations for a constitutional challenge to a statute begins to run when the plaintiff suffers harm from the statute, not when the statute is enacted. *Id.* The *Jessup* court also considered *VHA* and determined that *VHA* did not save the time-barred claims in that case either. *Jessup*, 381 F. Supp. 3d at 636.

15

935 F.3d at 744 (emphasis in original). Similarly, in *Jessup*, the court dismissed as untimely the claims of some of the plaintiffs who sought prospective injunctive relief to address an unconstitutional statute that continued to harm them. *See* 381 F. Supp. 3d at 623. There is no reason to depart from the ordinary analysis of statute of limitations defenses in cases challenging the constitutionality of a statute. If the race-conscious presumption is unconstitutional, a plaintiff with a timely and procedurally proper claim could challenge it and, thus, it would not be "immune from challenge." *Bird*, 935 F.3d at 746. Therefore, the Court should dismiss Plaintiffs' Claim for Relief I because it is time-barred.

## IV.    Conclusion.

For the reasons discussed above and in Defendants' opening brief, the Court should grant Defendants' motion and dismiss Plaintiffs' Complaint in its entirety.

Date:                                        Respectfully submitted,

OF COUNSEL:                                  KAREN D. WOODARD
                                             Chief
Eric S. Benderson                            Employment Litigation Section
Associate General Counsel for Litigation     Civil Rights Division
                                             United States Department of Justice
David A. Fishman
Assistant General Counsel for Litigation     ANDREW BRANIFF (IN Bar No. 23430-71)
                                             Deputy Chief
Carol-Ann J. Hulme
General Attorney
U.S. Small Business Administration           By: /s/ Allan K. Townsend
                                             Allan K. Townsend (ME Bar No. 9347)
                                             Ejaz H. Baluch, Jr. (MD Bar No. 1612130032)
                                             Trial Attorneys
                                             Employment Litigation Section
                                             Civil Rights Division
                                             United States Department of Justice
                                             150 M Street, N.E.
                                             Washington, D.C. 20002
                                             (202) 353-5343
                                             Allan.Townsend2@usdoj.gov
                                             Ejaz.Baluch@usdoj.gov

JESSICA D. ABER
UNITED STATES ATTORNEY

/s/ Virginia L. Van Valkenburg
Virginia L. Van Valkenburg
Assistant United States Attorney
Virginia State Bar No. 33258
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel: (757) 441-3217
Fax: (757) 441-6689
Virginia.VanValkenburg@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that I served the foregoing document on all counsel of record via the Court's electronic filing system on the date below.

Date:                                    /s/ Allan K. Townsend

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| MARTY HIERHOLZER, an individual, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MJL ENTERPRISES, LLC, a Virginia corporation | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-24 |
| | ) | |
| SMALL BUSINESS ADMINISTRATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO STAY PROCEEDINGS

For the reasons set forth in Defendants' brief in support of this motion, Defendants request that the Court stay proceedings in this case until the sooner of 60 days after the issuance of a judgment in *Ultima Servs. Corp. v. United States Dep't of Agric.*, No. 2:20-cv-00041-DCLC-CRW (E.D. Tenn.), or the parties notify the Court as to whether any party intends to pursue an appeal in that case.  Defendants sought Plaintiffs' concurrence in this motion and Plaintiffs declined to concur.

Date: January 25, 2024

OF COUNSEL:

Eric S. Benderson
Associate General Counsel for Litigation

David A. Fishman
Assistant General Counsel for Litigation

Carol-Ann J. Hulme
General Attorney
U.S. Small Business Administration

Respectfully submitted,

KAREN D. WOODARD
Chief
Employment Litigation Section
Civil Rights Division
United States Department of Justice

ANDREW BRANIFF (IN Bar No. 23430-71)
Deputy Chief

By: /s/ Allan K. Townsend
Allan K. Townsend (ME Bar No. 9347)
Trial Attorney
Employment Litigation Section
Civil Rights Division
United States Department of Justice
150 M Street, N.E.
Washington, D.C. 20002
(202) 353-5343
Allan.Townsend2@usdoj.gov

JESSICA D. ABER
UNITED STATES ATTORNEY

/s/ Virginia L. Van Valkenburg
Virginia L. Van Valkenburg
Assistant United States Attorney
Virginia State Bar No. 33258
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel: (757) 441-3217
Fax: (757) 441-6689
Virginia.VanValkenburg@usdoj.gov

2

JA114

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing document on all counsel of record via the Court's electronic filing system on the date below.

Date: January 25, 2024                          /s/ Allan K. Townsend

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| MARTY HIERHOLZER, an individual, | ) |
| | ) |
| and | ) |
| | ) |
| MJL ENTERPRISES, LLC, a Virginia corporation | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:23-cv-24 |
| | ) |
| SMALL BUSINESS ADMINISTRATION, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO STAY PROCEEDINGS**

Defendants respectfully request that the Court stay all further proceedings in the above-captioned case until the sooner of 60 days after the issuance of a judgment in *Ultima Servs. Corp. v. United States Dep't of Agric.*, No. 2:20-cv-00041-DCLC-CRW (E.D. Tenn.), or the parties notify the Court as to whether any party intends to pursue an appeal. Defendants have conferred with counsel for Plaintiffs, who have represented that they intend to oppose this motion.

**Relevant Background**

As this Court has been made aware, *Ultima* is a case in the District Court for the Eastern District of Tennessee involving the same Small Business Administration (SBA) Section 8(a) Business Development Program at issue in this case. *See* ECF Nos. 34, 34-1. On July 19, 2023, that district court granted plaintiff Ultima Service Corporation's summary judgment motion and held that SBA's "rebuttable presumption" of social disadvantage for certain minority groups was

inconsistent with Ultima Services Corporation's equal protection rights. *See id*. The court consequently enjoined SBA from "using the rebuttable presumption of social disadvantage in administering Defendant SBA's 8(a) program." ECF No. 34-1 at 41. This is the identical relief Plaintiffs have requested in this case. ECF No. 1 at 20. The court in *Ultima* simultaneously reserved ruling on any further remedy subject to briefing and a hearing on those issues on August 31, 2023. ECF No. 34-1 at 41. The *Ultima* court's final ruling remains pending.

In compliance with the *Ultima* court's order, SBA immediately suspended accepting new applications to the 8(a) program and issuing final decisions on any pending applications. *See Ultima*, No. 2:20-cv-00041-DCLC-CRW, ECF 88 at ¶ 2 (Exh. A). It also suspended awarding any new contracts in the 8(a) program pending a review of the social disadvantage of the awardee without use of the presumption. *Id.* at ¶ 6.

On September 29, 2023, SBA began to again accept new applications to the 8(a) program. *See Ultima*, No. 2:20-cv-00041-DCLC-CRW, ECF 94-1, *Decl. of John Klein*, ¶ 10 (Exh. B). Once a new web-based portal for establishing social disadvantage was in place, SBA required all new and current individual 8(a) program applicants and participants to complete a questionnaire and submit a narrative to allow the SBA to evaluate social and economic disadvantage without reliance on the presumption. *Id.* at ¶¶ 2-3. This includes social disadvantage determinations "for new and pending applications from individual business owners and for 8(a) participants that previously relied on the rebuttable presumption." *Id.* at ¶ 2. Consequently, going forward from September 29, 2023, only individual program participants who qualify as socially disadvantaged *without the use of the presumption* have been eligible to qualify for a contract award through the 8(a) program. *Id.* at ¶¶ 10-12.

In accordance with the *Ultima* injunction, all applications continue to be reviewed without any reliance on the presumption of social disadvantage. *Decl. of John Klein,* at ¶ 2 (Exh C). Furthermore, SBA is still not approving contracts for award through the 8(a) program to an 8(a) participant that was admitted to the program based on the rebuttable presumption, unless SBA has determined that the participant meets the standard for social disadvantage without the use of the presumption. *Id.* at ¶ 3. SBA also continues to review the narratives of current participants who have submitted a narrative to qualify for the 8(a) program without the use of the presumption. *Id.* at ¶ 4.

In its motion for further relief, Ultima asked the court to end all uses of the 8(a) program in certain industries. *See Ultima*, No. 2:20-cv-00041-DCLC-CRW, ECF No. 93-1 at 9. On September 29, 2023, the Government filed an opposition to Ultima's motion. *See Ultima*, No. 2:20-cv-00041-DCLC-CRW, ECF 94. The court in *Ultima* has not issued a final order in the case resolving the final scope of the relief awarded to *Ultima*.

## <u>Argument</u>

A district court has broad discretion to stay proceedings under its authority to control its own docket. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In determining whether to stay a case, courts consider the following factors: (1) the length of the requested stay; (2) the hardship or inequity that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; and (4) whether a stay would simplify issues and promote judicial economy. *United States for Use of Precision Air Conditioning of Brevard, Inc. v. Cincinnati Insurance Co.*, 533 F. Supp. 3d 290, 298 (E.D. Va. 2021). Here, the factors strongly weigh in favor of a stay.

Most significantly, a stay would promote judicial economy by preserving judicial resources that this Court would spend resolving the parties' existing and future motions, including the pending motion to dismiss and potential dueling summary judgment motions. A stay is particularly warranted because, if no party elects to appeal the district court's final judgment in *Ultima*, this case would be mooted in its entirety, and could be dismissed on that basis alone, given that SBA's compliance with the court's order in *Ultima* has already resulted in the cessation of the use of race-based presumptions in the 8(a) program. And, even if this case is not entirely mooted by the final resolution in *Ultima*, the issues would certainly be simplified or refined as a result of that case becoming final. Thus, judicial economy strongly favors the issuance of a stay.

A stay is also warranted because Plaintiffs would not be injured. As noted above, SBA has complied with the district court's order in *Ultima* and has stopped employing the race-based presumption with regard to its 8(a) program, both in the application stage and contract award decisions. Any current 8(a) participant who was previously granted entrance into the 8(a) program cannot receive an award through the program unless it successfully reapplies to the program through the submission and review of a narrative.

Consequently, Plaintiffs have already been granted the relief they seek through this case. Should Plaintiffs argue that they continue to suffer harm due to the presumption, we note that nothing prohibits Plaintiffs from reapplying to the 8(a) program now that review does not rely at all on the presumption. And following the order in *Ultima*, the SBA has slightly revised the process to make the application steps easier for the applicants. *See Ultima*, No. 2:20-cv-00041-DCLC-CRW, ECF 94-1, *Decl. of John Klein*, ¶¶ 11-13 (Ex. B). Further, to the extent Plaintiffs

4

here would argue that they have not been afforded all the relief they seek, the *Ultima* court's disposition of the motion for permanent injunction and additional relief may well grant them the entirety of that relief. Neither Plaintiffs' complaint, nor their response to the motion to dismiss, demonstrate that the relief they seek would not be addressed by the final decision in *Ultima*. Indeed, both parties would benefit from a stay, and would face hardship by going forward with this litigation while *Ultima* is still pending, as they would be required to prepare for and appear at oral argument (assuming the argument is not continued or stayed) and expend a considerable amount of time and resources to prepare their summary judgment motions. *Trees v. Serv. Emps. Int'l Union Loc., 503*, 574 F. Supp. 3d 856, 869 (D. Or. 2021) (prospect of unnecessary litigation due to another forum considering same issues in case supported claim of hardship).

Finally, while the length of the requested stay is currently indeterminate, it is pertinent to note that *Ultima* is procedurally very near final district court disposition; the court in that case has granted summary judgment to the plaintiff and needs only to issue a ruling on any further relief requested, which has been fully briefed.  Moreover, once the judgment in *Ultima* issues, the parties only have only 60 days in which to file a notice of appeal.  This stands in stark contrast to the present case, which is in its early stages.  Accordingly, this factor favors the issuance of a stay, particularly given that, as discussed *supra*, the parties would not be prejudiced by the indeterminate nature of the stay.

## **Conclusion**

For the aforementioned reasons, Defendants respectfully request that this Court stay further proceedings in this action until the sooner of 60 days after the issuance of a judgment in *Ultima*, or the parties notify the Court as to whether any party intends to pursue an appeal of that

5

case.  Defendants further request that the Court allow the parties to submit a joint status report within 14 days of the expiration of the stay setting forth the parties' positions on whether this case should proceed and, if so, whether the issues in this case have been narrowed.

Date: January 25, 2024                    Respectfully submitted,

OF COUNSEL:                               KAREN D. WOODARD
                                          Chief
Eric S. Benderson                         Employment Litigation Section
Associate General Counsel for Litigation  Civil Rights Division
                                          United States Department of Justice
David A. Fishman
Assistant General Counsel for Litigation  ANDREW BRANIFF (IN Bar No. 23430-71)
                                          Deputy Chief
Carol-Ann J. Hulme
General Attorney
U.S. Small Business Administration        By: /s/ Allan K. Townsend
                                          Allan K. Townsend (ME Bar No. 9347)
                                          Trial Attorney
                                          Employment Litigation Section
                                          Civil Rights Division
                                          United States Department of Justice
                                          150 M Street, N.E.
                                          Washington, D.C. 20002
                                          (202) 353-5343
                                          Allan.Townsend2@usdoj.gov


                                          JESSICA D. ABER
                                          UNITED STATES ATTORNEY

                                          /s/ Virginia L. Van Valkenburg
                                          Virginia L. Van Valkenburg
                                          Assistant United States Attorney
                                          Virginia State Bar No. 33258
                                          United States Attorney's Office
                                          101 West Main Street, Suite 8000
                                          Norfolk, Virginia 23510
                                          Tel: (757) 441-3217
                                          Fax: (757) 441-6689
                                          Virginia.VanValkenburg@usdoj.gov

6

JA121

**<u>CERTIFICATE OF SERVICE</u>**

I certify that I served the foregoing document on all counsel of record via the Court's electronic filing system on the date below.

Date: January 25, 2024                                  <u>/s/ Allan K. Townsend</u>

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| ULTIMA SERVICES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00041-DCLC-CRW |
| | ) | |
| U.S. DEPARTMENT OF AGRICULTURE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' NOTICE OF COMPLIANCE**

1.      Defendants respectfully submit this Notice of Compliance to inform the Court of actions taken by Defendants to comply with this Court's July 19, 2023 Opinion and Order, ECF No. 86, granting in part Plaintiff's Motion for Summary Judgment, ECF No. 60.

2.      The Court's July 19 Order enjoined Defendants from "using the rebuttable presumption of social disadvantage in administering Defendant SBA's 8(a) program." ECF No. 86 at 41. Without waiving the right to seek relief from the Court's Order or the scope of the injunction, either in this Court or on appeal, Defendants have taken immediate, good-faith steps to comply with the July 19 Order as expeditiously as possible given the size and complexity of the federal contracting activity implicated by the injunction.

3.      Following the Court's July 19 Order, SBA suspended the acceptance and processing of new applications to the 8(a) program and also suspended the issuance of final decisions on pending applications that relied on the rebuttable presumption. *See* Declaration of John Klein ("Klein Decl.") at ¶¶ 2-3, attached hereto as Exhibit A.

1

JA123

4.     SBA is developing a revised process for establishing social disadvantage that will not rely on the rebuttable presumption of social disadvantage. *See* Klein Decl. at ¶ 4.

5.     Until the revised process is in place, SBA will make all determinations of social disadvantage for individual-owned small business owners, whether for new applicants, current participants, or at the award stage, using the existing process that SBA has used to evaluate the social disadvantage of individual-owned firms that did not previously qualify for the rebuttable presumption. *See* Klein Decl. at ¶ 5.

6.     SBA plans to use the existing or revised process, when it is ready, to review new applications and to approve awards of any new contract for any agency in the federal government to an individual-owned participant who has not affirmatively established social disadvantage without reliance on the presumption. Before approving such an award, or any contracting action that requires an eligibility determination by SBA, SBA will require the business owner of the awardee or winning bidder on the contract to complete the revised process to establish social disadvantage if the individual has not already done so through a previous award process, at the application stage, or through the process described in paragraph 7. If the business owner cannot establish social disadvantage, SBA will advise the requesting agency to award the requirement to a different 8(a) participant who can establish program eligibility, or to award the contract through alternate means. *See* Klein Decl. at ¶ 6.

7.     SBA also will require all remaining 8(a) participants who were admitted to the program based on the rebuttable presumption but that have not had their eligibility determined by the process described in paragraph 6, to affirmatively establish social disadvantage without reliance on the rebuttable presumption, either under the existing or revised process. *See* Klein Decl. at ¶ 7.

2

8.    SBA has not suspended the evaluation of applications submitted by or the approval of awards to small businesses eligible for the 8(a) program based on ownership by Indian tribes, Alaska Native Corporations ("ANCs"), Community Development Corporations ("CDCs"), and Native Hawaiian Organizations ("NHOs") because these businesses are not deemed eligible to participate in the 8(a) program through the rebuttable presumption of social disadvantage of the business owner. *See* Klein Decl. at ¶ 8. Defendants do, however, understand the Court's injunction to apply to small businesses that are individually-owned by Native Americans (including Alaska Natives, Native Hawaiians, or enrolled members of a federally or state recognized Indian tribe) to the extent that such businesses relied on the rebuttable presumption to establish social disadvantage.

9.    SBA has not conducted new eligibility determinations on contracts where SBA approved the 8(a) award and the 8(a) awardee prior to the Court's July 19 Order. *See* Klein Decl. at ¶ 9. Under SBA's regulations, SBA conducts an eligibility determination when an 8(a) sole source procurement is accepted into the program or when an apparent successful offeror on a competitive 8(a) procurement is identified. *See* 13 C.F.R. § 124.501(g). After that point, no further eligibility determination is required unless there is a new contracting action.

10.    Federal agencies can take various actions after SBA approves a new requirement for award through the 8(a) program or approves an 8(a) successful offeror that do not constitute new contracting actions and so do not require a new SBA eligibility determination. For example, agencies can finalize and sign contracts with the previously approved 8(a) awardees or exercise priced options and in-scope modifications. These agency actions do not require an SBA eligibility determination. Accordingly, they do not involve the use of the rebuttable presumption.

11.    On August 18, 2023, SBA issued guidance to all government agencies reflecting the steps SBA has taken and providing instructions for agencies to comply with the Court's injunction. *See* Klein Decl. at ¶ 10.

12.    On August 21-22, 2023, SBA issued a notice to all 8(a) participants who were admitted to the program based on the rebuttable presumption, notifying them that each such participant will be required to affirmatively establish social disadvantage without the use of the presumption. *See* Klein Decl. at ¶ 11.

13.    Defendants believe that the actions described in this Notice are consistent with the Court's Order and are prepared to further discuss the implementation of the injunction at the hearing the Court has scheduled for August 31, 2023. In taking the actions described above to comply with the Court's Order, Defendants reserve their right to challenge the basis for and scope of the injunction, either in this Court and on appeal.


Dated: August 29, 2023


                                            Respectfully submitted,

                                            KAREN D. WOODARD
                                            Chief
                                            Employment Litigation Section
                                            Civil Rights Division
                                            United States Department of Justice

OF COUNSEL:

David A. Fishman                            ANDREW BRANIFF (IN Bar No. 23430-71)
Assistant General Counsel for Litigation    Deputy Chief


Eric S. Benderson
Associate General Counsel for Litigation    By: */s/ Juliet E. Gray*
U.S. Small Business Administration          Juliet E. Gray (D.C. Bar No. 985608)
                                            Christine T. Dinan (D.C. Bar 979762)

4

Stephanie Moore
Senior Counsel

Angela Boyd Matthews
Associate Regional Attorney
U.S. Department Of Agriculture

Kacie S. Candela (N.Y. Bar No. 6013106)
Trial Attorneys
Employment Litigation Section
Civil Rights Division
United States Department of Justice
150 M Street, N.E.
Washington, D.C. 20002
(202) 598-1600
Juliet.Gray@usdoj.gov
Christine.Dinan@usdoj.gov
Kacie.Candela@usdoj.gov

5

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 29, 2023, I electronically filed the above document and with the Clerk of the Court using the ECF System, which will send notification of such filing to all counsel of record.

<div style="text-align: right">

*/s/ Juliet E. Gray*_____
 Juliet E. Gray
 Senior Trial Attorney

</div>

6

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| ULTIMA SERVICES CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 2:20-cv-00041-DCLC-CRW |
| | ) |
| U.S. DEPARTMENT OF AGRICULTURE, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF JOHN W. KLEIN

I, John W. Klein, declare as follows under penalty of perjury:

1.      I presently serve as Deputy General Counsel and Associate General Counsel for Procurement Law at the Small Business Administration ("SBA").

2.      Since the Court's July 19, 2023 Order, SBA is making all social disadvantage determinations pursuant to the standard for nonpresumptive applicants as directed in 13 C.F.R. § 124.103(c). This includes social disadvantage determinations for new and pending applications from individual business owners and for 8(a) participants that previously relied on the rebuttable presumption.

3.      The social disadvantage determination involves reviewing a business owner's narrative of social disadvantage and ensuring that the information provided satisfies each of the elements in 13 C.F.R. § 124.103(c) by a preponderance of the evidence. If an individual fails to provide sufficient evidence for SBA to make a determination regarding social disadvantage, SBA may follow up with the individual to request additional evidence. This was the case for individual-owned applicants prior to the Court's injunction and will continue to be the case.

1

JA129

4.    SBA is not approving contracts for award through the 8(a) program to an 8(a) participant that was admitted to the program based on the rebuttable presumption unless SBA has determined that the participant meets the standard for social disadvantage set forth under 13 C.F.R. § 124.103(c). SBA has required all such participants with pending 8(a) awards to submit the evidence of social disadvantage required by 13 C.F.R. § 124.103(c). The Office of Certification and Eligibility ("OCE") is reviewing the evidence submitted and making determinations as to whether each such participant has established social disadvantage by a preponderance of the evidence.

5.    The fourth quarter of the fiscal year is the busiest time of the year for federal procurement. Typically, over 40 percent of contract dollar awards and contract actions under the 8(a) program occur during August and September of the federal fiscal year. Therefore, to meet the demand to process requests from federal agencies to award contracts through the 8(a) program to such participants, SBA has assigned four attorneys from SBA's Office of General Counsel to assist OCE with these determinations.

6.    SBA is making the social disadvantage determinations described in paragraph 4 for any contract action that requires an SBA eligibility determination. While SBA has not been presented with requests for each of these types of contract actions since the Court's July 19 Order, the list of contract actions that require an SBA eligibility determination includes: new contract awards; follow-on or repetitive contracts; substitutions; unpriced options; out-of-scope modifications; novations; task or delivery orders issued under a Blanket Purchasing Agreement or Basic Ordering Agreement; multiple-award contracts and other types of task and delivery order contracts; task or delivery orders under multiple-award contracts not initially set-aside at least partially for competition among 8(a) firms; and sole-source awards.

2

7.      Federal agencies may take various actions on contracts already approved for award through the 8(a) program that do not require an additional SBA eligibility determination. These actions include: the exercise of priced options; in-scope modifications; competed task or delivery orders issued under existing 8(a) multiple award contracts; and task and delivery orders issued under GSA Federal Supply Schedule contracts that were already accepted by SBA. Federal agencies do not submit these actions to SBA for approval; thus, SBA has not been making 8(a) eligibility determinations as to these actions.

8.      SBA also has begun making social disadvantage determinations for 8(a) participants admitted to the program based on the presumption that have not already submitted evidence of social disadvantage in connection with a contract award, as described in paragraph 4. On September 6, 2023, SBA opened the online portal for 8(a) participants who previously relied on the rebuttable presumption to submit evidence of social disadvantage pursuant to 13 C.F.R. § 124.103(c). On September 12, 2023, SBA contacted all such participants to advise them that the portal was open. On September 15, 2023, SBA advised these participants that they were highly encouraged to submit evidence of social disadvantage by September 30, 2023.

9.      Given the large number of social disadvantage determinations that SBA must make due to the Court's Order, SBA has assembled a task force comprised of personnel from OCE and approximately 30 attorneys from SBA's Office of General Counsel to conduct the determinations of social disadvantage of 8(a) participants admitted based on the presumption that are not connected with pending contract awards. The attorneys on the task force received three trainings on how to properly evaluate social disadvantage, and the task force is conducting the evaluations in the same manner as the OCE personnel conducting social disadvantage determinations associated with contract awards.

3

JA131

10.     On September 29, 2023, SBA reopened its online portal for the submission of new applications to the 8(a) program. SBA also has resumed processing applications that had been pending at the time of the Court's July 19, 2023 Order. If a pending application relied on the presumption of social disadvantage, SBA will contact the applicant and require them to submit the evidence of social disadvantage required by 13 C.F.R. § 124.103(c). Each such submission will go through the same review process as an initial application.

11.     The process for new applicants to submit evidence of social disadvantage has been revised slightly. Prior to the Court's injunction, SBA's application portal asked applicants to "attach a narrative statement providing specific claims, incidents of bias, or discriminatory conduct directed towards you." The portal provided guidance for the narrative, including the elements requirement by 13 C.F.R. § 124.103(c). Applicants also were instructed to provide the following details in the narrative: when and where each incident occurred; who committed the act; how the incident took place; and how the incident negatively impacted your entry into or advancement in the business world.

12.     The revised portal now includes prompts for applicants to focus the social disadvantage responses. Thus, rather than simply provide guidance as to the information the narrative must include, the portal asks applicants to provide written responses to questions, such as: "What happened?"; "How did this situation affect opportunities in your education or professional career, or to create or expand your business?"; When did it happen?"; "Where did it happen?" Since all individual-owned applicants to the 8(a) program will now be required to submit evidence of social disadvantage, whereas previously only a relatively small percentage of applicants did, the goal is to ensure that applicants provide the required information the first time

and hopefully reduce the need for SBA to go back to the applicant and request additional information.

13.    The online portal that 8(a) applicants and participants use to submit eligibility materials includes a notice that "SBA will protect the information you provide in accordance with the Privacy Act of 1974 and will only share information provided as required by law."

14.    On August 17, 2023, I participated in a webinar sponsored by the National 8(a) Association. The purpose of the webinar was to provide updates on the operation of the 8(a) program in light of the Court's July 19 Order, including the requirement for all 8(a) participants who were admitted based on the presumption to submit evidence establishing social disadvantage pursuant to 13 C.F.R. § 124.103(c). When I stated that "we're going to make this as easy as possible for everyone," my intention was to assure federal agencies and small businesses in the 8(a) program that SBA would be doing its best to process requests from agencies for contract awards through the 8(a) program as efficiently as possible. I stated during the webinar that participants will have to meet the burden to establish social disadvantage and that the questionnaire to establish social disadvantage will be the same for all individuals, whether a member of a formerly presumed group or not. The webinar is available to view at https://www.youtube.com/watch?v=uWmH_Ol6dBM.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 29, 2023

John W. Klein

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| MARTY HIERHOLZER, an individual, | ) |
| | ) |
| and | ) |
| | ) |
| MJL ENTERPRISES, LLC, a Virginia | ) |
| corporation | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 2:23-cv-24 |
| | ) |
| SMALL BUSINESS ADMINISTRATION, et | ) |
| al., | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF JOHN W. KLEIN

I, John W. Klein, declare as follows under penalty of perjury:

1.      I presently serve as Deputy General Counsel and Associate General Counsel for Procurement Law at the Small Business Administration ("SBA").

2.      Since July 19, 2023, SBA is making all social disadvantage determinations pursuant to the standard for nonpresumptive applicants as directed in 13 C.F.R. § 124.103(c). This includes social disadvantage determinations for new and pending applications from individual business owners and for 8(a) participants that previously relied on the rebuttable presumption.

3.      The social disadvantage determination involves reviewing a business owner's narrative of social disadvantage, and ensuring that the information provided satisfies each of the elements in 13 C.F.R. § 124.103(c) by a preponderance of the evidence. If an individual fails to provide sufficient evidence for SBA to make a determination regarding social disadvantage, SBA may follow up with the individual to request additional evidence. This was the case for individual-

1

owned applicants prior to the *Ultima* Court's injunction (ECF No. 34-1) and will continue to be the case.

    4.    SBA is not approving contracts for award through the 8(a) program to an 8(a) participant that was admitted to the program based on the rebuttable presumption, unless SBA has determined that the participant meets the standard for social disadvantage under 13 C.F.R. § 124.103(c).

    5.    On July 21, 2023, SBA suspended the acceptance and processing of all new applications to the 8(a) program, which entailed closing its online application portal. On September 29, 2023, SBA reopened its online portal for the submission of new applications to the 8(a) program. SBA also resumed processing applications that had been pending at the time of the *Ultima* Court's July 19, 2023 Order. If a pending application relied on the presumption of social disadvantage, SBA contacted the applicant and required them to submit the evidence of social disadvantage required by 13 C.F.R. § 124.103(c). Each such submission receives the same review process as an initial application.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 25 2024

_____
John W. Klein

2

JA135

1

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
 2                      Norfolk Division

 3

 4   - - - - - - - - - - - - - - - - - -
                                       )
 5     MARTY HIERHOLZER, et al.,        )
                                        )
 6          Plaintiffs,                 )      CIVIL ACTION NO.
                                        )         2:23cv24
 7     v.                               )
                                        )
 8     ISABEL GUZMAN, et al.,           )
                                        )
 9          Defendants.                 )
     - - - - - - - - - - - - - - - - - -

10

11                  TRANSCRIPT OF PROCEEDINGS
                        (Motion Hearing)
12
                     Norfolk, Virginia
13
                     January 31, 2024
14

15
     BEFORE:  THE HONORABLE RAYMOND A. JACKSON
16            United States District Judge

17
     APPEARANCES:
18
             PACIFIC LEGAL FOUNDATION
19           By:  Glenn E. Roper
                  Joshua P. Thompson
20                Counsel for the Plaintiffs

21           U.S. DEPARTMENT OF JUSTICE - CIVIL RIGHTS DIVISION
             By:  Andrew Braniff
22                Allan Townsend
                  David Fishman
23                Sosun Bae
                  Eric Benderson
24                Virginia Van Valkenburg
                  Counsel for the Defendants
25
```

2

```
 1                (Proceedings commenced at 11:02 a.m.)
 2           THE CLERK:  Marty Hierholzer, et al., versus Isabel
 3    Guzman, et al., in Civil Action 2:23cv24.
 4           Mr. Roper, is the plaintiff ready to proceed?
 5           MR. ROPER:  Yes.
 6           THE CLERK:  Mr. Braniff, is the defendant ready to
 7    proceed?
 8           MR. BRANIFF:  Yes.
 9           THE COURT:  Good morning, gentlemen.  We're here
10    this morning on the Defendants' Motion to Dismiss.  The Court
11    has had an opportunity to read the briefs, the reply brief,
12    the supplemental authority, the opinion of my colleague in
13    the District of Tennessee, and the Court is prepared to go
14    forward this morning on the hearing.
15           So let's get right to it.  It's the government's
16    Motion to Dismiss, and who will be arguing for the SBA?
17           MR. BRANIFF:  Your Honor, myself, Andrew Braniff,
18    and Allan Townsend.
19           THE COURT:  Okay.  I will hear what you have to say.
20           MR. BRANIFF:  May it please the Court.  My name is
21    Andrew Braniff.  I'm here on behalf of the Small Business
22    Administration.  I'm here with my colleagues Allan Townsend
23    and Sosun Bae.  David Fishman and Eric Benderson from the
24    Small Business Administration are also here, as is Virginia
25    Van Valkenburg from the Eastern District of Virginia.
```

```
 1          Your Honor, this Court should grant this Motion to
 2   Dismiss, but before we get to the elements of the motion that
 3   we filed, we thought it was important to inform the Court of
 4   the actions that the Small Business Administration has taken
 5   since the entry of the order in *Ultima versus the Small*
 6   *Business Administration* to demonstrate that the world in
 7   which we're living in with regard to the 8(a) program has
 8   changed dramatically since this Complaint was filed last
 9   January and since the Motion to Dismiss last March.
10          To put it quite simply, the presumption at issue in
11   this case has been purged from the process.  On July 19th of
12   last year, the Eastern District of Tennessee ordered the
13   Small Business Administration and the U.S. Department of
14   Agriculture, or the defendants in that case, to stop the use
15   and application of the presumption in the 8(a) program, and
16   following that order, that is exactly what the Small Business
17   Administration has done.
18          There are three points at which the presumption is
19   used in the process, or has been shown by the SBA:  at the
20   application stage; at the award stage; and at the annual
21   review stage.  At all of those stages of the process, the
22   presumption has been removed.
23          Immediately following that order, the Small Business
24   Administration paused all application of individuals to the
25   8(a) program.  They reopened the portal to apply on
```

4

```
 1   September 23rd of last year, and at that time, when it was
 2   reopened, there was no presumption at all based on race or
 3   ethnicity.  Each individual applicant, regardless of their
 4   race or ethnicity, has to go through the exact same process
 5   to establish social and economic disadvantage.  No change
 6   regardless of your racial or ethnic background.  Each
 7   application is judged independently of that.
 8           Similarly, at the time the order was entered, the
 9   SBA paused the award of 8(a) -- awards into the 8(a) program
10   going to individual 8(a) members.  Following the opening of
11   the portal, they have reinstituted doing those awards;
12   however, every time an award was requested by an agency, the
13   SBA would review whether or not the awardee in the 8(a)
14   program had gotten into the 8(a) program either through the
15   presumption or not.
16           If it was through the presumption, they required
17   that individual to reapply to the program and only award that
18   contract if that individual could receive the award without
19   the presumption -- or receive the 8(a) designation without
20   the presumption.
21           Finally, after the reopening of the portal, they
22   contacted all current members of the 8(a) program who had
23   been entered into the program with the use of the presumption
24   and required them to reapply to the program without the use
25   of the presumption, going through this -- a similar process
```

1    that new applicants would have to go through.

2          THE COURT:  Wouldn't that be difficult for people

3    who have relied on the fact that they used the presumption to

4    get in the program and are in the midst of doing business and

5    then you tell them to reapply and start all over again?

6          MR. BRANIFF:  It was a burden for the current

7    members in the program.  There were approximately 3,900

8    individuals in the program at the time.  If they chose to

9    reapply, in order to stay in the 8(a) program, they were

10   required to go through the process described; difficulties

11   based on their membership in a group, or otherwise

12   difficulties entering the marketplace, or in their education,

13   or other aspects that would cause them to be designated

14   socially or economically disadvantaged.

15         They're still going through that process for all of

16   the individual members, but every time an award is being

17   made, the individual business owner who is in the 8(a)

18   program has to be in the program without the use of the

19   presumption prior to that award being made.

20         So there's no point in the process anymore where a

21   presumption can affect any current member of the program, and

22   thus, the claims for relief that the plaintiff sought in

23   their Complaint simply don't exist anymore.

24         Their first claim for relief sought that the

25   presumption that designated groups that are socially

```
 1  disadvantaged denies them equal protection.  That presumption
 2  doesn't exist.  It doesn't exist at the application stage; it
 3  doesn't exist at the award stage; and all current members who
 4  are currently designated to get an award have to go through
 5  the process without the presumption.
 6          THE COURT:  So your argument is the current
 7  plaintiffs' Complaint and the issues have been mooted?
 8          MR. BRANIFF:  We don't have a final order in the
 9  Ultima case yet, following the decision there where the Court
10  enjoined the use of the presumption in the application of the
11  8(a) program and ordered argument on August 31st of last
12  year.  Following that, they had briefing for additional
13  relief that plaintiff in that case may have sought.
14  Additional briefing was completed in October, and we are
15  waiting for a final order on that decision.
16          That final order may augment the nature of the
17  injunction, but this Court doesn't need to reach mootness in
18  order to dismiss this matter now simply because there's no
19  injury or redressability here.
20          THE COURT:  The simple truth is, no matter what the
21  Court does, the SBA has moved ahead to remove the presumption
22  itself.
23          MR. BRANIFF:  Correct.  The SBA interpreted the
24  injunction quite broadly.
25          The second claim for relief that they seek seeks to
```

Carol L. Naughton, Official Court Reporter

JA141

```
 1   remove the racial classifications.  Again, those racial
 2   classifications no longer matter because all of the
 3   presumptions have been removed.
 4          The third claim for relief says that the SBA's
 5   rulemaking authority by which they chose the racial groups
 6   who enjoyed the social presumption violated the
 7   Administrative Procedures Act.  Again, there are no more
 8   racial classifications that get the presumption, so that is
 9   gone.
10          The delegation of an unconstitutional legislative
11   power no longer matters because the SBA is no longer using
12   the presumption, and stating that the SBA regulations are
13   arbitrary and capricious also no longer is in effect because
14   the presumptions simply don't exist.
15          And so because of this dramatically different world
16   that we're existing in, plaintiff is no longer being harmed
17   by the racial presumptions.  There's no injury, and there's
18   nothing that this Court can do to redress any alleged
19   injuries, but I'll pass it over to my co-counsel.
20          THE COURT:  I have a question for you before you sit
21   down.  I recognize what you have said, but the Court has a
22   curiosity.  When the plaintiff last applied for the program,
23   what was the specific ground on which SBA rejected his
24   request to enter the program?
25          MR. BRANIFF:  So it's my understanding that the
```

8

1    plaintiff applied twice.  The most recent application, I
2    believe the SBA determined that the plaintiff had not
3    demonstrated that it was his membership in a group that
4    caused a barrier or a burden on him in entering the economic
5    marketplace.
6         The standards for the application process have not
7    changed.  The regulations behind them haven't changed, but
8    the process has.  There's a brand new portal in place that
9    alters the way in which individual applicants or current
10    members submit their narratives of disadvantage, to make it
11    more user friendly.
12         It's -- because of the new front-end process, it's
13    possible that if plaintiff were to reapply at this point, his
14    ability to describe his social disadvantage might be viewed
15    or organized differently, let's say, in order for the SBA to
16    consider the application.
17         THE COURT:  Don't all applicants to the SBA program
18    have to satisfy -- what is it? -- I think it's Section 13 CFR
19    Section 124.104 dealing with certain economic
20    disadvantages --
21         MR. BRANIFF:  That's correct.
22         THE COURT:  -- based on the amount of their income,
23    their net worth, et cetera, before they can even get into the
24    SBA program?
25         MR. BRANIFF:  That's correct, Your Honor.  Both the

Carol L. Naughton, Official Court Reporter

JA143

1 | social and economic disadvantage also have net worth limits
2 | on all applicants regardless of their narrative of
3 | disadvantage.
4 |         THE COURT:  All right.  Thank you very much.
5 |         I thought your cohort had said it all.  Let me see
6 | what you have to add.
7 |         MR. TOWNSEND:  Allan Townsend for the United States,
8 | Your Honor.  I might not have much more to add.  I just
9 | wanted to look at this from the lens of standing.  The three
10 | elements of standing, as you know, are injury, causation, and
11 | redressability.  Because of the ultimate injunction, it's
12 | even more apparent now than it was before that the
13 | plaintiffs' alleged harms are no longer present.
14 |         The race-conscious presumption, as Mr. Braniff has
15 | said, has been purged from the process, so there are no
16 | longer any race-based elements for the plaintiff to
17 | challenge.  And because of that, they cannot establish any
18 | injury from any race-based element, and for the same reason,
19 | no race-based element is causing any injury.  And because
20 | there's no injury from a race-based element, there's nothing
21 | to redress.
22 |         So on all three of those elements of standing, the
23 | plaintiffs cannot meet their burden to establish it.
24 |         THE COURT:  Thank you.
25 |         State your name for the record again, please.

Carol L. Naughton, Official Court Reporter

JA144

```
1            MR. ROPER:  Yes.  Good morning, Your Honor.  My name
2    is Glenn Roper for the plaintiffs.
3            THE COURT:  Okay.
4            MR. ROPER:  Your Honor, you heard this morning, I
5    think for the first time presented to this Court, some of
6    what SBA says it is doing in response to the Ultima decision.
7    But what you also heard my friend on the other side say is
8    that they are not arguing that this case is moot.  And there
9    are two important reasons for that:
10           One is there has not been a final judgment issued in
11   the Ultima case, and so we don't yet know what the final
12   relief will look like.  The parties in the Ultima case have
13   briefed the appropriate remedy, and my understanding from
14   looking at that briefing is that there is some dispute from
15   the plaintiff on that in that case as to whether SBA is
16   continuing to provide a discriminatory approach to those who
17   would have fallen under the presumption.
18           Secondly, the government has not indicated whether
19   it would appeal the Ultima decision.  And the facts that a
20   district court in another state has issued an injunction does
21   not freeze the litigation on the same topic nationwide, and
22   it certainly does not deprive this Court of jurisdiction.
23           So the government is not even arguing that this case
24   is moot, and with respect to standing, standing is determined
25   as of the time that the Complaint was filed.  If they want to
```

```
 1    suggest that circumstances have changed such that there is
 2    now a mootness issue, they can raise that at the appropriate
 3    time.  They have, you know, disclaimed doing so here.  They
 4    do not say that the case is moot yet.
 5            And so if they were to raise the mootness issue at
 6    some point in the future, I think the Court could consider it
 7    at that point, but here where we are now, I think the Court
 8    should address the Motion to Dismiss and proceed.
 9            THE COURT:  That being the case, let's go back.
10            Was your client, at the time he was rejected for
11    participation in the 8(a) program, was he economically
12    disadvantaged in accordance with the standards that the SBA
13    has for each applicant?  Was he economically disadvantaged?
14            MR. ROPER:  Yes, Your Honor, and two responses to
15    that.  First, we don't think that's a pleading requirement to
16    challenge the presumption, the racial presumption in the
17    statute.
18            THE COURT:  Wait a minute now.  All applicants have
19    to reach certain requirements to participate in the program.
20    And to participate in the program, this racial presumption is
21    part of the program.  You have to get in the program first
22    before you can start talking about you're impacted by a
23    racial presumption.
24            So don't jump over qualifying to get in the program
25    to talk about something that is happening in the program.  So
```

1  you have to deal with your eligibility to even apply and get

2  in the program in the first place, and that has to do with

3  standing.  So that's why the Court asked you the question

4  about his economic ability to be participating in the program

5  in the first place.

6          MR. ROPER:  I understand that.  As I read the

7  statute, economic disadvantage is interpreted as a subset of

8  those who are socially disadvantaged.  The economically

9  disadvantaged are defined as socially disadvantaged

10  individuals who meet certain criteria.  So until you can get

11  over the social disadvantage hurdle, there isn't even an

12  economic disadvantage question.

13          In any event, we filed an affidavit in connection

14  with our response to the Motion to Dismiss for Mr. Hierholzer

15  explaining that he does meet the net worth, the asset value,

16  and the gross income requirements, which are the three things

17  that the SBA looks at in determining economic disadvantage.

18  So if that is something that needs to be shown, we've shown

19  it with that affidavit.

20          THE COURT:  Okay.  The Court is aware of your

21  affidavit.

22          MR. ROPER:  I'm sorry?

23          THE COURT:  The Court is aware of the affidavit.

24          MR. ROPER:  And we think that the affidavit is

25  sufficient, where even if there is a need to show economic

```
 1  disadvantage, that's certainly been satisfied through the
 2  affidavit where we -- plaintiffs have stated.
 3          THE COURT:  Well, the Court has some question about
 4  that, but you go on.
 5          MR. ROPER:  With -- if the Court doesn't have any
 6  other questions about the Ultima case or the mootness issue,
 7  with respect to standing, I think that defendants' motion
 8  misperceives what the injury is that has been alleged in that
 9  plaintiff's primary injury is not denial of any specific
10  contract, it is the heightened barrier that is established
11  under the race-based presumption; whereas, if Mr. Hierholzer
12  identified as any of the other races listed in the
13  presumption, he would not have to make a separate showing of
14  social disadvantage, but because he doesn't qualify under the
15  presumption, there is that additional barrier that he -- that
16  causes him injury.
17          The cause of that injury is the presumption.  And I
18  should mention, with respect to the mootness issue, the
19  regulation containing the presumption is still in force.  SBA
20  has not rescinded that regulation, and it continues to, you
21  know, provide the injury, the harm that we've sought to
22  remedy here.
23          The -- that remedy would be -- or, I'm sorry, that
24  injury would be redressed through an order enjoining use of
25  the presumption.
```

1        So unless the Court has any other questions on

2   standing...

3        THE COURT:  Well, you know standing is the first

4   barrier that you always have to overcome before you even get

5   to these other issues about the Administrative Procedures Act

6   and the authority to even raise the issue of setting up

7   criteria using rebuttable presumption.

8        I think the Court in *Ultima* certainly wiped away any

9   suggestion that the SBA didn't have authority to try to

10  implement what Congress has suggested.  Congress is the one

11  that placed emphasis on looking at those races and people who

12  had been disadvantaged.

13       So the SBA was right in line with what Congress had

14  in the legislative history about what they were trying to do.

15  The question came down to whether they were improperly

16  applying the standard that they set up.  So I don't know

17  whether there is a whole lot of argument about whether it's

18  an impermissible act on the SBA's part to be trying to come

19  up with some presumption to address the issues Congress has

20  set out in the legislation.

21       In other words, I think your argument on violating

22  the APA is just not that persuasive to the Court.

23       MR. ROPER:  The APA, you said?

24       THE COURT:  APA, the Administrative Procedures Act.

25       MR. ROPER:  Well, Your Honor, the defendants have

1   actually not sought to dismiss our Administrative Procedure
2   Act claims.  They've sought to dismiss the equal protection
3   claims, and they've sought to dismiss the nondelegation
4   doctrine claim, but with respect to the APA claims, if
5   plaintiffs have standing, then those should proceed.
6           THE COURT:  The funny thing about it is, the Court
7   looks at everything the parties don't look at, and a lot of
8   the times, it doesn't matter that you could look at it, the
9   Court has to look at it and decide whether it adds any value,
10  any substance, no matter what you do as parties.
11          MR. ROPER:  Well, I do think that the *Ultima* case is
12  significant, and I think it does support plaintiffs' standing
13  in this case.  The Court in *Ultima* did consider the standing
14  issue and concluded that the plaintiff there had standing.
15          THE COURT:  And the Court differs with what the
16  Court did there, I can tell you right now, on the issue of
17  standing.
18          MR. ROPER:  I think it also supports the fact that
19  plaintiffs in this case have stated a plausible claim under
20  the Equal Protection Clause.  I don't think that defendants
21  disagree that the case raises the issue of strict scrutiny
22  because of the race-based presumption, and we believe that
23  plaintiffs have stated a plausible claim that it does violate
24  strict scrutiny, and so those claims should be able to
25  proceed.

Carol L. Naughton, Official Court Reporter

JA150

16

```
 1              THE COURT:  Okay.  Thank you, sir.

 2         MR. ROPER:  Unless the Court has any further

 3    questions, we would ask the Motion to Dismiss be denied in

 4    its entirety.  Thank you.

 5              THE COURT:  Anything else?

 6         MR. BRANIFF:  Judge, just to distinguish the

 7    standing from Ultima, Your Honor, this case -- the plaintiffs

 8    in the two cases are dramatically different.  In the Ultima

 9    case, the individual who brought the suit in that case had

10    actual contracts that she actually identified that she had

11    been performing on, which on some of them options weren't

12    exercised and, instead, those actual contracts were placed in

13    the 8(a) program.  That's how the Court arrived at standing

14    in that matter.

15              Here, by contrast, plaintiff has actually applied to

16    the 8(a) program under the new current standard, the

17    social-disadvantaged standard, and been denied.  So in terms

18    of redressability, the presumption has played no role in the

19    denial of their application, would play no role now, so the

20    redressability argument would be completely different, novel,

21    and easily viewed by the Court that there's just simply

22    nothing left to do for this plaintiff.

23              THE COURT:  Okay, counsel.  The Court understands

24    your argument.  The Court understands, also, the impact of

25    Ultima, if any.  The Court will consider it.  The Court will
```

1  be in touch with an opinion in due season.  Due season means

2  reasonably.

3          Thank you very much for your argument.  The Court

4  will be adjourned.

5          (Proceedings adjourned at 11:26 a.m.)

6

7                         CERTIFICATION

8

9      I certify that the foregoing is a correct transcript

10 from the record of proceedings in the above-entitled matter.

11

12

13          _____/s/_____

14                     Carol L. Naughton

15                     March 14, 2024

16

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| Marty Hierholzer, an individual; MJL Enterprises, LLC, a Virginia corporation, | Civil Case No. 2:23-cv-00024-RAJ-DEM |
| Plaintiffs, | |
| v. | |
| Isabel Guzman, in her official capacity as Administrator of the Small Business Administration; Small Business Administration, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO STAY PROCEEDINGS**

Plaintiffs Marty Hierholzer and MJL Enterprises, LLC, oppose Defendants' motion to stay this case pending the issuance of a final judgment in *Ultima Servs. Corp. v. U.S. Dep't of Agric.*, No. 2:20-cv-00041-DCLC-CRW (E.D. Tenn.).

**BACKGROUND**

Plaintiffs' complaint challenges the Small Business Administration's Section 8(a) program, in particular the application of a presumption that some business owners are "socially disadvantaged" solely on account of their race or ethnicity. *See* ECF No. 1. Plaintiffs' complaint asserts claims under the Fifth Amendment's Due Process Clause, the nondelegation doctrine, and the Administrative Procedure Act. *Id.* at 13–20. Defendants have moved to dismiss the complaint, and the motion was fully briefed in April 2023. *See* ECF Nos. 19, 20, 26 & 27.

A few months later, in July 2023, Plaintiffs submitted as supplemental authority the district court decision in *Ultima Services Corp. v. U.S. Department of Agriculture* (E.D. Tenn.), where the court granted summary judgment to a plaintiff who challenged the presumption of social

disadvantage in the 8(a) program. ECF No. 34. Defendants did not file any response in this Court to the supplemental authority.

On January 9, 2024, the Court ordered oral argument on Defendants' motion to dismiss. ECF No. 35. Shortly before the hearing, Defendants filed a motion asking this Court to stay Plaintiffs' case until the sooner of (1) 60 days after the issuance of a judgment in *Ultima*, or (2) the parties notify the Court as to whether *Ultima* will be appealed. ECF No. 36 & 37. The Court held oral argument on the motion to dismiss on January 31. Plaintiffs now oppose Defendants' request for a stay.

## ARGUMENT

District courts have broad discretion whether to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In making that determination, a district court should consider four factors: "(1) the length of the requested stay; (2) the hardship or inequity that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; and (4) whether a stay would simplify issues and promote judicial economy." *U.S. ex rel. Precision Air Conditioning of Brevard, Inc. v. Cincinnati Ins. Co.*, 533 F. Supp. 3d 290, 298 (E.D. Va. 2021) (quotation omitted).

Contrary to Defendants' argument, these factors weigh *against*, not in favor of, a stay. For the first factor, Defendants seek an "indeterminate" stay, ECF No. 37 at 5, which weighs against their request. *See Dynport Vaccine Co. LLC v. Lonza Biologics, Inc.*, No. CV JKB-14-2921, 2015 WL 5768707, at *2 (D. Md. Jan. 10, 2015) ("[A]n indeterminate stay … will surely prejudice [the plaintiff's] efforts to achieve prompt resolution of the instant case."); *see also CommScope, Inc. of N. Carolina v. Electro Prod., Inc.*, No. CV-06-0577RSM, 2007 WL 9775629, at *3 (W.D. Wash. Feb. 12, 2007) ("In general, courts find that a plaintiff's interest is prejudiced when a stay would cause a lengthy or indefinite delay in the pursuit of his action."). Plaintiffs' complaint was filed

more than a year ago, and an indeterminate stay would needlessly delay their opportunity to vindicate their rights. Although Defendants predict that "*Ultima* is procedurally very near final district court disposition," ECF No. 37 at 5, the *Ultima* court has not yet held argument on the plaintiff's pending motion for a permanent injunction and additional equitable relief, *see Ultima*, No. 2:20-cv-00041-DCLC-CRW, ECF No. 93, and there is no set timeline within which it must rule on that request. When the *Ultima* court does eventually issue a final judgment, the government will have an additional 60 days to decide whether to appeal. And if there is an appeal, Defendants will likely again argue that this Court should stay this case pending the outcome of the appeal. This extended and indefinite timeline weighs against Defendants' request for a stay.

For the second factor, the only hardship that Defendants claim would occur absent a stay is that they "would be required to prepare for and appear at oral argument … and expend a considerable amount of time and resources to prepare [a] summary judgment motion[]." ECF No. 37 at 5. However, the Court has already held oral argument, and "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Sunbeam Prod., Inc. v. Hamilton Beach Brands, Inc.*, No. 3:09CV791, 2010 WL 1946262, at *4 (E.D. Va. May 10, 2010) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)) (quotation marks omitted). The normal burdens of litigation do not impose a cognizable hardship or inequity on Defendants that supports their request for a stay.

For the third factor, Defendants claim that Plaintiffs would not be injured by a stay because "SBA has complied with the district court's order in *Ultima* and has stopped employing the race-conscious presumption with regard to its 8(a) program." ECF No. 37 at 4. However, there has been no final judgment in *Ultima*, and the government has not decided whether to appeal. Thus, SBA's "compliance" is at best temporary; SBA has not conceded that the 8(a) program's race-based

presumption is unconstitutional or made any permanent policy changes. Most glaringly, the regulation spelling out SBA's presumption has not been revised or rescinded. *See* 13 C.F.R. § 124.103. Should the government prevail in an appeal in *Ultima*, there would be nothing to stop SBA from immediately reinstating the presumption. Defendants conceded at oral argument that this case is not moot, and the possibility of future mootness is insufficient to justify a stay here. There are also important differences between this case and *Ultima*, including because Plaintiffs here have asserted Administrative Procedure Act and nondelegation doctrine claims that were not raised or ruled on in *Ultima*. *Compare* ECF No. 1, *with Ultima*, No. 2:20-cv-00041-DCLC-CRW, ECF No. 1. Plaintiffs would be prejudiced by a stay that prevents them from litigating these claims.

For the fourth factor, Defendants argue that a stay would promote judicial economy because *if* the government declines to pursue an appeal in *Ultima*, that *may* moot some or all of Plaintiffs' case. ECF No. 37 at 4. But given the indeterminate timeline and the government's apparent uncertainty as to whether it will appeal the *Ultima* case or make any permanent changes to the 8(a) program, any purported savings to judicial economy are speculative.

Put simply, the fact that (1) a district court in another circuit (2) has issued a non-final judgment (3) that is not binding on this Court and (4) that the government may or may not appeal, is far too thin a reed to justify the issuance of a stay preventing Plaintiffs from pursuing their claims.

## CONCLUSION

Defendants' motion for a stay should be denied.

DATED:  February 7, 2024.

Respectfully submitted,

s/ Alison Somin
Alison Somin
Virginia Bar No. 79027
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
ASomin@pacificlegal.org

Joshua P. Thompson*
Cal. Bar No. 250955
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
JThompson@pacificlegal.org

Glenn E. Roper*
Colo. Bar No. 38723
PACIFIC LEGAL FOUNDATION
1745 Shea Center Drive, Suite 400
Highlands Ranch, CO 80129
Telephone: (916) 419-7111
Fax: (916) 419-7747
GERoper@pacificlegal.org

*Attorneys for Plaintiff*
*Pro hac vice

5

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2024, I submitted the foregoing to the Clerk of the

Court via the District Court's CM/ECF system, which will provide notice of the submission of this

document to all counsel of record.

<div style="margin-left:40%">

s/ Alison Somin

Alison Somin
Virginia Bar No. 79027
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
ASomin@pacificlegal.org
*Attorney for Plaintiffs*

</div>



**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**MARTY HIERHOLZER, an individual**

**and**

**MJL Enterprises, LLC, a Virginia
corporation**

        **Plaintiffs,**

    **V.**                   **Civil Action No. 2:23-cv-0024**

**ISABEL GUZMAN, in her official capacity
as Administrator of the Small Business
Administration**

**and**

**SMALL BUSINESS ADMINISTRATION,**

      **Defendants.**

### MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss the Complaint pursuant to the Federal Rules of

Civil Procedure ("FRCP") Rule 12(b)(1) and 12(b)(6) filed by Isabel Guzman, Administrator of

the Small Business Administration, and the Small Business Administration ("SBA")

(collectively, "Defendants"). ECF Nos. 19, 20 ("Defs.' Mot."). Marty Hierholzer ("Hierholzer"),

an individual, and MJL Enterprises, LLC ("MJL"), a Virginia corporation (collectively

"Plaintiffs") filed a response to Defendants' Motion. ECF No. 26 ("Pls.' Resp."). Defendants

filed their reply. ECF No. 27 ("Defs.' Reply"). Plaintiffs also filed their Notice of Supplemental

Authority. ECF No. 34 ("Pls.' Supp. Auth."). On January 31, 2024, the Court heard oral

argument on the Motion. The Court has considered the parties' memoranda. For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED**.

## I. FACTUAL AND PROCEDURAL HISTORY

Relevant to Defendants' Motion to Dismiss and stated in the light most favorable to Plaintiffs, the following alleged facts are drawn from the Complaint and attachments thereto.

### Marty Hierholzer and MJL Enterprises

On January 18, 2023, Hierholzer and MJL filed their Complaint against Defendants. ECF No. 1 ("Pls.' Compl."). In 2006, Hierholzer started his business, MJL, which provides government contracting services to the United States military. *Id.* ¶ 14. Allegedly, MJL is a small business, and Hierholzer is the president and chief executive officer. *Id.* Hierholzer is a service-disabled veteran who served twenty-two years in the Navy as a saturation diver. *Id.* ¶¶ 15–16. Hierholzer sustained many injuries in the line of duty, rendering him disabled. *Id.* ¶¶ 16–19. The Department of Veteran Affairs ("VA") rates Hierholzer as 60% disabled. *Id.* After Hierholzer retired in 2002, he started his own business providing "medical, maintenance, and repair equipment to military bases and VA hospitals. MJL also delivers office supplies to VA hospitals and offices and high-tech safety and security equipment to first responders. Additionally, MJL provides logistical labor and personnel services for VA hospitals." *Id.* ¶¶ 20–22.

### The Small Business Administration 8(a) Program

Congress enacted the Small Business Act of 1953 ("the Act") to protect small businesses and preserve the free competitive enterprise system. 15 U.S.C. § 637. The Act established various programs including the 8(a) Program. Section 8(a) of the Act authorizes the SBA to enter into agreements for goods and services with other federal agencies, and to subcontract those agreements to socially and economically disadvantaged small business concerns. Pls.' Compl. ¶¶

2

27–28. The purpose of the 8(a) program includes "promot[ing] the business development of small business concerns owned and controlled by socially and economically disadvantaged individuals so that such concerns can compete on an equal basis in the American economy." 15 U.S.C. § 631(f)(2). Socially disadvantaged individuals are "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." 15 U.S.C. § 637(a)(5). Hierholzer believed his business would qualify because he allegedly had been subjected to "cultural bias" because of his service-disabled veteran status. Pls.' Compl. ¶ 32. Economically disadvantaged individuals are those "socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities." *Id.* ¶ 33; 15 U.S.C. § 637(a)(6).

Section 631(f) of the Act contains additional racial classification for those who are socially disadvantaged, including members of certain racial groups that enjoy a rebuttable presumption such as "Black Americans, Hispanic Americans, Native Americans, Indian tribes, Asian Pacific Americans, Native Hawaiian Organizations, and other minorities." Pls.' Compl. ¶ 34; 15 U.S.C. § 631(f)(1). An individual in those groups must demonstrate that "he or she has held himself or herself out, and is currently identified by others, as a member of a designated group if SBA requires it." Pls.' Compl. ¶ 42; 13 C.F.R. § 124.103(b)(2). "The presumption of social disadvantage may be overcome with credible evidence to the contrary." 13 C.F.R. § 124.103(b)(3).

Other groups may petition the SBA to add them as a presumptively socially disadvantaged group. Pls.' Compl. ¶¶ 43–44; 13 C.F.R. § 124.103(c). "Such individual should present corroborating evidence to support his or her claim(s) of social disadvantage where

3

readily available." 13 C.F.R. § 124.103(c). Such individual must include "at least one objective distinguishing feature that contributed to social disadvantage," must be based on treatment in American society that's chronic and substantial, and negatively impacted their entry or advancement in the business world. *Id.* Then SBA would decide whether that group should be considered presumptively disadvantaged. *Id.* § 124.103(d). Allegedly, the SBA has received and rejected many "petitions from Hasidic Jews, women, and Iranians, while it has accepted petitions from Asian Indians (the highest income racial group in the United States) and Sri Lankans." Pls.' Compl. ¶ 45. In 1987, the SBA allegedly "rejected a petition from service-disabled veterans to be considered presumptively disadvantaged." *Id.* ¶ 46.

*Hierholzer's experience applying for the 8(a) Program*

Hierholzer is of German and Scottish descent and not a member of one of the groups listed as socially disadvantaged. *Id.* ¶ 47. Hierholzer must put forth evidence to support that he is socially disadvantaged, including race, ethnicity, gender, and physical handicap. *Id.* ¶ 48–50; *see also* 13 C.F.R. § 124.103(c)(2). Additionally, his disadvantage must be based on treatment in American society that's chronic and substantial and has negatively impacted his entry or advancement in the business world. Pls.' Compl. ¶¶ 51–53; *see also* 13 C.F.R. § 124.103(c)(2). Allegedly, Hierholzer applied in 2009 and 2016 for 8(a) Program eligibilty, and he presented evidence of his disabilities and the disadvantages he faced in his career and personal life. Pls.' Compl. ¶ 54. The SBA denied both applications, and he sought reconsideration of the 2016 denial, which the SBA's Office of Hearings and Appeals affirmed in 2017 because Hierholzer failed to show that his disability resulted in social disadvantage. *Id.* ¶ 55; *see also In the Matter of: MJL Enterprises, LLC, Petitioner*, SBA No. BDPE-556, 2017 WL 8231365 (Dec. 18, 2017). Hierholzer allegedly "became aware that while he was denied eligibility for the 8(a) Program,

4

others were eligible based on their race without having to prove specific social disadvantages." Pls.' Compl. ¶ 63. Hierholzer believes that he would have been accepted into the 8(a) Program "if he belonged to one of the favored races listed in 15 U.S.C. § 631(f)(1)(B), (C) and 13 C.F.R. § 124.103(b)(1)." *Id.* ¶ 64. Allegedly, "the statute deprived MJL from standing on equal footing for 8(a) Program eligibility and competing for exclusive 8(a) contracting opportunities." *Id.* ¶ 65. Hierholzer believes that the "SBA would accept more program participants based on individualized evidence of disadvantage" rather than racial preference. *Id.* ¶ 66.

*MJL's Injury*

Hierholzer is not a member of one of the classified racial groups, making MJL "unable to compete for contracts under the 8(a) Program that it could successfully procure and perform if allowed to do so." *Id.* ¶ 70. MJL cannot access benefits provided to the 8(a) Program, including "access to business development assistance, free training opportunities through the SBA, and federal surplus property access." *Id.* ¶ 71. MJL is allegedly at a competitive disadvantage when competing for government contracts and does not enjoy a presumption of disadvantage. *Id.* ¶ 73.

Plaintiffs accuse Defendants of violating the Constitution by denying Plaintiffs the ability to participate in the 8(a) Program based on race. Pls.' Compl. Additionally, the SBA allegedly arrogated to itself power beyond what Congress authorized to establish racial classifications and preferences. *Id.* If Congress did give SBA that power, then Plaintiffs allege that Congress violated the United States Constitution nondelegation doctrine. *Id.* Specifically, Plaintiffs assert five claims against Defendants:

Claim 1.   The presumption that designated groups are socially disadvantaged denies MJL equal protection in violation of the Fifth Amendment (*Id.* ¶¶ 76–90);

Claim 2.    The racial classifications established by the 8(a) Program and implementing
the regulations violate the Fifth Amendment's equal protection guarantee (*Id.*
¶¶ 91–98);

Claim 3.    The SBA's 8(a) Program rule claiming authority to decide which racial groups
enjoy a presumption of social disadvantage (13 C.F.R. § 124.103(b)(1))
violates the Administrative Procedure Act ("APA") (5 U.S.C. § 706(2))
because it exceeds the agency's statutory authority (*Id.* ¶¶ 99–106);

Claim 4.    The SBA's 8(a) Program is an unconstitutional exercise of legislative power
(Violation of the Nondelegation Doctrine, U.S. Const. art. I, § 1) (*Id.* ¶¶ 107–
112)

Claim 5.    The SBA 8(a) regulations are arbitrary and capricious in violation of the APA
(5 U.S.C. § 706(2)(a)) (*Id.* ¶¶ 113–117).

Plaintiffs sues Isabel Guzman in her official capacity and the SBA as a cabinet-level
agency of the United States government. *Id.* ¶¶ 12–13.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of actions that lack
subject matter jurisdiction. Federal courts are courts of limited subject matter jurisdiction. *See
Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999). Accordingly, "before a
federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the
court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). For a 12(b)(1) motion, a defendant
can challenge subject matter jurisdiction in two ways. First, a defendant may argue that "a
complaint simply fails to allege facts upon which subject matter jurisdiction can be based."

6

JA164

*Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "[A]ll the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.*

Second, a defendant may argue that the jurisdictional allegations in the complaint are not true. *Id.* "A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Id.* The burden is on the plaintiff to prove subject matter jurisdiction and a trial court may consider evidence "by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Id.* "As the Supreme Court has explained with respect to such situations, a trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are clearly . . . immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous." *See Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (internal citation and quotation omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. Considering a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

7

A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 677, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.*

### III. DISCUSSION

Under Rule 12(b)(1), Defendants move to dismiss all five Claims for lack of standing. Defs.' Mot. at 6. Under Rule 12(b)(6), Defendants move to dismiss Claims One, Two, and Four of the Complaint for failure to state a claim upon which relief can be granted. *Id.* The Court will address whether the Claims lack standing before addressing the plausibility of each Claim.

#### A. Standing

As an initial matter, a federal district court has jurisdiction to hear cases and controversies arising under the Constitution, laws, or treaties of the United States. U.S. Const. Art. III § 2. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotations omitted). Article III standing is designed to "prevent the

8

judicial process from being used to usurp the powers of the political branches." *Id.* "The federal judicial power is not an unconditioned authority to determine the constitutionality of legislative or executive acts." *Carpenter v. Barnhart*, 894 F.2d 401 (4th Cir. 1990).

To establish standing, a plaintiff must allege: "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant ["causation"], and (3) that is likely to be redressed by a favorable judicial decision." *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (internal citation and quotation omitted). These requirements ensure "that the plaintiff has a personal stake in the outcome of the controversy." *Id.* In this case, Plaintiffs allege that the SBA denied them the opportunity to participate in the 8(a) Program based on race. Pls.' Compl. ¶ 4. However, Defendants argue that Plaintiffs lack standing because "they have not plausibly alleged any of the three elements that are required to establish Article III standing." Defs.' Mot. at 8. The Court will address the elements of standing separately.

### 1. *Injury in Fact*

According to the Complaint, Plaintiffs assert that the SBA has denied them the opportunity to participate in the 8(a) Program based on race. Pls.' Compl. ¶ 4. Further, Plaintiffs assert that the statutes and regulations for the 8(a) Program prevent MJL from "standing on equal footing for the 8(a) Program eligibility and then from competing for exclusive 8(a) contracting opportunities based on race." *Id.* ¶ 67. Plaintiffs also assert that Hierholzer is not a member of a group that SBA classifies as socially disadvantaged, which puts MJL at a "competitive disadvantage when competing for government contracts." *Id.* ¶¶ 70–73.

Defendants argue that "Plaintiffs fail to point to any specific loss of business and, thus, fail to sufficiently allege an injury in fact." Defs.' Mot. at 17. Additionally, Defendants argue that Plaintiffs fail to allege that MJL ever competed against an 8(a) Program participant for a contract or that they lost any bids to an 8(a) Program participant. *Id.* Plaintiffs respond that their

9

injury is "the denial of equal treatment on the basis of race." Pls.' Resp. at 10. Additionally, Plaintiffs argue that Defendants are wrong in asserting that the "race-based presumption of social disadvantage was not a complete bar to contracts set aside for 8(a) business." *Id.* Defendants replied that Plaintiffs fail to allege that they are "able and ready to bid on any Section 8(a) [P]rogram contracts" and the harms Plaintiffs allegedly are suffering are "too speculative to constitute an injury in fact." Defs.' Reply at 2.

To prove injury in fact, a plaintiff must show that the injury is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The threatened injury must be certainly impending, and allegations of possible future injury are insufficient." *Buscemi*, 964 F.3d at 259 (alterations omitted). "An injury reliant on a highly attenuated chain of possibilities does not qualify as being certainly impending." *Id.* (alterations omitted). "When a plaintiff challenges the constitutionality of a statute, the plaintiff must show that there is a realistic danger that the plaintiff will sustain a direct injury as a result of the terms of the statute." *Id.* (alterations omitted). Furthermore, when a set-aside program is at issue, "the 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993). Therefore, a plaintiff challenging a set-aside program need only to "demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *Id.*

Here, Plaintiffs fail to allege that they lost a contract bid because of the race-conscious presumption to join the 8(a) Program. Plaintiffs' injury is not "concrete" or "actual or imminent" because Plaintiffs have not alleged in their Complaint any specific contract bids that they lost. Additionally, Plaintiffs fail to allege that they meet the requirements of "economically

10

JA168

disadvantaged."[1] *See generally* Pls.' Compl. Plaintiffs' Complaint lacks any allegations that they are economically disadvantaged based on the factors listed in 13 C.F.R. § 124.104. Defendants provided documentation noting that Plaintiffs have participated in the service-disabled veteran-owned small business program and awarded roughly $130 million in contracts. *See* Defs.' Mot. at Exs. 1, 2. Since Plaintiffs fail to allege that they are economically disadvantaged, the race-conscious presumption could not have prevented Plaintiffs from being accepted into the 8(a) Program.

Unlike the *City of Jacksonville*, the plaintiffs could not compete for set-aside contracts because a discriminatory policy prevented them from doing so. *City of Jacksonville*, 508 U.S. at 658. The court held that the plaintiffs suffered an injury because the program served as a barrier preventing the plaintiffs from participating. *Id.* at 667–68. In this case, the 8(a) Program does not pose a barrier to Plaintiffs, like the plaintiff in the *City of Jacksonville*, because anyone can participate in the 8(a) Program, no matter their race or gender, if they submit evidence demonstrating social and economic disadvantage. The barrier is Plaintiffs' own failure to meet the 8(a) Program eligibility requirements—social and economic disadvantage. Additionally, Plaintiffs have not shown that they are ready and able to bid on the 8(a) Program contracts. *City of Jacksonville*, 508 U.S. at 666. Therefore, Plaintiffs fail to allege an injury in fact.

    2. *Causation*

Plaintiffs' allegations in the Complaint are the same as above. *See* Pls.' Compl. ¶¶ 67–75. Defendants argue that Plaintiffs cannot trace their alleged injury to the race-conscious presumption. Defs.' Mot. at 9. Additionally, Defendants argue that Plaintiffs fail to allege that

---

[1] Under 13 C.F.R. § 124.104, each individual claiming economic disadvantage must submit a narrative and personal financial information. The SBA will consider the following: (1) the individual's average adjusted gross income cannot exceed $400,000 over three years preceding the submission of an application; (2) the individual's net worth must be less than $850,000; (3) the fair market value of an individual's assets must not exceed $6.5 million; and (4) any asset transfers within two years. *Id.*

they can participate in the 8(a) Program without satisfying the race-conscious presumption. *Id.* Plaintiffs respond that the 8(a) Program imposes hurdles for Hierholzer because of his race. Pls.' Resp. at 12. Additionally, Plaintiffs argue that Hierholzer must make an additional showing since he is not a member of one of the racial or ethnic groups. *Id.* Plaintiffs also argue that Hierholzer meets the eligibility requirements for economic disadvantage. *Id.* Defendants replied that Plaintiffs cannot cure their failure for not alleging Hierholzer's economic status to prove that he is economically disadvantaged. Defs.' Reply at 8.

To prove causation, Plaintiffs must demonstrate "a causal connection between the injury and the conduct complained of." *Interstate Traffic Control v. Beverage*, 101 F. Supp. 2d 445, 451 (S.D.W. Va. 2000). This means that "it must be likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000).

Here, Plaintiffs fail to allege that Defendants' use of the race-conscious presumption caused their alleged injuries. Plaintiffs have not alleged that they can compete for the 8(a) Program contracts if the race-conscious presumption was removed because they have not alleged facts demonstrating social and economic disadvantage. In *SRS Techs., Inc. v. U.S. Dep't of Def.*, the plaintiff argued that the race-conscious presumption of social disadvantage prohibited the plaintiff from participating in the 8(a) Program for race-based reasons. 112 F.3d 510, 1997 WL 225979, at *1 (4th Cir. 1997). The court found that the plaintiff was ineligible to participate because its owner is a multimillionaire who failed to meet the economic disadvantage requirement, which is a race-neutral criterion. *Id.* Thus, the court held the race-conscious presumption did not cause the plaintiff to not qualify for the 8(a) Program. *Id.* Like the plaintiff

in *SRS*, Plaintiffs fail to meet a race-neutral criterion for participation in the 8(a) Program. The Complaint does not state whether Plaintiffs meet the eligibility requirements for economically disadvantaged. *See generally* Pls.' Compl.; *see also Iqbal*, 556 U.S. at 678 (stating a complaint is not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'") (alterations omitted).

Recognizing this, Plaintiffs filed an affidavit from Hierholzer, which they attached to their response to Defendants' Motion to Dismiss. Although the Court may consider documents presented on the issue of jurisdiction, which Plaintiff failed to attach to their Complaint, the Court finds the affidavit insufficient to establish that Plaintiffs are economically disadvantaged. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (stating courts may consider evidence beyond the complaint's allegations if there are facts to support or refute the jurisdictional allegations). Hierholzer states that he "believe[s]" he meets the requirements for economically disadvantaged. Hierholzer's beliefs are not enough to demonstrate that he is economically disadvantaged. Even if the Court accepts the affidavit as true. it fails to discuss asset transfers within two years, a factor that SBA will consider in determining if an individual is economically disadvantaged.[2] This leaves open the possibility that Plaintiffs are not economically disadvantaged. Nevertheless, the affidavit is inadequate to cure deficiencies in the Complaint. *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 458–59 n.8 (4th Cir. 2013) (stating that a "plaintiff cannot cure pleading deficiencies in the [] complaint with later-filed supporting documentation on a motion to dismiss.").

---

[2] *See* 13 C.F.R. § 124.104(c)(1)(i) (stating "SBA will attribute to an individual claiming disadvantaged status any assets which that individual has transferred . . . for less than fair market value, within two years prior to [applying] . . . or within two years of a Participant's annual program review, unless the individual . . . can demonstrate that the transfer is to or on behalf of an immediate family member for that individual's education, medical expenses, or some other form of essential support.").

13

JA171

Furthermore, Plaintiffs have not alleged social disadvantage status in absence of the race-conscious presumption. Plaintiffs applied for the 8(a) Program twice and were denied entry each time. The SBA denied Plaintiffs because they failed to show that they are socially disadvantaged, not because of their race.[3] Plaintiffs cannot establish causation because they fail to allege the presumption that certain racial and ethnic groups enjoy is causally related to their alleged injury. Therefore, Plaintiffs fail to allege causation.

### 3. *Redressability*
### A. Motion to Dismiss

Plaintiffs allege they will continue to suffer irreparable harm if the racial classification remains in effect. Pls.' Compl. ¶ 74. Additionally, Plaintiffs request the Court to declare the racial classifications unconstitutional and to "permanently enjoin enforcement and administration of 15 U.S.C. §§ 631(f)(1)(B) and 637(a)(5), (8) to the extent that they employ a racial preference." *Id.* at 20. Defendants argue that Plaintiffs would be in the same place they are in now if the Court eliminates the race-conscious presumption because they have not sufficiently alleged social disadvantage status. Defs.' Mot. at 13. Plaintiffs respond that a judicial decree directing Defendants to discontinue using the racial presumption would redress their injury. Pls.' Resp. at 14. Defendants argue eliminating the race-conscious presumption would not change the competition Plaintiffs face for government contracts. Defs.' Reply at 11. Additionally, Defendants argue that "Plaintiffs would still compete on the same footing with the same number of firms in the 8(a) [P]rogram that they compete against today." *Id.*

---

[3] *See In the Matter of: MJL Enterprises, LLC, Petitioner*, 2017 WL 8231365, at *7 (concluding "Petitioner has failed to offer evidence showing that his uncontested disability resulted in a social disadvantage impacting his advancement in the business world.").

14

To prove redressability, Plaintiffs must show that the relief sought will provide redress for the alleged injury. *See Interstate Traffic Control*, 101 F. Supp. 2d at 451. The Court must have the power to provide the requested relief Plaintiffs are seeking. *See Buscemi*, 964 F.3d at 259. Redressability must be "likely" and not "speculative." *See Lujan*, 504 U.S. at 561.

Here, Plaintiffs fail to show that they would be eligible for the program without the race-conscious presumption. Plaintiffs would still have to demonstrate social and economic disadvantage to get into the 8(a) Program. Plaintiffs have not plausibly alleged that striking down the presumption would redress their alleged injury. Additionally, it is pure speculation that the presumption makes it less likely MJL will be granted 8(a) eligibility and that MJL cannot compete for contracts that it could successfully procure and perform. Removing the presumption "would not alter the number or identity of socially and economically disadvantaged individuals eligible to participate." *See Interstate Traffic Control*, 101 F. Supp. 2d at 453. The race-conscious presumption is severable from the rest of the 8(a) Program, and the 8(a) Program would remain operative without the presumption because Plaintiffs would still have to demonstrate social and economic disadvantage. *See e.g., Cache Valley Elec. Co. v. Utah Dep't of Transp.*, 149 F.3d 1119, 1123 (10th Cir. 1998) (stating the disputed preferences are severable from the program because the plaintiff would still have to meet the requirements to participate in the program). Therefore, Plaintiffs fails to allege redressability.

### B. January 31st Oral Argument

On January 31, 2024, the Court held oral argument on Defendants' Motion. ECF No. 46. During oral argument, Defendants stated that since a sister court enjoined Defendants from using the race-conscious presumption,[4] Defendants have "purged" the presumption from the 8(a)

---

[4] *See Ultima Servs. Corp. v. U.S. Dep't of Agric.*, No. 2:20-cv-00041, 2023 WL 4633481 (E.D. Tenn. July 19, 2023)

Program process. *See* Excerpt of Proceedings at 3. According to Defendants, the SBA used the presumption in three stages: 1) at the application stage, 2) at the award stage, and 3) at the annual review stage. *Id.* However, the presumption is no longer involved in the 8(a) Program. *Id.* Defendants assert that "each individual applicant, regardless of their race or ethnicity, has to go through the exact same process to establish social and economic disadvantage. No change regardless of your racial or ethnic background. Each application is judged independently of that." *Id.* at 4:3–7.

To comply with the *Ultima* Court's injunction, Defendants paused all applications of individuals to the 8(a) Program. *Id.* Additionally, the SBA contacted any individuals accepted into the 8(a) Program through the presumption and required them to reapply without the use of the presumption, demonstrating social and economic disadvantage—the same process new applicants must go through. *Id.* at 4–5. Further, approximately 3,900 individuals were in the program at the time, and if they chose to remain, they were required to go through the same process described above. *Id.* at 5.

Given that the SBA removed the race-conscious presumption, there is nothing for the Court to redress. Plaintiffs assert that the race-conscious presumption hinders their ability to get accepted into the 8(a) Program, and for that same reason, the race-conscious presumption is causing their injury. *See* Pls.' Reply; *see also* Excerpt of Proceedings at 13. Further, since the race-conscious presumption is allegedly injuring them, then removal of the race-conscious presumption would redress their injury. *See* Pls.' Reply; *see also* Excerpt of Proceedings at 13. However, Defendants stated on record that they are no longer using the race-conscious presumption. Plaintiff did not rebut or challenge these representations Defense Counsel made to

16

JA174

the Court. Since the race-conscious presumption is no longer causing Plaintiffs alleged injury, then there is nothing to redress.

As the Court stated previously, the Constitution limits federal courts jurisdiction to cases and controversies. U.S. Const. Art. III § 2. "A corollary to this case-or-controversy requirement is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71, (2013) (internal citations and quotations omitted). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* at 72 (internal citation omitted). Here, the SBA changed the 8(a) Program application and removed the race-conscious presumption from all stages of the process. Plaintiffs no longer have a personal stake in the outcome of this litigation. Therefore, Plaintiffs claim is moot, and they fail to allege redressability.

Since Plaintiffs fail to meet the standing requirements, this Court lacks subject matter jurisdiction to entertain this dispute. *See Just. 360 v. Stirling*, 42 F.4th 450, 458 (4th Cir. 2022) ("No matter how interesting or elegant a party's argument, the federal courts have no power to breathe life into disputes."). Thus, Plaintiffs' Complaint is dismissed.

## IV. CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. ECF Nos. 19, 20. In view of the Court's ruling on this Motion, Defendants' Motion to Stay is **DENIED AS MOOT**. ECF No. 36

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for the Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
February 15, 2024

Raymond A. Jackson
United States District Judge

18

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**MARTY HIERHOLZER,**

and

**MJL ENTERPRISES, LLC,**
 *a Virginia corporation*

            Plaintiffs,

v.                                       Civil No.  2:23cv24

**ISABEL GUZMAN,**
*in her official capacity as Administrator*
*of the Small Business Administration*

and

**SMALL BUSINESS ADMINISTRATION,**

            Defendants.

**JUDGMENT IN A CIVIL CASE**

**Decision by the Court.**  This action came for decision before the Court.  The issues have been considered and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED that** the Defendants' Motion to Dismiss (ECF No. 19, 20) is GRANTED. Plaintiffs' Complaint is dismissed.

 DATED:  2/15/2024                      FERNANDO GALINDO, Clerk

                                   By _____/s/_____
                                       D. Brandt, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| Marty Hierholzer, an individual; MJL Enterprises, LLC, a Virginia corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Isabel Guzman, in her official capacity as Administrator of the Small Business Administration; Small Business Administration,<br><br>Defendants. | Civil Case No. 2:23-cv-00024-RAJ-DEM |

## NOTICE OF APPEAL

Notice is hereby given that Plaintiffs Marty Hierholzer and MJL Enterprises, LLC hereby appeal to the United States Court of Appeals for the Fourth Circuit the February 15, 2024, Memorandum Opinion and Order granting Defendants' motion to dismiss (Dkt. 49) and Judgment in a Civil Case (Dkt. 50). Pursuant to Federal Rule of Appellate Procedure 4(a)(1)(B)(ii) & (iii), this notice of appeal is filed within 60 days of the order and judgment appealed from.

DATED:  February 26, 2024.

Respectfully submitted,

s/ Alison Somin
Alison Somin
Virginia Bar No. 79027
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
ASomin@pacificlegal.org

Joshua P. Thompson*
Cal. Bar No. 250955
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
JThompson@pacificlegal.org

Glenn E. Roper*
Colo. Bar No. 38723
PACIFIC LEGAL FOUNDATION
1745 Shea Center Drive, Suite 400
Highlands Ranch, CO 80129
Telephone: (916) 419-7111
Fax: (916) 419-7747
GERoper@pacificlegal.org

*Attorneys for Plaintiff*
*Pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2024, I submitted the foregoing to the Clerk of the

Court via the District Court's CM/ECF system, which will provide notice of the submission of this

document to all counsel of record.

<div style="margin-left:40%">

s/ Alison Somin
Alison Somin
Virginia Bar No. 79027
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
ASomin@pacificlegal.org
*Attorney for Plaintiffs*

</div>

3