No. 24-1187

———————————————————

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————————

MARTY HIERHOLZER; MJL ENTERPRISES, LLC,
a Virginia corporation,

Plaintiffs – Appellants,

v.

ISABEL GUZMAN, in her official capacity as
Administrator of the Small Business Administration;
SMALL BUSINESS ADMINISTRATION,

Defendants – Appellees.

———————————————————

On Appeal from the United States District Court
for the Eastern District of Virginia, No. 2:23-cv-00024-RAJ-DEM
Honorable Raymond A. Jackson, District Judge

———————————————————

**APPELLANTS' OPENING BRIEF**

———————————————————

GLENN E. ROPER
Pacific Legal Foundation
1745 Shea Center Drive, Suite 400
Highlands Ranch, Colorado 80129
Telephone: (916) 419-7111
GERoper@pacificlegal.org

JOSHUA P. THOMPSON
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
JThompson@pacificlegal.org

*Attorneys for Plaintiffs – Appellants*

## LOCAL RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Appellants hereby state that they have no parent companies, subsidiaries, or affiliates that have issued shares to the public.

# TABLE OF CONTENTS

**Page**

LOCAL RULE 26.1 DISCLOSURE STATEMENT ..................................i

TABLE OF AUTHORITIES...............................................................iv

JURISDICTIONAL STATEMENT ........................................................1

INTRODUCTION ................................................................................1

STATEMENT OF THE ISSUES...........................................................4

STATEMENT OF THE CASE ..............................................................5

I.    Legal and Factual Background...........................................5

    A.    The 8(a) Program ......................................................5

       1.    SBA's race-based social disadvantage presumption ..............7

       2.    Economic disadvantage....................................11

    B.    Marty Hierholzer and MJL Enterprises .................................13

II.   Procedural History .........................................................15

STANDARD OF REVIEW...................................................................17

SUMMARY OF ARGUMENT ............................................................17

ARGUMENT ......................................................................................20

I.    The District Court Incorrectly Concluded that Plaintiffs Lack Standing ..........................................................................20

    A.    Plaintiffs have adequately pled all three elements of standing ...............................................................21

    B.    The district court improperly imposed additional standing requirements ......................................................23

       1.    Plaintiffs do not need to allege that they lost specific contracts....................................................23

       2.    Plaintiffs do not need to show economic disadvantage, and in any event have established it............................................26

3.   Plaintiffs do not need to establish their social disadvantage to have standing.................31

II.  The District Court Incorrectly Concluded that Plaintiffs' Claims Are Moot....................32

III. Plaintiffs Have Stated Valid Claims for Relief............................37

A.   Plaintiffs stated a claim that SBA's race-based presumption violates the Due Process Clause ..............38

B.   Plaintiffs stated a claim that SBA's racial classifications violate the Due Process Clause ..............42

C.   Plaintiffs stated a claim under the nondelegation doctrine ............44

D.   Plaintiffs' claims are not barred by the statute of limitations ..............46

CONCLUSION ...................49

REQUEST FOR ORAL ARGUMENT...................49

CERTIFICATE OF COMPLIANCE...................50

iii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.L.A. Schechter Poultry Corp. v. United States,*
295 U.S. 495 (1935) ................................................................ 44

*Adarand Constructors, Inc. v. Pena,*
515 U.S. 200 (1995) .......................................................... 25, 38

*In re Birmingham,*
846 F.3d 88 (4th Cir. 2017) ................................................... 38

*Bolling v. Sharpe,*
347 U.S. 497 (1954) ............................................................... 38

*City of Richmond v. J.A. Croson Co.,*
488 U.S. 469 (1989) ............................................................... 41

*Davani v. Va. Dep't of Transp.,*
434 F.3d 712 (4th Cir. 2006) ................................................. 37

*David v. Alphin,*
704 F.3d 327 (4th Cir. 2013) ................................................. 20

*Davis v. Wells Fargo,*
824 F.3d 333 (3d Cir. 2016) .................................................. 37

*Deal v. Mercer Cnty. Bd. of Educ.,*
911 F.3d 183 (4th Cir. 2018) ........................................... 33, 35

*DePaola v. Clarke,*
884 F.3d 481 (4th Cir. 2018) ................................................. 47

*Dynalantic Corp. v. Department of Defense,*
115 F.3d 1012 (D.C. Cir. 1997) ....................................... 26, 48

*Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.,*
166 F.3d 642 (4th Cir. 1999) ...................................... 20, 29, 30

*FBI v. Fikre,*
144 S. Ct. 771 (2024) ................................................. 33, 34, 36

*Fisher v. Univ. of Texas,*
579 U.S. 365 (2016) ............................................................... 43

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC),*
   *Inc.*, 528 U.S. 167 (2000) .................................................... 36

*Gratz v. Bollinger,*
   539 U.S. 244 (2003) ......................................................... 41

*Grutter v. Bollinger,*
   539 U.S. 306 (2003) ......................................................... 21

*Hassan v. City of New York,*
   804 F.3d 277 (3d Cir. 2016) ............................................ 40

*Heckler v. Mathews,*
   465 U.S. 728 (1984) ................................................... 23, 32

*Hunt Valley Presbyterian Church, Inc. v. Baltimore Cnty.*,
   No. CV CCB-17-3686, 2018 WL 2225089
   (D. Md. May 15, 2018) .................................................... 36

*J.W. Hampton, Jr., & Co. v. United States,*
   276 U.S. 394 (1928) ......................................................... 44

*Johnson v. Portfolio Recovery Assocs., LLC,*
   682 F. Supp. 2d 560 (E.D. Va. 2009) .............................. 29

*Kerns v. United States,*
   585 F.3d 187 (4th Cir. 2009) ........................................... 20

*King v. Rubenstein,*
   825 F.3d 206 (4th Cir. 2016) ........................................... 37

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ........................................... 21, 29, 31

*Nasim v. Warden, Md. House of Correction,*
   64 F.3d 951 (4th Cir. 1995) ............................................. 47

*Nat'l Advert. Co. v. City of Raleigh,*
   947 F.2d 1158 (4th Cir. 1991) ......................................... 48

*Nat'l Ass'n for Rational Sex Offense Laws v. Stein,*
   No. 1:17CV53, 2019 WL 3429120
   (M.D.N.C. July 30, 2019) ................................................ 47

*U.S. ex rel. Nathan v. Takeda Pharmaceuticals North*
   *America, Inc.*,
   707 F.3d 451 (4th Cir. 2013) ........................................... 29

v

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
508 U.S. 656 (1993) .............................................. 21, 24, 25, 27, 32, 48

*Panama Refining Co. v. Ryan*,
293 U.S. 388 (1935) ........................................................................ 45

*Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) ........................................................... 39, 41

*Payne v. Chapel Hill N. Properties, LLC*,
947 F. Supp. 2d 567 (M.D.N.C. 2013) ............................................... 29

*Porter v. Clarke*,
852 F.3d 358 (4th Cir. 2017) ........................................................... 32

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765 (4th Cir. 1991) .................................................. 20

*Rothe Development, Inc. v. U.S. Department of Defense*,
 836 F.3d 57 (D.C. Cir. 2016) ..................................................... 39, 40

*S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475 (4th Cir. 2015) ................................................. 32

*SRS Technologies, Inc. v. U.S. Department of Defense*,
No. 96-1484, 1997 WL 225979 (4th Cir. 1997) ............................... 27, 28

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) ............................................. 40, 42

*Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*,
471 F.3d 544 (4th Cir. 2006) ........................................................... 17

*Ultima Servs. Corp. v. U.S. Dep't of Agric.*,
No. 2:20-cv-00041, 2023 WL 4633481
(E.D. Tenn. July 19, 2023) ......................................... 2, 16, 35, 42, 44

*Va. Hosp. Ass'n v. Baliles*,
868 F.2d 653 (4th Cir. 1989) ........................................................... 47

*Vitol, S.A. v. Primrose Shipping Co.*,
708 F.3d 527 (4th Cir. 2013) ........................................................... 38

*W. Virginia v. EPA*,
597 U.S. 697 (2022) ................................................................. 33, 34

*Wallace v. New York*,
   40 F. Supp. 3d 278 (E.D.N.Y. 2014) .................................................. 47

*Whitman v. Am. Trucking Associations*,
   531 U.S. 457 (2001) ...................................................... 44, 45, 46

*Wild Virginia v. Council on Env't Quality*,
   56 F.4th 281 (4th Cir. 2022) ............................................. 21

## Constitution

U.S. Const. art. I, § 1 .................................................... 44

## Statutes

5 U.S.C. § 702 (Administrative Procedure Act) ...................................... 1

15 U.S.C. § 631(f) ..................................................... 35

15 U.S.C. § 631(f)(1) ................................................... 45

15 U.S.C. § 631(f)(1)(B) ................................................ 39

15 U.S.C. § 631(f)(1)(C) ................................................ 39

15 U.S.C. § 631(f)(2) ................................................... 5

15 U.S.C. § 637(a)(1) ............................................... 45, 46

15 U.S.C. § 637(a)(1)(A) ........................................... 5, 45

15 U.S.C. § 637(a)(1)(B) ................................................ 5

15 U.S.C. § 637(a)(4) .................................................. 6

15 U.S.C. § 637(a)(5) .................................................. 6

15 U.S.C. § 637(a)(6)(A) ........................................ 6, 11, 27

28 U.S.C. § 1291 ....................................................... 1

28 U.S.C. § 1331 ....................................................... 1

28 U.S.C. § 1343(a) .................................................... 1

28 U.S.C. § 2201 ....................................................... 1

28 U.S.C. § 2202 ....................................................... 1

Pub. L. No. 85-536, July 18, 1958, 72 Stat. 384 ...................................... 7

Pub. L. No. 95-507, Title II, § 201, Oct. 24, 1978, 92 Stat.
   1760, 1763 (codified at 15 U.S.C. § 631) ........................................ 7, 39

Pub. L. No. 96-302, § 118, July 2, 1980, 94 Stat. 833, 840 ...................... 7

Pub. L. No. 99-272, Apr. 7, 1986, 100 Stat. 82 ......................................... 7

Pub. L. No. 100-656, Nov. 15, 1988, 102 Stat. 3853 ................................ 7

**Rules of Court**

Fed. R. Civ. P. 12(b)(1) ................................. 3, 15, 20, 29, 37, 49

Fed. R. Civ. P. 12(b)(6) ................................. 4, 15, 19, 29, 37, 49

**Other Authorities**

13 C.F.R. § 124.3 ....................................................................... 9

13 C.F.R. § 124.103 ............................................................ 24, 35

13 C.F.R. § 124.103(a) ............................................................. 6

13 C.F.R. § 124.103(b)(1) ................................. 8, 9, 10, 43, 44

13 C.F.R. § 124.103(b)(3) ....................................................... 8

13 C.F.R. § 124.103(b) ........................................................... 41

13 C.F.R. § 124.103(c)(1) ...................................................... 10

13 C.F.R. § 124.103(c)(2) ...................................................... 10

13 C.F.R. § 124.103(d) ..................................................... 9, 41

13 C.F.R. § 124.103(d)(1) ....................................................... 9

13 C.F.R. § 124.103(d)(2) ...................................................... 10

13 C.F.R. § 124.104 ..................................... 26, 28, 30

13 C.F.R. § 124.104(a) .......................................................... 27

13 C.F.R. § 124.104(c) .......................................................... 11

13 C.F.R. § 124.104(c)(1) ................................................. 12, 31

13 C.F.R. § 124.104(c)(2) ...................................................... 12

13 C.F.R. § 124.104(c)(3)(i) ................................................... 12

13 C.F.R. § 124.404 ......................................................... 5, 24

13 C.F.R. § 124.405 ......................................................... 5, 24

13 C.F.R. § 124.501(b) ........................................................... 5

13 C.F.R. § 124.517(a) ........................................................... 8

Borak, Jonathan, et al., *Who is Hispanic? Implications for Epidemiologic Research in the United States*, 15 Epidemiology 240 (2004) ................................................. 43

Congressional Research Service, *SBA's "8(a) Program": Overview, History, and Current Issues Congressional Research Service* (updated July 29, 2022), https://crsreports.congress.gov/product/pdf/R/R44844 .............. 5, 6, 10

Forbes, Jack D., *The Hispanic Spain: Party Politics and Governmental Manipulation of Ethnic Identity*, 19 Latin Am. Persp. 59 (1992) ........................................ 43

La Noue, George R. & Sullivan, John C., *Gross Presumptions: Determining Group Eligibility for Federal Procurement Preferences*, 41 Santa Clara L. Rev. 103 (2000) ................................................................. 10

SBA Office of the Inspector General, *SBA's Business Development Assistance to 8(a) Program Participants*, Report Number 22-08, Feb. 14, 2022, https://www.oversight.gov/sites/default/files/oig-reports/SBA/SBA-OIG-Report-22-08.pdf ................................................. 11

## JURISDICTIONAL STATEMENT

The district court had jurisdiction to hear Plaintiffs-Appellants claims under 28 U.S.C. §§ 1331 (federal question), 1343(a) (redress for deprivation of civil rights), and 2201–02 (the Declaratory Judgment Act); and 5 U.S.C. § 702 (Administrative Procedure Act). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## INTRODUCTION

Plaintiff-Appellant Marty Hierholzer is a Navy veteran and small business owner in Norfolk, Virginia, who seeks to compete for federal contracts without being discriminated against based on his race. He wants to participate in the Small Business Administration's Section 8(a) Business Development Program (the "8(a) program"). But that program—which ostensibly seeks to assist small businesses in procuring federal contracts—applies different rules to different businesses based on the owners' race.

Under the 8(a) program, SBA sets aside a host of federal contracts and other benefits for program participants, but the program is open only to entrepreneurs that SBA considers "socially disadvantaged." Yet "social disadvantage" is a term bound with race: SBA *presumes* that business owners are socially disadvantaged if they fall into certain racial or ethnic

1

categories. Business owners that do not belong to a favored racial group, like Mr. Hierholzer, must establish individual social disadvantage to SBA's satisfaction—a demanding burden that many owners have been unable to surmount, including Mr. Hierholzer. As a result, he has been frozen out of the 8(a) program and is ineligible for all set-aside contracts and other benefits available to program participants.

Mr. Hierholzer and his company, MJL Enterprises, LLC (MJL), brought this lawsuit to challenge the 8(a) program's race-based measures. Defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6). While the motion to dismiss was pending, a federal district court in Tennessee issued a summary judgment ruling that SBA's race-based presumption violates the equal protection component of the Fifth Amendment's Due Process Clause. *Ultima Servs. Corp. v. U.S. Dep't of Agric.*, No. 2:20-cv-00041, 2023 WL 4633481 (E.D. Tenn. July 19, 2023). The court enjoined SBA from using a race-based presumption for admission to the 8(a) program. *Id.* at *18. SBA accordingly paused its use of the presumption and temporarily changed the application process, but it has not made any permanent changes to the program or rescinded the regulations containing race-based qualifications. The *Ultima* court has

also not yet issued a final decision, and SBA has declined to state whether it will appeal once that occurs.

Months after the *Ultima* court issued its injunction, the district court below dismissed Plaintiffs' case under Rule 12(b)(1) on both standing and mootness grounds. It concluded that Plaintiffs lack standing because they did not identify specific federal contracts that MJL lost by not being admitted to the 8(a) program, did not allege in the complaint that Mr. Hierholzer is economically disadvantaged, and did not establish that Mr. Hierholzer is socially disadvantaged. The court also held that this case is moot based on SBA's response to the *Ultima* decision, even though (1) Defendants have not argued this case is moot, (2) SBA has made no permanent changes to the 8(a) program, (3) there has been no final decision in *Ultima*, and (4) the government may choose to appeal once a final decision issues in that case.

The district court's standing and mootness decisions should be reversed. They reflect a misunderstanding of both Plaintiffs' claims and the governing law. Plaintiffs have adequately alleged that they have standing to challenge SBA's race-based barrier to entry into the 8(a) program, and they are not required to prove specific lost contracts,

economic disadvantage, or social disadvantage. Even if a showing of economic disadvantage were required, Mr. Hierholzer submitted a declaration in opposition to the motion to dismiss establishing his economic disadvantage. And the case is not moot both because SBA has made no permanent changes and because there has been no final decision in *Ultima*, including any appeals. At this point, there is no reason that this case and *Ultima* cannot proceed in parallel.

Although the district court did not reach the issue of whether Plaintiffs have stated a claim under Rule 12(b)(6), this Court should also rule on and deny Defendants' request for dismissal of three of Plaintiffs' five claims. Plaintiffs have plausibly alleged that SBA's racial presumption violates the Due Process Clause and the nondelegation doctrine, and Defendants' assertion that the statute of limitations bars Plaintiffs' claims is meritless.

## STATEMENT OF THE ISSUES

1.    Whether the district court incorrectly held that Plaintiffs lack standing to challenge SBA's 8(a) program.

2.    Whether the district court incorrectly concluded that Plaintiffs' challenge is moot.

4

3.      Whether Plaintiffs have stated claims for relief under both the equal protection component of the Fifth Amendment's Due Process Clause and the nondelegation doctrine.

## STATEMENT OF THE CASE

### I.    Legal and Factual Background

#### A.      The 8(a) Program

SBA's 8(a) program seeks to "promote the business development" of small business owners who have suffered social and economic disadvantage. JA012 ¶ 31; 15 U.S.C. § 631(f)(2). It authorizes SBA to enter into contracting agreements for goods and services with other federal agencies as it deems "necessary or appropriate," then subcontract those agreements to 8(a) program participants, either through a competitive bidding process or as "sole-source" awards granted without any competition. JA011 ¶¶ 27–28; 15 U.S.C. § 637(a)(1)(A)–(B); 13 C.F.R. § 124.501(b). In addition, SBA provides program participants with valuable technical and financial assistance, training, and access to federal surplus property. *See* JA018 ¶ 71; 13 C.F.R. §§ 124.404–405.

Each year, SBA annually awards about 30 billion dollars' worth of federal contracts to 8(a) program participants—over 5% of all federal contract dollars. Congressional Research Service, *SBA's "8(a) Program":*

*Overview, History, and Current Issues Congressional Research Service* 35 (updated July 29, 2022).[1] Most of these contracts are categorically unavailable to businesses that do not participate in the 8(a) program, because the contracts are either set aside for bidding by program participants or awarded as sole-source contracts to program participants. *Id.*

Participation in the 8(a) program is limited to businesses that are at least 51% owned by persons who are both "socially and economically disadvantaged." 15 U.S.C. § 637(a)(4). Business owners are considered socially disadvantaged if they "have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities" and due to "circumstances beyond their control." *Id.* § 637(a)(5); 13 C.F.R. § 124.103(a). "Economically disadvantaged individuals" are defined as "those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities." 15 U.S.C. § 637(a)(6)(A). These two requirements are discussed in more detail below.

---

[1] https://crsreports.congress.gov/product/pdf/R/R44844.

1.    **SBA's race-based social disadvantage presumption**

The Act that originally established the 8(a) program (and created SBA) said nothing about "social disadvantage" and was geared toward helping small businesses generally. *See* Pub. L. No. 85-536, July 18, 1958, 72 Stat. 384. Congress amended the statute in 1978 to limit the 8(a) program to small businesses owned by "socially and economically disadvantaged persons." Pub. L. No. 95-507, Title II, § 201, Oct. 24, 1978, 92 Stat. 1760, 1763 (codified at 15 U.S.C. § 631). As part of the amendment, Congress included findings stating that "socially disadvantaged" persons include "Black Americans, Hispanic Americans, Native Americans, and other minorities." *Id.* Congress later added "Asian Pacific Americans," "Indian tribes," and "Native Hawaiian Organizations" to this list.[2]

Congress's findings were incorporated into an SBA regulation stating that there is a "rebuttable presumption" of social disadvantage for members of officially "designated groups"—such as the racial groups

---

[2] *See* Act of July 2, 1980, Pub. L. No. 96-302, § 118, 94 Stat. 833, 840 (Asian Pacific Americans); Pub. L. No. 99-272, Apr. 7, 1986, 100 Stat. 82 (Indian tribes); Pub. L. No. 100-656, Nov. 15, 1988, 102 Stat. 3853 (Native Hawaiian Organizations).

Congress listed in the statute. 13 C.F.R. § 124.103(b)(1). Although in theory an applicant's presumption of social disadvantage may be rebutted if there is "credible evidence to the contrary," *id.* § 124.103(b)(3), in practice the presumption is likely determinative. Because applicants who meet the racial criteria do not voluntarily present rebuttal evidence against themselves, SBA can only obtain such evidence if presented by outside parties. But SBA prohibits any party from challenging the eligibility of an 8(a) participant as part of a bid or contract protest, either to SBA or in any administrative forum. *Id.* § 124.517(a).

SBA's regulation elaborates on and adds to Congress's list of the racial and ethnic groups whose members are entitled to the presumption of social disadvantage.[3] For example, SBA defines "Asian Pacific American" as a person "with origins from" any of a list of twenty-six

---

[3] The regulation leaves some races and ethnicities undefined. For example, it does not define "Black American" or "Hispanic American," relying instead on the definitions of "Hispanic," "Black," and "White" in the Office of Management and Budget's Directive No. 15, entitled "Race and Ethnic Standards for Federal Statistics and Administrative Reporting." JA013–14 ¶¶ 38–41.

nations in Asia and Oceania. *Id.* § 124.103(b)(1).[4] Because that definition relies on political boundaries, it necessarily draws sharp lines. For example, since the list includes persons from China but not neighboring Mongolia, the former are presumed socially disadvantaged but the latter are not. *Id.* Similarly, persons from Palau, Guam, Kiribati, Fiji, and Samoa are entitled to the presumption, but persons from the nearby Solomon Islands, Vanuatu, and Papua New Guinea are not. *Id.* SBA's regulation also designates a new group not listed in the statute, "Subcontinent Asian Americans" (defined as "persons with origins from India, Pakistan, Bangladesh, Sri Lanka, Bhutan, the Maldives Islands or Nepal"), as entitled to the presumption of social disadvantage. *Id.*

Aside from the groups designated in the statute and SBA regulation, a representative[5] of another identifiable group may petition SBA to have the group designated as presumptively socially disadvantaged. *Id.* § 124.103(d). The representative must present

---

[4] However, "[b]eing born in a country does not, by itself, suffice to make the birth country an individual's country of origin." 13 C.F.R. § 124.103(b)(1).

[5] SBA does not define "representative," *see* 13 C.F.R. § 124.3, but it appears to mean nothing more than someone who petitions for a group's inclusion as presumptively socially disadvantaged.

"substantial evidence that members of the group have been subjected to racial or ethnic prejudice or cultural bias." *Id.* § 124.103(d)(1). SBA will then judge whether the group has "suffered prejudice, bias, or discriminatory practices" that resulted in "economic deprivation," and whether the disadvantages faced by the group have "produced impediments in the business world." *Id.* § 124.103(d)(2).

SBA has rejected most petitions for recognition of additional groups as socially disadvantaged, including from Hasidic Jews, women, Iranians, and service-disabled veterans. JA015 ¶ 45; Congressional Research Service, *supra*, at 6 n.34; George R. La Noue & John C. Sullivan, *Gross Presumptions: Determining Group Eligibility for Federal Procurement Preferences*, 41 Santa Clara L. Rev. 103, 127–29 (2000). SBA has, however, accepted petitions from Asian Indians and Sri Lankans, which are both now included in the definition of "Subcontinent Asian Americans." JA015 ¶ 45; 13 C.F.R. § 124.103(b)(1).

Applicants belonging to racial groups that are *not* presumed to be socially disadvantaged must demonstrate social disadvantage by a preponderance of the evidence. 13 C.F.R. § 124.103(c)(1). Applicants must show that (1) they have at least one objective distinguishing feature

that has contributed to their social disadvantage, (2) their disadvantage is based on their experience in American society, (3) it is chronic and substantial, and (4) it has negatively impacted their entry into or advancement in the business world. *Id.* § 124.103(c)(2). In practice, very few 8(a) program participants achieved eligibility through demonstrating individual social disadvantage to SBA's satisfaction. JA017–18 ¶ 66.[6]

## 2. Economic disadvantage

Once an applicant has established social disadvantage—through either the presumption or an individualized showing—he must show that he is "economically disadvantaged," meaning his "ability to compete … has been impaired due to diminished capital and credit opportunities." 15 U.S.C. § 637(a)(6)(A). But an applicant need not recount specific instances of diminished capital and credit opportunities. Indeed, SBA eliminated the requirement to submit a narrative statement in support

---

[6] According to an Inspector General report, of 7,669 small businesses that submitted 8(a) program applications in FY 2020, SBA approved only 591. SBA Office of the Inspector General, *SBA's Business Development Assistance to 8(a) Program Participants*, Report Number 22-08, Feb. 14, 2022, p. 9, https://www.oversight.gov/sites/default/files/oig-reports/SBA/SBA-OIG-Report-22-08.pdf. The report does not specify how many of the 591 were from presumptively socially disadvantaged persons, nor does it state the reasons the other applications were rejected.

of a claim of economic disadvantage, instead relying "solely on an analysis of objective financial data." Congressional Research Service, *supra*, at 24; *see also* JA012 ¶ 33 ("[A]lmost all small business concerns owned by a socially disadvantaged individual will be considered 'economically disadvantaged.'"); 13 C.F.R. § 124.104(c).

To satisfy the economic disadvantage requirement, an applicant must satisfy three objective criteria: (1) personal net worth less than $850,000; (2) average income less than $400,000 over the three years preceding submission of the application; and (3) assets whose fair market value does not exceed $6.5 million. 13 C.F.R. § 124.104(c)(2)–(4). The applicant's primary residence and business are excluded from the calculation of net worth, *id.* § 124.104(c)(2), and income above $400,000 is allowed in certain circumstances, *id.* § 124.104(c)(3)(i). SBA will also attribute to the applicant the value of certain assets transferred to an immediate family member for less than fair market value in the preceding two years. *Id.* § 124.104(c)(1).[7]

---

[7] To be attributable to the applicant, an asset must have been "transferred to an immediate family member, or to a trust a beneficiary of which is an immediate family member, for less than fair market value" and not for "education, medical expenses, or some other form of essential

12

### B.    Marty Hierholzer and MJL Enterprises

Mr. Hierholzer is a service-disabled veteran and owner of MJL, which contracts with the federal government to provide services and supplies. JA007 ¶ 2. He previously served his country with distinction as a Navy deep sea diver for twenty-two years, where he persevered through mental and physical injuries suffered in the line of duty. JA009–10 ¶¶ 15–18. Because of those injuries, the Department of Veteran Affairs rates Mr. Hierholzer as 60% disabled. JA010 ¶ 19.

During his time in the Navy, Mr. Hierholzer observed that military suppliers sometimes failed to provide adequate and timely supplies. JA101 ¶ 21. After retiring from the Navy, Mr. Hierholzer set out to fill the void and started MJL to provide dependable supplies and services to the military. JA010 ¶¶ 21–22. MJL is legally recognized as a small business under the terms of the 8(a) program. JA011 ¶ 23. Today, the company provides a variety of goods and services—such as medical, maintenance, and repair equipment—to military bases and VA hospitals. JA010 ¶ 22.

---

support" or for "customary recognition of special occasions, such as birthdays, graduations, anniversaries, and retirements." 13 C.F.R. § 124.104(c)(1)(i)–(ii).

Mr. Hierholzer has twice applied for MJL to be included in the 8(a) program, in 2009 and 2016. JA015 ¶ 54. But he is of German and Scottish descent and therefore not a member of a racial group that enjoys a presumption of social disadvantage under the 8(a) program. JA015 ¶ 47. Instead, he based his claim of social disadvantage on the cultural bias experienced by service-disabled veterans. JA016–17 ¶¶ 56–62. Mr. Hierholzer invested substantial money, time, and effort filing these applications, each time working in vain with program representatives to ensure he provided appropriate documentation supporting his eligibility. JA016 ¶ 57. SBA denied both applications because it concluded that Mr. Hierholzer had not sufficiently established social disadvantage. JA016–17 ¶¶ 55, 62.

Mr. Hierholzer meets all the requirements to be considered economically disadvantaged under the 8(a) program. Specifically, he (1) has a net worth of less than $850,000; (2) has had an average adjusted gross income of less than $400,000 in the three preceding years; and (3) does not hold assets with a fair market value over $6.5 million. JA094–95 ¶¶ 4–6. Because Mr. Hierholzer meets these economic qualifications, he would have been accepted into the 8(a) program

14

without having to prove social disadvantage if he belonged to one of the favored racial groups. JA017 ¶ 64. But because he does not, he has been categorically excluded from the program—and the valuable opportunities that it provides for small business owners.

## II.    Procedural History

Plaintiffs brought this civil rights lawsuit against SBA and its Administrator (in her official capacity) to challenge the 8(a) program's presumption of social disadvantage for members of certain racial groups. JA007–27. The complaint asserts five claims: (1) the race-based presumption violates the equal protection component of the Fifth Amendment's Due Process Clause; (2) SBA's racial classifications violate the equal protection component of the Due Process Clause; (3) SBA's claim of authority to decide which racial groups are presumptively disadvantaged violates the Administrative Procedure Act (APA); (4) the 8(a) program violates the nondelegation doctrine; and (5) SBA's 8(a) regulations are arbitrary and capricious, in violation of the APA. JA019–26.

Defendants moved to dismiss all claims under Rule 12(b)(1) and claims 1, 2, and 4 under Rule 12(b)(6). JA028–56. As to Rule 12(b)(1),

Defendants argued that Mr. Hierholzer lacked standing to challenge the 8(a) program in part because the complaint did not allege that he satisfies the criteria for economic disadvantage. JA038–40. Mr. Hierholzer's response included a signed declaration stating that he met all three economic disadvantage criteria. JA094–95.

While Defendants' motion to dismiss was pending, the district court in *Ultima* issued a summary judgment ruling that SBA's race-based presumption of social disadvantage violates the equal protection component of the Due Process Clause. *Ultima Servs.*, 2023 WL 4633481 at *18. Plaintiffs provided the *Ultima* decision to the district court as supplemental authority. *See* JA004 (ECF No. 34).

After the district court granted Plaintiffs' motion for oral argument, Defendants filed a motion to stay the case. JA113–35. They explained that SBA had complied with the *Ultima* injunction by halting any contract awards to 8(a) participants who were admitted based on the race-based presumption, "unless SBA has determined that the participant meets the standard for social disadvantage without the use of the presumption." JA118. Defendants argued in their stay motion that "if no party elects to appeal the district court's final judgment in *Ultima*,

16

this case would be mooted in its entirety." JA119. However, Defendants also admitted that "[t]he court in *Ultima* has not issued a final order in the case resolving the final scope of … relief." JA118. Mr. Hierholzer opposed the motion to stay because SBA had not permanently eliminated the race-based presumption and because the *Ultima* case was not yet final. JA153–57.

After holding oral argument, *see* JA136–52, the district court entered an order granting Defendants' motion to dismiss, JA159–76. Plaintiffs timely filed a notice of appeal. JA178.

## STANDARD OF REVIEW

This Court reviews dismissal under either 12(b)(1) or 12(b)(6) using a *de novo* standard. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006).

## SUMMARY OF ARGUMENT

The district court incorrectly concluded that Plaintiffs lack standing. To the contrary, they have adequately pled that they are injured by the race-based presumption, which makes it more difficult for Mr. Hierholzer to gain admittance to the 8(a) program than for business owners who qualify for the presumption due to their race. Plaintiffs' injury is caused by Defendants' enforcement of the 8(a) program, and it

would be redressed by a decision granting the injunctive and declaratory relief sought in the Complaint.

The district court erred in holding otherwise. Its conclusion that Plaintiffs were required to allege that they lost specific contracts by not being in 8(a) program misunderstands Plaintiffs' alleged injury and is contrary to the Supreme Court precedent. Similarly, Plaintiffs were not required to allege that Mr. Hierholzer is economically disadvantaged, which in any event is only determined *after* there is a determination of social disadvantage. Even if Plaintiffs were required to show economic disadvantage, they have done so via Mr. Hierholzer's declaration, which the district court improperly disregarded. Finally, whether Mr. Hierholzer can establish that he is socially disadvantaged is irrelevant, since he should not have to make that showing when members of other races are not subject to that requirement.

The district court also erred in finding the case moot. Defendants have not argued that the case is moot; to the contrary, they have conceded that it is *not* moot at least until the *Ultima* case is final, including all appeals. Moreover, SBA has not conceded that the race-based presumption is unconstitutional and has not made any permanent

18

changes to the 8(a) program. Its temporary compliance with the *Ultima* injunction is not enough to meet its "formidable burden" of showing that the complained-of conduct will not recur.

In addition to reversing the district court's holdings on standing and mootness, this Court should deny Defendants' motion to dismiss under Rule 12(b)(6) and hold that Plaintiffs have stated valid claims. SBA's race-based presumption is subject to strict scrutiny, which it cannot satisfy—particularly not at the motion to dismiss stage. The race-based presumption fails on both the compelling interest and narrow tailoring prongs of strict scrutiny, and the *Ultima* decision confirms that Plaintiffs have at least plausibly alleged that it violates the requirement of equal protection. Similarly, the arbitrary racial classifications in the 8(a) program violate equal protection. And Plaintiffs have plausibly pled that various aspects of the 8(a) program violate the nondelegation doctrine, which precludes Congress from granting legislative powers to executive agencies when it does not provide an "intelligible principle" to govern use of those powers. Finally, Defendants' assertion that Plaintiffs' claims are barred by the statute of limitations is meritless because those

19

claims are based on the continuing injury caused by Defendants' race-based unequal treatment.

## ARGUMENT

## I. The District Court Incorrectly Concluded that Plaintiffs Lack Standing

A Rule 12(b)(1) motion to dismiss for lack of standing may be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). The Court must generally assume the truth of the plaintiff's factual allegations and draw any reasonable inferences in the plaintiff's favor. *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013). The Court also attaches "a presumption of truthfulness" to the plaintiff's allegations where "the jurisdictional facts are intertwined with the facts central to the merits of the dispute." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). In evaluating standing, the Court may consider evidence outside of the pleadings. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768; *Kerns*, 585 F.3d at 190.

20

### A.    Plaintiffs have adequately pled all three elements of standing

Article III standing requires a plaintiff to allege (1) an "injury in fact" that is (2) "fairly traceable" to the defendant and (3) likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). At the pleading stage, the plaintiff need only make general factual allegations of injury resulting from the defendant's conduct. *Id.* at 561. Standing is evaluated based on "the facts at the time the complaint was filed." *Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022).

Here, Plaintiffs have straightforwardly alleged each of the three elements of standing. ***First***, Plaintiffs are injured. In an equal protection case claiming discrimination as to a government benefit, the relevant injury is not the ultimate denial of the benefit, but the erection of "a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993) ("*City of Jacksonville*"); *see also Grutter v. Bollinger*, 539 U.S. 306, 317 (2003) (noting that the plaintiff "clearly has standing" to

challenge the use of race as one of many factors in college admissions decisions).

Plaintiffs are injured because SBA's use of a race-based presumption erects a barrier that denies them equal treatment. JA017–19 ¶¶ 65, 67–70, 73, 76 (alleging that the presumption denies Plaintiffs "equal footing for 8(a) program eligibility" and leaves them at a "competitive disadvantage"). They do not assert that they are completely barred from the 8(a) program, just that admission is more difficult for Plaintiffs than for an applicant who qualifies for the race-based presumption. JA017–18 ¶¶ 64, 67–70. Their injury is not SBA's past denials of Mr. Hierholzer's applications, but Defendants' ongoing unequal treatment of applicants based on race. Plaintiffs accordingly seek prospective, not retrospective, relief. *See* JA026 (Prayer for Relief).

***Second***, Plaintiffs' injury is traceable to Defendants' enforcement of the 8(a) program. Nearly all program participants enter without having to demonstrate social disadvantage because the owner is presumptively disadvantaged on account of race. JA017–18 ¶ 66. Because Mr. Hierholzer is not a member of a favored racial group,

Defendants do not grant him the presumption but instead require that he make a showing of individual social disadvantage. JA017 ¶ 64.

**Third**, Plaintiffs' injury would be redressed by their requested declaratory and injunctive relief, which would prevent Defendants from enforcing the racially discriminatory presumption of social disadvantage. *See* JA026. Plaintiffs do not ask the Court to grant them entry into the 8(a) program, but simply seek elimination of the unconstitutional barrier that precludes their equal consideration. *See Heckler v. Mathews*, 465 U.S. 728, 740 (1984) ("[W]hen the right invoked is that to equal treatment, the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class.") (internal quotation marks and emphasis omitted).

### B. The district court improperly imposed additional standing requirements

The district court concluded that Plaintiffs lack standing for three reasons, none of which have merit.

#### 1. Plaintiffs do not need to allege that they lost specific contracts

First, the district court concluded that Plaintiffs have not alleged a "concrete" or "actual or imminent" injury because they "have not alleged

23

in their Complaint any specific contract bids that they lost." JA168. But this misunderstands their claims. Whether Plaintiffs can point to specific lost contracts is irrelevant because their injury is not lost contracts in the past, but ongoing unequal treatment in the present. SBA's race-based presumption burdens business owners who the government considers to be members of disfavored racial groups by requiring them to show individualized social disadvantage. *See* 13 C.F.R. § 124.103. A small business that cannot make such a showing to SBA's satisfaction is excluded from the set-aside contracts and other benefits—including training, business development, and access to federal surplus property—that are only available to program participants. *See id.* §§ 124.404–405. That unequal burden injures Plaintiffs, without the need to allege and prove specific lost contracts.

It is telling that just a few lines before concluding that Plaintiffs must allege "specific contract bids that they lost," the district court cited language from *City of Jacksonville* that holds precisely the opposite: "when a set-aside program is at issue, 'the "injury in fact" is the inability to compete on an equal footing in the bidding process, *not the loss of a contract.*'" JA168 (emphasis added) (quoting 508 U.S. at 666); *see also*

24

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (a plaintiff challenging a race-based bid program "need not demonstrate that it has been, or will be, the low bidder on a Government contract"). In *City of Jacksonville*, the Supreme Court held that the plaintiff had standing because it faced the "barrier" of a "discriminatory policy [that] prevents it from [bidding on contracts] on an equal basis." 508 U.S. at 666. The Court accordingly reversed the Eleventh Circuit, which had held that the plaintiff lacked standing because it had not shown that it "would have bid successfully for any of the[] contracts" at issue. 508 U.S. at 660 (quoting 951 F.2d 1217, 1219 (11th Cir. 1992)). Yet that is essentially what the district court here demanded, and its conclusion that Plaintiffs had to allege the loss of specific contracts must be reversed.[8]

The district court tried to distinguish *City of Jacksonville*, concluding that "the 8(a) Program does not pose a barrier to Plaintiffs … because anyone can participate in the 8(a) Program, no matter their race or gender, if they submit evidence demonstrating social and economic disadvantage." JA169. But the very requirement that Plaintiffs "submit

---

[8] For the same reasons, the district court's assertion that "Plaintiffs have not shown that they are ready and able to bid on the 8(a) Program contracts," JA169, is irrelevant.

evidence" of social disadvantage, when no such evidence is required for members of preferred races, is precisely the problem. Under the district court's same logic, a Black American could not challenge a government program that automatically accepted white applicants but required all other applicants to first pass a test because "anyone can participate …, no matter their race, if they [pass the test]." JA169. The Constitution's equal protection mandate cannot be so easily evaded.

### 2. Plaintiffs do not need to show economic disadvantage, and in any event have established it

Second, the district court concluded that Plaintiffs were required to allege that they were "economically disadvantaged based on the factors listed in 13 C.F.R. § 124.104," JA169. To the contrary, because the 8(a) program sets aside federal contracts and offers other benefits based on race, any small business that cannot satisfy the race-based presumption—economically disadvantaged or not—would have standing to raise an equal protection challenge. *See Dynalantic Corp. v. Department of Defense*, 115 F.3d 1012, 1016 (D.C. Cir. 1997) (noting that a business's injury stems from the fact that "the *entire* 8(a) program— which injures it by foreclosing business opportunities—is infected by

26

unconstitutional race consciousness"). The district court's standard would essentially require Plaintiffs to allege that they "would have obtained the benefit" of admission to the 8(a) program—which is precisely what the Supreme Court has held is not required in this type of challenge. *City of Jacksonville*, 508 U.S. at 666.

The district court's requirement also puts the cart before the horse because a person must first be deemed "socially disadvantaged" before he can be determined to be "economically disadvantaged." *See* 15 U.S.C. § 637(a)(6)(A) (defining "economically disadvantaged individuals" as a subset of "socially disadvantaged individuals"); 13 C.F.R. § 124.104(a) (same). Thus, the question of economic disadvantage does not even arise until after social disadvantage is established. And since Plaintiffs' challenge is to the antecedent question of how social disadvantage is established, they need not allege economic disadvantage.

In holding otherwise, the district court relied on this Court's short, unpublished decision in *SRS Technologies, Inc. v. U.S. Department of Defense*, No. 96-1484, 1997 WL 225979, at *1 (4th Cir. 1997). But *SRS Technologies* is distinguishable. There, a business that was excluded from the 8(a) program sought to challenge the race-based presumption as

unconstitutional. *Id.* The panel held that the business lacked standing to bring that challenge because it was not excluded from the program on racial grounds, but because the owner was a multi-millionaire and not economically disadvantaged. *Id.*[9] Indeed, the business *qualified* for the presumption of social disadvantage because the owner was from India. *Id.* Thus, *SRS Technologies* stands for the proposition that where a business qualifies for the race-based presumption, that presumption has not caused the business any injury. It does not support the district court's conclusion that to have standing, a plaintiff must first show economic disadvantage. Unlike the plaintiff in *SRS Technologies*, Plaintiffs are excluded based on Mr. Hierholzer's race and thus have standing to challenge the presumption.

Even if Plaintiffs were required to establish economic disadvantage, they have done so. Economic disadvantage is determined based on limits to the owner's personal net worth, adjusted gross income, and assets, all of which Mr. Hierholzer satisfies. *See* 13 C.F.R. § 124.104; JA094–95 (Mr. Hierholzer's declaration that he meets the financial requirements to be

---

[9] It is not clear from the opinion how the owner's financial status was established.

economically disadvantaged). Although he provided that evidence in a declaration rather than alleging it in the Complaint, courts "may consider evidence outside the pleadings" in deciding a motion under Rule 12(b)(1). *Evans*, 166 F.3d at 647 (quotation omitted). And where declaration evidence is uncontested, as it is here, the court assumes its truth at this stage. *Payne v. Chapel Hill N. Properties, LLC*, 947 F. Supp. 2d 567, 572 (M.D.N.C. 2013) (in deciding a Rule 12(b)(1) challenge to standing, "the court assumes the truth of the uncontested facts augmented by a plaintiff's affidavits"); *see also Lujan*, 504 U.S. at 561 ("[E]ach element [of standing] must be supported … with the manner and degree of evidence required at the successive stages of the litigation.").[10]

The district court considered Mr. Hierholzer's declaration but found it insufficient in two ways. First, it took issue with his statement that he "believe[s]" he is economically disadvantaged. *See* JA094 ¶ 3; JA171

---

[10] The district court cited *U.S. ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc.*, for the proposition that a "plaintiff cannot cure pleading deficiencies … with later-filed supporting documentation on a motion to dismiss." JA171 (quoting 707 F.3d 451, 458–59 n.8 (4th Cir. 2013)). But *Nathan* dealt only with a motion to dismiss under Rule 12(b)(6), *see* 707 F.3d at 453, under which a court is limited to the pleadings, *e.g.*, *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 566 (E.D. Va. 2009). That standard does not apply to a motion under Rule 12(b)(1).

("Hierholzer's beliefs are not enough to demonstrate that he is economically disadvantaged."). But the declaration contains far more than an assertion of belief—it also affirms that Mr. Hierholzer satisfies each of the net worth, income, and asset value restrictions from 13 C.F.R. § 124.104. JA094–95 ¶¶ 4–6. Defendants have not provided any evidence to contest those assertions.

Second, the district court stated that "[e]ven if the Court accepts the affidavit as true, it fails to discuss asset transfers within two years," thus "leav[ing] open the possibility that Plaintiffs are not economically disadvantaged." JA 171. But the mere "possibility" that Plaintiffs are not economically disadvantaged cannot overcome the presumption of truth that applies to Mr. Hierholzer's declaration—and certainly does not establish a *lack* of economic disadvantage at this stage. *See Evans*, 166 F.3d at 647 (motion to dismiss for lack of standing may be granted "only if the material jurisdictional facts *are not in dispute* and [Defendants are] entitled to prevail as a matter of law") (emphasis added, quotation omitted). The district court improperly disregarded Mr. Hierholzer's assertion about the value of his assets, JA095 ¶ 6, in favor of speculating (without evidence) that (1) Mr. Hierholzer might have transferred assets

30

to an immediate family member (2) for less than fair market value (3) within the last two years (4) that was not for essential support or for a special occasion, and (5) which, if added to Mr. Hierholzer's other assets, would exceed the $6.5 million threshold. *See* 13 C.F.R. § 124.104(c)(1). At this stage, a plaintiff need only provide "general factual allegations of injury resulting from the defendant's conduct." *Lujan*, 504 at 561. The district court instead required comprehensive evidence negating even the "possibility" that Mr. Hierholzer is not economically disadvantaged. That decision must be reversed.

### 3. Plaintiffs do not need to establish their social disadvantage to have standing

Third, the district court held that Plaintiffs must show that Mr. Hierholzer is socially disadvantaged. Otherwise, it held, they cannot prove that "Defendants' use of the race-conscious presumption caused their alleged injuries." JA170, 172. And because in the absence of the presumption, "Plaintiffs would still have to demonstrate social and economic disadvantage," the court held that "Plaintiffs have not plausibly alleged that striking down the presumption would redress their alleged injury." JA173.

This again misunderstands Plaintiffs' injury. The injury is not "denial of the benefit" of acceptance into the 8(a) program, but the "barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group." *City of Jacksonville*, 508 U.S. at 666. Whether Plaintiffs can show social disadvantage is irrelevant; the point is that they should not have to do so when members of other races are not subject to that same requirement. Their injury is unequal treatment, and that injury would be redressed by their requested injunctive and declaratory relief. *See Heckler*, 465 U.S. at 740 ("[W]hen the right invoked is that to equal treatment, the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class.") (internal quotation marks and emphasis omitted).

## II.   The District Court Incorrectly Concluded that Plaintiffs' Claims Are Moot

A case becomes moot "[w]hen a case or controversy ceases to exist—either due to a change in the facts or the law." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (quoting *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015)). Mootness

32

requires that "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018) (quotation omitted).

In a lawsuit challenging government policy, the government "bears the burden to establish that a once-live case has become moot." *W. Virginia v. EPA*, 597 U.S. 697, 719 (2022). However, "a defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur." *FBI v. Fikre*, 144 S. Ct. 771, 777–78 (2024) (quotations omitted). This is a "formidable burden," as "[t]o show that a case is truly moot, a defendant must prove no reasonable expectation remains that it will return to its old ways." *Id.* (quotations & alterations omitted).

Here, the district court concluded that the case is moot because of SBA's response to the injunction in the *Ultima* case. JA173–75. Specifically, it noted that after the *Ultima* injunction was issued, Defendants "paused" applications to the 8(a) program and required all program participants to reapply without the use of the presumption. JA174. The court further noted that at oral argument, "Defendants stated on record that they are no longer using the race-conscious

33

presumption." *Id.* It held that because "SBA changed the 8(a) Program application and removed the race-conscious presumption from all stages of the process[,] Plaintiffs no longer have a personal stake in the outcome of this litigation." JA175.

What is perhaps most striking about the district court's holding is that it concluded that the case is moot even though Defendants have not argued that it is. Indeed, in response to the district court's question about potential mootness, counsel for Defendants stated that "this Court doesn't need to reach mootness" and conceded that there has been no "final order in the *Ultima* case." JA141. Plaintiffs' counsel also repeatedly asserted that Defendants "are not arguing that this case is moot," JA145,[11] and Defendants' counsel did not disagree with that characterization, *see* JA151. Since a government defendant bears the burden of establishing mootness, *W. Virginia*, 597 U.S. at 719, the district court's conclusion that this case is moot—when Defendants thought otherwise—is particularly far afield.

---

[11] *See also* JA145 ("[T]he government is not even arguing that this case is moot …."); JA146 ("They do not say that the case is moot yet.").

Moreover, the district court's mootness holding is incorrect. SBA has not conceded that the race-based presumption is unconstitutional or made any permanent changes in response to the *Ultima* case; it has only paused use of the presumption so as to not violate the *Ultima* court's injunction. The statute and regulations that impose the race-based presumption have not been revised or rescinded. *See* 15 U.S.C. § 631(f); 13 C.F.R. § 124.103. And *Ultima* is not yet final. As of the date of this brief, the *Ultima* court has not held argument or issued a decision on the plaintiff's pending motion for a permanent injunction and additional equitable relief, *see Ultima*, 2023 WL 4633481, ECF No. 93, and there is no set timeline within which it must do so. When the *Ultima* court does eventually issue a final judgment, the government may choose to appeal the injunction. As Defendants have conceded, this case could only become moot once all appeals are resolved or "if no party elects to appeal the district court's final judgment in *Ultima*." JA119.[12]

Thus, SBA's compliance with the *Ultima* injunction is only temporary at this point. *See, e.g.*, *Deal*, 911 F.3d at 192 (temporary

---

[12] Defendants also recognized that even final resolution of *Ultima* would not necessarily "entirely moot[]"this case. JA119.

suspension of government program did not moot case because it was not "'absolutely clear' that the suspended … program will not return in identical or materially indistinguishable form") (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Its changes to the 8(a) program, made in reaction to a non-final district court order, are akin to voluntary cessation, which will only moot a case if the defendant can meet the "formidable burden" of showing "that the practice cannot reasonably be expected to recur." *Fikre*, 144 S. Ct. at 777–78 (quotations omitted). Should the government prevail in an appeal in *Ultima*, there would be nothing to stop SBA from immediately reinstating the presumption. It thus cannot be said that there is "no reasonable expectation … that it will return to its old ways." *Id.* (quotations & alterations omitted).

Put simply, Plaintiffs' challenge has not become moot just because SBA temporarily paused use of the presumption based on the non-final order of a district court in another circuit that the government may or may not appeal. "The possibility of future mootness is not sufficient to overcome the strong presumption in favor of the federal court exercising its jurisdiction." *Hunt Valley Presbyterian Church, Inc. v. Baltimore*

*Cnty.*, No. CV CCB-17-3686, 2018 WL 2225089, at *3 (D. Md. May 15, 2018).

## III.  Plaintiffs Have Stated Valid Claims for Relief

Although the district court did not reach the issue, this Court should also hold that Plaintiffs have stated valid claims under the Due Process Clause and the nondelegation doctrine.[13] *See, e.g.*, *Davis v. Wells Fargo*, 824 F.3d 333, 350 (3d Cir. 2016) (after reversing Rule 12(b)(1) dismissal, deciding Rule 12(b)(6) motion that district court had not addressed); *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 720 (4th Cir. 2006) (district court's failure to address Rule 12(b)(6) argument does not prevent circuit court from addressing it on appeal after reversing Rule 12(b)(1) dismissal).

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain

---

[13] Defendants did not seek Rule 12(b)(6) dismissal of Plaintiffs' APA claims. *See* JA022–23, 25–26 (Claims for Relief 3 and 5). Plaintiffs' brief in opposition to Defendants' motion to dismiss is available at JA062–95.

sufficient factual allegations, taken as true, 'to raise a right to relief above the speculative level' and 'nudge [the] claims across the line from conceivable to plausible.'" *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017) (quoting *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013)).

### A. Plaintiffs stated a claim that SBA's race-based presumption violates the Due Process Clause

The Fifth Amendment's Due Process Clause contains an equal protection component applicable to the federal government. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). "[A]ll racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny." *Adarand Constructors, Inc.*, 515 U.S. at 227.

As an initial matter, because the race-based presumption in SBA's implementing regulations employs racial classifications, the government correctly conceded below that they are subject to strict scrutiny. *See* JA052 & n.7. The challenged *statute* should also receive that same level of scrutiny because it likewise distributes benefits and burdens based on

race.[14] *Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007). Specifically, 15 U.S.C. § 631 concludes that "many [ ] persons are socially disadvantaged because of their identification as members of certain groups that have suffered the effects of discriminatory practices" and that "such groups include … Black Americans, Hispanic Americans, Native Americans, Indian tribes, Asian Pacific Americans, Native Hawaiian Organizations, and other minorities." 15 U.S.C. § 631(f)(1)(B)–(C). These express racial classifications require strict scrutiny.

In its motion to dismiss, the government cited the D.C. Circuit's decision in *Rothe Development, Inc. v. U.S. Department of Defense*, in which a divided panel refused to apply strict scrutiny to the statute because the racial classifications were "located in the findings section of the statute." 836 F.3d 57, 66 (D.C. Cir. 2016). But as Judge Henderson noted in dissent, a statutory preamble "may aid in achieving a 'general understanding' of the statute" and illuminate otherwise ambiguous statutory commands. *See id.* at 79–80 (Henderson, J., dissenting). And

---

[14] Departing from its longstanding position, the government claimed below that the statute is only subject to rational basis review. *See* JA052 & n.9.

Congress did not simply "set and forget" its statutory findings—in later years it repeatedly amended those findings to add other racial groups to the list of those presumed socially disadvantaged. *See supra* n.2. In any event, *Rothe Development* is not binding on this Court and was issued without the benefit of the Supreme Court's recent decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023). That decision provides additional guidance for how to apply strict scrutiny to an equal protection claim and indicates that strict scrutiny is necessary as to the statute here. *Id.* at 206 ("*Any* exception to the Constitution's demand for equal protection must survive a daunting two-step examination known in our cases as 'strict scrutiny.'") (emphasis added & citation omitted).

Turning to whether Plaintiffs have stated equal protection claims, because strict scrutiny requires the government to produce evidence that its racial classifications are narrowly tailored to achieve a compelling government interest, dismissal of Plaintiffs' claim at the pleadings stage would be improper. *E.g., Hassan v. City of New York*, 804 F.3d 277, 306 (3d Cir. 2016) ("[T]he burden of producing evidence to overcome heightened scrutiny's presumption of unconstitutionality is that of the

40

[government], and must be met *after* its Motion to Dismiss.") (citations omitted). Plaintiffs have pled a plausible claim that the challenged statute and regulations cannot withstand strict scrutiny, JA019–20 ¶¶ 76–90, and Defendants' motion to dismiss offered no evidence that the 8(a) program's racial classifications serve a compelling interest in remedying past discrimination. *See Parents Involved*, 551 U.S. at 720.

The government fares even worse on narrow tailoring. Although narrow tailoring requires the government to show "the most exact connection between justification and classification," *Gratz v. Bollinger*, 539 U.S. 244, 270 (2003) (quotation marks omitted), the 8(a) program gives SBA the authority to set aside contracts for disadvantaged businesses in an industry without any evidence of discrimination in that industry or against the disadvantaged businesses. SBA's implementing regulation similarly permits gratuitous benefits to persons from Burma, Brunei, Kiribati, and anywhere else SBA may wish to designate without any evidence that a small business owner from those countries had been discriminated against in that industry. *See* 13 C.F.R. § 124.103(b), (d). That is the hallmark of an insufficiently tailored program. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 506 (1989) (faulting the City

41

of Richmond for providing preferences for "Eskimo, or Aleut persons" even though "[i]t may well be that Richmond has never had an Aleut or Eskimo citizen"). And because the presumption is set to continue indefinitely, it lacks the "logical end point" that is required for narrow tailoring. *Students for Fair Admissions*, 600 U.S. at 221–25.

The *Ultima* decision provides strong persuasive support for Plaintiffs' claim. 2023 WL 4633481. There, after examining the government's proffered evidence, the court concluded that SBA failed to satisfy strict scrutiny. *Id.* at *14 ("Defendants have failed to show a compelling interest for their use of the rebuttable presumption …."); *id.* at *15–17 (concluding that the presumption is not narrowly tailored). Although that conclusion is not binding on this Court, it at least indicates that Plaintiffs have stated plausible claims for relief.

### B.    Plaintiffs stated a claim that SBA's racial classifications violate the Due Process Clause

Plaintiffs have also sufficiently alleged that the 8(a) program's arbitrary racial classifications violate equal protection. JA021–22 ¶¶ 91–98. For example, the statute presumes social disadvantage for "Hispanic Americans," which some scholars have persuasively described as "an artificial rubric for a set of diverse populations that resulted from the

42

mixture of indigenous American peoples, African slaves, and Europeans." Jonathan Borak et al., *Who is Hispanic? Implications for Epidemiologic Research in the United States*, 15 Epidemiology 240, 241 (2004).[15] The term "Asian Pacific American" is similarly broad and arbitrary. According to SBA, it includes people with origins from a broad and diverse list of countries accounting for over half the world's population and with nothing in common other than loose geographic proximity. *See* 13 C.F.R. § 124.103(b)(1). As Justice Alito aptly noted, it "would be ludicrous to suggest that all of these [individuals] have similar backgrounds and similar ... experiences to share." *Fisher v. Univ. of Texas*, 579 U.S. 365, 414 (2016) (Alito, J., dissenting).

SBA's reliance on political boundaries also inherently draws arbitrary lines. A Chinese business owner, but not a Mongolian business owner, is an Asian Pacific American that is presumed socially disadvantaged. *See* JA022 ¶ 95; 13 C.F.R. § 124.103(b)(1). Business owners from Pakistan are presumptively disadvantaged, but those from

---

[15] *See also* Jack D. Forbes, *The Hispanic Spain: Party Politics and Governmental Manipulation of Ethnic Identity*, 19 Latin Am. Persp. 59, 67–68 (1992) (asserting that "the Hispanic concept is a Nixon-engineered political device").

Afghanistan are not. JA022 ¶ 96. Persons from the islands of Fiji and Tuvalu are entitled to the presumption, but not persons from the nearby Solomon Islands and Vanuatu. 13 C.F.R. § 124.103(b)(1). As the *Ultima* court noted, "Defendants' arbitrary line drawing for who qualifies for the rebuttable presumption … necessarily leads to such a determination being underinclusive." 2023 WL 4633481, at *17. Plaintiffs have stated a claim that should be allowed to proceed.

### C.    Plaintiffs stated a claim under the nondelegation doctrine

Article I, § 1, of the Constitution states: "All legislative Powers herein granted shall be vested in a Congress of the United States." Under the nondelegation doctrine, Congress may not "abdicate or [] transfer to others the essential legislative functions with which it is thus vested." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529 (1935). When Congress confers decisionmaking authority upon agencies, Congress must "lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 472 (2001) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)).

44

Here, Plaintiffs plausibly pled that Congress failed to provide SBA with an intelligible principle as to multiple aspects of the 8(a) program. JA023–24 ¶¶ 107–08, 112. For example, SBA has discretion to set aside federal contracts from *any* industry and for *any* good or service. *See* 15 U.S.C. § 637(a)(1)(A). Congress's findings in 15 U.S.C. § 631(f)(1) state that allocating contracts to socially and economically disadvantaged businesses can help ameliorate their condition and benefit the United States, but they provide no guidance on how SBA should select contracts for the 8(a) program or what kinds of contracts (e.g., I.T. service contracts or office supplies contracts) should be included. Likewise, the "necessary or appropriate" language in 15 U.S.C. § 637(a)(1) provides "no more precise a standard" in determining which contracts to include than that provided by a limitation of "fair competition," which the Court in *Whitman* noted was insufficient. 531 U.S at 474.

In short, the statute gives SBA "literally no guidance," *Whitman*, 531 U.S. at 474, as to the "circumstances and conditions" by which contracts should be set aside for the 8(a) program. *See Panama Refining Co. v. Ryan*, 293 U.S. 388, 430 (1935) (holding that a provision of the National Recovery Act was an unconstitutional delegation because it

45

gave unfettered discretion to the President to decide whether and under what conditions to prohibit the transport of hot oil).

Plaintiffs also plausibly pled that the 8(a) program unconstitutionally delegates to SBA the legislative power to make racial classifications, decide which groups are presumed disadvantaged, decide whether someone belongs to a particular minority group, and decide when a group should be removed from the presumption. JA024 ¶¶ 109–11.[16] SBA's authority in this regard is limited only by what the Administrator deems "necessary or appropriate," 15 U.S.C. § 637(a)(1), which is no limit at all. The Administrator's unfettered discretion has led to the arbitrary distinctions and lack of narrow tailoring discussed above.

### D.    Plaintiffs' claims are not barred by the statute of limitations

Defendants argued below that the statute of limitations bars Plaintiffs' request for injunctive and declaratory relief. JA054–56. To the contrary, there is no statute of limitations problem both because the relief

---

[16] Even if the relevant statutes provided an intelligible principle, the power to make racial classifications squarely falls within the type of case in which "the significance of the delegated decision is simply too great for the decision to be called anything but legislative." *Whitman*, 531 U.S. at 487 (Thomas, J., concurring).

46

Plaintiffs seek is prospective and because the injury they allege is continuing. As this Court has long recognized, "[t]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations." *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989) (alteration in original; citation omitted).

As Defendants noted below, a cause of action usually "accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995). But that standard only applies when the plaintiff alleges a past and non-continuing injury. When a plaintiff challenges the constitutionality of a statute "whose continued application works an ongoing constitutional violation," the clock "starts to run anew, every day that the statute applies." *Nat'l Ass'n for Rational Sex Offense Laws v. Stein*, No. 1:17CV53, 2019 WL 3429120, at *9 (M.D.N.C. July 30, 2019) (quoting *Wallace v. New York*, 40 F. Supp. 3d 278, 302 (E.D.N.Y. 2014)); *see also DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) ("[W]hen a harm has occurred more than once in a continuing series of acts or omissions, a plaintiff ... may allege a

'continuing violation' for which the statute of limitations runs anew with each violation.").

Here, Plaintiffs challenge the continued enforcement of an unconstitutional policy, not the constitutionality of a past government action. Although Mr. Hierholzer submitted applications in 2009 and 2016 that were denied, Plaintiffs are not challenging "continual ill effects" from those denials, *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1167 (4th Cir. 1991), but the lack of opportunity to compete on an equal footing for eligibility into the 8(a) program. JA018 ¶¶ 67–68; *see also Dynalantic*, 115 F.3d at 1016 ("Dynalantic's injury is its lack of opportunity to compete for Defense Department contracts reserved to 8(a) firms."); *City of Jacksonville*, 508 U.S. at 666 (contractor's injury was "the inability to compete on an equal footing in the bidding process, not the loss of a contract"). Because Plaintiffs challenge the continued implementation of SBA's racial presumption, their claims are not barred by the statute of limitations.

## CONCLUSION

The Court should reverse the district court's dismissal under Rule 12(b)(1) and deny Defendants' motion to dismiss claims 1, 2, and 4 under Rule 12(b)(6).

## REQUEST FOR ORAL ARGUMENT

Plaintiffs-Appellants request oral argument.

DATED: April 23, 2024.

Respectfully submitted,

s/ Glenn E. Roper
GLENN E. ROPER
JOSHUA P. THOMPSON

*Attorneys for Plaintiff – Appellee*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and

Circuit Rule 32-1, I certify that the attached brief is proportionally

spaced, has a typeface of 14 points and contains 9,484 words.


**Signature** <u>s/ Glenn E. Roper</u>       **Date** <u>April 23, 2024</u>
                GLENN E. ROPER

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Glenn E. Roper
GLENN E. ROPER