No. 24-1187

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

MARTY HIERHOLZER, ET AL.,

Plaintiffs-Appellants

v.

ISABEL GUZMAN, ET AL.,

Defendants-Appellees

_____

ON  APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

_____

BRIEF FOR APPELLEES

_____

KRISTEN CLARKE
  Assistant Attorney General

ERIC S. BENDERSON
  Associate General Counsel
  for Litigation

BONNIE I. ROBIN-VERGEER
TERESA KWONG
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 514-4757

DAVID A. FISHMAN
  Deputy Associate General Counsel
  for Litigation
  U.S. Small Business Administration
  Office of the General Counsel

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........................................................................................... 1

JURISDICTIONAL STATEMENT ................................................................ 3

STATEMENT OF THE ISSUE ....................................................................... 3

STATEMENT OF THE CASE......................................................................... 4

    A.    Statutory And Regulatory Background ................................................. 4

    B.    Factual And Procedural Background .................................................... 9

    C.    District Court Decision....................................................................... 14

SUMMARY OF ARGUMENT ...................................................................... 18

ARGUMENT

    The district court properly dismissed plaintiffs' complaint
    for lack of standing. ....................................................................... 21

    A.    Standard of review............................................................................. 21

    B.    Plaintiffs lack standing to challenge the race-conscious
        component of the 8(a) program........................................................ 22

        1.    Plaintiffs fail to allege an injury-in-fact.................................. 23

        2.    Plaintiffs fail to allege causation............................................. 33

        3.    Plaintiffs fail to allege redressability. ..................................... 37

    C.    If the Court finds that plaintiffs have standing, it should
        remand for further proceedings, enabling the district court
        to consider defendants' Rule 12(b)(6) motion in the first
        instance. ............................................................................................. 41

**TABLE OF CONTENTS (continued):**                                        **PAGE**

CONCLUSION ................................................................................................. 43

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGE**

*Adarand Constructors, Inc. v. Peña*, 515 U.S. 200 (1995) .....................................32

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................33

*Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017).....................................................33

*Bruckner v. Biden*, 666 F. Supp. 3d 1237 (M.D. Fla. 2023).............................. 29-30

*Buscemi v. Bell*, 964 F.3d 252 (4th Cir. 2020)................................................... 21-23

*Cache Valley Elec. Co. v. State of Utah Dep't of Transp.*,
    149 F.3d 1119 (10th Cir. 1998) ................................................................... *passim*

*California v. Texas*, 593 U.S. 659 (2021) .......................................................... 35, 38

*Carney v. Adams*, 592 U.S. 53 (2020) ............................................................... 29, 31

*Carroll v. Nakatani*, 342 F.3d 934 (9th Cir. 2003)..................................................28

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)......................................... 22-23

*Collins v. Yellen*, 141 S. Ct. 1761 (2021) .......................................................... 33-35

*Cutter v. Wilkinson*, 544 U.S. 709 (2005)................................................................41

*DynaLantic Corp. v. Department of Def.*,
    115 F.3d 1012 (D.C. Cir. 1997)....................................................................27

*DynaLantic Corp. v. United States Dep't of Def.*,
    885 F. Supp. 2d 237 (D.D.C. 2012), *appeal dismissed*,
    2013 WL 4711715 (D.C. Cir. 2013).............................................................32

*Food & Drug Admin. (FDA) v. Alliance for Hippocratic Medicine*,
    No. 23-235, 2024 WL 2964140 (U.S. June 13, 2024) ......................... *passim*

*Feikema v. Texaco, Inc.*, 16 F.3d 1408 (4th Cir. 1994)............................................42

**CASES (continued):** **PAGE**

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)................................................................ 19, 22

*Heckler v. Matthews*, 465 U.S. 728 (1984).............................................38

*Hutton v. National Bd. of Examiners in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) ...........................................34

*Interstate Traffic Control v. Beverage*,
101 F. Supp. 2d 445 (S.D. W. Va. 2000) ....................................18, 28-29, 40

*In the Matter of: MJL Enters., LLC*, SBA No. BDPE-566,
2017 WL 8231365 (Dec. 18, 2017)..................................... 10, 17, 25

*Jennings v. University of N.C.*, 482 F.3d 686 (4th Cir. 2007) (en banc)........... 41-42

*Libertarian Party of Va. v. Judd*, 718 F.3d 308 (4th Cir. 2013)..............................33

*Lovelace v. Lee*, 472 F.3d 174 (4th Cir. 2006) .........................................41

*Lujan v. Defenders of Wildlife*, 504 U.S. 560 (1992) ............................22-23, 33, 37

*Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157 (4th Cir. 2023) .........................29

*Northeastern Fla. Chapter of the Associated Gen. Contractors of Am.*
*v. City of Jacksonville*, 508 U.S. 656 (1993) ......................................... *passim*

*Raines v. Byrd*, 521 U.S. 811 (1997) ........................................................22

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
945 F.2d 765 (4th Cir. 1991) ................................................. 21, 26

*Rothe Dev. Inc. v. United States Dep't of Def.*,
836 F.3d 57 (D.C. Cir. 2016)........................................................11

*Singleton v. Wulff*, 428 U.S. 106 (1976) ...................................................41

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................. 23, 32

**CASES (continued):**                                                      **PAGE**

*Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269 (2008) .........................37

*SRS Technologies, Inc. v. United States Dep't of Def.*, No. 96-1484,
    112 F.3d 510, 1997 WL 225979 (4th Cir. May 6, 1997) ................. 16, 36-37

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .................................. 19, 22, 37

*Ultima Servs. Corp. v. United States Dep't of Agric.*,
    683 F. Supp. 3d 745 (E.D. Tenn. 2023) ............................................... *passim*

**STATUTES:**

Administrative Procedure Act
    5 U.S.C. 702 ........................................................................................3
    5 U.S.C. 706(1) ..................................................................................11
    5 U.S.C. 706(2) ..................................................................................11

Small Business Act
    15 U.S.C. 631 ......................................................................................5
    15 U.S.C. 631(a) ..................................................................................4
    15 U.S.C. 631(f) ..................................................................................7
    15 U.S.C. 631(f)(1) ..............................................................................5
    15 U.S.C. 631(f)(1)(B) ........................................................................5
    15 U.S.C. 631(f)(1)(C) .....................................................................5, 7
    15 U.S.C. 631(f)(2) ..............................................................................5
    15 U.S.C. 632(a)(1)-(3) .......................................................................6
    15 U.S.C. 637(a) ........................................................................ 1, 5, 23
    15 U.S.C. 637(a)(1) ..............................................................................6
    15 U.S.C. 637(a)(4) ..............................................................................1
    15 U.S.C. 637(a)(4)(A) .......................................................................38
    15 U.S.C. 637(a)(4)(A)(i)(I) .............................................................6, 28
    15 U.S.C. 637(a)(5) ..............................................................................6
    15 U.S.C. 637(a)(6)(A) .........................................................................7
    15 U.S.C. 637(e) .................................................................................30
    15 U.S.C. 637(m) .................................................................................4
    15 U.S.C. 644 .......................................................................................4
    15 U.S.C. 644(j)(1) ..............................................................................4
    15 U.S.C. 657f .....................................................................................4

**STATUTES (continued):**                **PAGE**

28 U.S.C. 1291 ...................................................................................3

28 U.S.C. 1331 ...................................................................................3

28 U.S.C. 1343 ...................................................................................3

**RULES:**

Fed. R. Civil P.
    12(b)(1) ............................................................................... 11, 14
    12(b)(6) ................................................................................ *passim*

**REGULATIONS:**

Small Business Administration
    13 C.F.R. Pt. 121 .............................................................................6
    13 C.F.R. Pt. 124 ................................................................. 1, 23, 31
    13 C.F.R. 124.101 .......................................................................1, 27
    13 C.F.R. 124.102(a) .......................................................................6
    13 C.F.R. 124.103(a) ...................................................................6, 38
    13 C.F.R. 124.103(b) ...................................................... 1, 7, 11, 23
    13 C.F.R. 124.103(b)(1) .................................................................10
    13 C.F.R. 124.103(b)(3) ...................................................................7
    13 C.F.R. 124.103(c) ................................................................ *passim*
    13 C.F.R. 124.103(c)(1) ...................................................................7
    13 C.F.R. 124.103(c)(1)-(3) .............................................................7
    13 C.F.R. 124.103(c)(2)(i) ...............................................................7
    13 C.F.R. 124.103(c)(2)(iv) .............................................................9
    13 C.F.R. 124.103(c)(3) ...................................................................9
    13 C.F.R. 124.103(c)(3)(ii) ..............................................................8
    13 C.F.R. 124.104 ................................................................ 1, 12, 38
    13 C.F.R. 124.104(a) .......................................................................7
    13 C.F.R. 124.104(b) .......................................................................8
    13 C.F.R. 124.104(c) ............................................................ 8, 26, 31
    13 C.F.R. 124.104(c)(1)(i) ................................................... 8, 17, 26
    13 C.F.R. 124.104(c)(2)-(4) .............................................................8
    13 C.F.R. 124.107 ...........................................................................31

**REGULATIONS (continued):**                                              **PAGE**

13 C.F.R. 124.112(c) ...........................................................................7

13 C.F.R. 124.404(b) ........................................................................31

13 C.F.R. 124.501(a) .........................................................................6

48 C.F.R. 5.205(f) ............................................................................46

**INTRODUCTION**

This case involves a challenge to the constitutionality of aspects of Section 8(a) of the Small Business Act, 15 U.S.C. 637(a), and its implementing regulations, 13 C.F.R. Pt. 124, commonly known as the Section 8(a) Business Development Program or 8(a) program. The 8(a) program, in various ways, assists small businesses owned by individuals who are socially and economically disadvantaged, including by reserving certain federal contracts for 8(a) program participants. The regulations provide that individuals may qualify as "socially disadvantaged" either by demonstrating individual social disadvantage, 13 C.F.R. 124.103(c), or by being a member of designated racial groups that are subject to a rebuttable presumption of social disadvantage under 13 C.F.R. 124.103(b). Regardless of how an individual satisfies the social disadvantage requirement, all applicants must demonstrate that they are "economically disadvantaged" under specified financial criteria. 15 U.S.C. 637(a)(4); 13 C.F.R. 124.101; *see* 13 C.F.R. 124.104.

Plaintiff MJL Enterprises, LLC has twice applied for admission into the 8(a) program. Both times, however, its application was denied because its owner, plaintiff Marty Hierholzer, failed to meet the program's social disadvantage requirement. Six years after the second denial, Hierholzer and his business (collectively, plaintiffs) brought this action against the Small Business

Administration, which oversees the 8(a) program, and its Administrator, Isabel Guzman (collectively, SBA or defendants), asserting that the race-based component of the 8(a) program violates the Fifth Amendment's equal protection guarantee, the nondelegation doctrine, and the Administrative Procedure Act.

But, as the district court correctly held, plaintiffs lack standing to raise those claims for multiple reasons. The court found that plaintiffs cannot show any injury that is traceable to the challenged presumption of social disadvantage because they do not qualify for the 8(a) program wholly apart from the presumption. Plaintiffs failed to plausibly show that they could meet either, much less both, of the 8(a) program's race-neutral requirements of social and economic disadvantage if the presumption were set aside. It is plaintiffs' failure to satisfy these race-neutral requirements, not the race-based presumption, that has prevented them from being admitted into the 8(a) program and competing for 8(a) contracts.

Nor would the remedy sought by plaintiffs provide them any relief. Striking down the presumption would not likely redress plaintiffs' alleged injury because the 8(a) program would continue to operate without the presumption in a race-neutral fashion. Indeed, as a result of the decision in *Ultima Services Corp. v. United States Department of Agriculture*, 683 F. Supp. 3d 745, 774-775 (E.D. Tenn. 2023), SBA is not currently using that presumption at all. Thus, with or without the presumption, plaintiffs are in the same position—having to

demonstrate social and economic disadvantage, yet being unable to do so.

Tellingly, in the nine months during which SBA has administered the program

without the challenged presumption pursuant to the injunction in *Ultima*, plaintiffs

have yet to reapply for the program, and they do not argue on appeal that the

program as currently operated is unlawful.  Because the district court correctly held

that plaintiffs have not established the elements of constitutional standing, this

Court should affirm the judgment in this case.

## JURISDICTIONAL STATEMENT

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. 1331,

1343, and 5 U.S.C. 702.  JA 8; Br. 1.[1]  Plaintiffs' standing is contested.  *See* pp.

21-40, *infra*.  The district court dismissed the complaint on standing grounds, and

plaintiffs timely appealed.  JA 159-179.  This Court has jurisdiction under 28

U.S.C. 1291.

## STATEMENT OF THE ISSUE

Whether plaintiffs lack standing to bring this action to challenge the

constitutionality of the program's race-based presumption of social disadvantage,

where

---

[1] "JA __" refers to page numbers in the Joint Appendix filed with plaintiffs-appellants' opening brief.  "Br. __" refers to page numbers in plaintiffs-appellants' opening brief.

(1) plaintiffs fail to allege that they are able and ready to bid on federal contracts that have been reserved for 8(a) program participants;

(2) plaintiffs' inability to participate in the 8(a) program is not traceable to the presumption they seek to challenge, because they are ineligible for race-neutral reasons; and

(3) granting the requested relief would have no likely effect on plaintiffs' eligibility to participate in the program or compete for 8(a) contracts.

## STATEMENT OF THE CASE

### A.    Statutory And Regulatory Background

Congress enacted the Small Business Act (the Act) in part to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise" and to ensure that a "fair proportion" of government contracts go to small businesses. 15 U.S.C. 631(a). To accomplish these ends, the statute creates several nationwide programs to encourage the participation of small businesses, including requiring federal agencies to reserve certain contracts exclusively for small businesses. 15 U.S.C. 644(j)(1). In addition to establishing programs to aid small businesses in general (15 U.S.C. 644), the Act includes several programs that create contracting preferences for small businesses that satisfy certain criteria, including those owned and controlled by service-disabled veterans (15 U.S.C. 657f), women (15 U.S.C. 637(m)), or socially

- 4 -

and economically disadvantaged individuals—the latter through the 8(a) program (15 U.S.C. 637(a)).

1.  In enacting Section 8(a) of the Act, Congress sought to "obtain social and economic equality" of "social and economically disadvantaged persons," and to "improve the functioning of our national economy."  15 U.S.C. 631(f)(1).  Section 2 of the Act sets out the policies and congressional findings supporting the Act.  15 U.S.C. 631.  As relevant here, Congress found that small business owners may be "socially disadvantaged because of their identification as members of certain groups that have suffered the effects of discriminatory practices or similar invidious circumstances over which they have no control."  15 U.S.C. 631(f)(1)(B).  Congress also found that the groups that have suffered such discriminatory effects "include, but are not limited to, Black Americans, Hispanic Americans, Native Americans, Indian tribes, Asian Pacific Americans, Native Hawaiian Organizations, and other minorities."  15 U.S.C. 631(f)(1)(C).

Accordingly, one purpose of the 8(a) program is for SBA to provide contract, financial, technical, and management assistance to promote the business development and competitive viability of socially and economically disadvantaged small businesses.  15 U.S.C. 631(f)(2).  For example, Section 8(a) authorizes SBA to limit competition for certain government contracts to socially and economically disadvantaged small businesses that have been certified by SBA as eligible to

participate in the 8(a) program. 15 U.S.C. 637(a)(1); 13 C.F.R. 124.501(a). Under

Section 8(a), a "socially and economically disadvantaged small business concern"

is defined as "any small business concern" that, *inter alia*, "is at least 51 per

centum unconditionally owned by . . . one or more socially and economically

disadvantaged individuals." 15 U.S.C. 637(a)(4)(A)(i)(I).[2]

Section 8(a)(5) defines "[s]ocially disadvantaged individuals" as "those who

have been subjected to racial or ethnic prejudice or cultural bias because of their

identity as a member of a group without regard to their individual qualities." 15

U.S.C. 637(a)(5). The 8(a) program contemplates a determination of social

disadvantage made on an individualized basis—*i.e.*, whether any particular person

has been the subject of group-based prejudice or bias not based on their "individual

qualities." 15 U.S.C. 637(a)(5); 13 C.F.R. 124.103(a) (defining socially

disadvantaged individuals as those who have been subjected to "racial or ethnic

prejudice or cultural bias . . . because of their identities as members of groups and

without regard to their individual qualities"). Section 8(a)(6) defines

"[e]conomically disadvantaged individuals" as "those socially disadvantaged

individuals whose ability to compete in the free enterprise system has been

impaired due to diminished capital and credit opportunities as compared to others

---

[2] A business qualifies as a "small business concern" if it meets the
conditions in 15 U.S.C. 632(a)(1)-(3); 13 C.F.R. Pt. 121; 13 C.F.R. 124.102(a).

in the same business area who are not socially disadvantaged." 15 U.S.C. 637(a)(6)(A); 13 C.F.R. 124.104(a).

2. Historically, SBA's regulations implementing the 8(a) program have included a rebuttable presumption of social disadvantage for individuals who are members of designated racial groups (including the groups listed as an example in 15 U.S.C. 631(f)(1)(C)). *See* 13 C.F.R. 124.103(b). This presumption could be rebutted with "credible evidence to the contrary." 13 C.F.R. 124.103(b)(3). Upon receiving information questioning the eligibility of an 8(a) participant, SBA then reviews that participant's eligibility to remain in the program. 13 C.F.R. 124.112(c).

"An individual who is not a member of one of the groups presumed to be socially disadvantaged" may still participate in the 8(a) program but "must establish individual social disadvantage by a preponderance of the evidence." 13 C.F.R. 124.103(c)(1). To demonstrate social disadvantage, an applicant must present facts and evidence showing that "[a]t least one objective distinguishing feature," such as an identifiable disability (13 C.F.R. 124.103(c)(2)(i)), has contributed to that individual's social disadvantage and that the social disadvantage is "chronic and substantial" and has "negatively impacted" the individual's "entry into or advancement in the business world." 13 C.F.R. 124.103(c)(1)-(3). "SBA

may disregard a claim of social disadvantage where a legitimate alternative ground" for the "perceived adverse action exists." 13 C.F.R. 124.103(c)(3)(ii).

3.  In addition, and regardless of whether an applicant satisfies the social disadvantage requirement through the rebuttable presumption or by providing individualized evidence of social disadvantage, *all* applicants to the 8(a) program must also submit a narrative describing economic disadvantage and provide specified financial information. 13 C.F.R. 124.104(b) and (c).  For initial eligibility to enter the 8(a) program, the applicant firm's owner must have a net worth of less than $850,000; an adjusted gross income averaged over the three preceding years of less than $400,000, barring unusual circumstances; and assets not exceeding $6.5 million. 13 C.F.R. 124.104(c)(2)-(4).  In assessing the value of the owner's assets, the regulations require SBA to "attribute to an individual claiming disadvantaged status any assets which that individual has transferred to an immediate family member, or to a trust a beneficiary of which is an immediate family member, for less than market value, within two years prior" to the application, unless the owner demonstrates that the transfer to or on behalf of a family member was for "that individual's education, medical expenses, or some other form of essential support." 13 C.F.R. 124.104(c)(1)(i).  An individual who exceeds any of the above thresholds "will generally be deemed to have access to credit and capital and not economically disadvantaged." 13 C.F.R. 124.104(c).

- 8 -

**B.      Factual And Procedural Background**[3]

1.   Plaintiff Marty Hierholzer, who is of German and Scottish descent, is a service-disabled veteran and owner of MJL Enterprises, LLC (MJL).  JA 7, JA 15. MJL contracts with the government to provide "medical, maintenance, and repair equipment" to military bases and Veterans Administration (VA) hospitals; office supplies and personnel services for VA hospitals and offices; and "high-tech safety and security equipment to first responders."  JA 7, JA 10.  Based on Hierholzer's veteran status and disability, "MJL qualifies for and participates in the VA's service-disabled veteran small business contracting program."  JA 11.

In 2009 and 2016, Hierholzer applied for admission to the SBA-administered 8(a) program.  JA 15-16.  Because he is not a member of a presumptively socially disadvantaged group, he had to demonstrate in his applications that he had personally suffered social disadvantage that had "negatively impacted" his "entry into or advancement in the business world."  13 C.F.R. 124.103(c)(2)(iv) and (3).  SBA denied both applications, concluding that Hierholzer had failed to make the required individualized showing.  Hierholzer administratively appealed the 2016 denial, which the SBA Office of Hearings and Appeals affirmed in 2017.  JA 16.  On appeal, the Administrative Law Judge (ALJ)

---

[3] The facts discussed below are primarily taken from plaintiffs' complaint. JA 7-27.

- 9 -

acknowledged Hierholzer's disability but reaffirmed that the alleged incidents of discrimination recounted by Hierholzer did not show that he had been subjected to prejudice or bias based on his disability and concluded that Hierholzer had "failed to connect the alleged discriminatory conduct to consequences that negatively impacted his entry into or advancement in the business world." *In the Matter of: MJL Enters., LLC*, SBA No. BDPE-566, 2017 WL 8231365, at *7 (Dec. 18, 2017) (cited in JA 40). Specifically, the ALJ concluded that the record showed that in the three incidents Hierholzer cited, he had lost contracts for reasons unrelated to his disability. *Id.* at *6-7. Plaintiffs did not further challenge SBA's 2017 decision. They also do not allege that Hierholzer's circumstances have changed since then.

2. In 2023, Hierholzer and MJL brought this action against SBA and its administrator, Isabel Guzman, contending that purported racial classifications in the Small Business Act and the race-based presumption of social disadvantage in the 8(a) program's implementing regulations violate the Fifth Amendment's equal protection guarantee (Claims I and II). JA 19-22. Specifically, the complaint alleges that the Act and regulations prevent "MJL from standing on equal footing for 8(a) program eligibility and then from competing for exclusive 8(a) contracting opportunities based on race." JA 18. Plaintiffs further allege that the 8(a) program violates the nondelegation doctrine (Claim IV) and that the race-based presumption in SBA's regulations, 13 C.F.R. 124.103(b)(1), violates the Administrative

Procedure Act, 5 U.S.C. 706(1) and 706(2) (Claims III and V). JA 22-26.

Plaintiffs seek declaratory relief that certain provisions in the statute and

regulations are facially unconstitutional and a permanent injunction to enjoin the

enforcement and administration of those provisions. JA 26.[4]

Defendants moved to dismiss plaintiffs' complaint under Rule 12(b)(1) for

lack of standing and, alternatively, to dismiss the equal protection challenge

(Claims I and II), in part, and the nondelegation claim (Claim IV) under Rule

12(b)(6) for failure to state a claim. JA 28-61. With respect to standing,

defendants raised both a facial and factual challenge to plaintiffs' jurisdictional

allegations concerning their injury. JA 35-48. Defendants explained that the

district court should dismiss the complaint under Rule 12(b)(1) because plaintiffs

have not alleged that they satisfy the requirements of social and economic

disadvantage for entry into the 8(a) program; thus, plaintiffs have not alleged any

---

[4] The complaint seeks declaratory and injunctive relief with respect to
SBA's enforcement of the presumption of social disadvantage and several
provisions of the Small Business Act "to the extent that they employ a racial
preference." JA 26. Since the presumption is the only racial preference in the 8(a)
program, this brief will assume, for purposes of this appeal, that the requested
relief covers only the presumption in 13 C.F.R. 124.103(b). *See Rothe Dev. Inc. v.
United States Dep't of Def.*, 836 F.3d 57, 64-72 (D.C. Cir. 2016) (holding that the
Small Business Act does not contain any racial preferences or classifications that
would be subject to strict scrutiny).

injury-in-fact that can be traced to the race-based presumption and that would likely be redressed by enjoining the presumption. JA 38-48.

Defendants also explained that, in all events, plaintiffs would not have standing unless they could show that they would otherwise be able and ready to compete for 8(a) contracts, but their complaint contained no allegations to that effect. JA 45-48. Indeed, the complaint contains no allegations that plaintiffs wanted to bid on any contracts that have been set aside for the 8(a) program, that they have lost bids to any 8(a) program participant, or that they lost business in any other way because of the 8(a) program. JA 46-48. Defendants emphasized that plaintiffs' "failure to allege cognizable harms" from the 8(a) program was "particularly curious" given public records demonstrating that since 2006, MJL has enjoyed "notable success in the federal government's service-disabled veteran-owned small business program and participated in thousands of contract actions with federal government agencies, totaling close to $130 million." JA 47 & n.5, JA 58-61.

In response, plaintiffs argued that they have standing because the race-based presumption made it more difficult for them to be admitted to the 8(a) program and that if Hierholzer had enjoyed the benefit of the presumption, they "would have been able to obtain [8(a)] contracts." JA 74. Plaintiffs further asserted that they need not demonstrate social and economic disadvantage or allege a loss of a

- 12 -

contract because the presumption prevented them from competing for 8(a) contracts and that, in any event, the accompanying declaration by Hierholzer established his economic disadvantage. JA 73-76; *see also* JA 94-95. Lastly, plaintiffs asserted that their allegations were sufficient to survive defendants' Rule 12(b)(6) challenge. JA 77-92.

3. Following briefing on the motion to dismiss, the parties notified the district court of a decision in another case involving a similar challenge to the constitutionality of the 8(a) program's race-based rebuttable presumption. JA 113-122 (citing *Ultima Servs. Corp. v. United States Dep't of Agri.*, 683 F. Supp. 3d 745 (E.D. Tenn. 2023)); *see also* JA 4 (Docket entry 34 (same)). In *Ultima*, the district court granted summary judgment to the plaintiff and enjoined SBA from "using the rebuttable presumption of social disadvantage in administering . . . SBA's 8(a) program." JA 116-117 (citation omitted). Although that court has not yet entered a final judgment, defendants reported that as a result of the *Ultima* decision, SBA had "immediately suspended" its use of the enjoined presumption in the 8(a) program. JA 117; *see also* JA 134-135. Defendants further informed the court that when SBA resumed accepting new applications to the 8(a) program in September 2023, the agency eliminated the use of the presumption and now requires *all* applicants and existing 8(a) participants to "complete a questionnaire and submit a narrative to allow the SBA to evaluate social and economic

- 13 -

disadvantage *without* reliance on the presumption." JA 117 (emphasis added); *see also* JA 129-135.[5]

Because SBA is not currently using the rebuttable presumption in the 8(a) program, and thus is already providing the very relief that plaintiffs seek in this case, defendants moved for the district court to stay proceedings until 60 days after issuance of a final judgment in *Ultima*. JA 116-120. Plaintiffs opposed a stay. JA 153-158.

### C.    District Court Decision

After a hearing on defendants' motion to dismiss (JA 136-152), the district court granted the motion under Rule 12(b)(1), holding that plaintiffs lacked standing, and denying as moot defendants' motion to stay. JA 159-160, JA 176. Having dismissed the complaint on standing grounds, the court did not address defendants' Rule 12(b)(6) arguments.[6]

1. First, the district court determined that plaintiffs failed to show an injury-in-fact. JA 167-169. The court concluded that plaintiffs suffered no injury from the race-based presumption because they had not shown they would otherwise be

---

[5] SBA now evaluates all showings of individual social disadvantage under the same standards specified in 13 C.F.R. 124.103(c) that it applied to plaintiffs' previous applications to the 8(a) program. JA 129-135.

[6] Because defendants challenged plaintiffs' standing both facially and factually, the district court considered not only the allegations in the complaint but also evidence submitted by the parties. JA 167-175.

eligible for the 8(a) program.  JA 169.  Among other considerations, the court

noted that plaintiffs had "fail[ed] to allege that they are economically

disadvantaged," while defendants had provided evidence showing that plaintiffs

had received "roughly $130 million" in federal contracts between 2006 and 2023.

JA 169; *see also* JA 58-61.  The court emphasized that, because plaintiffs "fail[ed]

to allege that they are economically disadvantaged, the race-conscious presumption

could not have prevented [p]laintiffs from being accepted into the 8(a) Program."

JA 169.

    For the same reason, the district court concluded that plaintiffs failed to

allege any injury resulting from an "inability to compete on equal footing in the

bidding process."  JA 168-169 (citation omitted).  The court found that plaintiffs

had "not shown that they are ready and able to bid on the 8(a) Program contracts."

JA 168-169 (citation omitted).  It distinguished this case from *Northeastern*

*Florida Chapter of the Associated General Contractors of America v. City of*

*Jacksonville*, 508 U.S. 656, 666 (1993), in which the Supreme Court held that the

plaintiff's inability to compete on an equal footing was a sufficient injury for

standing where the challenged eligibility criterion "served as a barrier preventing

the plaintiffs from participating" in a government program.  JA 169.  Here, by

contrast, anyone—regardless of race—may apply to the 8(a) program and would

be admitted if they meet the program's race-neutral requirements.  JA 169.

Plaintiffs' inability to compete, the court reasoned, is a result of their "own failure to meet the 8(a) Program eligibility requirements—social and economic disadvantage," not the racial criterion they seek to challenge. JA 169. Nor did they allege that they were harmed in any concrete way, such as by losing a specific contract. JA 168.

2. The district court also explained that, for substantially the same reasons, plaintiffs failed to allege any causal connection between SBA's actions and plaintiffs' alleged injury. JA 169-172. Plaintiffs failed to allege that SBA's "use of the race-conscious presumption caused their alleged injuries" because they did not allege that they met the race-neutral requirements of social and economic disadvantage to participate in the 8(a) program that would apply even absent the presumption. JA 170-172. In other words, plaintiffs have not alleged "that they can compete for the 8(a) Program contracts if the race-conscious presumption was removed." JA 170.

The district court noted that the complaint did not allege economic disadvantage at all. JA 169-171. It found this case to be similar to *SRS Technologies, Inc. v. United States Department of Defense*, No. 96-1484, 112 F.3d 510, 1997 WL 225979, at *1 (4th Cir. May 6, 1997), where this Court held that the race-based presumption in the 8(a) program did not cause the plaintiff's injury because that plaintiff (like Hierholzer) did not meet the program's race-neutral

- 16 -

requirement of economic disadvantage.  JA 170-171.  The court rejected plaintiffs'

belated effort to rely on Hierholzer's declaration, explaining that "[e]ven if the

court accept[ed] the affidavit as true," the declaration "fails to discuss asset

transfers within two years, a factor that SBA will consider in determining if an

individual is economically disadvantaged."  JA 171 (citing 13 C.F.R.

124.104(c)(1)(i)).  Hierholzer's subjective "belie[f]" that he was disadvantaged

was insufficient.  JA 171.

The district court likewise found that the complaint does not allege that

plaintiffs can demonstrate social disadvantage if the presumption were removed.

JA 172.  The court emphasized that plaintiffs twice applied for the 8(a) program

and twice were denied by SBA—"not because of their race," but because "they

failed to show that they are socially disadvantaged."  JA 172 (citing *In the Matter*

*of: MJL Enters., LLC*, 2017 WL 8231365, at *7).  Thus, the court concluded, the

race-based presumption is not "causally related to their alleged injury."  JA 172.

3.  The district court further determined that the declaratory and injunctive

relief that plaintiffs seek would not redress their alleged injury.  JA 172-173.  The

court explained that the presumption was severable from the rest of the 8(a)

program; thus, even if the court invalidated the presumption, plaintiffs still would

need to demonstrate social and economic disadvantage to be admitted into the 8(a)

program.  JA 173 (citing *Cache Valley Elec. Co. v. State of Utah Dep't of Transp.*,

- 17 -

149 F.3d 1119, 1123 (10th Cir. 1998)).  Moreover, it was "pure speculation" to assume that elimination of the presumption would "alter the number or identity of socially and economically disadvantaged individuals eligible to participate."  JA 173 (quoting *Interstate Traffic Control v. Beverage*, 101 F. Supp. 2d 445, 453 (S.D. W. Va. 2000)).

Finally, the district court emphasized that since SBA is currently not using the racial presumption in the 8(a) program, "there is nothing to redress" because the presumption is "no longer causing Plaintiffs['] alleged injury," thereby depriving plaintiffs of "a personal stake in the outcome of this litigation."  JA 174-175.  As a result, the court concluded that plaintiffs' challenge to the race-conscious portion of the 8(a) program was "moot" and that plaintiffs "fail to allege redressability."  JA 175.

4.  Although SBA resumed processing applications to the 8(a) program—without use of the race-based presumption—in September 2023 (JA 131-133), SBA represents that as of June 17, 2024, plaintiffs have not reapplied to the program.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's dismissal of the complaint for lack of subject matter jurisdiction.  Plaintiffs have not plausibly alleged the three

elements of standing—injury-in-fact, causation, and redressability—to bring this action.

1. The central flaw in plaintiffs' assertion of standing—which affects all three elements—is that they fail to allege that they can meet the 8(a) program's race-neutral requirements of social and economic disadvantage. From that failing flows plaintiffs' inability to show a "concrete," "particularized," and "imminent" injury. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). As the Supreme Court recently explained, "[f]or a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute." *Food & Drug Admin. (FDA) v. Alliance for Hippocratic Medicine*, No. 23-235, 2024 WL 2964140, at *5 (U.S. June 13, 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

Because plaintiffs have failed to demonstrate that they satisfy the 8(a) program's race-neutral eligibility requirements, they have no "personal stake" in this dispute. *FDA*, 2024 WL 2964140, at *6. With or without the presumption, plaintiffs would face the same eligibility requirements. Nor does the complaint allege any facts that support plaintiffs' conclusory assertion of competitive harm, given that plaintiffs did not allege that they are "able and ready" to bid on any contracts reserved for 8(a) program participants. *Northeastern Fla. Chapter of the*

*Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993).

Simply put, plaintiffs have not demonstrated a real injury.

2.  Plaintiffs likewise have failed to allege a causal relationship between their alleged injury and the defendants' conduct.  Any injury is traceable to plaintiffs' inability to meet the 8(a) program's race-neutral requirements, not to the presumption.  Again, plaintiffs are in the same position—having to demonstrate social and economic disadvantage—*regardless* of the presumption.  Moreover, because SBA is currently not using the presumption in the 8(a) program, *all* applicants to the 8(a) program must now demonstrate social and economic disadvantage in the same individualized manner.

3.  For the same reasons, it is even more obvious that plaintiffs have not established that a favorable decision will likely redress their alleged injury.  Even if this Court invalidated the presumption, the provision is severable from the 8(a) program, which would continue to operate without the presumption, as it is now. And for plaintiffs to be eligible to compete for 8(a) contracts, they must meet all of the program's race-neutral requirements, including social and economic disadvantage.  Plaintiffs have not adequately alleged that they can make this showing.  Indeed, SBA has twice determined that plaintiffs failed to meet the 8(a) program's social disadvantage requirement, and plaintiffs have not alleged that

their circumstances have changed so that they can satisfy that requirement now.

Because they would be in the same position with or without the presumption, a

favorable decision here is not likely to redress plaintiffs' alleged injury.  Indeed,

that SBA has been operating the program without the presumption since last

September, and yet MJL has not reapplied in the intervening nine months, speaks

volumes in demonstrating that elimination of the presumption does nothing to

improve plaintiffs' circumstances.

Accordingly, this Court should affirm the district court's judgment.  If the

Court finds that plaintiffs have standing, however, it should remand for the district

court to consider the arguments raised in defendants' motion to dismiss under Rule

12(b)(6) for failure to state a claim.

## ARGUMENT

### The district court properly dismissed plaintiffs' complaint for lack of standing.

#### A.    Standard of review.

This Court reviews the district court's decision to dismiss for lack of

standing de novo.  *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020); *Richmond,*

*Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 769 (4th Cir.

1991) (stating that dismissal of "a case on the grounds that the undisputed facts

establish a lack of subject matter jurisdiction is a legal determination subject to *de*

*novo* appellate review").

- 21 -

**B.    Plaintiffs lack standing to challenge the race-conscious component of the 8(a) program.**

Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citation omitted). This bedrock principle ensures that a plaintiff is not a "mere bystander" but instead has a "personal stake" in the case or controversy. *Food & Drug Admin. (FDA) v. Alliance for Hippocratic Medicine*, No. 23-235, 2024 WL 2964140, at *5 (U.S. June 13, 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)); *Buscemi*, 964 F.3d at 258. The case-or-controversy inquiry is "especially rigorous" when federal judicial powers are invoked to pass on the validity of actions by another branch of the federal government. *Raines v. Byrd*, 521 U.S. 811, 819-820 (1997).

A dispute is not a case or controversy if the plaintiff lacks standing. *Raines*, 521 U.S. at 818. To establish Article III standing, a plaintiff must allege (1) "it has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "the injury is fairly traceable to the challenged action of the defendant"; and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000). The party asserting subject matter jurisdiction has the burden of establishing that jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 560, 561 (1992).

- 22 -

Here, the district court correctly held that plaintiffs have not established any of the three elements required for standing.

### 1. Plaintiffs fail to allege an injury-in-fact.

To establish the first element—that plaintiffs have suffered an injury-in-fact—plaintiffs must allege an "invasion" of a "concrete and particularized" legally protected interest resulting in harm that is "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). An injury is "particularized" if it "affect[s] the plaintiff in a personal or individual way." *Ibid.* (citation omitted). For an injury to be "concrete," "it must actually exist," *id.* at 340 (citation omitted), and be "certainly impending," *Clapper*, 568 U.S. at 401. And where, as here, plaintiffs challenge the constitutionality of aspects of Section 8(a) of the Small Business Act, 15 U.S.C. 637(a), and its implementing regulations, 13 C.F.R. Pt. 124, plaintiffs "must show that there is a realistic danger" that they "will sustain[] a direct injury as a result of the terms of the statute" and regulations. *Buscemi*, 964 F.3d at 259 (alteration in original; citation and internal quotation marks omitted); *see also FDA*, 2024 WL 2964140, at *6 (stating that plaintiffs "must establish a sufficient likelihood of future injury" when seeking "an injunction").

On appeal, plaintiffs argue that they have suffered an injury because "SBA's use of a race-based presumption," 13 C.F.R. 124.103(b), "erects a barrier that

denies them equal treatment" by "requiring them to show individualized social disadvantage," while members of the designated racial groups that are presumed to be socially disadvantaged need not make this showing.  Br. 22-24.  They assert that this "unequal burden" "precludes their equal consideration" and injures them by making admission to the 8(a) program "more difficult" and, in turn, "exclud[ing] [them] from the set-aside contracts and other benefits."  Br. 22-24.  Plaintiffs also contend, without elaboration, that the presumption "leaves them at a 'competitive disadvantage.'"  Br. 22 (quoting JA 17-19).  But their complaint lacks factual allegations that would bring these theories of injury into play.

a.  Plaintiffs make the Supreme Court's decision in *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993), the centerpiece of their claimed injury.  Br. 21, 24-25, 27, 32, 48.  In *City of Jacksonville*, an association of general contractors challenged a Jacksonville set-aside program that required ten percent of the amount the city spent on contracts be set aside for "Minority Business Enterprises (MBE's)."  508 U.S. at 658 (citation omitted).  A business could become an MBE only if 51% of its ownership was "minority," as defined by ordinance, or female.  *Ibid.* (citation omitted).  The city later replaced the ordinance with one establishing a plan that reserved certain contracts for competition only by female or Black-owned businesses.  *Id.* at 660-661.  Emphasizing that the Jacksonville program erected a

- 24 -

"barrier" to the plaintiff association's ability to compete for the reserved contracts, the Court found that the association had alleged it suffered an injury in fact. *Id.* at 666, 669. Critically, the Court held that a plaintiff challenging a set-aside program must show that "it is *able and ready* to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *Id.* at 666 (emphasis added).

In *City of Jacksonville*, the association's injury was the ordinance's complete bar on its participation. 508 U.S. at 666. But here, as the district court found, "[t]he barrier is Plaintiffs' own failure to meet the 8(a) Program eligibility requirements—social and economic disadvantage." JA 169. With or without the presumption, plaintiffs would be ineligible for the program. We discuss this point initially here, but it is particularly important with respect to the causation and redressability prongs of the analysis. *See* Sections B.2-3, *infra*. Additionally, as the court emphasized, plaintiffs "have not shown that they are ready and able to bid on the 8(a) Program contracts." JA 169.

b. As the district court determined, plaintiffs have not alleged facts demonstrating that they meet the 8(a) program's race-neutral social and economic disadvantage requirements. JA 168-172. In fact, plaintiffs have twice failed to meet the social disadvantage requirement for admission to the 8(a) program, a determination upheld by SBA following an administrative appeal. JA 16; *see In the Matter of: MJL Enters., LLC*, SBA No. BDPE-566, 2017 WL 8231365 (Dec.

18, 2017).  And the complaint does not allege that Hierholzer currently suffers

from any diminished capital and credit opportunities based on his disability or that

his circumstances have changed since SBA affirmed the second denial in 2017.

Nor have plaintiffs plausibly alleged that Hierholzer is economically

disadvantaged.  Although the complaint is silent on this point, plaintiffs argue that

they had established that Hierholzer is economically disadvantaged by submitting a

declaration by Hierholzer about his financial status.  Br. 28-31; *see also* JA 94-95.

Contrary to plaintiffs' assertion, the declaration does not demonstrate that

Hierholzer meets the definition of economically disadvantaged in 13 C.F.R.

124.104(c).  The self-serving declaration merely states that Hierholzer "believe[s]"

that he is economically disadvantaged and that his income, net worth, and assets

are below the limits to qualify as economically disadvantaged under the regulation.

JA 94-95 (stating that Hierholzer's income is less than $400,000; his net worth

does not exceed $850,000; and the market value of his assets does not exceed $6.5

million).  But the declaration fails to account for any asset transfers within the last

two years, as required by 13 C.F.R. 124.104(c)(1)(i).  Because defendants factually

challenged whether Hierholzer is economically disadvantaged, plaintiffs had to

"set forth specific facts . . . to show that a genuine issue of material fact exists."

*Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.  The declaration

(JA 94-95) does not raise a genuine issue because Hierholzer's "belie[f]" and incomplete showing on economic disadvantage fall short.[7]

Plaintiffs insist, however, that they do not need to show social and economic disadvantage to establish standing. Br. 26-32. Citing *DynaLantic Corp. v. Department of Defense*, 115 F.3d 1012, 1016 (D.C. Cir. 1997), plaintiffs contend that whether they can satisfy the 8(a) program's race-neutral requirements such as economic disadvantage is irrelevant because their injury is having to participate in an unconstitutional program where contracts are foreclosed to plaintiffs based on race. Br. 26-27. *DynaLantic*, however, is distinguishable. As discussed below, at p. 32, the plaintiff in that case identified a specific contract for a mobile flight simulator that it would have bid on but could not because it was not a participant in the 8(a) program. 115 F.3d at 1013-1014, 1016 ("DynaLantic's allegation that the 8(a) program causes a not insignificant portion of its potential business opportunities to be foreclosed to it clearly makes out an injury."). Furthermore, the plaintiff in *DynaLantic* had "no desire to participate in the 8(a) program," *ibid.*, while plaintiffs' alleged injury here is specifically premised on SBA's use of a

---

[7] Because business owners must be both socially and economically disadvantaged to qualify for the 8(a) program, *see* 13 C.F.R. 124.101, it is irrelevant whether SBA decides social disadvantage before assessing economic disadvantage eligibility for the program. *Cf.* Br. 27 (arguing that plaintiffs need not allege economic disadvantage because they are challenging "how social disadvantage is established").

presumption that purportedly makes "admission" to the 8(a) program "more difficult for Plaintiffs than for an applicant who qualifies for the race-based presumption." Br. 22.[8]

The district court's decision in *Interstate Traffic Control v. Beverage*, 101 F. Supp. 2d 445 (S.D. W. Va. 2000), underscores why plaintiffs must adequately allege that they meet the 8(a) program's race-neutral requirements to be positioned to argue that the presumption has made it "more difficult" for them to gain admission to the program. In that case, plaintiff Interstate Traffic Control (Interstate) challenged the constitutionality of a race-based presumption of social disadvantage used in a federal contracting program under which contracts were set aside for disadvantaged business enterprises (DBEs). *Id.* at 447-448. It was undisputed that Interstate was ineligible to be a DBE because it did not meet the program's business size and economic eligibility requirements. *Id.* at 450. The court emphasized that because Interstate was ineligible to be a DBE for race-

---

[8] Plaintiffs' theory that a party would have standing to challenge the presumption even if it were ineligible for the 8(a) program would lead to absurd results—*e.g.*, a large company would have standing even though it exceeds the program's size limitation (15 U.S.C. 637(a)(4)(A)(i)(I)), and any individual who has a grievance with the presumption in the program would have standing regardless of whether that individual even owns a business. *Cf. Carroll v. Nakatani*, 342 F.3d 934, 942-943 (9th Cir. 2003) (holding that plaintiff lacked standing to challenge a business loan program where he failed to provide the requisite information in the loan application and did not own a business).

- 28 -

neutral reasons, it lacked standing to challenge the race-based presumption enjoyed by certain other applicants. *Ibid.* That being the case, the court, relying on *City of Jacksonville*, reasoned that the only way that plaintiff could show an injury was to allege a "concrete and actual" injury from the "very existence of the DBE program"—*i.e.*, because of competition harm from lost contracts. *Id.* at 450-451.

c. Plaintiffs' conclusory reference in its opening brief to "competitive disadvantage" (Br. 22 (citation omitted)) is not sufficient to bring this theory into play. As *City of Jacksonville* makes clear, a party challenging a set-aside program must "demonstrate that it is able and ready to bid on contracts." 508 U.S. at 666; *see also Bruckner v. Biden*, 666 F. Supp. 3d 1237, 1244-1247 (M.D. Fla. 2023) (stating that plaintiffs challenging a race-based presumption in a contracting program must "clearly" allege facts demonstrating that they are "able and ready" to bid on the set-aside contracts); *Interstate Traffic Control*, 101 F. Supp. 2d at 450 (recognizing that for plaintiff to allege competitive injury from the DBE program's existence, it must allege that it "lost business" (citation omitted)). The complaint is devoid of any such allegations and merely "suggests an abstract, generalized grievance" regarding the presumption, which is insufficient to support finding an injury-in-fact. *Carney v. Adams*, 592 U.S. 53, 63 (2020); *see also Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157, 163-164 (4th Cir. 2023) (stating that "general disagreements" with a program did not establish standing). As the district

- 29 -

court emphasized, plaintiffs "fail to allege that they lost a contract bid" because of the presumption or that they are even "ready and able to bid on the 8(a) Program contracts."  JA 168-169.

Indeed, the complaint does not allege that plaintiffs lost business in any way. For example, the complaint does not allege that plaintiffs previously held a contract that they could not bid on again because the contract was later set aside for 8(a) firms.  Nor does the complaint refer to any particular 8(a) contracts that plaintiffs wanted to bid on, or intend to bid on in the future, or even whether there are any 8(a) contracts set aside in the fields in which they bid.  *See Bruckner*, 666 F. Supp. 3d at 1240, 1243 (holding that plaintiffs did not establish injury because they failed to allege contracts they "intend to bid on or have bid on in the past").  Plaintiffs failed to include such allegations even though information about prospective 8(a) contracts is readily available, because agencies must indicate whether a contract will be limited to 8(a) program participants prior to bidding for that contract.  *See* 48 C.F.R. 5.205(f); *see also* 15 U.S.C. 637(e).

Plaintiffs dispute that they must make any showing of "lost contracts" (Br. 23-25), but without any allegations that plaintiffs have lost business in the past or that they are ready and able to bid on future business set aside in the 8(a) program, their alleged injury is not at all concrete, particularized, imminent, or certainly impending.  *See FDA*, 2024 WL 2964140, at \*6 (stating that Article III's

requirement that an injury be concrete, particularized, and imminent "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action"). The complaint's allegations regarding plaintiffs' ability and readiness to participate in the 8(a) program are so lacking that it is not apparent that they are able and ready to bid on 8(a) contracts or even make use of SBA training or other benefits that would assist them in bidding on 8(a) contracts. *See* 13 C.F.R. 124.101 and 124.107 (8(a) program participants must possess "reasonable prospects for success" in competing for 8(a) contracts with the aid of the program's business development services); *see also* 13 C.F.R. 124.404(b).

As the Supreme Court emphasized in *Carney*, a plaintiff must allege supporting facts to show that he is "able and ready"—including by demonstrating a "concrete" intent to apply for the opportunity at issue. 592 U.S. at 60, 64. There, the plaintiff brought a First Amendment challenge to a state statute that imposed a party-membership requirement that effectively made him ineligible to serve as a judge. *Id.* at 55-56. The Court held that the plaintiff lacked standing because he had vaguely alleged only that he "would apply" to be a judge, without demonstrating that he was "able and ready" to do so. *Id.* at 60-66.

In this context, plaintiffs must plausibly allege that they have a concrete intent to bid on an 8(a) contract. *See Carney*, 592 U.S. at 61-66. At a minimum,

plaintiffs must "clearly . . . allege facts demonstrating" that they are "able and ready" to bid on contracts set aside under the allegedly discriminatory program. *Spokeo*, 578 U.S. at 338 (alteration in original; citation omitted); *City of Jacksonville*, 508 U.S. at 666. One way to show that a plaintiff is "able and ready" is to allege that the plaintiff lost a contract due to the barrier erected by the government. *See, e.g.*, *Cache Valley Elec. Co. v. State of Utah Dep't of Transp.*, 149 F.3d 1119, 1122 (10th Cir. 1998). Another way is to identify a contract that the plaintiff would be ready to perform if it could bid on it or, as in *City of Jacksonville*, identify the kind and location of contracts that the plaintiff is able and ready to perform. *See, e.g.*, *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 212 (1995); *City of Jacksonville*, 508 U.S. at 659.

In *Adarand*, for example, the plaintiff demonstrated that it bids on "every guardrail project in Colorado" and that the plaintiff was "very likely to bid on each such contract." 515 U.S. at 212. Similarly, as noted above, in *DynaLantic Corp. v. United States Department of Defense*, the plaintiff identified a specific contract for a mobile flight simulator that it would have bid on but could not because it was not a participant in the 8(a) program. 885 F. Supp. 2d 237, 246-247 (D.D.C. 2012), *appeal dismissed*, 2013 WL 4711715 (D.C. Cir. 2013). Likewise, in *Cache Valley*, 149 F.3d at 1122, plaintiffs demonstrated that their injury was imminent by identifying two contracts that they lost because of the challenged program and

- 32 -

alleged that "it will continue to apply for . . . electrical subcontracts in the relatively near future." Without these kinds of factual allegations, the complaint lacks sufficient "factual matter" to render plaintiffs' allegations of harm "plausible on [their] face." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see* JA 167-169.

Remarkably, although plaintiffs' theory of injury relies on *City of Jacksonville*, they assert that whether they "have not shown that they are ready and able to bid on the 8(a) Program contracts . . . is irrelevant." Br. 25 n.8 (quoting JA 169). As explained above, they are wrong.

### 2. Plaintiffs fail to allege causation.

Plaintiffs also have failed to allege facts sufficient to establish causation. To satisfy the causation requirement, plaintiffs must show that there is "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. The injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party." *Id.* at 560-561 (alterations and citation omitted); *see also Libertarian Party of Va. v. Judd*, 718 F.3d 308, 315-316 (4th Cir. 2013) (stating that plaintiffs must demonstrate that defendants' actions are "at least in part responsible for" their injury). "[T]he relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant, not to the provision of law that is challenged." *Collins v.*

*Yellen*, 141 S. Ct. 1761, 1779 (2021) (citation and internal quotation marks omitted).

a.  The crux of plaintiffs' allegations of injury is that the race-based presumption erects a barrier that makes admission to the 8(a) program "more difficult for Plaintiffs than for an applicant who qualifies for the . . . presumption." Br. 22.  Plaintiffs argue that their "injury is traceable to Defendants' enforcement of the 8(a) program" because "[n]early all program participants enter [the program]" under the presumption of social disadvantage while plaintiffs must "make a showing of individual social disadvantage."  Br. 22-23.

Plaintiffs' argument is unavailing.  It is plaintiffs' own inability to meet the program's race-neutral requirements of social and economic disadvantage, not the presumption, that prevents their admission.  *See* pp. 25-29, *supra*.  With or without the presumption of social disadvantage, plaintiffs would be in no different position than they are now.  Plaintiffs would still need to prove economic disadvantage and would be ineligible for the program because they have not provided "sufficient factual matter" to show that Hierholzer is economically disadvantaged, as required by 13 C.F.R. 124.104(c).  *Cf. Hutton v. National Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 624 (4th Cir. 2018) (finding traceability sufficiently alleged where the complaint contained allegations that the defendant's conduct complained of was the "plausible" cause of plaintiff's injury).  Considering that plaintiffs have

- 34 -

not demonstrated economic disadvantage, plaintiffs' conclusory allegation that the "racial presumption makes it less likely that the SBA will grant 8(a) eligibility to MJL" (JA 18) rings hollow.

And even if Hierholzer's declaration asserting economic disadvantage sufficed, and even if the race-based presumption of social disadvantage were eliminated, plaintiffs *still* would have to demonstrate individual social disadvantage under 13 C.F.R. 124.103(c)—a showing they have twice failed to make. The lack of traceability is even more evident now that SBA is not using the race-based presumption in the 8(a) program as a result of the order issued in *Ultima Services Corp. v. United States Department of Agriculture*, 683 F. Supp. 3d 745, 774 (E.D. Tenn. 2023), which enjoined SBA from using the presumption. JA 117; *see also* JA 129-135 (Declarations of John Klein, SBA Deputy General Counsel and Associate General Counsel for Procurement Law). SBA now requires *all* applicants to the 8(a) program to demonstrate social disadvantage on an individualized basis and does not use the presumption in any aspect of the program. JA 117; *see also* JA 131-133. Thus, plaintiffs cannot trace any injury to the "allegedly unlawful conduct" by defendants. *See Collins*, 141 S. Ct. at 1779 (citation omitted); *California v. Texas*, 593 U.S. 659, 670 (2021) ("[O]ur cases have consistently spoken of the need to assert an injury that is the result of a

statute's actual or threatened *enforcement*, whether today or in the future." (citation omitted)).

b.   This case closely resembles *SRS Technologies, Inc. v. United States Department of Defense*, No. 96-1484, 112 F.3d 510, 1997 WL 225979 (4th Cir. May 6, 1997).  Like in this case, the plaintiff, a business that was not part of the 8(a) program, alleged that the race-based presumption of social disadvantage in the 8(a) program violated equal protection and that it was unable to compete for contracts that are reserved for 8(a) program participants.  *Id.* at *1.  And like MJL, the plaintiff business was ineligible to participate in the 8(a) program because its owner was not economically disadvantaged.  *Ibid.*  This Court held that the plaintiff failed to show a "causal connection between the injury and the conduct complained of" because it was the plaintiff's failure to meet the 8(a) program's "race-neutral criterion" of economic disadvantage that prevented it from receiving an 8(a) contract.  *Ibid.* (citation omitted).  Here, too, as in *SRS Technologies*, it is not SBA's presumption that prevented plaintiffs from qualifying for the 8(a) program.

Plaintiffs' effort to distinguish *SRS Technologies* is unpersuasive.  Br. 27-28.  They maintain that because the plaintiff in that case was presumed socially disadvantaged under the regulations, *SRS Technologies*, 1997 WL 225979, at *1, the decision "stands for the proposition that where a business qualifies for the race-

- 36 -

based presumption, that presumption has not caused the business any injury" and not for the district court's conclusion here that plaintiffs must demonstrate economic disadvantage. Br. 28; *see* JA 170-171. On the contrary, *SRS Technologies* squarely states that "*[r]egardless of the presumption of social disadvantage*, SBA requires each 8(a) Program participant to make an individualized showing of economic disadvantage," and it was "by virtue of this race-neutral criterion that plaintiff failed to qualify." 1997 WL 225979, at *1 (emphasis added). That reasoning applies whether or not a plaintiff satisfies the program's social disadvantage requirement.

### 3.    Plaintiffs fail to allege redressability.

Lastly, to establish standing, plaintiffs must show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed' by a favorable decision." *Lujan*, 504 U.S. at 561 (citation omitted); *see also TransUnion*, 594 U.S. at 423. Redressability is the "flip side[]" of causation. *FDA*, 2024 WL 2964140, at *6 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008)). Plaintiffs seek "declaratory and injunctive relief, which would prevent Defendants from enforcing the racially discriminatory presumption of social disadvantage." Br. 23. For the reasons already discussed, plaintiffs have not plausibly alleged that the requested relief will redress their injury.

- 37 -

First, even if the district court enjoined the race-based presumption as plaintiffs seek, the presumption is severable from the 8(a) program and plaintiffs would be in the same position that they are in now—ineligible for the 8(a) program due to their failure to demonstrate social and economic disadvantage. *See California*, 593 U.S. at 671 (stating that the redressability inquiry includes consideration of whether the provision plaintiffs seek to enjoin is severable). If the presumption is invalidated, the 8(a) program would continue without it, and all applicants to the program would still need to satisfy the race-neutral requirements of social and economic disadvantage. 15 U.S.C. 637(a)(4)(A); 13 C.F.R. 124.103(a) and (c); 13 C.F.R. 124.104. In this scenario, plaintiffs unquestionably would achieve "equal treatment," *Heckler v. Matthews*, 465 U.S. 728, 740 (1984) (cited in Br. 23, 32), and yet plaintiffs would still be unable to compete for 8(a) contracts and would be in the same position as they were when the presumption was used.

In addition, as noted above, in the wake of the *Ultima* decision, SBA is not currently using the race-based presumption in the 8(a) program, and so *all* applicants to the program must demonstrate social and economic disadvantage on an individualized basis. JA 117-118; *see also* JA 129-130. If plaintiffs applied to the 8(a) program today, they would still need to demonstrate social and economic disadvantage as required by 13 C.F.R. 124.103(c) and 124.104. And so would

- 38 -

every other applicant.  JA 130.  They have not argued on appeal that this process is unlawful in any way.  As the district court stated, "there is nothing to redress."  JA 175.[9]

SBA, moreover, would assess any future application by MJL under the exact same standards as its prior two applications to the 8(a) program.  13 C.F.R. 124.103(c).  Twice, SBA has found that plaintiffs have failed to show social disadvantage.  Plaintiffs have not alleged that Hierholzer's circumstances have changed since SBA affirmed the latest denial of MJL's application in 2017.  Tellingly, the relief plaintiffs seek—an 8(a) program with no race-based presumption—is currently in place and yet plaintiffs have not reapplied for the 8(a) program.  This underscores that the remedy plaintiffs request would not allow them to access the 8(a) program and would therefore not redress their alleged injuries.  *See* JA 119 (noting that "nothing prohibits Plaintiffs from reapplying to the 8(a) program now that review does not rely at all on the presumption").

In *Cache Valley*, 149 F.3d at 1123, the Tenth Circuit rejected a similar claim on redressability grounds.  Like plaintiffs here, the plaintiff in *Cache Valley* challenged the race and gender preferences in a contracting program even though it

---

[9]  Although this situation led the district court to hold that plaintiffs' claim is "moot" (JA 175), we agree that, in the absence of a final judgment in *Ultima*, plaintiffs' claim is technically not moot.  But the court was certainly right that plaintiffs have failed to identify any relief that would redress its claimed injury.

- 39 -

did not meet the race-neutral requirements to participate in the program. *Id.* at 1121. The Tenth Circuit held that, assuming that the plaintiff had established an injury-in-fact and traceability, the plaintiff had failed to show redressability, stating that "it would be pure speculation to conclude that invalidating the allegedly unconstitutional preferences would ameliorate [the] plaintiff's ability to compete in any way." *Id.* at 1123. The court explained that this was because the challenged preferences were "severable from the rest of the . . . program and thus the program would remain viable even absent those preferences." *Ibid.*; *see also Interstate Traffic Control*, 101 F. Supp. 2d at 453 (stating that removing the challenged presumption from the application process "would not alter the number or identity of socially and economically disadvantaged individuals eligible to participate" in the program).

In sum, plaintiffs have provided no plausible reason to find that elimination of the presumption would lead to any change in their eligibility for the 8(a) program or ability to compete for 8(a) contracts. Any injunction or declaratory order against SBA's enforcement of the presumption—such as would duplicate the injunction in *Ultima*—would do nothing to remedy plaintiffs' alleged injury. Accordingly, the Court should affirm the district court's dismissal order based on plaintiffs' lack of standing.

**C.    If the Court finds that plaintiffs have standing, it should remand for further proceedings, enabling the district court to consider defendants' Rule 12(b)(6) motion in the first instance.**

In dismissing the complaint for lack of subject matter jurisdiction, the district court did not address defendants' arguments to dismiss three claims under Rule 12(b)(6) for failure to state a claim.  JA 175.  If the Court finds that subject matter jurisdiction exists, it should remand for the district court to consider in the first instance the issues raised in the Rule 12(b)(6) motion.  Plaintiffs argue, however, that the Court should address defendants' Rule 12(b)(6) motion for the first time on appeal.  Br. 37-48.  The Court should decline to do so.

"The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."  *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).  As a general rule, however, "a federal appellate court does not consider an issue not passed upon below."  *Id.* at 120 .

As this Court has noted, it is "a court of review, not of first view."  *Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)).  The Court should adhere to that path here.  In *Jennings v. University of North Carolina*, the Court declined to consider a question where the defendants gave the issue "secondary attention," the district court did not address it, and defendants had on appeal treated the issue as an "alternative argument,

- 41 -

again giving the matter limited treatment." 482 F.3d 686, 702 (4th Cir. 2007) (en banc). The Court stated that "these circumstances prompt[ed]" it "to decline to consider the question, and thus allow the district court to address it in the first instance on remand." *Ibid.*

Similarly, here, defendants' motion to dismiss focused primarily on standing, and the district court did not address defendants' alternative Rule 12(b)(6) arguments. JA 49-56, JA 175. Thus, in the event the Court were to find that plaintiffs have standing, it should vacate and remand for the district court to address those questions in the first instance. *See Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1418 (4th Cir. 1994) (remanding to allow the district court to address whether plaintiffs sufficiently pleaded state law claims where the court had not addressed that question, having found those claims to be preempted).

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment of the district court dismissing the case. If the Court concludes that plaintiffs have standing, it should remand the case to the district court to consider in the first instance the arguments raised in defendants' alternative Rule 12(b)(6) motion.

Respectfully submitted,

KRISTEN CLARKE
  Assistant Attorney General

ERIC S. BENDERSON                 s/ Teresa Kwong
  Associate General Counsel       BONNIE I. ROBIN-VERGEER
  for Litigation                  TERESA KWONG
                                    Attorneys
DAVID A. FISHMAN                    U.S. Department of Justice
  Deputy Associate General Counsel  Civil Rights Division
  for Litigation                    Appellate Section
  U.S. Small Business Administration Ben Franklin Station
  Office of the General Counsel     P.O. Box 14403
                                    Washington, D.C.  20044-4403
                                    (202) 514-4757

- 43 -

## STATEMENT REGARDING ORAL ARGUMENT

The United States believes that this appeal can be resolved on the briefs but does not object to oral argument if it would aid the Court's review.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate

Procedure 32(a)(7)(B)(i) because it contains 9696 words, excluding the parts of the

brief exempted by Federal Rule of Appellate Procedure 32(f).  This brief also

complies with the typeface and type-style requirements of Federal Rule of

Appellate Procedure 32(a)(5) and (6) because it was prepared in Times New

Roman 14-point font using Microsoft Word for Microsoft 365.

s/ Teresa Kwong
TERESA KWONG
 Attorney

Date:  June 24, 2024