No. 24-1187

———————————————

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————

MARTY HIERHOLZER; MJL ENTERPRISES, LLC,
a Virginia corporation,

Plaintiffs – Appellants,

v.

ISABEL GUZMAN, in her official capacity as
Administrator of the Small Business Administration;
SMALL BUSINESS ADMINISTRATION,

Defendants – Appellees.

———————————————

On Appeal from the United States District Court
for the Eastern District of Virginia, No. 2:23-cv-00024-RAJ-DEM
Honorable Raymond A. Jackson, District Judge

———————————————

**APPELLANTS' REPLY BRIEF**

———————————————

GLENN E. ROPER
Pacific Legal Foundation
1745 Shea Center Drive, Suite 400
Highlands Ranch, Colorado 80129
Telephone: (916) 419-7111
GERoper@pacificlegal.org

JOSHUA P. THOMPSON
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
JThompson@pacificlegal.org

*Attorneys for Plaintiffs – Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT...........................1

ARGUMENT .......................................................................................4

  I.   The District Court Improperly Dismissed for Lack of Standing.....4

    A.   Plaintiffs adequately established standing at the
        pleading stage ..........................................................................4

    B.   The district court failed to apply the proper
        pleading standard.....................................................................7

    C.   Defendants misunderstand Plaintiffs' injury and misapply
        *City of Jacksonville* ................................................................10

    D.   The cases cited by Defendants do not require Plaintiffs to
        demonstrate social and economic disadvantage as an element
        of standing ...............................................................................15

  II.  As the Government Concedes, the District Court's Mootness
     Holding Was Incorrect ................................................................20

  III. The Court Should Reach Defendants' Rule 12(b)(6) Arguments
      and Conclude that Plaintiffs Have Stated Valid Claims
      for Relief....................................................................................21

CONCLUSION .................................................................................23

CERTIFICATE OF COMPLIANCE ....................................................24

CERTIFICATE OF SERVICE.............................................................25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balfour Beatty Infrastructure, Inc. v. Mayor of Balt.*,
   855 F.3d 247 (4th Cir. 2017) ................................................................ 7

*Bruckner v. Biden*,
   666 F. Supp. 3d 1237 (M.D. Fla. 2023) ............................................. 18

*Cache Valley Electric Co. v. Utah Department of
   Transportation*,
   149 F.3d 1119 (10th Cir. 1998) .......................................................... 18

*Carney v. Adams*,
   592 U.S. 53 (2020) ............................................................................... 19

*Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts
   Pharmacy, Inc.*,
   996 F.3d 243 (4th Cir. 2021) .............................................................. 22

*David v. Alphin*,
   704 F.3d 327 (4th Cir. 2013) ................................................................ 7

*Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*,
   166 F.3d 642 (4th Cir. 1999) ........................................................... 7, 9

*Fair Hous. in Huntington Comm. Inc. v. Town of
   Huntington, N.Y.*,
   316 F.3d 357 (2d Cir. 2003) .................................................................. 8

*Gulf Union Ins. Co. of Saudi Arabia v. M/V LACERTA*,
   No. 91 CIV. 2814 (PKL), 1992 WL 51532
   (S.D.N.Y. Mar. 9, 1992) ....................................................................... 8

*Heckler v. Mathews*,
   465 U.S. 728 (1984) ............................................................................. 12

ii

*Humphrey for & on Behalf of N.L.R.B. v. Int'l Longshoremen's Ass'n AFL-CIO,*
548 F.2d 494 (4th Cir. 1977) ................................................................ 20

*Interstate Traffic Control v. Beverage,*
101 F. Supp. 2d 445 (S.D. W. Va. 2000) ................................. 16, 17, 18

*Kerns v. United States,*
585 F.3d 187 (4th Cir. 2009) .................................................................. 7

*Kim v. Bd. of Educ. of Howard Cnty.,*
93 F.4th 733 (4th Cir. 2024) ................................................................ 20

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ............................................................................... 4

*Midwest Fence Corp. v. U.S. Dep't of Transp.,*
No. 10 C 5627, 2011 WL 2551179 (N.D. Ill. June 27, 2011) .............. 17

*Mowery v. Nat'l Geospatial-Intel. Agency,*
42 F.4th 428 (4th Cir. 2022), *cert. denied,*
143 S. Ct. 783 (2023) .............................................................................. 7

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.,*
508 U.S. 656 (1993) ..................................................... 2, 10, 12, 13, 14

*Payne v. Chapel Hill N. Properties, LLC,*
947 F. Supp. 2d 567 (M.D.N.C. 2013) .................................................. 8

*Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765 (4th Cir. 1991) ...................................... 7

*Singleton v. Wulff,*
428 U.S. 106 (1976) ............................................................................. 21

*SRS Technologies, Inc. v. U.S. Dep't of Defense,*
No. 96-1484, 1997 WL 225979 (4th Cir. May 6, 1997)
(unpublished) ................................................................................ 15, 16

*Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*,
  471 F.3d 544 (4th Cir. 2006) ................................................ 22

*United States v. Concentrated Phosphate Export Ass'n*,
  393 U.S. 199 (1968) ............................................................ 20

*W. Virginia v. EPA*,
  597 U.S. 697 (2022) ............................................................ 20

*Wild Va. v. Council on Env't Quality*,
  56 F.4th 281 (4th Cir. 2022) ................................................. 4

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(6) ......................................... 3, 21, 23

iv

## INTRODUCTION AND SUMMARY OF ARGUMENT

Marty Hierholzer and his company, MJL Enterprises, want to compete for and secure federal contracts under the 8(a) program. They also want to benefit from the business development opportunities, technical assistance, and access to surplus federal property that are uniquely available to 8(a) program participants. That's why Mr. Hierholzer has twice applied to the program. Both times he was denied for failure to sufficiently establish that he was *socially* disadvantaged.

Being denied entry into the 8(a) program has been a genuine hardship, likely leading to lost profits and stunted growth opportunities. However, the constitutional injury that supports Plaintiffs' claim is not the denial of entry into the program or the attendant loss of business and income. Instead, Plaintiffs' constitutional injury is the unequal treatment they face in applying for the program. SBA requires business owners in certain non-preferred racial categories (like Mr. Hierholzer) to prove social disadvantage to be eligible to participate in the program. But for business owners in preferred racial categories, SBA removes that barrier, presuming that social disadvantage is satisfied due to the owners' race.

1

This unequal treatment "makes it more difficult" for Plaintiffs to be accepted into the 8(a) program compared to their counterparts in favored racial groups. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993) (*City of Jacksonville*). As confirmed by the Supreme Court in *City of Jacksonville*, that is a sufficient equal protection injury to have standing, and Plaintiffs have adequately alleged it here. Plaintiffs need not also demonstrate that they are socially and economically disadvantaged and thus would "obtain the benefit" of acceptance into the 8(a) program absent the discriminatory provision.

Nor need Plaintiffs allege specific contracts that were lost because they were denied entry into the 8(a) program. That is especially true because the 8(a) program is not simply a contract set-aside program like in *City of Jacksonville* and other cases cited by Defendants. Instead, it provides a broad range of "valuable opportunities" that Plaintiffs are interested in, including technical assistance, business development, training, and access to surplus federal property. Plaintiffs' injury is not the loss of specific contracts, but unequal treatment in being considered for a program that offers a wide range of benefits. Put simply, Plaintiffs

2

are not mere interested bystanders; they have applied to the program *twice*, they are concretely injured by the presumption, and they have a personal stake in whether it remains in place.

The remaining elements of standing are also plainly satisfied. Plaintiffs' injury is caused by SBA's use of the presumption and would be redressed by an order eliminating it or including Plaintiffs in the presumption. And although Defendants advance various arguments about Plaintiffs' standing, those arguments misstate Plaintiffs' injury, rely on inapposite case law, and have largely already been dealt with in Plaintiffs' Opening Brief. The district court's decision on standing must be reversed.

Separate from the standing question, the government concedes that this case is not moot. (Aple. Br. 39 n.9.) Thus, this Court should also reverse the district court's mootness decision.

Finally, while Defendants suggest that the Court should remand instead of addressing whether Plaintiffs have stated a claim, Defendants' partial Rule 12(b)(6) motion involves purely legal questions that were fully briefed below and are ready for this Court's review. Rather than delaying the case further by ordering the district court to decide the issue

3

in the first instance, this Court should rule on Defendants' 12(b)(6) motion and conclude that Plaintiffs have stated valid claims.

## ARGUMENT

### I.    The District Court Improperly Dismissed for Lack of Standing

#### A.    Plaintiffs adequately established standing at the pleading stage

Plaintiffs have alleged more than is required to establish standing to challenge SBA's race-based presumption of social disadvantage. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.") (cleaned up). Because standing is evaluated based on "the facts at the time the complaint was filed," *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022), the following two paragraphs summarize Plaintiffs' key standing allegations as of the date of their Complaint.[1]

---

[1] Because standing depends on the facts when the Complaint was filed, changes that SBA made to the 8(a) program in response to the *Ultima* decision, as well as Defendants' assertion that Plaintiffs have not

4

The 8(a) program "offers valuable opportunities" for Plaintiffs. JA011 ¶ 26. Seeking to take advantage of those opportunities, Mr. Hierholzer has invested substantial money, time, and effort to twice apply for the program, in 2009 and 2016. JA015–16 ¶¶ 54, 57. Each time, SBA denied Mr. Hierholzer's application because it concluded he did not satisfy the social disadvantage criterion, even though he is a disabled veteran who suffers from physical and psychological limitations and has lost contracts due to his disabilities. JA016–17 ¶¶ 55–62. Plaintiffs would have been accepted into the 8(a) program—without having to prove social disadvantage to SBA's satisfaction—if Mr. Hierholzer belonged to a favored racial group. JA015 ¶ 47; JA017 ¶ 64. SBA's use of a racial preference thus deprives Plaintiffs from "standing on equal footing for 8(a) Program eligibility," JA017–18 ¶¶ 65, 67, and "makes it less likely that the SBA will grant 8(a) eligibility" to Plaintiffs. JA018 ¶ 69.

Because Mr. Hierholzer is not a member of a favored racial group, Plaintiffs are "unable to compete for contracts under the 8(a) Program

---

reapplied to the program since those changes were made, *see* Aple. Br. 13–14, 18, 20, 35, 39, are irrelevant to the question of Plaintiffs' standing. And Defendants concede that the program changes do not moot this case. *Id.* 39 n.9.

that [they] could successfully procure and perform if allowed to do so." JA018 ¶ 70. Their exclusion from the presumption of social disadvantage also means that Plaintiffs "cannot access [the] other benefits provided to 8(a) Program companies," including "business development assistance, free training opportunities through the SBA, and federal surplus property." JA018 ¶ 71. And because Plaintiffs compete with other firms that have been accepted into the 8(a) program, JA018 ¶ 72, they are "at a competitive disadvantage when competing for government contracts and third-party contracts with suppliers and other businesses." JA018–19 ¶ 73. That "competitive disadvantage" includes accessing the 8(a) program itself, since firms owned and controlled by members of SBA's preferred racial groups are presumed socially disadvantaged, while Plaintiffs must prove disadvantage to SBA's satisfaction. JA018–19 ¶ 73.

These allegations regarding Plaintiffs' exclusion from the presumption of social disadvantage on the basis of race is more than sufficient to allege an Article III injury. However, Mr. Hierholzer *also* submitted a declaration establishing that he meets the net worth, income, and asset requirements to be considered "economically

6

disadvantaged" for purposes of the 8(a) program. JA094–95. Defendants

have not provided any facts to counter his declaration.

### B.  The district court failed to apply the proper pleading standard

Defendants do not dispute the proper standard for evaluating

standing at the motion to dismiss stage. Specifically, Defendants do not

contest (or even respond to) the following from Plaintiffs' Opening Brief:

- A district court may only dismiss on standing grounds "if the
  material jurisdictional facts are not in dispute." Op. Br. 20
  (quoting *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*,
  166 F.3d 642, 647 (4th Cir. 1999) (quotation omitted)).[2]

- The court must apply "a presumption of truthfulness" to a
  plaintiff's allegations where the jurisdictional facts are
  "intertwined" with facts central to the merits. Op. Br. 20 (quoting
  *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)).

---

[2] This Court has repeatedly emphasized this requirement. *See, e.g.,*
*Mowery v. Nat'l Geospatial-Intel. Agency*, 42 F.4th 428, 434 (4th Cir.
2022), *cert. denied*, 143 S. Ct. 783 (2023); *Balfour Beatty Infrastructure,*
*Inc. v. Mayor of Balt.*, 855 F.3d 247, 251 (4th Cir. 2017); *Richmond,*
*Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th
Cir. 1991).

- The court must assume the truth of jurisdictional facts in the plaintiff's complaint and affidavits and construe them in the plaintiff's favor. Op. Br. 20, 29 (citing *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013), and *Payne v. Chapel Hill N. Properties, LLC*, 947 F. Supp. 2d 567, 572 (M.D.N.C. 2013)).[3]

The district court failed to follow these established principles. Rather than presuming the truth of Plaintiffs' allegations and construing them in Plaintiffs' favor, the district court applied a cramped and narrow reading of the Complaint and Mr. Hierholzer's declaration. *See* Op. Br. 23–32. That is most evident in its conclusion that Mr. Hierholzer's declaration was insufficient because it "le[ft] open the possibility" that he is not economically disadvantaged. JA171. Even assuming economic disadvantage is relevant to standing—though Plaintiffs argue otherwise, *see* Op. Br. 26–28—the district court's strained approach flips the proper

---

[3] *See also, e.g.*, *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 362 (2d Cir. 2003) (for a motion to dismiss based on standing, the court must "assume the truth of the facts alleged in plaintiffs' complaint, *as well as those supplemented in plaintiffs' affidavits*") (emphasis added); *Gulf Union Ins. Co. of Saudi Arabia v. M/V LACERTA*, No. 91 CIV. 2814 (PKL), 1992 WL 51532, at *1 (S.D.N.Y. Mar. 9, 1992) (both pleadings and a plaintiff's affidavits "are assumed to be true and construed in the light most favorable to the plaintiff").

standard on its head by presuming that Plaintiffs are *not* economically disadvantaged. *See* Op. Br. 30–31. Mr. Hierholzer's unrebutted declaration establishes that it is at least *plausible* that he is economically disadvantaged. That is enough at this stage.

More broadly, the allegations in the Complaint and Mr. Hierholzer's declaration affirm Plaintiffs' standing and—although in Plaintiffs' view unnecessary for standing purposes—plausibly allege that Mr. Hierholzer is both socially and economically disadvantaged. *See* JA015–17 ¶¶ 54–62 (allegations showing Mr. Hierholzer's social disadvantage); JA094–95 (declaration of Mr. Hierholzer's economic disadvantage). Defendants assert that they "factually challenged whether Hierholzer is economically disadvantaged," Aple. Br. 26, but they introduced no evidence showing a lack of economic disadvantage or rebutting Mr. Hierholzer's declaration. In particular, Defendants provided zero evidence (and do not even seriously argue) that Mr. Hierholzer made transfers to relatives that should be attributed to his assets and would cause them to exceed the $6.5 million threshold. *See* Op. Br. 30–31. But even if Defendants contested Plaintiffs' allegations of

disadvantage, dismissal based on disputed jurisdictional facts is improper. *See, e.g.*, *Evans*, 166 F.3d at 647.

### C. Defendants misunderstand Plaintiffs' injury and misapply *City of Jacksonville*

In *City of Jacksonville*, the Supreme Court confirmed what is—and what is not—necessary to show standing in an equal protection case: "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group," a member of the disadvantaged group "need not allege that he would have obtained the benefit but for the barrier in order to establish standing." 508 U.S. at 666. The constitutional injury required for standing is "the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." 508 U.S. at 666.

Here, Plaintiffs' injury is not dependent on whether they would ultimately "obtain the benefit" of being accepted into the 8(a) program or awarded 8(a) contracts. Defendants' insistence that Plaintiffs must "demonstrat[e] that they meet the 8(a) program's race-neutral social and economic disadvantage requirements," Aple. Br. 25, 34–35, directly

10

contradicts *City of Jacksonville*, since those are the very requirements to "obtain the benefit" of acceptance into the program. 508 U.S. at 666.

Defendants also misconstrue the nature of Plaintiffs' injury, which as noted above is not exclusion from the 8(a) program or the loss of 8(a) contracts. Instead, the "barrier" causing their injury is SBA's discriminatory use of race to determine the threshold question of whether a business owner must *prove* social disadvantage or is *presumed* socially disadvantaged. Simply put, Plaintiffs are injured by the unequal treatment in having to prove social disadvantage while business owners of other races do not. *See* JA017–19 ¶¶ 65, 67–70, 73, 76 (alleging that the presumption denies Plaintiffs "equal footing").

Defendants' misunderstanding of Plaintiffs' injury infects much of their argument. For example, Defendants' repeated focus on whether Plaintiffs would be "ineligible for the program" without the presumption, *see* Aple. Br. 25, 34, 38, is irrelevant because Plaintiffs are challenging their ineligibility for the presumption of social disadvantage, not ineligibility for the program itself. Whether Plaintiffs could "obtain the benefit" of acceptance into the 8(a) program if the presumption were removed is immaterial to their standing to challenge the presumption.

11

Given Plaintiffs' actual alleged injury, the other standing prongs are also satisfied: their injury is caused by SBA's enforcement of the presumption, and Plaintiffs' requested relief would redress this unequal treatment. *See* JA026. Defendants effectively concede redressability by acknowledging that "[i]f the presumption is invalidated, … plaintiffs unquestionably would achieve 'equal treatment.'" Aple. Br. 38 (quoting *Heckler v. Mathews*, 465 U.S. 728, 740 (1984)). Plaintiffs concur. Because their injury is "the denial of equal treatment," *City of Jacksonville*, 508 U.S. at 666, either invalidating the presumption or extending it to Plaintiffs would redress that injury. *See Heckler*, 465 U.S. at 740 ("[T]he appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class.") (emphasis omitted).

Furthermore, Defendants' suggestion that Plaintiffs must prove social disadvantage to have standing to challenge their exclusion from the presumption of social disadvantage is circular and nonsensical. Aple. Br. 19, 25. If Plaintiffs could easily prove social disadvantage to SBA's satisfaction, they would likely not be injured by exclusion from the presumption—at least not in a way that is concrete, imminent, and

12

particularized. Thus, rather than supporting Defendants' argument, *see* Aple. Br. 25–26, Plaintiffs' multiple prior rejections for failure to satisfy the social disadvantage criterion underscore the inherent inequality of SBA's process. Because the barrier that denies equal treatment would be absent if Mr. Hierholzer was of a preferred race, Plaintiffs have standing to challenge the presumption.

Defendants ignore the legal principles of *City of Jacksonville*, instead focusing on the specific facts of that case. *See* Aple. Br. 24–25. However, there is an important factual difference: while Jacksonville's program was a straightforward 10% contract set-aside for minorities, the 8(a) program is a comprehensive business development initiative. It includes not only contract set-asides, but other "valuable opportunities" including business development assistance, training, and access to federal surplus property. *See* JA011 ¶ 26; JA018 ¶ 71; *see also* Aple. Br. 5 (acknowledging that the 8(a) program provides "contract, financial, technical, and management assistance" to participants). Therefore, although "a party challenging *a set-aside program like Jacksonville's* need only demonstrate that he is able and ready to bid on contracts," 508 U.S. at 666 (emphasis added), the 8(a) program is not—or at least not

merely—"a set-aside program like Jacksonville's." It is much broader in scope and benefits. Accordingly, Plaintiffs need not identify specific contracts that they are "able and ready" to bid on; it suffices that they are ready and able to apply to the 8(a) program—and have already applied twice.[4]

Finally, in a footnote, Defendants claim that Plaintiffs' position would mean that even "a large company" that "exceeds the programs' size limitations" or an individual who does not own a business but "has a grievance with the presumption" would have standing to challenge the presumption. Aple. Br. 28 n.8. Not so. Individuals who do not own small businesses cannot plausibly claim an interest in entering the 8(a) program or that they are injured by the race-based presumption of social disadvantage. The issue of social disadvantage will never even arise for

---

[4] As Defendants note, another factual difference is that while the Jacksonville program excluded non-minorities from its set-aside, the 8(a) program allows any small business—at least in theory—to be accepted if its owner is socially and economically disadvantaged. But contrary to Defendants' assertion, discrimination need not be a "complete bar" to violate equal protection. *See* Aple. Br. 15, 25. Any barrier that "makes it more difficult for members of one group to obtain a benefit" is constitutionally suspect. *City of Jacksonville*, 508 U.S. at 666.

such individuals. In contrast, Mr. Hierholzer is directly injured by the presumption.

### D. The cases cited by Defendants do not require Plaintiffs to demonstrate social and economic disadvantage as an element of standing

Even if they were binding rather than persuasive authority, none of the decisions that Defendants cite require a plaintiff to demonstrate social and economic disadvantage to have standing to challenge a presumption of social disadvantage. All the cases are also distinguishable on multiple grounds—primarily because they involved different types of injury and different types of programs than that challenged here.

As Plaintiffs' opening brief already noted, the plaintiff in *SRS Technologies* was not injured by the presumption of social disadvantage in the 8(a) program; indeed, it *qualified* for the presumption because its owner was from India. Op. Br. 27–28 (discussing *SRS Technologies, Inc. v. U.S. Dep't of Defense*, No. 96-1484, 1997 WL 225979 (4th Cir. May 6, 1997) (unpublished)). Because the plaintiff qualified for the presumption, it lacked standing to challenge it. *See* 1997 WL 225979, at *1. As the panel emphasized, the plaintiff was not excluded from the 8(a) program due to race or lack of social disadvantage, but based on an undisputed

15

lack of economic disadvantage. But the court did not conclude that a plaintiff must first demonstrate social or economic disadvantage to have standing to challenge the 8(a) program's presumption.

In describing *SRS Technologies*, Defendants state that "*like MJL, the plaintiff business was ineligible to participate in the 8(a) program because its owner was not economically disadvantaged.*" Aple. Br. 36 (emphasis added). But MJL has not been found ineligible based on lack of economic disadvantage. And Defendants have provided no evidence rebutting Mr. Hierholzer's declaration, which must be presumed true. JA094–95. As did the district court, Defendants fixate on Mr. Hierholzer's assertion that he "believe[s]" he is economically disadvantaged, Aple. Br. 26–27, but even if subjective belief is an insufficient basis for showing economic disadvantage, Mr. Hierholzer's declaration did not rest on his belief. It asserted that each of the net worth, income, and asset value restrictions are satisfied, JA094–95 ¶¶ 4–6, and Defendants have not rebutted those factual assertions.

*Interstate Traffic Control v. Beverage*, 101 F. Supp. 2d 445 (S.D. W. Va. 2000), is also inapposite. There, a federal contractor challenged USDOT's 10% contract set-aside program for disadvantaged businesses.

*Id.* at 447. Unlike Plaintiffs here, the contractor did not claim that it was injured by a presumption of social disadvantage. Instead, its alleged injury was the loss of business due to "the very existence of the DBE program." *Id.* at 450. The parties even stipulated that the contractor (1) was not a small business and (2) was not owned or controlled by socially and economically disadvantaged individuals. *Id.* at 448–49.[5] Thus, it had not and could not apply for the set-aside program and was not harmed by the race-based presumption. Although the district court agreed that the contractor had alleged an injury—specifically, the loss of business—it concluded that injury would not be redressed by removal of the presumption. *Id.* at 451–53.[6] Unlike the *Interstate Traffic Control* contractor, Plaintiffs here assert a different type of injury. They do not challenge "the very existence" of the 8(a) program—indeed, they want to participate in it. Instead, Plaintiffs are harmed by exclusion from the

---

[5] It is undisputed that MJL qualifies as a small business for purposes of the 8(a) program. *See* JA009 ¶ 14.

[6] Even that aspect of the court's standing analysis has been criticized as "too stringent." *Midwest Fence Corp. v. U.S. Dep't of Transp.*, No. 10 C 5627, 2011 WL 2551179, at *9 (N.D. Ill. June 27, 2011).

17

presumption, which would be redressed by its elimination or expansion to include Plaintiffs.

The same analysis holds true for *Cache Valley Electric Co. v. Utah Department of Transportation*, 149 F.3d 1119 (10th Cir. 1998). The contractor there challenged the same 10% set-aside program as in *Interstate Traffic Control. Id.* at 1121. And like in *Interstate Traffic Control*, the plaintiff contractor did not qualify as a small business and was thus ineligible for the program. *Id.* Accordingly, it did not claim to be injured by the presumption, but by the very existence of the set-aside program. The Tenth Circuit agreed that this was an injury, but found it "wholly speculative" that eliminating the presumption would eliminate or meaningfully reduce the program in a way that would increase the plaintiff's business and redress its injury. *Id.* at 1123.[7] Here, there is nothing speculative about Plaintiffs' common-sense assertion that eliminating or expanding the presumption would remedy the unequal treatment inherent in the presumption.

---

[7] *Cache Valley* was also decided at summary judgment, after the parties had a chance to conduct discovery. *See* 149 F.3d at 1124.

Defendants' other cited cases are equally inapposite, and none of them held that a plaintiff challenging a racial presumption must demonstrate social and economic disadvantage. In *Bruckner v. Biden*, a contractor lacked standing to challenge a 10% set-aside not only because he was not able and ready to bid on contracts, but because he failed to show that he would "actually experience unequal treatment" if he did so. 666 F. Supp. 3d 1237, 1244–47 (M.D. Fla. 2023). In contrast, Plaintiffs are ready and able to apply for the 8(a) program, have done so in the past, and indisputably "experience unequal treatment" under the presumption. Finally, in *Carney v. Adams*, the Supreme Court addressed Delaware's partisan balance requirement for judgeships. 592 U.S. 53, 55 (2020). It concluded that the plaintiff had not shown he was able and ready to apply for a judgeship where he had never before done so, where he decided to challenge the law based on his reading of a law review article, where he changed his lifelong political affiliation just to make it "possible for him to vindicate his view of the law," and where the context showed he had only "an abstract, generalized grievance, not an actual desire to become a judge." *Id.* at 62–63. Not only was *Carney* decided at summary judgment and after discovery, but it is distinguishable from the

case here, where Plaintiffs have twice applied to the 8(a) program and are ready and able to do so again.

## II. As the Government Concedes, the District Court's Mootness Holding Was Incorrect

As the government concedes, the district court improperly held that Plaintiffs' case is moot. Aple. Br. 39 n.9. Since a government defendant bears the burden of establishing mootness, *W. Virginia v. EPA*, 597 U.S. 697, 719 (2022), Defendants' concession settles the matter.

Defendants try to soften their concession by adding the qualifier that the case is "*technically* not moot." Aple. Br. 39 n.9 (emphasis added). But a case only becomes moot when the "technical" requirements of mootness are satisfied. *See Kim v. Bd. of Educ. of Howard Cnty.*, 93 F.4th 733, 739 n.4 (4th Cir. 2024) ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.") (cleaned up); *see also, e.g.*, *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203–04 (1968) ("[T]his case is not technically moot, an appeal has been properly taken, and we have no choice but to decide it."); *Humphrey for & on Behalf of N.L.R.B. v. Int'l Longshoremen's Ass'n AFL-CIO*, 548 F.2d 494, 496 n.6 (4th Cir. 1977) (because the case is "not technically moot … , we must

decide the issue before us"). Put simply, a case that is "technically" not moot is not moot at all.

In any event, Defendants' concession is correct—SBA's temporary pause in using the presumption, based on a non-final district court decision in another circuit that may yet be appealed, does not moot this case. *See* Op. Br. 32–37. The district court's contrary decision must be reversed.

## III. The Court Should Reach Defendants' Rule 12(b)(6) Arguments and Conclude that Plaintiffs Have Stated Valid Claims for Relief

Defendants argue that if the Court reverses the district court's standing decision, it should remand for the district court to address Defendants' Rule 12(b)(6) arguments in the first instance. Aple. Br. 41–42. To the contrary, the Court should decide the 12(b)(6) motion now and hold that Plaintiffs have stated valid claims for relief under the Due Process Clause and the nondelegation doctrine. *See* Op. Br. 37–48.

The Court has discretion whether to address Defendants' 12(b)(6) motion in this appeal. *Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals,

to be exercised on the facts of individual cases."); *see also* Op. Br. 37 (citing cases). It should exercise that discretion to decide the issue now, for three reasons.

First, Defendants' motion presents purely legal issues that this Court will ultimately review *de novo*, giving no deference to the district court. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006).

Second, the issues have been fully briefed, and judicial economy weighs in favor of this Court resolving them now. *See Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 254 (4th Cir. 2021) ("[W]e find that judicial economy favors our resolution of the remaining issues. The issues have been fully briefed and resolving them without a remand will allow [the plaintiff] to litigate the merits of its case as swiftly as possible ….").

Third, there would be no injustice or unfair surprise to Defendants. Defendants' 12(b)(6) motion was not simply an "alternative" argument to their 12(b)(1) motion, as they now claim, Aple. Br. 42, but was a focus of their request for dismissal. *See* JA028, JA030, JA049–56. Defendants fully briefed the motion to the district court and had the opportunity to

respond further to Plaintiffs' arguments in their brief to this Court, if they had more to say. Their decision to rest on their briefing below should add no weight to their argument for remand. In the interest of fairness and judicial economy, the Court should decide the 12(b)(6) issue now. And as explained in Plaintiffs' Opening Brief, it should deny the motion. Op. Br. 37–48.

## CONCLUSION

The Court should reverse the district court's dismissal on mootness and standing; deny Defendants' motion to dismiss claims 1, 2, and 4 under Rule 12(b)(6); and remand the case for further proceedings.

DATED: July 29, 2024.

Respectfully submitted,
GLENN E. ROPER
JOSHUA P. THOMPSON

s/ Glenn E. Roper
GLENN E. ROPER
*Attorneys for Plaintiffs –*
*Appellants*

23

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Circuit Rule 32-1, I certify that the attached brief is proportionally spaced, has a typeface of 14 points and contains 4,526 words.


**Signature** s/ Glenn E. Roper          **Date** July 29, 2024
                GLENN E. ROPER

24

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Glenn E. Roper
GLENN E. ROPER

25